**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

|  |  |
|---|---|
| ABACUS GLOBAL MANAGEMENT, INC., a corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COVENTRY FIRST LLC, a limited liability company; ALAN BUERGER, an individual,<br>　　　　　Defendants. | Civil Action No. _____<br>(State Court Case No. 2025-CA-006191-O) |

**DEFENDANTS' NOTICE OF REMOVAL**

Defendants Coventry First LLC ("Coventry") and Alan Buerger ("Mr. Buerger") (together, "Defendants"), by and through their undersigned counsel and pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and Local Rule 1.06, and without waiver of any of their objections and any available defenses, hereby remove this civil action pending in the Circuit Court of the Ninth Judicial Circuit of Florida, Case No. 2025-CA-006191-O, (the "State Court Action") to the United States District Court for the Middle District of Florida, Orlando Division, being the district and division in which the State Court Action is pending and on the basis of diversity jurisdiction.

In support of this Notice of Removal, Defendants state as follows:

1

## ALLEGATIONS OF THE COMPLAINT AND BACKGROUND

1.    The Complaint alleges four causes of action against all Defendants for defamation, defamation by implication, defamation per se, and deceptive and unfair practices.  *See* Exhibit 1, ¶¶ 132–78.  It also asserts a fifth claim against Mr. Buerger for tortious interference with business relations.  *See id.* ¶¶ 179–83.  The Complaint seeks nearly $400 million in specious damages.  *See id*. ¶¶ 21, 153.

2.    Defendant Coventry is a limited liability company headquartered in Fort Washington, Pennsylvania.  Coventry is an industry leader and the creator of the secondary market for life insurance.  It long ago pioneered "life settlements," which enable individuals with life insurance policies to sell their policies at market value.  To date, Coventry has delivered more than $6 billion to policyowners who no longer wish to own their life insurance policies.

3.    Defendant Mr. Buerger is the Co-founder and Executive Chairman of Coventry.  He, too, is a citizen of Pennsylvania.

4.    Plaintiff Abacus Global Management, Inc. ("Abacus" or "Plaintiff") is a Delaware corporation with its principal place of business in Orlando, Florida.

5.    Like Coventry, Abacus is a participant in the life settlement market. But, unlike Coventry, it is a public company.  And as one former Abacus employee reportedly said, "there's a running joke that every life settlement company that goes public ends up getting caught up in some sort of financial scheme."  Exhibit 2 (Morpheus Report) at 2.  For instance, Life Partners Holdings and GWG Holdings

2

went bankrupt in 2015 and 2018, respectively, after understating life expectancies to overvalue assets.  *See id.*

6.      Now, Abacus's own valuation and accounting practices are at the center of a robust public debate.

7.      Life expectancy is a critical factor in assessing the present value of a life insurance policy.  If the life expectancy used is too short, then the policy will appear more valuable than it actually is, because the valuation will fail to account for the total amount of premiums required to keep the policy in force and will project the death benefit payout to occur prematurely.  As Abacus explained in a prospectus filed with the SEC for a fund that it intends to launch, the fair value of policies "can increase or decrease as a function of the sum of paid and future premium versus life expectancy of the named insured."[1]

8.      Abacus has invested in a medical underwriter and life expectancy provider known as Lapetus Solutions, Inc. ("Lapetus").  Lapetus is notorious in the life settlement industry for systematically underestimating life expectancies—which, again, leads to overvalued policies.  Abacus has admitted to using Lapetus in its valuation process.  Indeed, that same prospectus describes how Abacus plans to calculate the fair value of life insurance policies using Lapetus life expectancies: "The value of an individual Mortality Contract is determined through the development of probabilistic survivability curves based on the medical underwritings from market-

---

[1]    ABL Longevity Growth & Income Fund, Form N-2/A, at 7 (June 17, 2025), http://bit.ly/4kPyrWo.

reliable medical underwriting sources, such as those provided by ITM 21st, Fasano & Associates, Predictive Analytics, Lapetus Solutions, Polaris, and LSI Longevity Solutions Inc.  Consistent with standard practice in the life settlement market, the Manager will typically engage a single life expectancy provider with respect to any given Mortality Contract.  Generally, the Fund expects to rely on Lapetus Solutions as its primary life expectancy provider."[2]

9.    In May of 2024, Coventry published a study showing that Lapetus consistently underestimates life expectancies.  That study found that the company's life expectancies are shorter for 85% of underwritten cases, by an average timespan of 31 months.  Two well-respected professors then confirmed the results of Coventry's analysis.

