# EXHIBIT B

quinn emanuel trial lawyers | new york

295 5th Avenue, 9th Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7234**

WRITER'S EMAIL ADDRESS
**alexzuckerman@quinnemanuel.com**

October 24, 2025

**VIA E-MAIL**

Michael H. McGinley
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
michael.mcginley@dechert.com

Re: *Abacus Global Management, Inc. v. Coventry First LLC*, 6:25-cv-01401-RBD-RMN (M.D. Fla.) – Defendants' Responses and Objections to Plaintiff's First Set of Requests for Production of Documents

Counsel:

In an effort to resolve unnecessary discovery disputes, we write regarding Defendants Coventry First LLC's and Alan Buerger's Responses and Objections to Plaintiff's First Set of Requests for Production of Documents. Please provide your availability to meet and confer on Wednesday of next week regarding the below-described deficiencies.

## I. DEFENDANTS' RESPONSES ARE NOT CONSISTENT WITH LOCAL PRACTICE

Defendants' responses do not comply with the Middle District of Florida's local rules. *See A Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida* ("*Discovery Handbook*"), iii (Feb. 1, 2021) ("Judges of the Middle District" noting that the handbook is "an expression of generally accepted discovery practice in the Middle District"); *see also* ECF No. 42 at 1 (Judge Dalton ordering the Parties to comply with the "procedural, standards, and requirements set forth in . . . the Court's Discovery Handbook"). Below is a non-exhaustive list of your repeated violations.

## A. BOILERPLATE OBJECTIONS

The Middle District prohibits boilerplate objections of the kind Defendants routinely raise here. *See Discovery Handbook*, at III.A.6. ("Boilerplate objections such as 'the request is overly broad, unduly burdensome, and outside the scope of permissible discovery' are insufficient without a full, fair explanation particular to the facts of the case."). Courts in this District "routinely reject boilerplate objections" such as those asserted by Defendants here. *Polycarpe v. Seterus, Inc.*, 2017 WL 2257571, at *2 (M.D. Fla. May 23, 2017) (collecting cases); *JH Enter. v. Am. Guar. & Liab. Ins. Co.*, 2022 WL 19919878, at *3–4 (M.D. Fla. Mar. 30, 2022) (stating that general objections, which do not explain a party's "reasoning in a specific and particularized manner," are inadequate boilerplate objections). In addition, Judge Dalton's Scheduling and Case Management Order warns that "**[r]esponding with boilerplate will result in waiver of the objection**." ECF No. 42 at 5 (emphasis in original).

Defendants repeatedly object to Abacus's requests on the grounds that they are overbroad or unduly burdensome without providing "a full, fair explanation particular to the facts of the case." *See* Buerger RFP Nos. 28, 29, 35; Coventry RFP Nos. 26–28, 35, (overbroad); Buerger RFP Nos. 2, 39, 42, 45–50; Coventry RFP Nos. 2, 40, 42–52 (unduly burdensome). Defendants' failure to explain the basis of their objections leaves Plaintiff unable to determine what is at issue.

Defendants' boilerplate objections commit the additional error of failing to state "explicitly" whether they will withhold documents based on these boilerplate objections. *Discovery Handbook*, at III.A.7; *see also* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). This leaves Plaintiff with two unknowns following each of your numerous boilerplate objections: (1) why Defendants believe the request is objectionable and (2) whether Defendants will withhold documents on an undiscernible basis. Without that information, we are unable to assess Defendants' position and/or compliance with Plaintiff's discovery requests.

**Accordingly, please confirm that Defendants will not withhold documents based on these boilerplate objections.**

## B. BOILERPLATE RELEVANCE OBJECTIONS

As with Defendants' boilerplate objections on breadth and burden, Defendants' relevance objections similarly violate Middle District practices and are otherwise meritless or incomplete. *See* Buerger RFPs Nos. 2, 4, 17, 28, 33, 35–39, 50, 53, 55, 61; Coventry RFP Nos. 2, 4, 17, 23, 24, 26, 27, 35–38, 40, 52, 57, 70.

