# EXHIBIT C

quinn emanuel trial lawyers | new york
295 5th Avenue, 9th Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7234**

WRITER'S EMAIL ADDRESS
**alexzuckerman@quinnemanuel.com**

November 17, 2025

**<u>VIA E-MAIL</u>**

Michael H. McGinley
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
michael.mcginley@dechert.com

Re: *Abacus Global Management, Inc. v. Coventry First LLC*, 6:25-cv-01401-RBD-RMN (M.D. Fla.) – <u>Discovery Meet and Confers on November 4, 5, and 7 on Parties' First Requests for Production</u>

Counsel:

In an effort to resolve unnecessary discovery disputes, we write to memorialize our November 4, 5, and 7, 2025 meet-and-confers (collectively, the "Meet-and-Confer Calls") regarding the Parties' respective responses and objections to each other's First Set of Requests for Production. This letter addresses the issues discussed during those Meet-and-Confer Calls and identifies areas requiring written clarification or revised requests from Defendants.

## I. <u>TEMPORAL SCOPE FOR THE PARTIES' RESPECTIVE REQUESTS</u>

As an initial matter, the Parties fundamentally disagree about the appropriate timeframe for discovery in this case. Since Abacus's claims and Defendants' statements all relate to Abacus's activities as a public company, with the exception of Abacus's Requests to Coventry Nos. 43 and 67 which are discussed in further detail below, we selected July 3, 2023 as the start date for discovery—the date Abacus went public. Thus, the date Abacus went public through the present is a reasonable discovery time frame.

Defendants have taken the position that discovery should begin in 2021, so that they can assess Abacus's prior valuation method compared to the methodology described in its public filings. We responded that whatever Abacus did in the past—which Defendants did not comment on, and which is not raised in the FAC—is irrelevant to the truth or falsity of Defendants' statements in 2024 and 2025. For example, Buerger's statement that investments in Abacus are "dead" was made at the October 24, 2024 LISA Conference, or that Abacus's discount rate disclosed in its August 2024 From 10-Q is "not realistic." You responded that, even accepting the

premise of Abacus's position that a defamatory statement is judged on whether it was false at the time it was made, you still seek discovery as to prior valuation methods because that context will help the factfinder determine whether Coventry's and Buerger's statements were "reasonable" or "reasonable opinions." But the factfinder need not dredge up ancient history when applying the law of defamation: If Defendants' false statements about Abacus's contemporaneous business practices were presented as statements of fact, they are defamatory; if Defendants' statements are found to be opinions, then the statements cannot be defamatory even if they are unreasonable. Please state your basis, and provide applicable legal authority, for seeking discovery into matters unrelated to—and temporally removed from—any defamatory statement alleged in the FAC.

## II. ABACUS'S REQUESTS FOR PRODUCTION TO DEFENDANTS[1]

### A. DEFENDANTS' OBJECTIONS TO THE DEFINITION OF "DEFAMATORY STATEMENTS"

Defendants made several objections to Abacus's Requests on the grounds that "Defamatory Statements" is "ambiguous" because it purportedly "references an inoperative complaint." Buerger Gen. Obj. No. 8, Coventry Gen. Obj. No. 11; *see also* Buerger RFP Nos. 1, 27, 29, 32, 36, 38, 54, 57, Coventry RFP Nos. 1, 25, 28, 31, 36, 39, 56, 59.[2] As explained in our October 24 Letter to Defendants, and again articulated during our Meet-and-Confer Calls, Abacus's "definition of 'Defamatory Statement' is not limited to the specific paragraphs cited in the complaint" and FAC. Rather, the Defamatory Statements ***include, but are not limited to***, those statements made in Counts I-III and Paragraphs 8, 10, 11, 68, 87, 98, 99, 112-114, 126, 129, 132, 134, 136, 137, 141, 146-148, 159, 199, and 214 of the FAC.

Nevertheless, the Parties agreed Defendants' objection to the definition of "Defamatory Statements" would largely be mooted by search terms and custodians as agreed to by the Parties. Please confirm our mutual understanding.

### B. DEFENDANTS' RESPONSES AND OBJECTIONS SUBJECT TO THE SCOPE OF "CLAIMS AND DEFENSES"

For a number of Abacus's Requests, Defendants' objected to producing responsive, non-privileged documents "to the extent" the Requests seek documents unrelated or not relevant to the "claims and defenses in this case." *See, e.g.*, RFP Nos. 2-4, 10, 12-13, 16-19, 24, 26, 30, 33, 35-38, 42-50, 58; Coventry RFP Nos. 20, 22-23, 27, 29, 40, 51-52, 57, 60-61, 66-69; Buerger RFP Nos. 25, 28, 31, 34, 39, 53, 55-56, 59. Defendants otherwise agreed to produce responsive, non-

---

[1] The Parties agreed to revisit Buerger Request Nos. 64-65 and Coventry Request Nos. 73-74 at a later time and closer to the end of discovery.

