# EXHIBIT E

quinn emanuel trial lawyers | new york
295 5th Avenue, 9th Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7234**

WRITER'S EMAIL ADDRESS
**alexzuckerman@quinnemanuel.com**

December 12, 2025

**VIA E-MAIL**

Michael H. McGinley
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
michael.mcginley@dechert.com

Re: *Abacus Global Management, Inc. v. Coventry First LLC*, 6:25-cv-01401-RBD-RMN (M.D. Fla.) – Discovery Meet and Confers on November 4, 5, and 7 on Parties' First Requests for Production

Counsel:

We write to supplement our letter dated November 17, 2025, which memorialized the Parties' positions expressed during the November 4, 5, and 7, 2025 Meet-and-Confer Calls (the "November 17 Letter to Defendants"), and to address the positions in your letter dated November 26, 2025 letter (the "Response Letter") regarding the same. This letter states Abacus's current positions as to the remaining disputes, and identifies areas where there may still be room for compromise or where the Parties are otherwise at an impasse.[1]

[1] The following are all the requests for which there is no longer a dispute, either because the requests were withdrawn or the responding party has agreed to produce subject to negotiations on search terms and custodians and the various revisions and caveats set forth in the November 17 Letter to Defendants, Response Letter, and this letter: Coventry & Buerger RFP Nos. 1-28, 33-41, and 52- 63; Coventry RFP Nos. 32, 49, 64, 65, 68, 69, 70, 71, 72; Buerger RFP Nos. 29, 47, 50, 51; Abacus RFP Nos. 1-5, 7, 8, 10-12, 15-30, 32, 35- 37, 39, 40, 43- 47, 49-75, and 79- 95.

# I. GENERAL ISSUES

## A. INDIVIDUAL HEALTH DATA

Since the Meet-and -Confer Calls and the November 17 Letter to Defendants, Abacus has maintained that the exchange of individual health data is not relevant to the claims and defenses in the case.

Your Response Letter now proposes that Coventry will "produce the data tapes and underlying LE reports that Coventry sent to Professors Bauer and Zhu that were used in connection with the Coventry Studies if Abacus is willing to withdraw its objections to sharing of personal health information," and that "Abacus will produce the data tapes for all tertiary pools that Abacus made available to buyers on the Tertiary Market for life settlements, as well as the underlying data and LE reports related to those pools, which could allow Coventry to prove the truth of any challenged statements by reviewing the accuracy of the data tapes." Response Letter at 3.

This asymmetric exchange is not acceptable. Abacus will produce its data tapes and the LE information that it shares with Tertiary Market buyers, provided that Defendants produce data tapes and LEs sufficient to show all of the LEs Coventry purchased from Lapetus, including the entire population of LEs from which Coventry selected the cases to send to the Professors.

Furthermore, your proposal still requires that Abacus produce individual health data. That request is irrelevant, burdensome, and invasive. It also suggests that Defendants intend to generate new LEs for every policy traded by Abacus during the Relevant Time Period. But second-guessing LEs is not necessary to test the truth or falsity of Defendants' statements regarding the impact of LEs on Abacus's valuation. We will not produce that data.

## B. TEMPORAL SCOPE FOR THE PARTIES' RESPECTIVE REQUESTS

The FAC details Defendants' attack on Abacus after it became a publicly traded company in July of 2023. Nonetheless, you claim that Abacus's practices as early as 2021 "would establish a baseline from which the factfinder could analyze future deviations . . . [f]or example, if Abacus changed its valuation methods around the time it went public." Response Letter at 9. But there is nothing in the FAC, or any of the statements challenged therein, that relates to ***changes*** in Abacus's valuation methodology. The claim Defendants have made is that Abacus's ***current*** valuation is "grossly overstated." The truth or falsity of that statement will not be revealed by comparing present valuations to those from an earlier time period. Furthermore, the filing you cite in support of a 2021 start date states only that Abacus "shifted [its] focus from a service based only business model and began directly acquiring life insurance policies" at that time. Abacus Form S-1, at 66 (filed July 25, 2023); *see* Response Letter at 9. The present case does not put every single acquisition of policies by Abacus at issue, so your time period proposal is overbroad.

