# EXHIBIT H

**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax

**Michael McGinley**
*Partner*

Michael.McGinley@dechert.com
+1 215 994 2463 Direct
+1 215 655 2131 Fax

January 3, 2026

**Via Email**

Alex Zuckerman
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 5th Avenue, 9th Floor
New York, New York 10016
alexzuckerman@quinnemanuel.com

**Re:** ***Abacus Global Management, Inc. v. Coventry First LLC et al.*****, No. 25-cv-01401 (M.D. Fla. 2025) ("Abacus Litigation") – Discovery Disputes**

Counsel:

We write respond to your December 29, 2025 Letter on behalf of Abacus concerning discovery in this matter.[1]

## I. Alleged Defamatory Statements

Our December 23 Letter outlines the deficiencies concerning Abacus's continued failure to identify all statements that are defamatory and how those deficiencies are making it unreasonably difficult not only for Defendants to mount their defense, but also for them to conduct discovery. We address here some of the inaccurate statements in your December 29 Letter. You state that "Abacus cannot say—and is not required to say at this premature juncture—that no other defamatory statements were made or may surface as it develops its claims through discovery." Dec. 29 Letter at 2. While that may be true, it misses the point. Abacus must at least identify the statements *of which it is already aware* which form the basis for its claims. The December 29 Letter lists several paragraphs from the FAC, noting various fora in which Defendants allegedly made statements concerning Abacus. Is Abacus now stating that the paragraphs it cites in the December 29 Letter (¶¶ 98, 99,

[1] Capitalized terms have the same meaning as those used in the First Amended Complaint ("FAC") and Coventry's prior letters.

121, 101-113, 132-141,[2] 146-148) comprise all the defamatory statements?[3] Or is Abacus trying to allege that *all* statements made in any of the fora indicated are allegedly defamatory? We are, once again, left guessing.[4] Please provide a list of the statements within the FAC that Abacus claims are defamatory. Until then, Coventry cannot adequately or fully respond to Abacus's Requests referencing "Defamatory Statements," or more importantly, defend against the claims.

One statement in your December 29 Letter typifies the moving target that Abacus has employed throughout this litigation. You state that "[a]s for the June 4 Morpheus Report, Abacus has not put the entirety of the Report at issue" while adding in a footnote, that Abacus actually will be putting it at issue if "Defendants are prepared to admit they knowingly communicated with Morpheus prior to the June 4 Report's publication." Dec. 29 Letter at 2-3. Plaintiff cannot have it both ways. Moreover, while your December 12 Letter stated that while "one section of the Morpheus Report deals with NIB, that section is irrelevant because Defendants' statements about NIB … are not alleged in the FAC," Dec. 12 Letter at 6, you now state that "it is now irrefutable that Defendants played a direct and significant role in the June 12 Morpheus Report on Abacus, which is not discussed in the FAC." Dec. 29 Letter at 3. The FAC clearly put at issue (and Abacus continues to put at issue) the Morpheus Reports and the topics raised therein. Documents concerning those topics are fully discoverable.

## II. Defendants' Requests for Production to Abacus

Our most recent exchange of letters has resolved more of the disputes concerning our Requests. We accept your representation in the December 29 Letter that Abacus is not pursuing claims related to the Abacus Pays Portal (Abacus Request No. 38), and Defendants will not seek discovery regarding that Request that is not otherwise encompassed in a search protocol. With respect to Societe Generale- and Ladenburg Thalmann-related documents (Abacus Request Nos. 76 and 77),

[2] We also must correct your false implication that Coventry withdrew its OIR lawsuit because it was meritless. Rather, Coventry's action involving OIR and Lapetus is ongoing, and Coventry's withdrawal of one of two simultaneous actions was done for judicial efficiency.

[3] Abacus already amended its complaint once, attempting to address the flaws in its initial shotgun pleading. As this discovery process has made clear, that error was not resolved by the FAC. If it believes that its claims are still colorable, Abacus must seek leave to amend its complaint again and make clear the statements that it is challenging pending further discovery.

[4] You reference the "two dozen subpoenas" served by Defendants on third parties as evidence of Defendants' deep knowledge of the bases of Abacus's claims. The opposite is true. Defendants have been forced to chase down every possible way that Defendants' interactions with Plaintiff (and Plaintiff's operations) could possibly be considered defamatory. Plaintiff must specify the actual bases for its claims to ensure properly tailored discovery on both sides.

in the interest of reaching resolution, we agree at this time not to seek documents responsive to those Requests that are not otherwise encompassed in an agreed-upon search protocol. We reserve the right to revisit those Requests depending on what discovery reveals. Last, in light of your agreement to produce documents related to Manorhaven Capital LLC (Abacus Request No. 78), we view that dispute as resolved (subject to our overall dispute concerning the relevant period).