10.    A few months later in October of 2024, Mr. Buerger participated in a public debate with Lapetus's CEO at a Life Insurance Settlement Association conference.  Mr. Buerger echoed Coventry's concerns with Lapetus's consistently low life expectancies.  And he expressed his belief that the market overvalued Abacus as a result.

11.    Mr. Buerger then reiterated that opinion in an interview with Tegus, a platform that collects the perspectives of experts on various investment opportunities.

12.    Coventry and Mr. Buerger are not the only ones who have opined that Abacus's valuation is inflated.  On May 22, 2025, Morpheus Research released a

---

[2] *Id.* at 46.

report, explaining that Abacus has deployed "Yet Another Life Settlements Accounting Scheme Manufacturing Fake Revenue By Systematically Underestimating When People Will Die." Ex. 2 at 1.[3] According to the report, former Abacus employees confirmed that the company relies heavily on Lapetus's life expectancies. *Id.* at 2, 23. At the same time, while Abacus boasted about "record" earnings for Q1 2025, Abacus quietly slashed its discount rate to inflate the already questionable "unrealized gains" on its balance sheet. *Id.* at 35. "[W]ithout the changed discount rate, Abacus would have been loss-making" for the quarter. *Id.*

13.    After these concerns about its business practices came to light, Abacus sued Coventry and Mr. Buerger on June 30, 2025, in the Circuit Court of the Ninth Judicial Circuit of Florida. Defendants were served with the Complaint on July 8, 2025.

## GROUNDS FOR REMOVAL – DIVERSITY JURISDICTION

14.    Removal is proper because the Court has diversity jurisdiction over this action.

15.    "Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants," "no defendant is a citizen of the forum State," and "the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84, 89 (2005); *see* 28 U.S.C. §§ 1332(a)(1), 1441(b)(2). This case satisfies each requirement.

---

[3] Coventry had never heard of Morpheus Research before it published this report.

**I.**    **There Is Complete Diversity Between the Parties, and No Defendant Is a Citizen of the Forum State.**

16.    The complete-diversity and no-forum-defendant requirements are both satisfied here.  As described below, Plaintiff is a citizen of Delaware and Florida, while Defendants are both citizens of Pennsylvania.  The parties are thus completely diverse, and no Defendant is a citizen of the forum state of Florida.

**A.**    **Plaintiff Abacus Is a Citizen of Delaware and Florida.**

17.    Abacus is a corporation.  Ex. 1, ¶ 16.  That means for diversity purposes, it is "deemed to be a citizen of [1] every State and foreign state by which it has been incorporated and [2] of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

18.    Those States are Delaware and Florida, respectively.  Abacus is "organized under the laws of the state of Delaware with its principal place of business in Orlando, Florida," where Abacus's headquarters are located.  Ex. 1, ¶ 16; *see Hertz Co. v. Friend*, 559 U.S. 77, 80–81 (2010) ("[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," which "will typically be found at a corporation's headquarters.").

**B.**    **No Defendant Is a Citizen of Either Delaware or Florida.**

19.    Defendants, by contrast, are both citizens of Pennsylvania.  No Defendant is a citizen of either Delaware or Florida.  Thus, the parties are completely diverse.

### 1.    Coventry Is a Citizen of Pennsylvania.

20.    Coventry is a limited liability company with its principal place of business in Fort Washington, Pennsylvania.  Ex. 1, ¶ 17; Exhibit 3 (Welsh Decl.) ¶ 3. Although it was organized under the laws of Delaware, *see* Ex. 1, ¶ 17, an "LLC's state of organization does not determine the citizenship of an LLC."  *Hines Interests Ltd. P'ship v. Southstar Cap. Grp. I, LLC*, 2018 WL 7460045, at *2 n.2 (M.D. Fla. Dec. 20, 2018).  Rather, "like a limited partnership, a limited liability company is a citizen of any state of which a member of the company is a citizen."  *Rolling Greens MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004).

21.    Coventry's ownership structure is summarized in the figure below.



22.    As this chart shows, Coventry has a single member, Dash Investments LLC ("Dash").  Welsh Decl. ¶ 4.  Dash likewise has its principal place of business in Fort Washington, Pennsylvania.  *Id.*  And, as an LLC, its citizenship is determined by the citizenship of its members.  *See Rolling Greens*, 374 F.3d at 1022.