For instance, for Buerger RFP No. 55 and Coventry RFP No. 57, you simply respond "[Defendant] objects to this Request to the extent it seeks documents not relevant to, nor probative of, the claims and defenses in this case" followed by your

standard "will produce" language. There are at least three issues with these objections. First, Defendants fail to explain what about Plaintiff's request(s) is, in your view, irrelevant. Second, relevance is broad, meaning "any doubt concerning relevancy of requested discovery is resolved in favor of discovery." *Grayson v. No Labels, Inc.*, 2021 WL 8199894, at *3 n.5 (M.D. Fla. Nov. 17, 2021). And because Defendants have failed to articulate a reason as to why the above referenced RFPs are not relevant, Defendants have duly failed to articulate a reason as to why Plaintiff's requests do not fall under the broad scope of relevance. Finally, it bears reminding that when a request is facially relevant, it is the objecting party's "burden to show the requested discovery is not relevant." *Id.* at *3 (citation omitted). Indeed, it strains credulity to argue that requests going to the Coventry Studies (Buerger & Coventry RFP No. 2; FAC ¶ 124); the Tegus Interview (Buerger & Coventry RFP No. 17; FAC ¶ 10); or Buerger's communications with Dr. Olshansky regarding Lapetus's life expectancy estimates (Buerger RFP No. 53; FAC ¶ 94) are not relevant to this case.

Defendants' boilerplate relevance objections commit the additional error of failing to state "explicitly" whether they will withhold documents based on these boilerplate relevance objections. *Discovery Handbook*, at III.A.7; *see also* Fed. R. Civ. P. 34(b)(2)(C) ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). This leaves Plaintiff with two unknowns following each of your numerous boilerplate objections: (1) why Defendants believe the request is objectionable and (2) whether Defendants will withhold documents on an undiscernible basis. Without that information, we are unable to assess Defendants' position and/or compliance with Plaintiff's discovery requests.

**Accordingly, please confirm that Defendants will not withhold documents based on these boilerplate objections.**

## C. <u>DUPLICATIVE OBJECTIONS</u>

Another objection repeated throughout Defendants' responses and objections is that the request is "duplicative." Buerger RFP Nos. 1, 6–11, 15–18, 25–32. 34–39, 54, 57; Coventry RFP Nos. 1, 6–11, 15–18, 25–31, 34–40, 56, 59. For example, Defendants state, "[Defendant] objects to the extent this Request seeks documents duplicative of those responsive to other requests."). Buerger & Coventry RFPs Nos. 6–11. Here, again, Defendants fail to provide a "full [and] fair explanation" for their objection. From Defendants' objection, Plaintiff is left to wonder (1) what other request(s) you believe are duplicative and (2) whether Defendants will withhold documents based on this objection.

**Accordingly, please confirm that Defendants will not withhold documents based on their duplicative objections.**

## II. GENERAL OBJECTIONS

**General Objection No. 1.** Defendants' boilerplate objection to the "Relevant Time Period" proposed by Plaintiff (from July 3, 2023 to the present) is improper for two reasons. First, as explained above, Defendants must go beyond boilerplate language and explain *why* the Plaintiff's proposed time period is overbroad. Should Defendants find a narrower window acceptable, they must say so and produce documents consistent with that window. Second, July 3, 2023 to the present is a perfectly reasonable window from which to request documents from Defendants given that Plaintiff alleges "Burger and Coventry have been working on this dossier since 2023" (FAC ¶ 153) and that "Defendants have been eager for a way to take down Abacus since the Company first went public in June of 2023" (*id.* ¶ 89). *See Coomer v. Byrne*, 2025 WL 1222527, at *3, 4 (M.D. Fla. Apr. 28, 2025) (holding that post-publication statements one year after plaintiff's complaint were proportional and relevant to defendant's knowledge of falsity); *see also id.* at 3 ("[C]ourts have not strictly limited evidence relevant to the defendant's state of mind to that which existed prior to or at the time of publication."). Indeed, all of Defendants' Defamatory Statements related to Abacus's value and practices as a public company, making July 2023 an appropriate starting point for discovery regarding Abacus. *See, e.g.*, FAC ¶¶ 8, 10, 68, 199, 214.

**Accordingly, please confirm that you will withdraw this objection and produce responsive, non-privileged documents from July 3, 2023 to the present, or else explain why earlier discovery is relevant and proportional to the claims and need of this case.**

**General Objection No. 6.** Contrary to your conclusory objection that "[Defendant's] business practices are not at issue in this action," they in fact are given that Defendants' business practices are circumstantial evidence of negligence, recklessness, and/or knowledge of falsity—the latter issue injected by Defendants' motions to dismiss arguing that Plaintiff is a public figure required to establish malice. *Cable News Network, Inc. v. Black*, 308 So. 3d 997, 1001 (Fla. 4th DCA 2020) ("'[A] plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence' . . . . This includes an accumulation of contemporaneous documents and communications reflecting the defendant's knowledge or state of mind.") (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989)). This general objection is specifically raised in multiple requests. Buerger RFP Nos. 42–49; 58, 59; Coventry RFP Nos. 42–51, 60, 61, 66–69.