[2] As with our October 24, 2024 deficiency letter (the "October 24 Letter to Defendants"), in Part II of this letter, references to "RFP(s)" or "Request(s)" refers to Abacus's requests to Defendants, references to "Buerger RFP(s)" or "Buerger Request(s)" refers to Abacus's requests to Buerger, and references to "Coventry RFP(s)" or "Coventry Request(s)" refers to Abacus's requests to Coventry.

privileged documents "related to the claims and defenses in this case." *See* RFP Nos. 13-14, 41; Coventry RFP Nos. 40, 52; Buerger RFP No. 50.

As the Parties agreed during the meet-and-confer calls, no answer has been filed yet by Defendants so Abacus does not know what Defendants' defenses are or will be. Accordingly, Abacus reserves all rights on Defendants' aforementioned responses and objections to the extent they are reliant on Defendants' "defenses."

## C. REQUESTS FOR WHICH DEFENDANTS AGREED TO PRODUCE DOCUMENTS

### 1. Subject to the Negotiation of Reasonable Search Terms and Custodians

Subject to Part II.A., *supra*, and II.C.2.-E, *infra*, Defendants agreed to produce all responsive, non-privileged documents and communications for the following requests subject to the Parties' negotiation on search terms and custodians, and specific objections set forth below: Request Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 37, 41; Coventry Request Nos. 19, 20, 21, 22, 23, 24, 25, 32, 33, 34, 35, 36, 38, 39, 40, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 70, 71, 72; Buerger Request Nos. 19, 20, 21, 22, 23, 24, 25, 26, 27, 33, 34, 35, 36, 38, 39, 40, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63. **Abacus will promptly propose search terms and custodians for Defendants to apply to their documents and communications.**

### 2. Defendants' Specific Caveats and Clarifications

The below identifies certain caveats and clarifications discussed during the Meet-and-Confer Calls. With these caveats and clarifications in mind, **please confirm Defendants will produce responsive, non-privileged documents and communications**.

***Request No. 10***: With respect to Request No. 10, Defendants objected to producing all documents related to all the "topics" contained *in* the Short Reports, including topics unrelated to the claims in this case, but agreed to produce all responsive, non-privileged documents related to the Short Reports, including all documents related to the parts of the Shorts Reports pertaining to the claims in this case and any discussion of the Short Reports.

***Coventry Request No. 21/Buerger Request No. 23***: Defendants contend the LISA Conference transcript attached as an exhibit to their Motion to Dismiss was conducted by attorneys. Accordingly, Defendants agreed to produce responsive, non-privileged documents related to the LISA Conference transcript.

***Coventry Request Nos. 23-24/Buerger Request Nos. 25-26***: During the Meet-and-Confer Calls, Defendant expressed concern about the scope of "public communications." Abacus initially agreed to put in writing what topics it thinks are relevant in the scope of "public communications." However, as the parties later agreed for Coventry Request No. 24/Buerger Request No. 26, the relevance and scope will largely be settled by search terms. Accordingly, we have included these requests in our agreement to negotiate search terms and custodians. *See* Part II.C.1., *supra*.

***Coventry Request Nos. 26-28/Buerger Request Nos. 28-29***: Defendants indicated the term "Short Seller" is vague and requested that Abacus provide more context as to specific short sellers. Abacus responded in kind that counsel should inquire further with Defendants to determine whether Defendants were in communication with any short sellers beyond, for example, Morpheus Research, Nate Anderson, Hindenburg Research, Harry Markopoulos and John McPherson. With respect to Coventry Request No. 28/Buerger Request No. 29, Defendants objected to the definition of "Defamation Statements," which is resolved in Part II.A., *supra*. Pending the Parties' negotiation of appropriate search terms, Defendants' production may be sufficient. Abacus reserves rights with respect to these requests.

***Coventry Request Nos. 32-33/Buerger Request Nos. 33-34***: As discussed more fully below, Defendants contend—and Abacus disagrees—that documents and communications related to Coventry's OIR Writ are privileged. *See* Part II.E., *infra*. Nevertheless, Defendants have agreed to produce documents and communications that it contends are not protected by the attorney-client privilege, work product protection, or government investigation privilege.

***Request No. 41***: Defendants confirmed that subject to their privilege objection, they will produce responsive documents and not withhold any documents on the basis of their remaining objections.

## D. SPECIFIC PARTS OF REQUESTS YOU AGREED TO RECONSIDER OR DISCUSS FURTHER WITH DEFENDANTS

### 1. Individual Health Data and Underwriting Information

Defendants contend that Request Nos. 2 and 12, Buerger Request No. 39, and Coventry Request No. 40 can reasonably be interpreted as requesting underlying LE reports on an individual-by-individual basis and underwriting information that Defendants objected to producing on the grounds that the Requests seek medical individual health information and Defendants' proprietary information. When Abacus inquired whether Defendants would agree to a reciprocal agreement not to produce the individual data or underwriting information, Defendants indicated they would take that inquiry back, but that they believe they are more entitled to this information than Abacus. Defendants agreed to articulate their position further in writing.

In addition, Defendants do not believe Abacus is entitled to the underlying medical data and underwriting information, but agreed to reconsider based on Abacus's written position. Abacus's position is that the individual medical information is not relevant to the claims and defenses in the case. The issue is ***if and how*** Abacus is using Lapetus LEs as part of its book valuations of its policy portfolio; it is irrelevant how Lapetus creates those estimates using the personal medical data. However, if Defendants insist on mass exchange of this sensitive information, such disclosure must be reciprocal, given that Defendants studies called Abacus's valuation into question using the same type of LE that Defendants claim Abacus is using to distort its valuations.