Nonetheless, as discussed in greater detail below, Abacus is willing to conduct searches beginning on January 1, 2023 for Request No. 18 as is relevant to Buerger's comments regarding Abacus's current valuation methodology. Otherwise, Abacus maintains that the Relevant Time Period begins on July 3, 2023, and will produce non-privileged, responsive documents in accordance with the Relevant Time Period.

## II. SPECIFIC DISPUTES

### A. ABACUS'S REQUESTS TO DEFENDANTS

#### 1. Defendants' Communications with Government Entities (Coventry Request Nos. 29-31/Buerger Request Nos. 30-32)

The November 17 Letter to Defendants cited in-Circuit precedent establishing that neither of your grounds for withholding statements from Defendants to Governmental Entities are valid. With respect to *Noerr-Penningon*, that doctrine does not apply to limit discovery related to defamation claims. Defendants' legal authority does not mandate a different conclusion. The only case you cite—in support of your argument that *Noerr-Pennington* applies to defamation claims—stands for the proposition that a qualified privilege ***may*** apply to statements made "to a political authority regarding matters of public concern." *Nodar v. Galbreath*, 462 So. 2d 803, 810 (Fla. 1984); *see* Response Letter at 3. But *Nodar*, a post-trial decision, says nothing regarding the discoverability of those statements. Furthermore, as the case law makes clear: Defendants' attacks on Abacus do not constitute a matter of "public concern," nor is that assessment yours to make.

Similarly, the investigatory privilege, which does not apply because there is no investigation into Abacus, is not Defendants to invoke. Defendants refusal to produce these documents based on a "concern with producing documents that ***could*** be part of an investigation" has no basis in either law or fact. Response Letter at 4 (emphasis added). Speculation about a hypothetical investigation that Defendants have no reason to believe exists is not a valid basis to limit discovery. Nor is there any basis for you to demand Governmental Entity approval prior to Defendants complying with their discovery obligations. And yet, despite Abacus's invitation, you still have not presented any authority to support your reliance on a privilege that does not belong to Defendants.

**Please confirm that the Parties are at an impasse on these requests, and provide your availability to meet and confer on Abacus's forthcoming motion to compel these documents.**

#### 2. Coventry's Use of LEs (Coventry/Buerger Request No. 42)

Abacus requested that Defendants produce "Documents and Communications relating to [Defendants'] use of Lapetus as a Life Expectancy Provider[.]" In response, you have stated that "the *vast majority* of Lapetus LEs that Coventry provided to a buyer in connection with the purchase of a policy were provided to Carlisle," and suggested that because Abacus now owns Carlisle (although it did not when Defendants first began making defamatory statements about Abacus), this means Abacus already has access to the LEs it has requested. *Id.*

The Carlisle transactions do not represent each and every ***use*** of a Lapetus LE by Coventry that are the subjects of this Request. Even if many of the "*vast majority* of Lapetus LEs that Coventry provided to a buyer" were provided to Carlisle, those transactions still only give a partial view of all the times Coventry bought Lapetus LEs for its own internal use, or in connection with a non-Carlisle transaction. This includes, but is by no means limited to, the full set of Lapetus LEs from which Coventry selected the sample to provide to Professors Zhu and Bauer.

Please confirm that you will produce Lapetus LEs that Coventry bought, whether provided to a buyer or otherwise, and that you will do so for the entire population of LEs from which Defendants culled the sample set for the studies in May, July, and December of 2024. **If the Parties are at an impasse on these requests, please provide your availability to meet and confer on Abacus's forthcoming motion to compel these documents.**

3. **<u>Information Related to Coventry's Business Practices (Coventry Requests Nos. 43-51 & 66-67; Buerger Requests Nos. 43-49)</u>**

Defendants have made numerous defamatory statements regarding certain of Abacus's business practices; such Abacus's applied discount rate, profit margins, Secondary and Tertiary Market transactions, and its valuation methodology. In the November 17 Letter to Defendants, Abacus narrowed each of its requests related to Defendants' business practices to focus on specific points of comparison between the companies at issue in the defamatory statements.

As Abacus's largest competitor, Coventry's practices in each of these areas are highly relevant to determining the truth or falsity of Defendants' claims. For example, if Coventry's fair market valuations of its policies imply a discount rate at or higher than 21%, it would seriously undermine Buerger's claim that Abacus's 21% discount rate is "not realistic" or that Abacus's value is "grossly overstated." *See* FAC ¶ 148 (Buerger stating that Coventry "do[es] a fair value calculation because ***I want to know what my policies are worth.***"). At its core, Abacus's valuation methodology is based on its realized gains on trades between the Secondary and Tertiary Markets; therefore, Abacus must obtain documents sufficient to show Coventry's transactions in those Markets to prove that there is nothing "grossly overstated" or "not realistic" about its financial performance.