**Relevant Time Period**

Abacus's production of documents beginning June 1, 2021 (or November 1, 2020 in some instances, as some discovery has revealed) is necessary because documents in that timespan are directly relevant to the claims and defenses. Abacus's relationship with Lapetus dates back to well before Abacus went public in 2023.[5] To avoid that inconvenient fact, you now state that "Abacus's relationship with [Lapetus] does not 'underlie[] all of Abacus's claims." Dec. 29 Letter at 5. That is false. The FAC itself alleges, "Defendants' core claim is that Lapetus life expectancies are too short, and that Abacus relies on those estimates to intentionally overvalue the policies it buys and sells." FAC ¶ 6. Why does Abacus allege that "core claim" is defamatory? According to the FAC, it is at least in part because "Lapetus life expectancies are not less accurate than the estimates of any other life expectancy provider." FAC ¶ 7. The accuracy of Lapetus's LEs, and Abacus's relationship with Lapetus, is irrefutably central to this action. Importantly, the LEs generated by Lapetus and purchased by Abacus, as well as other work product generated by Lapetus, prior to 2023 are particularly relevant.

We provide an illustrative example Defendants have uncovered in discovery to date. As you are aware, in June 2025, Abacus issued a press release stating that it had retained Lewis & Ellis, an actuarial firm, to evaluate its loan portfolio for Q1 2025, by calculating the net present value of the portfolio after removing Lapetus LEs. Abacus's press release claimed that Lewis & Ellis's valuation "concurred with [Abacus's] prior valuation." June 10, 2025 Press Release (Ex. 1); Lewis and Ellis Report (L&E-000159, Ex. 2). But discovery produced by Lewis & Ellis in this action refutes that statement.

The data that Abacus provided to Lewis & Ellis to generate its report included old LEs, dating back prior to 2023, including several that were stale (*i.e.* we understand Abacus had more recent LEs, but chose to provide older, shorter LEs to Lewis & Ellis, artificially elevating the value of those policies). Data Set Sent to Lewis & Ellis (Ex. 3, L&E-000134) (excerpted "LEs" tab showing LEs dated as far back as 2012 and many dated 2021 and 2022). Defendants must be able to test the accuracy (and related "staleness") of these LEs and Lewis & Ellis's data.

---

[5] In fact, we understand Abacus CEO Jay Jackson sat on Lapetus's board of directors beginning in 2021.

In addition, a significant number (over one third) of the LEs provided to Lewis & Ellis are "internal" rather than provided by an outside LE provider. Many of those "internal LEs" also date back prior to Abacus's proffered July 3, 2023 beginning of the relevant period. Defendants are entitled to test the accuracy of those LEs, and to review the documents and communications concerning how they were generated. We are also entitled to discover whether Lapetus was used—even in part—to help generate those ostensibly "internal LEs." What is more, Abacus has stated in public filings as early as October 2022 (before going public) and as recently as June 2024 that it had a "partnership" with Lapetus "to build and develop current life expectancy tables based on [Abacus's] 18 years of data." Proxy Statement, East Resources Acquisition Company (Oct. 14, 2022);[6] Prospectus, Abacus Life (June 21, 2024).[7] We also know—perhaps relatedly—that Lapetus and Abacus partnered in 2022 on multiple versions of an "Abacus Live Life Table," which appears to be a Lapetus-authored methodology to utilize Abacus's mortality data to predict future mortality. Abacus Live Life Table, Version 1.4 (Ex. 4). Discovery concerning that relationship, and how Abacus has worked with Lapetus (including continued use of the work product of what you describe as the now "defunct LE provider") is essential to the litigation.

We expect to discuss this issue during our scheduled January 5 meet and confer in advance of a motion to compel.

**<u>Stock Repurchase Plans (Abacus Request No. 9)</u>**

Our December 23 Letter requested that you either produce documents responsive to this Request or confirm you are not alleging that Defendants' statements concerning Abacus's stock repurchases are defamatory. We appreciate you confirming in your December 29 Letter that you will not be pursuing claims alleging that those statements are defamatory. However, we note that to our understanding the FAC is currently the only public document concerning this issue. It continues to misrepresent to the public that the following alleged statement about Abacus is "false" and "intentionally misleading": "[R]ight now they've been trying to get the stock price up through their stock repurchase plan." FAC ¶¶ 146 & 214. Please confirm whether you intend to seek leave to amend your complaint to remove that allegation, which notably appears not only in the Factual Background, ¶ 146, but also in your recitation of claims, ¶ 214. In the absence of a filing dropping that claim, we must continue to pursue related discovery.

**<u>Government Inquiries into Abacus (Abacus Request No. 27)</u>**

---

[6] https://www.sec.gov/Archives/edgar/data/1814287/000119312522263015/d392703dprem14a.htm

[7] https://www.sec.gov/Archives/edgar/data/1814287/000162828024029320/abacuslife-final424b1.htm.

Your December 12 Letter stated that Abacus had not received inquiries from regulators and that no responsive documents exist. Now that we pointed out the public SEC filings revealing its review (which you cite explicitly in the FAC), you have once again changed your tune.[8] You are now willing to produce documents related to that review (notably, the review related to the November 1, 2024 SEC Comment Letter), and you insist that you are willing to go further if Defendants "have other reviews or inquiries in mind." Dec. 29 Letter at 6. Of course, Defendants cannot not be aware of all "audits, exams, reviews, or investigations" by state or federal agencies nor is it our obligation to identify any. That is the purpose of discovery. Please confirm you will produce all documents responsive to this Request.