23. Dash has two members—the Buerger 2003 Family Trust (the "Family Trust") and the Alan H. Buerger 2003 Trust for Reid S. Buerger (the "Reid Trust"). Welsh Decl. ¶ 5. Each trust holds an equal 50% stake in Dash. *Id.*

24. Coventry's citizenship is thus determined by the citizenship of the Family Trust and the Reid Trust. Both trusts are citizens of Pennsylvania, and so it follows Coventry is as well.

25. A traditional trust "holds the citizenship of its trustee." *Alliant Tax Credit 31, Inc. v. Murphy*, 924 F.3d 1134, 1143 (11th Cir. 2019) (emphasis omitted).

26. The Family Trust is a traditional trust. Welsh Decl. ¶ 6. In other words, the trust represents a fiduciary relationship between the trustee and the beneficiaries thereof with respect to the property held in trust. *Id.* It is not a business trust with a separate legal identity. *Id.* The Family Trust has its situs in Pennsylvania. *Id.* And it would be represented by its trustee in litigation involving trust property. *See* 20 Pa. Stat. §§ 7780.5(a), 7780.6(a)(4).

27. The sole trustee for the Family Trust is Constance M. Buerger ("Mrs. Buerger"). Welsh Decl. ¶ 6. As a natural person, Mrs. Buerger's citizenship is determined by her "domicile." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). Mrs. Buerger is a Pennsylvania domiciliary because her "true, fixed, and permanent home" is in Wyndmoor, Pennsylvania. *Id.* at 1258 (citation omitted); *see* Welsh Decl. ¶ 8. The Family Trust holds the citizenship of its trustee, and it is thus a Pennsylvania citizen. *See Alliant Tax Credit 31*, 924 F.3d at 1143.

28.    The same goes for the Reid Trust.  It, too, is a traditional trust with its situs in Pennsylvania.  Welsh Decl. ¶ 7.  It represents a fiduciary relationship between the trustee and the beneficiaries thereof with respect to the property held in trust.  *Id.* It is not a business trust with a separate legal identity.  *Id.*  And it would be represented by its trustee in litigation involving trust property.  *See* 20 Pa. Stat. §§ 7780.5(a), 7780.6(a)(4).

29.    As with the Family Trust, the sole trustee for the Reid Trust is Mrs. Buerger.  Welsh Decl. ¶ 7.  Mrs. Buerger, as explained above, is a Pennsylvania citizen.  *See supra* ¶ 27.  The Reid Trust holds the citizenship of its trustee, and it is thus a Pennsylvania citizen.  *See Alliant Tax Credit 31*, 924 F.3d at 1143.

30.    In short, Coventry's sole member is Dash, an LLC whose members are the Family Trust and the Reid Trust.  Mrs. Buerger—a Pennsylvania citizen—is the sole trustee for both of those trusts.

31.    Accordingly, Coventry is a citizen of Pennsylvania.

### 2.    Mr. Buerger Is a Citizen of Pennsylvania.

32.    As a natural person, Mr. Buerger's citizenship is determined by his "domicile."  *McCormick*, 293 F.3d at 1257.  Mr. Buerger is a Pennsylvania domiciliary because "his true, fixed, and permanent home" is in Wyndmoor, Pennsylvania.  *Id.* at 1258 (citation omitted); *see* Welsh Decl. ¶ 8.

33.    He is therefore a citizen of Pennsylvania.

* * *

34.    As a result, no Defendant is a citizen of the same state as Plaintiff. Accordingly, there is complete diversity.  And because Coventry and Mr. Buerger are Pennsylvania citizens, no Defendant is a citizen of the forum State.

## II.    The Amount in Controversy Exceeds $75,000.

35.    This case also satisfies the amount-in-controversy requirement for diversity jurisdiction.

36.    Because removal "is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."  28 U.S.C. § 1446(c)(2).

37.    Although Defendants categorically deny any liability and challenge the foundation on which Abacus's damages calculation rests, Abacus claims that it was harmed in the form of: (1) a loss of roughly $287,400,000 in market capitalization, (2) the ability to collect management fees on a $100 million private fund deal, and (3) a lost $1.1 million consulting agreement.  Ex. 1, ¶ 21.  Abacus thus demands a sum of "at least $388,500,000" in damages.  *Id.*; *see also id.* ¶ 153.

38.    Those amounts—whether viewed separately or in the aggregate—all "exceed[] the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332.