As alleged, Defendants defamed Abacus for its use of Lapetus all while it was using Lapetus itself. *See, e.g.*, FAC ¶¶ 86, 100, 159(c). Furthermore, Buerger compared Coventry's valuation practices with Abacus's valuation practices both at the 2024 LISA Conference and during the Tegus Interview. *See* Mot. to Dismiss FAC, Ex. 5 (LISA Conference Tr.), ECF No. 47-5 at 29 ("I didn't use a discount rate of 21%, because 21%, we all know . . . [is] [n]ot realistic."); Ex. 6 (Tegus Interview Transcript),

ECF No. 47-6 at 5 ("[W]e do a fair value calculation because I want to know what my policies are worth."). Because Coventry and Buerger both claim that Abacus is doing something different (and, indeed, wrongful) compared to Coventry, Abacus is entitled to test those statements by taking discovery as to Coventry's practices, which may yield circumstantial evidence supporting the negligence, recklessness, or knowledge element of Abacus's defamation claims.

**Accordingly, please confirm that you will withdraw this general objection and its specific applications and produce responsive, non-privileged documents.**

**General Objection No. 9.** Defendants' objection to the definition of "Complaint" as inoperative given the filing of the FAC borders on the absurd. As with the definition of "Defamatory Statements," the time, place, and content of Buerger's Defamatory Statements did not change between the Complaint and the First Amended Complaint, and neither did the arguments raised in your successive Motions to Dismiss. Here, in good faith, Defendants should have proceeded under the FAC as the operative complaint. *See* Fed. R. Civ. P. 1 ("[The Federal Rules] should be . . . employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

**Accordingly, please confirm that you will withdraw this objection and produce responsive, non-privileged documents in light of the First Amended Complaint.**

**General Objection No. 10.** As with Defendants' General Objection No. 6, your objection to the more inclusive definition of "Coventry Studies" robs Abacus of the opportunity to prove its case, as it is entitled to, via circumstantial evidence. Buerger RFP Nos. 2–4, 12, 39; Coventry RFP Nos. 2–4, 12, 40. Again, evidence of what Defendants were saying and what information they had about Lapetus around the time they were defaming Abacus is central to Plaintiff's case.

**Accordingly, please confirm that you will withdraw this general objection and its specific applications and produce responsive, non-privileged documents.**

**General Objection No. 11.** Your refusal to produce documents under a definition of "Defamatory Statements" that you expressly provided in this Objection is improper. *See Entrust Datacard Corp. v. Zeiser Gmbh*, 2019 WL 12522886, at *7 (M.D. Fla. May 9, 2019) (overruling objection to vagueness and ordering responding party to apply its owns definition); Buerger RFP Nos. 1, 27, 29, 32, 36, 38, 54, 57; Coventry RFP Nos. 1, 25, 28, 31, 36, 39, 56, 59. While Plaintiff's definition of "Defamatory Statements" is not limited to the specific paragraphs cited in the complaint, for the avoidance of doubt, we set out the corresponding paragraphs from

the FAC: Counts I–III and Paragraphs 8, 10, 11, 68, 87, 98, 99, 112–114, 126, 129, 132, 134, 136, 137, 141, 146–148, 159, 199, and 214.

**Accordingly, please confirm that you will withdraw this general objection and its specific applications and produce responsive, non-privileged documents in light of the First Amended Complaint.**

**General Objection No. 12.** It is unclear what information is captured by these categories (*e.g.*, documents of a "personal nature"). Buerger RFP Nos. 2, 12, 13, 39, 41–48, 50, 58; 59; Coventry RFP Nos. 2, 12, 13, 40–52, 60, 61, 66–69. In any event, should there be responsive documents containing commercially sensitive information, any concerns should be ameliorated by the stipulated confidentiality agreement the Parties executed.