2. Defendants' Use of Lapetus LEs

Defendants contend that Request No. 42 propounded on each respective Defendant is not relevant and, as a factual matter, you contended that you were pretty sure that Coventry's reference to using Lapetus LEs came in Coventry's dealings with Carlisle. You contended this is the case because "the purchaser is the one that requests the LE." To the extent you are suggesting that Carlisle required Coventry to purchase each and every Lapetus LE of the over 4,000 referenced in the FAC, we ask that you substantiate that claim, as we are not aware of records establishing that Carlisle was the buyer in each of those instances. You agreed to inquire with Defendants whether the only Lapetus LEs Defendants used were in transactions in which they were selling policies to Carlisle and Carlisle specifically requested Lapetus LEs. You further noted that you might have a relevance objection, but that you would put your position in writing.

3. Defendants' Valuation Process

Defendants contend that Buerger Request Nos. 43-49 and Coventry Request Nos. 44-51 are overbroad. We agreed to narrow these requests in the spirit of compromise. Accordingly, below we have revised the requests and have withdrawn Buerger Request No. 47/Coventry Request No. 49. Please let us know if Defendants agree to produce responsive, non-privileged documents subject to search terms and custodians. If Defendants do not agree to produce documents responsive to these narrowed requests, please provide your basis for refusal.

For the avoidance of doubt, "You" or "Your" refers to Buerger and/or Coventry.

***Buerger Request No. 43/Coventry Request Nos. 44-45***: Documents sufficient to show Your policies and procedures for valuing life insurance policies, including the investment method, net present value method, fair value method, and/or fair market value method during the Relevant Time Period as defined in Abacus's document requests.

***Buerger Request No. 44/Coventry Request No. 46***: Documents sufficient to show each transaction price and life expectancy estimate for every policy You sold on the Tertiary Market during the Relevant Time Period as defined in Abacus's document requests.

***Buerger Request No. 45/Coventry Request No. 47***: Documents sufficient to show each transaction price and life expectancy estimate for every policy You bought on the Secondary Market during the Relevant Time Period as defined in Abacus's document requests.

***Buerger Request No. 46/Coventry Request No. 48***: Documents and Communications relating to any fair market value analysis of policies that You bought, held, or sold during the Relevant Time Period as defined in Abacus's document requests.

***Buerger Request No. 47/Coventry Request No. 49***: This request is withdrawn as duplicative.

***Buerger Request No. 48/Coventry Request No. 50***: Documents and Communications with Tertiary Market buyers in the transactions referenced in Buerger Request No. 44 and Coventry Request No. 46.

***Buerger Request No. 49/Coventry Request No. 51***: Documents and Communications sufficient to show the methodology You used to derive the price paid in the Secondary Market transactions referenced in Buerger Request No. 45 and Coventry Request No. 47.

4. Coventry's Financial Information and Statements

Defendants contend Coventry Request No. 43 is not relevant to the claims and defenses in this case. In addition, during the Meet-and-Confer Calls, you explained that—despite not making a specific overbreadth objection—the request as written is overbroad in requesting the financial statements of a private company. We explained that Coventry's audited and unaudited financial statements are relevant as they are probative of Defendants' state of mind, and communications around what discount rate Coventry applies, for example, bear directly on Buerger's statement that Abacus's discount rate is "not realistic." As to the date range, we agreed to narrow the date range from 2014 to the present to the last five years (*i.e.*, 2020 to present). Moreover, this request is likely to be further narrowed based on search terms and custodians.

Similarly, Defendants contend that Coventry Request Nos. 66-67 are not relevant in part because public and private companies are different. We disagree with Defendants' position and, as we articulated during the Meet-and-Confer Calls, documents and communications responsive to these requests are highly relevant and go to Coventry's mental state and industry standards. In other words, for example, if Coventry's financial processes are similar to Abacus's, it goes to Defendants' knowledge and falsity.

Please confirm Defendants will produce responsive, non-privileged documents for Coventry Request Nos. 43, 66-67.

5. Defendants' Analysis of Abacus's Transactions on the Secondary or Tertiary Market

Defendants agreed to produce responsive, non-privileged documents for Buerger Request No. 50/Coventry Request No. 52. However, you indicated that Defendants would not produce otherwise responsive documents where Coventry competed directly with Abacus on a particular transaction. We explained that transactions in which Abacus and Coventry directly competed are highly relevant in so far as such documents could reflect Defendants' opinion of Lapetus as an LE provider. In addition, as we explained, Abacus's understanding is that Defendants claim that Abacus's valuation is inflated because of how its pricing transactions. So, in theory, for a Lapetus LE policy, Abacus would be paying more than Coventry in every transaction. However, that is not the case which means documents responsive to this request are probative that either Coventry does not agree that Lapetus LEs lead to incorrectly priced policies or that a policy price is not solely dependent on a particular LE. You agreed to talk with your client. Please let us know whether Defendants intend to produce responsive, non-privileged documents for these requests. If

Defendants do not intend to not produce, please state your position in writing so that we may determine whether we are at an impasse.