This is more than the "reasonable nexus" you claim to be lacking with respect to Coventry's business practices. Response Letter at 6. And the public/private distinction you continually raise (*id.* at 6-7) is wholly irrelevant to the reality that Coventry and Abacus directly compete in the Secondary and Tertiary Markets, undertake very similar transactions, and are each other's closest comparable firm given the size of their respective operations. More importantly, as Buerger stated, both have used fair value calculations to determine what their "policies are worth." If State Farm, a private company, sued Allstate, a public company, with the former claiming it had on occasion used the same valuation methodology as the latter, the public/private distinction would not bar Allstate from seeking discovery on valuation methodologies from its adversary and competitor to show that its own valuation methodology is appropriate and "realistic." So too here.

Finally, your concern about producing documents to a competitor is moot in light of the Confidentiality Agreement. Documents responsive to these requests can be produced on an Attorneys' Eyes Only / Highly Confidential basis without harm to Coventry's competitive position in the market

We are amenable to further discussion about the scope of this request, but Defendants have yet to offer a convincing reason as to why at least some subset of these comparative business practice documents are not relevant to the truth or falsity of Defendants' defamatory statements. **If you are unwilling to compromise on these requests, then the parties at an impasse; please**

**provide your availability to meet and confer on Abacus's forthcoming motion to compel these documents.**

4. **<u>Competitive Analyses (Coventry Request No. 68)</u>**

Abacus will revisit this request after the Parties have negotiated a reasonable search protocol and begun producing documents.

5. **<u>Coventry's Investment Offerings (Coventry Request No. 69)</u>**

Abacus will revisit this request after the Parties have negotiated a reasonable search protocol and begun producing documents.

**B. DEFENDANTS' REQUESTS TO ABACUS**

1. **<u>Abacus's Stock Repurchase Plans (Abacus Request No. 9)</u>**

You have stated that you seek documents related to Abacus's stock repurchases, both before and after the defamatory statements, because any such repurchase purportedly relates to the "reasonableness" of Buerger's statements regarding Abacus's motives for these plans. Response Letter at 9. We do not understand "reasonableness" to be a defense to a defamation claim; please provide your authority for that position.

2. **<u>Abacus's Motivation for Going Public (Abacus Request No. 18)</u>**

Abacus is open to running search terms related to the claims and defenses in this case that relate to the go-public transaction beginning on January 1, 2023. We await your search term proposal to determine whether the Parties are in agreement regarding the proposed scope of this request.

3. **<u>Carriers and Reinsurer Communications (Abacus Request No. 25)</u>**

Your Response Letter narrows this request to "Documents and Communications between [Abacus] and any insurance carrier or reinsurer or their respective affiliates concerning underwriting criteria for policies eligible for [Abacus's] Buy-Back Programs." As written and understood from our Meet and Confer calls, this request appears duplicative of several other requests you have made related to Abacus's discussion of underwriting criteria to the extent such discussion is relevant to the claims and defenses in this case. Abacus therefore does not object to producing non-privileged documents responsive to this request to the extent captured in the agreed-upon search protocol.

4. **<u>Audits, Exams, Reviews, or Investigations (Abacus Request No. 27)</u>**

Abacus has not received any of the speculative "inquiries from state and federal regulators" called for by this request. As we understand your request, no responsive documents exist.

5. **National Insurance Brokerage (Abacus Request Nos. 31, 33, 34)**

Defendants seek documents related to National Insurance Brokerages ("NIB") because NIB is mentioned in the Morpheus Report, and because Defendants see a connection between the allegations in the FAC regarding their communications with the SEC and the SEC's questions regarding NIB. Your Response Letter also strongly suggests that NIB may be the subject of a false and misleading disclosure by Abacus.

First, this case is not about the Morpheus Report, except to the extent that the Report repeated and amplified the defamatory statements made by Defendants in other fora. Abacus does not allege, nor does it intend to prove, that every aspect of the Morpheus Report flowed from the Defendants' defamatory statements. While it is true that one section of the Morpheus Report deals with NIB, that section is irrelevant because Defendants' statements about NIB (which you seem to concede were made by Coventry to the SEC) are not alleged in the FAC.