**<u>Asset-Backed Debt (Abacus Request Nos. 41 and 42)</u>**

In our December 23 Letter, we asked you to "confirm that there are no documents from the relevant time period concerning asset-backed debt as defined in the November 26 Letter, *including any conversations, discussions, or other communications contemplating, evaluating, or in any way referencing asset backed debt*." Dec. 23 Letter at 8 (emphasis added). Your December 29 Letter stated only that "Abacus does not have any asset-backed debt of this kind." Dec. 29 Letter at 6. In explaining the "kind" of asset backed debt referenced, you cited to one version of a transcript produced by AlphaSense,[9] while omitting important prefatory language. The document you cite quotes Alan Buerger as allegedly saying, "The other thing *which we hear they're discussing in the marketplace* is to do what Great-West did and that is to issue asset-backed debt against their portfolio." AS_47 (emphasis added to part of the text omitted from your December 29 Letter). Your failure to address in your December 29 Letter any contemplation, evaluation, or reference to asset-backed debt is improper. Certainly any contemplation or discussion of potential asset-backed debt would be relevant, particularly in light of the italicized text concerning Abacus's potential discussions in the marketplace. Please confirm you will produce documents responsive to these Requests.

**<u>KKR and Nova Trading (Abacus Request Nos. 75 and 80)</u>**

As we described in our December 23 Letter, Abacus's introduction in 2020 of Lapetus to one of its key underwriters and business partners, KKR, raises serious questions concerning the depth and

---

[8] You also state that "neither party has put Abacus's entire business at issue." Dec. 29 Letter at 5. That is belied by the FAC, where Abacus states without support, "according to Coventry, the very business model that Abacus uses to deliver greater value and higher monetary payments to policyholders is actually a massive fraud against its shareholders." FAC ¶ 4.

[9] Other produced versions of the transcript differ from this one and we do not concede the accuracy of any version of the transcript.

breadth of Abacus's relationship with Lapetus, including without limitation, how much more than a traditional LE provider role Lapetus played, how Abacus presented itself (and the importance of Lapetus) to the market and how that may have impacted valuations. Discovery dating back to the introduction of Abacus to Lapetus is therefore squarely relevant.

**III. Abacus's Requests for Production to Defendants**

**Defendants' Communications with Government Entities (Coventry Request Nos. 29-31/Buerger Request Nos. 30-32)**

In our December 23 Letter, we offered a compromise position aimed at satisfying Abacus's Requests for Coventry's communications with government entities while ensuring that no government entity would be prejudiced in their potential investigations (into Abacus or otherwise). Specifically, that compromise would allow Coventry to seek approval or acquiescence from the relevant government entities before producing responsive documents. As you are aware, Coventry is also regulated and we also aim to ensure that Defendants do not act in a way that is adverse to its regulators' interests. You rejected that proposal. Defendants are not prepared to produce communications with government entities concerning the very entities they regulate (such as Abacus and Lapetus) absent either regulatory pre-approval or a court order to do so.

**Information Related to Coventry's Business Practices (Coventry Request Nos. 43-51 & 66-67; Buerger Request Nos. 43-49)**

Abacus's decision to sue Coventry and Alan Buerger concerning their alleged statements *about Abacus* does not give them the right to discovery concerning *Coventry's* business methods, communications, relationships, policies and trade secrets, which are all plainly irrelevant to the litigation. We understand that your revised Requests have been narrowed superficially to seek documents "sufficient to show" various aspects of Coventry's business. But the purported narrowing is mostly irrelevant. For two Requests, you seek "[d]ocuments sufficient to show *each transaction price and life expectance estimate for every policy*" Coventry sold or bought on the Tertiary Market or Secondary Market, respectively. Nov. 17 Letter at 5. Seeking documents concerning every Coventry transaction is not narrow or tailored. But more fundamentally, no narrowing can make these documents relevant.

The thrust of your argument concerning the relevance of these Requests appears to be an assertion that if Coventry is doing the same thing that Abacus is doing with respect to myriad business practices, that suggests wrongdoing by Defendants. But Abacus must prove that Defendants' statements *about Abacus* were false. Nothing in Coventry's business records would address that issue. Indeed, as a fundamental matter, discovery in a defamation action Abacus chose to initiate

DECHERT



does not impose or warrant parallel or equivalent obligations of the Defendants. *See Caliber Home Loans, Inc. v. Bales*, 2017 WL 8341699, at *2 (M.D. Fla. Aug. 17, 2017) (denying discovery on matters related to "regular business practices" when those "business practices are not at issue here."). Moreover, as we have explained multiple times, Abacus's activity and disclosures as a public company (and its resulting duties to investors) are the backdrop for virtually all of Defendants' allegedly defamatory statements. Nothing Plaintiff could find in Coventry's trade secrets or other documents would change that or make relevant the business operations of the privately held company that is Abacus's chief competitor. Defendants will not produce documents responsive to these Requests.

* * *

Defendants reserve all rights regarding their Requests and Responses and Objections, including the right to amend or supplement them.

Very truly yours,

Michael H. McGinley