39.    This Court therefore has diversity jurisdiction.

**III.    Defendants Have Complied with All of the Procedural Requirements for Removal.**

40.    In addition, Defendants have complied with all procedural requirements for removal.

41.    This Notice of Removal is timely.  Abacus's initial complaint was served on Defendants on July 8, 2025.  *See* Ex. 1 at 1.  This Notice of Removal is being filed seventeen (17) days later.  Therefore, the Notice of Removal is being filed "within 30 days of the receipt by the defendant, through service or otherwise, of a copy of the initial pleading."  28 U.S.C. § 1446(b)(1).  Indeed, the filing of this Notice of Removal comes less than thirty days after Abacus filed the initial complaint.  *See* Ex. 1 (Abacus filed the initial complaint on June 30, 2025).

42.    Venue is also proper because this Notice of Removal is being filed "in the district court of the United States for the district and division within which [the State Court Action] is pending."  28 U.S.C. § 1446(a); *see also id.* § 1441(a); Local Rule 1.06(a).  The Middle District of Florida, Orlando Division, embraces Orange County, Florida, where the State Court Action was filed.  *See* 28 U.S.C. § 89(b); Local Rule 1.04(a)–(b).

43.    This Notice of Removal is being filed together with a copy of each paper docketed in the State Court Action.  *See* 28 U.S.C. § 1446(a); Local Rule 1.06(b). Those papers, with the exception of the Complaint attached as Exhibit 1, are attached as Exhibits 4A and 4B.

44.     Finally, Defendants will give prompt written notice of this Notice of Removal to all adverse parties and will file a copy of this Notice of Removal with the Clerk for the Ninth Judicial Circuit of Florida.  *See* 28 U.S.C. § 1446(d).  A copy of the Notice that will be filed on this date with the state court is attached as Exhibit 5.

## RESERVATION OF RIGHTS

45.     By filing this Notice of Removal, Defendants explicitly reserve and do not waive any rights, remedies, or defenses that may be available to them in this Court, in the State Court Action, or otherwise.

*   *   *

WHEREFORE, as a result of the filing of this Notice of Removal, this action should be deemed removed from the Circuit Court of the Ninth Judicial Circuit of Florida and placed on the docket of the Orlando Division of this Court.

Dated: July 25, 2025

Respectfully Submitted,

/s/ *Alfred J. Bennington, Jr.*

ANDREW J. LEVANDER
  (*pro hac vice* application forthcoming)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

MICHAEL H. MCGINLEY
  (*pro hac vice* application forthcoming)
BRIAN A. KULP
  (*pro hac vice* application forthcoming)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
michael.mcginley@dechert.com
brian.kulp@dechert.com

ALFRED J. BENNINGTON, JR.
GLENNYS ORTEGA RUBIN
BENJAMIN F. ELLIOTT
SHUTTS & BROWN LLP
300 South Orange Ave.
Suite 1600
Orlando, FL 32801
Telephone: (407) 423-3200
Facsimile: (407) 425-8316
bbenington@shutts.com
grubin@shutts.com
belliott@shutts.com

ERIC AUSLANDER
  (*pro hac vice* application forthcoming)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006
Telephone: (202) 261-3300
Facsimile: (202) 261-3333
eric.auslander@dechert.com

*Counsel for Defendants Coventry First LLC and Alan Buerger*

13

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, I electronically filed the foregoing Notice of Removal and all accompanying materials with the Clerk of Court using the CM/ECF system. I also served these materials via email on the following counsel for Plaintiff Abacus Global Management, Inc.:

ALEX ZUCKERMAN
QUINN EMANUEL URQHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, NY 10016
alexzuckerman@quinnemanuel.com
(212) 849-7000

JASON D. STERNBERG
DAVID M. WALSH
QUINN EMANUEL URQHART & SULLIVAN, LLP
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
jasonsternberg@quinnemanuel.com
davidwalsh@quinnemanuel.com
(305) 402-4880

KATHLEEN S. MESSINGER
QUINN EMANUEL URQHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
kathleenmessinger@quinnemanuel.com
(213) 443-3000

JASON W. JOHNSON
GUNSTER, YOAKLEY & STEWART P.A.
200 South Orange Avenue, Suite 1400
Orlando, FL 32801
jjohnson@gunster.com
(407) 406-5255

/s/ Alfred J. Bennington, Jr.
ALFRED J. BENNINGTON, JR.