**Accordingly, please confirm that you will withdraw this general objection and its specific applications and produce responsive, non-privileged documents.**

## III. REQUESTS FOR PRODUCTION

Parts I and II of this letter address the bulk of Plaintiff's issues with Defendants' responses and objections, all of which reoccur throughout Defendants' responses and objections. We incorporate those issues here. Below, we focus on issues unique to the certain requests. **For each set of issues outlined below, please confirm that you will withdraw the objection(s) and produce responsive, non-privileged documents.**

### A. REQUESTS FOR WHICH DEFENDANTS REFUSED TO PRODUCE DOCUMENTS

***Fireside Chat Transcript.*** Defendants' refusal to produce any documents "relating to the transcript" of the "Fireside Chat" (Ex. 5 to Defendants' First MTD) because you find the phrase "ambiguous" strains credulity. Buerger RFP No. 23; Coventry RFP No. 21. Moreover, your failure to provide a narrower definition to a nontechnical phrase that is in plain and ordinary English is counter to this District's practice. *Entrust Datacard Corp.*, 2019 WL 12522886, at *7. In any event, to avoid needless disputes, "relating to the transcript" would include non-privileged communications (1) revealing who prepared the transcript, (2) who had input into any edits made, (3) what the content of those edits were, and (4) who had final approval of the transcripts' accuracy.

***Communications Between Defendants and Government Entities Relating to Abacus and Lapetus.*** Plaintiff plausibly allege that Defendants' Defamatory Statements in its OIR Writ were unrelated to the proceedings and thus actionable. *See, e.g.*, FAC ¶¶ 8, 131, 134, 149. In the case of Coventry's letter to the

SEC, Florida's absolute litigation privilege does not extend to a simple letter to the SEC. *See Grippa v. Rubin*, 133 F.4th 1186, 1197 (11th Cir. 2025) (holding Florida's absolute litigation privilege does not extend to statements made to "high ranking government officials and investigators"). At this stage, Plaintiff's allegations must be accepted as true and this Court has not ruled otherwise. In any event, Defendants are not excused from producing these communications on relevance grounds. As previously discussed, what Defendants were saying and considering while defaming Abacus is relevant to Defendants' negligence, recklessness, or knowledge. *See* Buerger RFP Nos. 30, 31; Coventry RFP Nos. 29, 30.

Moreover, the statutes you cite (Fla. Stat. §§ 624.319(3), 626.601(6), 626.989(5)) as a shield against disclosure protect the *government*—not private parties to a civil action—from disclosing certain documents received and created during the OIR investigation. *See* Fla. Stat. § 626.989(5) ("**The office's and the department's** papers, documents, reports, or evidence relative to the subject of an investigation under this section **are confidential and exempt** from the provisions of s. 119.07(1) **until such investigation is completed or ceases to be active**.") (emphasis added). Buerger RFP Nos. 30–33; Coventry RFP Nos. 29–32.[1]

***Communications with Investors in the Tertiary Market.*** As explained in Part II, Defendants' business practices are at issue given that their defamation campaign is about the business practices of a direct competitor—Abacus. Evidence of Defendants' valuation practices and transaction prices, as well as its use of Lapetus LEs bears directly on Defendants' knowledge of falsity regarding its Defamatory Statements. That makes Defendants' communications, including its offering tapes and bid lists, to investors within this time window relevant and proportional to the needs of the case. Buerger RFP No. 48; Coventry RFP No. 50.

***Communications Between Defendants and LE Providers.*** As with the latter set of requests, Plaintiff is entitled to Defendants' contemporaneous communications with life expectancy providers (or, as Defendants call them "commercial service providers") about Lapetus or about those providers' methodology because the communications bear on, among other things, Defendants' unfair and deceptive scheme to favor those other providers, and ultimately to run Lapetus out of business. Buerger RFP Nos. 50, 58; Coventry RFP Nos. 58, 60.

***Coventry's Attempts to Securitize Life Insurance Policies.*** Similarly, communications relating to Coventry's prior attempts to securitize life insurance policies are relevant insofar that it will shed light on what Coventry believed to be an appropriate means of valuing policies in the tertiary market. Any consistency with Abacus's approach would be evidence of Coventry's bad faith. Coventry RFP No. 69.

[1] We acknowledge that Defendants offered to meet and confer on Buerger RFP Nos. 32, 33, and Coventry RFP Nos. 31, 32.