6. Defendants' Documents and Communications With Non-Lapetus LE Providers about Lapetus or the Defamatory Statements

With respect to Buerger Request Nos. 56-57/Coventry Request Nos. 58-59, you indicated that if Abacus was willing to change its position and produce documents and communications with non-LE providers, the Defendants would do the same. Per our November 3 email, Abacus is willing to produce such documents and communications subject to reasonable search terms and custodians. Please confirm the Parties' mutual agreement to produce responsive, non-privileged documents subject to search terms and custodians.

7. Defendants' Documents and Communications With or About the Accuracy or Methodology of Non-Lapetus LE Providers

With respect to Buerger Request Nos. 58-59/Coventry Request Nos. 60-61, Defendants contend these Requests are not relevant. As we explained during the Meet-and-Confer Calls, Abacus believes these requests are relevant including as to its FDUTPA claim. You did not disagree and instead stated that you believe the Requests are overbroad. Nevertheless, in the spirit of compromise, Abacus agreed to revise and narrower the requests. Accordingly, below we have revised the requests. Please let us know if Defendants agree to produce responsive, non-privileged documents subject to search terms and custodians. If Defendants do not agree to produce documents responsive to these narrowed requests, please provide your basis for refusal.

***Buerger Request No. 58/Coventry Request No. 60***: Documents and Communications between You and any Life Expectancy Provider other than Lapetus relating to the length, accuracy, or methodology of the Life Expectancy Provider's life expectancy estimates ***as used by Abacus***.

***Buerger Request No. 59/Coventry Request No. 61***: Documents containing any internal analysis, comparison, or evaluation of Life Expectancy Providers, including but not limited to any analysis of the accuracy, methodology, or comparative performance of different Life Expectancy Providers ***as pertains to Abacus.***

8. Coventry's Attempts to Securitize Policies or Create Investment Funds

With respect to Request No. 69, Defendants contend this request is not relevant because it does not pertain to Abacus or Lapetus. As we explained during the Meet-and-Confer Calls, this request is relevant because Buerger's statements imply some impropriety regarding the activities and disclosures of the ABL Longevity and Growth Fund, including the Fund's use of Lapetus. FAC ¶ 146. However, in the spirit of compromise, Abacus agreed to revise this request, which it has done below. Please let us know if Defendants agree to produce responsive, non-privileged documents subject to search terms and custodians. If Defendants do not agree to produce documents responsive to this narrowed Request, please provide your basis for refusal

***Coventry Request No. 69***: Documents and Communications sufficient to show the policy acquisition and valuation procedures of any investment fund that Coventry or Coventry's affiliates manage on behalf of Tertiary Market investors.

## E. REQUESTS ON WHICH THE PARTIES DISAGREE

***Coventry Request Nos. 29-31/Buerger Request Nos. 30-32***: Coventry Request Nos. 29-31 and Buerger Request Nos. 30-32 call for "Documents and Communications between [each Defendants] and any Government Entity" relating to Abacus, Lapetus, and/or the Defamatory Statements. You do not dispute that these documents are relevant to the claims and defenses in the case, but you have taken the position that you may withhold these documents from production based on (1) the *Noerr-Pennington* doctrine; and (2) the respective Governmental Entities' investigatory privilege—specifically you agreed during the Meet-and-Confer Calls that any government privilege is not Defendants' privilege to invoke, nevertheless, you contend it is not Defendants' place to waive the government's privilege.

Your reliance on the *Noerr-Pennington* doctrine to refuse production has no basis in law as *Noerr-Pennington* does not apply in the defamation context. *See, e.g.*, *Kinsman v. Winston*, 2015 WL 12839267, at *7 & *id.* n.9 (M.D. Fla. Sept. 15, 2015) (noting "*Noerr–Pennington* does not immunize petitioning activity consisting of false statements made to the government," because "[a] contrary rule would eviscerate state law defamation liability as a remedy for victims of false . . . reports"); *Verbena Prods. LLC v. Pierre Fabre Dermo-Cosmetique USA, Inc.*, 2020 WL 2988587, at *6 (S.D. Fla. Feb. 28, 2020) (rejecting defendant's argument that plaintiff's defamation claims should be dismissed because "the *Noerr Pennington* doctrine does not apply to defamation claims.").

And your claim of investigatory privilege is equally baseless because that privilege may only be raised by the government, and only to bar production of documents ***in that agency's control***. *See, e.g.*, *White v. City of Fort Lauderdale*, 2009 WL 1298353, at *3 (S.D. Fla. May 8, 2009) (determining the law enforcement "privilege may be raised by a department having control over the documents at issue."). Even if there was an ongoing investigation—which Abacus absolutely denies and which you have failed to substantiate—its mere existence would not give a private litigant the right to invoke the investigatory privilege. *See, e.g.*, *Micillo v. Liddle & Robinson LLP*, 2016 WL 2997507, at *4 (S.D.N.Y. May 23, 2016) ("Put simply, the mere fact that an investigation concerns allegations of misconduct or involve[s] some of the same facts as a later criminal investigation does not come close to demonstrating that documents relating to the investigation are protected by the law enforcement privilege.") (citation modified).