Second, and it bears repeating, Coventry's statements to the SEC and/or anyone else about its ill-found belief regarding Abacus's disclosures about NIB are not a part of Abacus's claims against Defendants. Accordingly, we will not permit Defendants to use the cover of litigation—litigation Abacus was ***required*** to bring ***because of*** Defendants—to engage in a contrived fishing expedition.

Please articulate a valid basis for producing documents related to NIB, with legal authority supporting your position. Otherwise, Abacus will refuse to produce on this subject.

6. **Abacus Pays Portal (Abacus Request No. 38)**

Abacus will continue to withhold documents related to the Abacus Pays Portal. While it is true that the FAC states the Portal has led to Abacus compensating policyholders more generously on the Secondary Market, the Portal is not an input to the trade spread calculation that is the foundation of Abacus's fair market value calculation. Therefore, the Portal is not relevant to Abacus's claims here, not least because it has never been attacked by Defendants.

Abacus will not produce documents responsive to this request unless Defendants can tie aspects of the Portal to actual subject matter of the defamatory statements.

7. **Asset-Backed Debt (Abacus Request Nos. 41, 42)**

To clarify your requests regarding asset-backed debt, you defined the term in your Response Letter as: "indebtedness, obligations, or other liabilities secured, directly or indirectly, by assets or by the proceeds derived therefrom." Response Letter at 13. Without conceding that your definition is an appropriate one, Abacus has no asset-backed debt as the concept of "asset-backed debt" is commonly used by businesspeople and accountants.

8. **Investor Communications (Abacus Request No. 46)**

Abacus will produce documents responsive to this request without redacting the names of investors and other confidential business partners.

9. **Abacus's OIR Application (Abacus Request No. 48)**

Abacus will produce documents sufficient to show the resolution of its OIR application in 2016.

10. **Terry Group (Abacus Request No. 67)**

We understand your position that the Terry Group has information relevant to the accuracy of Lapetus LEs. However, that does not mean that Abacus has any documents in its possession related to the Terry Group. We are willing to run a reasonable search for documents in Abacus's possession, custody, or control regarding the Terry Group, and will produce non-privileged, responsive documents to the extent they are relevant to the claims and defenses in the case and are otherwise within the scope of the agreed-upon search protocol.

11. **KKR and Nova Trading (Abacus Request Nos. 75, 80)**

You seek all documents and communications with or concerning KKR and its affiliate, Nova Trading. In our November 17 Letter, we explained that these documents are not relevant because, like Abacus's valuations prior to going public, its dealings with KKR and Nova fall outside the Relevant Time Period. *See* November 17 Letter to Defendants at 14. You responded, citing Abacus's post go-public disclosure that references transactions with Nova. *See* Response Letter at 16.

In the interest of cooperation and moving discovery forward, Abacus will produce information and data tapes sufficient to show the terms of transactions of insurance policies with KKR and/or Nova Trading back to June 2021.

12. **Societe General and Ladenburg Thalmann & Co. (Abacus Request Nos. 76-77)**

Abacus continues to stand on its original objection to the relevance of documents responsive to this request. The November 17 Letter to Defendants does not expressly address these requests because we left the Meet-and-Confer Calls understanding you would provide further basis for deeming these entities relevant to the claims and defenses in the case. You have yet to do so. We await your explanation.

13. **Manorhaven Capital LLC (Abacus Request Nos. 78)**

You seek all documents and communications related to Manorhaven Capital, LLC, including "including Documents relating to Abacus's and Lapetus's business practices." To the extent Abacus communicated with Manorhaven about issues relevant to the claims and defenses in this case, those documents and communications will be produced in response to other requests.

You also state that Manorhaven is relevant to Abacus's acquisition of Carlisle, and that Carlisle is relevant because of its prominence in the Morpheus Report. Again, unless Defendants wrote the Morpheus Report, not everything in that Report is relevant to the claims and defenses in this case. Please provide the basis, if any, connecting the statements in the Morpheus Report about Carlisle to Abacus's allegations against Defendants.

* * *

Abacus reserves all rights with regard to its Requests and Objections, and may supplement them in due course as the circumstances require.

Sincerely,

*/s/ Alex Zuckerman*

Alex Zuckerman

cc: All counsel of record (via email).