### B. REQUESTS FOR WHICH DEFENDANTS AGREED TO PRODUCE DOCUMENTS OR WISH TO MEET AND CONFER

***Dissemination of Relevant Information to Coventry's Personnel.*** Plaintiff rejects Defendants' view that dissemination of information (be it regarding Lapetus, the Coventry Studies, the Tegus Interview, Fireside Chat, or the OIR Writ) to Coventry's own personnel is irrelevant. As explained in Part II, Plaintiff is entitled to prove its case via circumstantial evidence of knowledge. What Defendants were doing or saying regarding these topics, and what Coventry employees had in front of them at the time of the company's defamation campaign against Abacus, are probative of, among other things, the company's and its founder's knowledge of falsity. *See* Buerger RFP Nos. 3, 24, 34; Coventry RFP Nos. 3, 19, 22, 33.

***Defendants' Narrowing of Documents Related to the Short Report.*** Plaintiff rejects Defendants' exclusion of all "statements, contents, and topics" in the Short Report as too narrow. Whether Defendants were involved in the development of the Short Report, regardless of whether they provided information that appeared in the final report, or that is specifically cited in the FAC, is probative of, among other things, Defendants' knowledge and ill will towards Plaintiff. *See* Buerger & Coventry RFP No. 10.

***Third-Party Analysis of Abacus and Lapetus.*** Similar to RFP No. 10, Plaintiff rejects Defendants' exclusion of "relating to any third-party analysis" of Abacus or Lapetus as too narrow. What information Defendants had about Abacus and Lapetus around the time of their defamation campaign is probative of, among other things, knowledge of falsity. Any concerns regarding financially commercial information should be ameliorated by the stipulated confidentiality agreement the Parties executed. *See* Buerger & Coventry RFP Nos. 13, 14.

***Communications Between Defendants and Tegus Relating to Lapetus.*** Plaintiff rejects Defendants' exclusion of Communications between Defendant(s) and Tegus relating to Lapetus but "not relat[ing] to Abacus." Defendants' communications to or with Tegus about Lapetus, regardless of their mention of Abacus, are probative of, among other things, Defendants' knowledge of falsity and may even contain express reflections of their actual beliefs and motivations. *See* Buerger & Coventry RFP Nos. 16, 18; Buerger RFP No. 19; *see also* Buerger RFP No. 19; Coventry RFP No. 18 (claiming materials reviewed for Tegus Interview that "do not relate to Abacus" are irrelevant).

***Documents Relating to Buerger's Fireside Chat.*** All documents relating to Buerger's "Fireside Chat" are relevant to "Abacus or the claims or defenses in this case" as it is a key event alleged in the FAC. The Fireside Chat was a discussion between Buerger and Dr. Olshansky, the then-CEO of Lapetus, generally about

Lapetus's life expectancy estimate methodology. FAC ¶ 102 n.8. Defendants' attempt to split hairs on relevance grounds is improper and contrary to Fed. R. Civ. P. 26(1)(b)(1)'s broad application of relevance. Moreover, these documents are certainly proportional to the needs of the case given their centrality to the allegations. *See* Coventry RFP No. 20.

***Buerger's Public Communications Regarding Abacus and Lapetus.*** Buerger's objections to RFP Nos. 25 and 26 are improperly restrictive. For RFP No. 25, you limit production of public communications regarding Abacus to exclude those "not related to the claims or defenses in this case." For RFP No. 26, you limit production of public communications regarding Lapetus to exclude those "that discuss Lapetus unrelated to Abacus" or its claims and defenses. But what Buerger was saying or considering internally when making public statements about Abacus or Lapetus, regardless of whether Plaintiff alleges those statements to be defamatory, is probative of, among other things, his negligence, recklessness, or knowledge of falsity. *See* Buerger RFP Nos. 25 (regarding Abacus), 26 (regarding Lapetus).

***Internal Analysis of Abacus's Transactions***. Defendants' limitation on its production of internal analyses of Abacus's transactions to exclude those in which Defendants "competed directly with Abacus for the relevant business" is improper. The fact that Abacus and Coventry sometimes compete for business is not a basis on which Coventry can refuse to produce otherwise responsive documents. Defendants cite no authority in support of this unnamed privilege. Again, issues of confidentiality can and will be handled by the Parties' stipulated confidentiality agreement. But if there are responsive, non-privileged documents in this category, Defendants must produce them. Buerger RFP No. 50; Coventry RFP No. 52.

***

Sincerely,

*/s/Alex Zuckerman*

Alex Zuckerman

cc: All counsel of record (via email).