As discussed during the Meet-and-Confer Calls, to the extent you intend to stand on your *Noerr-Pennington* and investigatory privilege objections to resist production of responsive documents to Coventry Request Nos. 39-31 and Buerger Request Nos. 30-32, please provide your legal authority that (1) *Noerr-Pennington* applies to the case at hand and (2) defendants in a defamation suit are entitled to invoke the government investigation privilege because the defendants contend the privilege is not theirs to waive.

C***oventry Request Nos. 32-33/Buerger Request Nos. 33-34***: Defendants objected to Requests seeking documents and communications relating to the OIR Writ on the grounds that such documents and communications are protected by the litigation privilege and/or investigatory privilege. Abacus disagrees with Defendants' position for at least two reasons. First, as we previewed in the October 24 Letter to Defendants, the litigation privilege, as applied here, does not protect Defendants from producing responsive documents and communications. Second, as discussed above, Defendants are not entitled to invoke the government's investigatory privilege. *See* page 8 (discussing Coventry RFP Nos. 29-31; Buerger RFP Nos. 30-32), *supra*.

To the extent you intend to stand on your privilege objections, please provide the relevant legal authority so that we may assess the Parties' respective positions. Abacus reserves all rights, including for example, should the Court reject Defendants' litigation privilege arguments made in Defendants' pending Motion to Dismiss.

## III. DEFENDANTS' REQUESTS FOR PRODUCTION TO ABACUS

### A. REQUESTS FOR WHICH ABACUS AGREED TO PRODUCE OR DEFENDANTS AGREED TO WITHDRAW, REVISE, OR RECONSIDER

#### 1. Subject to the Negotiation of Reasonable Search Terms and Custodians

Abacus confirms its agreement to produce responsive, non-privileged documents for the following requests subject to the Parties' negotiation of search terms and custodians: Request Nos. 1-5, 7, 8, 10-12, 15, 17, 19-21, 24, 28-30, 32, 35-37, 39, 40, 43-45, 47, 49-55, 56, 58-60, 63, 66, 82-90.

***Request No. 26***: Defendants' Request No. 26 asks for "Documents and Communications concerning life settlement policies that You sold or at any point offered for sale, including all bids received for such life settlement policies." This request is overbroad and seeks competitively sensitive information without any apparent connection to the defamatory statements at issue. You explained that we could negotiate this request on search terms and custodians.

***Request No. 46***: Defendants' Request No. 46 asks for "Documents and Communications with Your investors and prospective investors concerning Lapetus and Lapetus's life expectancy estimates." We reserve the right to redact investor names to protect confidential business relationships, but will produce communications concerning Lapetus subject to search terms and custodians.

***Request No. 57***: Defendants' Request No. 57 asks for "Documents and Communications concerning Hindenburg Research or Nate Anderson." We explained that Abacus has no responsive documents. You questioned how we have allegations regarding Hindenburg without any documents, including documents reflecting that Buerger was shopping for a short seller. We confirmed that no such documents exist to our knowledge, and you stated you would accept our representation but wanted confirmation that if we come across any such documents during our review, we will produce them. We confirmed we will produce any relevant documents to the extent they exist.

***Request No. 61***: Defendants' Request No. 61 asks for "Documents and Communications concerning the creation, advertisement, collection, methodology, peer review, or publication of data used by You to calculate fair value and net present value of life insurance policies, including all material used to create the calculation methodology, future premium projections, and the face value of the underlying policy." We explained that we are aware of documents that summarize the methodology without disclosing proprietary formulas in coded Excel files, and we believe that is sufficient. We stated we can produce enough to show the outputs which will provide an educational explanation of how the formula works. In addition, we will produce subject to search terms and custodians. You stated you understand and reserved the right to argue later that the production is insufficient. Abacus will produce documents sufficient to show its calculation of fair value and NPV calculation methodologies without disclosing proprietary formulas, subject to agreed search terms and custodians.

***Request No. 62***: Defendants' Request No. 62 asks for "Documents and Communications concerning any analysis of Your transactions in the secondary and tertiary markets for life settlements." We agreed to produce responsive documents subject to search terms and custodians, with the understanding that production will be subject to sensitivity around personal health information. You agreed this was acceptable.

***Request No. 65***: Defendants' Request No. 65 asks for "Documents and Communications with or concerning Acumen Financial Advantage, LLC, including Documents relating to Your business practices and valuation methods." We agreed to produce documents as relevant, noting our understanding that relevance is largely about damages. You stated that you understand Acumen is one of Abacus's business partners marketing programs for credit unions, so the relationship with them and any credit unions would be relevant. You further confirmed that this request is intended to capture communications about valuation methods going to third parties. We agreed to produce subject to search terms and custodians.

***Request Nos. 70, 71, 72***: Defendants' Request Nos. 70, 71, and 72 ask for documents and communications with or concerning B. Riley Securities/B. Riley Financial, Daniel Bergman/TD Cowen, and Andrew Kligerman/TD Securities, including documents related to Abacus's and Lapetus's business practices and valuation methods, reports and analyses of Abacus, the Morpheus reports, and transactions and financial arrangements with these parties. We asked whether these requests seek documents related to Lapetus that Abacus sent to these parties. You confirmed generally yes, and that these are similar to the Piper Sandler Request (RFP No. 68). We agreed to run search terms on Morpheus and Lapetus for these requests, which should cover press releases. You found that acceptable, but reserved the right to raise this again during search term negotiations.

***Request No. 73***: Defendants' Request No. 73 asks for "Documents and Communications with or concerning Maxim Group LLC, including any Documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; and the Morpheus Reports." You explained that Maxim issued buy ratings after the Morpheus reports, leading you to believe there were direct communications, and that you're interested in communications regarding the Morpheus reports and Lapetus. Given that reasoning, we explained

that we no longer believed RFP Nos. 73-81 should be treated the same. We agreed to resolve via negotiations on search terms and custodians.

***Request No. 74***: Defendants' Request No. 74 asks for "Documents and Communications with or concerning A.G.P./Alliance Global Partners, including Documents relating to Abacus's and Lapetus's business practices and any transactions and financial arrangements with A.G.P/Alliance Global Partners." You stated the relevance of AGP was that it conducted underwriting, but that you would confirm when. We stated that search terms should capture any relevant communications, and that the general topic of "underwriting" is too broad given the claims and defenses in the case. We agreed to resolve via negotiations on search terms and custodians.

***Request Nos. 76-78***: Defendants' Request Nos. 76-78 asks for Documents and Communications with or concerning Societe Generale Americas/Ladenburg Thalmann & Co., Inc./Manorhaven Capital LLC, including Documents relating to Abacus's and Lapetus's business practices with those entities. We asked whether these requests are seeking documents beyond those related to Lapetus or Morpheus. You confirmed that only RFP No. 78 (re Manorhaven Capital LLC) might be broader because it involves Carlisle's investment banker. You explained that events surrounding the Carlisle acquisition and is relevant to entity interactions discussed in the Morpheus report. We await your position, but maintain that the Carlisle transaction was not the subject of Defendants' defamatory statements, and thus falls beyond the scope of this case.

***Request No. 79***: Defendants' Request No. 79 asks for "Documents and Communications with or concerning ULI Funding, LLC, including any of its affiliates, subsidiaries, or divisions, as well as present or former officers, directors, employees, partners, agents, consultants, or any other person acting or purporting to act on behalf of such entity." You explained this entity is essentially TransAmerica and relates to business practices and valuation. We asked whether transaction data (policy characteristics and inventory tape, including life expectancies, but not underlying health data) would be sufficient. You stated you would also want communications related to the transactions. You acknowledged search terms on Lapetus will catch much of this but noted you may need additional search terms to capture communications concerning Lapetus that do not mention Lapetus.

***Request Nos. 91-95***: Defendants' Request Nos. 91-95 ask for: (91) documents You rely upon or may rely upon for responses to interrogatories; (92) documents You rely upon or reference in the Complaint; (93) documents that tend to support or negate allegations in the Complaint; (94) documents produced to You by non-parties in response to subpoenas or discovery requests; and (95) documents You may rely upon or introduce in expert reports, depositions, trial, or other proceedings. You explained these requests are springing in nature and you want an agreement that Abacus has a duty to supplement once these events occur. We explained that we will have produced responsive documents by the time you issue interrogatories and through our responses to more specific requests. These requests are premature and will be addressed through Abacus's ongoing duty to supplement under Federal Rule of Civil Procedure 26(e).

2. <u>Defendants' Agreements to Withdraw, Revise, or Reconsider</u>

For the following requests, Defendants either agreed to withdraw, revise, or otherwise reconsider the scope of their request.

***Request Nos. 22, 23***: We explained that that these requests seek irrelevant documents because Abacus's tortious interference allegations regarding the credit union are not based on its failure to obtain a line of credit and that it is alleging damages based on the same. Abacus's allegations are about a credit union that took a wait-and-see approach on allocating capital. You agreed that, given our explanation, Defendants would withdraw this request.

***Request No. 25***: Defendants' Request No. 25 asks for "Documents and Communications between You and any insurance carriers or reinsurers regarding underwriting and Buy-Back Programs." We explained that we do not understand how this request, which does not relate to any of the defamatory statements, is calculated to elicit potentially relevant information. You responded that Paragraphs 83 and 99 make this request relevant, but that Defendants would come back with a narrowed request. Please provide your narrowed request.

***Request Nos. 31, 33, 34***: Defendants' Request Nos. 31-34 asks for "Documents and Communications with Grant Thornton concerning Coventry, Lapetus, National Insurance Brokerage, Inc., and any of Your 'lines of communications with the Securities and Exchange Commission'" and other Documents related to NIB. We asked about NIB's relevance to this case. You noted NIB was referenced in the Morpheus reports. We explained that not everything in the Morpheus Report is relevant to Abacus's claims, and we also note that you refuse to produce all documents and communications on your side related to issues referenced in the Morpheus reports. This is a two-way street; you must articulate the relevance of NIB to the claims and defenses in this case. You agreed to review and come back to us.

***Request No. 38***: Defendants' Request No. 38 asks for "Documents and Communications concerning Your 'Abacus Pays' portal or policy value calculator and the NPV used to approximate policy values, all policy values generated by Your 'Abacus Pays' portal or policy value calculator, and the corresponding purchase price for every such policy that You acquired." We agreed that Abacus would produce purchase price and basic policy characteristics in connection with tertiary market transactions, but that the underlying methodology is competitively sensitive and not relevant. You referenced paragraph 66 of the FAC, which discusses Abacus's transparency in contrast to Coventry's practices. You further stated that you would reconsider and come back to use on this request.

***Request Nos*. 41, 42**: Defendants' Request No. 41 asks for "Documents and Communications concerning any Asset-Backed Loan, including any drafts, term sheets, proposals, offers, negotiations, discussions, and agreements, that You have negotiated, entered into, or sought to negotiate or enter into." Request No. 42 asks for "Documents and Communications with any Asset-Backed Lender." We explained that Abacus does not understand what Defendants mean by "asset-backed" in this context, and that to the extent "asset-backed" means debt secured by assets, Abacus does not have and has never had asset-backed debt. You stated you would confirm there was no other relevant definition. You asked whether Abacus has considered asset-backed debt; we confirmed it has not. But we explained that for a statement to be false, it must be false when made. Future events do not impact the falsity of a statement when made. Your position was that whether something was once true or later became true goes to the reasonableness of the statement.

We disagreed. You stated that our representation of Abacus's business was enough. Please confirm that you are withdrawing this request.

***Request No. 57***: Defendants' Request No. 57 asks for "Documents and Communications concerning Hindenburg Research or Nate Anderson." We explained that Abacus has no responsive documents. You questioned how we have allegations regarding Hindenburg without any documents, including documents reflecting that Buerger was shopping for a short seller. We confirmed that no such documents exist, and you stated that you accepted our representation but wanted confirmation that if we come across any such documents during our review, we will produce them. We confirmed we will produce any relevant documents to the extent there are relevant documents.

***Request No. 64***: Defendants' Request No. 64 asks for "Documents and Communications with or concerning ClearLife Limited, ClearLife LLC, or any affiliated person or entity, including any data related to life expectancies." We asked what the relevance of this request is. You stated you were willing to narrow the request to data related to Lapetus. We asked whether that would be covered by another request. You stated you would check and otherwise propose something narrower. Please provide that narrower request or confirm the request is duplicative and can be withdrawn.

***Request No. 67***: Defendants' Request No. 67 asks for "Documents and Communications with or concerning The Terry Group or any of its personnel, including any documents relating to any analyses of Your business practices, or of Lapetus, and any related audits." We asked about the relevance. You stated you would limit the request to Lapetus-related communications about methodology, and would drop it if Abacus does not work with The Terry Group; we have conferred with our client and they are unaware of any work with the group that is relevant here. We asked whether previous Lapetus-related requests would capture this. You stated it may be duplicative and you would check. Please confirm whether this request is duplicative and can be withdrawn.

***Request No. 68***: Defendants' Request No. 68 asks for "Documents and Communications with or concerning Piper Sandler & Co., including any documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; the Morpheus Reports; and Your transactions and financial arrangements with Piper Sandler & Co." You explained that Piper Sandler relied on Abacus's press release in response to the Morpheus report, making documents related to the Morpheus report and Abacus's response relevant, as well as Piper Sandler's business relationship with Abacus as it relates to credibility and motive. We agreed documents related to the Morpheus report and response are relevant, but not every transaction with Piper Sandler. You acknowledged the request may be overbroad if it captures ancillary transactions unrelated to life settlements. Please provide a revised request narrowing the scope to documents related to the Morpheus report and Abacus's response, or confirm this will be addressed through search terms and custodians.

***Request No. 69***: Defendants' Request No. 69 asks for "Documents and Communications with or concerning Northland Securities, Inc. or Northland Capital Markets, including any documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; the Morpheus Reports; and Your transactions and financial

arrangements with Northland Securities, Inc. or Northland Capital Markets." You argued that Northland is a key business partner and communications regarding Lapetus or the Morpheus report are relevant, and that the Morpheus report identifies Northland as having participated in a November 2024 offering. We noted this appears duplicative of other requests. You confirmed you have also subpoenaed Northland. Please provide a revised request narrowing the scope to documents related to Lapetus and the Morpheus report, or confirm this will be addressed through search terms and custodians.

***Request Nos. 75, 80***: Defendants' Request Nos. 75 and 80 relate to KKR. We explained that KKR was involved in a joint venture before Abacus went public, and there will be documents not related to Abacus or Lapetus. You stated these Requests are broader than only Lapetus/Abacus communications, but acknowledged that Dechert has a conflict representing KKR in transactions, so Stearns or Shutts may be handling this. We explained that the joint venture vehicle was not used for Abacus's valuation and that the going-public transaction wound up that relationship, so we would limit search terms to the relevant time window. You stated you would come back to us based on your limited knowledge given the conflict. Please provide clarification on the scope of this request or confirm it will be addressed through search terms and custodians.

***Request No. 81***: Defendants' Request No. 81 asks for "Documents and Communications with or concerning Daniel Zeplain or Treyled Life Settlements LLC, including any Documents relating to Jay Jackson or Coventry." We explained there was litigation between Abacus and Zeplain (a broker) regarding whether he could sell a policy, which went to arbitration, but we are not sure what this has to do with the FAC, Lapetus, or Morpheus. You acknowledged not being certain either and stated that you would come back to us on this request. Please provide clarification on the relevance of this request, or confirm that Defendants withdraw it.

**B. <u>REQUESTS ON WHICH THE PARTIES DISAGREED</u>**

***Request No. 6***: Defendants' Request No. 6 asks for "Documents and Communications concerning data and information used by or provided to Lapetus to develop any life expectancy table, including in connection with Lapetus Life Event Solutions." Abacus agreed to produce information related to Lapetus life expectancy reports, subject to withholding insured individuals' sensitive personal and medical information. This information is not relevant to the issues in the case, namely whether Coventry's claims about Lapetus's conclusions, and how Abacus uses those conclusions to value its policies, are false. You insisted that individual patient data needed to be produced, but refused to produce similar information in connection with Abacus's RFP No. 2, which calls for documents and communications supporting the conclusions in the defamatory Coventry Studies, which purport to analyze Lapetus LEs. If it is your view that personal medical data is necessary to test the validity of a life expectancy conclusion, then it must be the case that Abacus is entitled to test the claims in your defamatory studies with a symmetrical production of personal medical data. Again, we do not think any of this information is relevant, but if you maintain that it is, please justify that position.

***Request No. 16***: Defendants' Request No. 16 asks for "Documents and Communications concerning Jay Jackson's co-authorship of any book or publication with any employee, officer, or affiliate of Lapetus, including Dr. Jay Olshansky, from July 26, 2018, to July 26, 2020." Abacus

does not agree that anything responsive to that request is relevant. To the extent any such publications exist, they are subject matter far beyond the scope of the complaint, or any defamatory statement alleged therein. You stated that our allegations regarding Coventry's meritless lawsuit opened the door to the general relationship between Abacus and Lapetus. But the Coventry Writ (which did not mention any Jackson/Olshansky collaboration) was far narrower; specifically, your client alleged that "[b]ecause Mutual Benefits exerted pressure on its life expectancy providers, whom it could control because of their relationships, the legislature now requires independence between settlement providers and Life Expectancy providers." *See* FAC ¶ 136. The implication of your statements is that Abacus is exerting similar pressure. While we think that implication is baseless, we are willing to permit discovery into the Abacus-Lapetus relationship, to the extent it relates to the topics covered by your Defamatory Statements. We do not think a publication from over five years ago falls in that bucket; please explain why you disagree.

***Request No. 18***: Defendants' Request No. 18 asks for "Documents and Communications concerning Your decision to enter into a business combination with East Resources Acquisition Company." Again, Abacus does not see how that information is relevant. During our meet and confer, you said that Abacus was "challenging" statements about how prior publicly-traded life settlements companies went bankrupt. We do not "challenge" the fact that they were previous publicly-traded life settlement companies, nor do we challenge that they went bankrupt; we take issue with the implication from your clients that Abacus is traveling the same road. You stated that you were only interested in Abacus's ***decision*** to go public, and you stated that documents around this decision could establish Abacus's motive to go public and that this could, in turn, prove some of the Defendants' statements to be true. We do not agree with your view that any of the defamatory statements alleged relate to the go-public decision. We are willing to run search terms related to the defamatory statements, and we are willing to discuss a narrower set of search terms related to your motive theory prior to the go-public date, provided that you can tie this motive question to any of the defamatory statements. But we need to understand your basis for thinking that decision is relevant.

***Request No. 27***: Defendants' Request No. 27 asks for "Documents and Communications concerning audits, exams, reviews, or investigations of Abacus conducted by any state or federal agency, including the Florida Office of Insurance Regulation." We do not understand how this request, which does not relate to any of the defamatory statements, is calculated to elicit potentially relevant information. You explained that Paragraph 131 of the Complaint states that "Coventry made defamatory statements about Abacus directly to regulators" and said that any action taken by those regulators ***in response to your defamatory statements*** would be relevant. Again, there has been no response to your baseless accusations by Florida regulators, nor is Abacus under investigation by any other state or federal agency; your clients' efforts in this regard have been ineffective.

***Request No. 48***: Defendants' Request No. 48 asks for "Documents and Communications from January 1, 2015, through December 31, 2017, concerning Your application for a life settlement provider's license in Florida, including all Documents and Communications concerning the Florida Office of Insurance Regulation's denial of Your application." We explained this is not relevant to anything we claim to be defamatory. You disagreed, arguing that paragraph 4 of the Complaint puts Abacus's business model at issue and therefore the license denial from 2015-2017

is relevant. We responded that Buerger is not commenting on a license application from nearly a decade ago, and not everything in Abacus's history is relevant to the defamation claims. You stated you would come back in writing. Please provide that written explanation of relevance, including citation to specific defamatory statements alleged in the First Amended Complaint that relate to a license application from 8-10 years ago, or else withdraw this request.

* * *

Abacus reserves all rights with regard to its Requests and Objections, and may supplements them in due course as the circumstances require.

Sincerely,

*<u>/s/ Alex Zuckerman</u>*

Alex Zuckerman

cc: All counsel of record (via email).