# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ABACUS GLOBAL MANAGEMENT, INC., a corporation,<br>Plaintiff,<br><br>v.<br><br>COVENTRY FIRST LLC, a limited liability company; ALAN BUERGER, an individual,<br>Defendants. | Case No. 6:25-cv-01401-RBD-RMN<br><br>**DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO ABACUS GLOBAL MANAGEMENT, INC.** |

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Defendants Coventry First LLC ("Coventry") and Alan Buerger ("Mr. Buerger") (together, "Defendants"), by and through their undersigned counsel, hereby request that Plaintiff Abacus Global Management, Inc. ("Abacus" or "You") produce and/or make available for inspection and copying all documents requested herein at Dechert LLP, Cira Centre, 2929 Arch Street, Philadelphia, PA 19104-2808, in accordance with all applicable Rules and the Definitions and Instructions set forth below, within thirty (30) days of service of this Request.

## DEFINITIONS

Terms used herein shall have the following meanings:

1.     The term "Abacus" means Plaintiff Abacus Global Management, Inc., a Delaware corporation with its principal place of business in Orlando, Florida, and its current and former agents, employees, representatives, affiliates, officers, directors,

partners, managers, predecessors in interest, and subsidiaries, and any funds, pooled investment vehicles, or other entities managed, sponsored, or advised by such persons, and anyone acting or purporting to act on its or their behalf, including Abacus Settlements, LLC, ABL Technologies, LLC, ABL Wealth Advisors, LLC, LMATT Series 2024, Inc., LMA Income Series LP, LMA Income Series II LP, Longevity Market Assets, LLC, Abacus Life, Inc., Abacus Enhanced Income Fixed LP, Abacus Enhanced Income Plus LP, Abacus Premiere Income Fixed LP, Abacus Premiere Income Plus LP, National Insurance Brokerage, LLC, Carlisle Management Company SCA, and ABL Longevity Growth and Income Fund.

2.     The term "Action" means the litigation referred to in the above caption, *Abacus Global Management, Inc., v. Coventry First LLC et al.*, No. 25-cv-01401, pending in the United States District Court for the Middle District of Florida.

3.     The terms "Alan Buerger" and "Buerger" mean Defendant Alan Buerger, the Executive Chairman and co-founder of Coventry.

4.     The term "Asset-Backed Loan" means any extension of credit, loan, advance, or other financial accommodation that is secured, in whole or in part, by a lien, pledge, security interest, collateral assignment, or other encumbrance on specified assets of the borrower or a third party, whether tangible or intangible, including life insurance policies, and includes any refinancing, renewal, restructuring, or replacement thereof.

5.     The term "Asset-Backed Lender" means any person or entity that is in the business of making, originating, purchasing, servicing, administering, or

participating in Asset-Backed Loans, including Credigy, National Founders LP, Woodforest National Bank, N.A., PIMCO, Fifth Season Investments LLC, Blue Owl Capital, Inc., Obra Capital, Inc., and their respective subsidiaries and affiliates.

6.     The term "Buy-Back Program" means any program, plan, policy, or other arrangement by which You have sold, transferred, or offered to sell or transfer, directly or indirectly, any life insurance policy (or any interest therein) to any insurer or reinsurer or any of their respective affiliates, subsidiaries, or divisions, as well as present or former officers, directors, employees, partners, agents, consultants, or any other person acting or purporting to act on behalf of such persons, including Transamerica Life Insurance Company and ULI Funding LLC.

7.     The term "Communication" means any form of contact, disclosure, transfer, or exchange of information, whether documentary, written, or oral, formal or informal, at any time or place and under any circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including letters, memoranda, minutes, reports, emails, text messages, SMS messages, instant messages, ephemeral messages, telegrams, invoices, telephone conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, and any other form of communication or correspondence.

8.     The term "concerning" means alluding to, confirming, constituting, comprising, containing, commenting upon, discussing, describing, embodying, evaluating, evidencing, identifying, in connection with, involving, mentioning, noting, pertaining to, probative of, relating to, reflecting, referring to, regarding, setting forth,

supporting, stating, showing, touching upon, dealing with, assessing, recording, bearing upon, connected with, in respect of, about, indicating, memorializing, proving, suggesting, having anything to do with, contradicting, or summarizing in any way, directly or indirectly, in whole or in part, the subject matter referred to.

9.      The term "convertible note" means any debt instrument or promissory note that includes provisions allowing or requiring the principal amount, accrued interest, or other amounts owed under the note to be converted into equity or other ownership interests in the issuer or another entity, whether automatically or at the election of the holder or issuer, and whether contingent upon specific events, conditions, or a specified time.

10.     The term "Coventry" means Defendant Coventry First LLC, a Delaware limited liability company with its principal place of business in Fort Washington, Pennsylvania, and shall include any of Coventry First LLC's affiliates, subsidiaries, or divisions, as well as present or former officers, directors, employees, partners, agents, consultants, or any other person acting or purporting to act on behalf of such entities.

11.     The term "Document" is used in a comprehensive sense, as contemplated by Rule 1001 of the Federal Rules of Evidence or Rule 34 of the Federal Rules of Civil Procedure, and includes any and all written, printed, typed, recorded, filmed, punched, transcribed, taped, charted, photographed, photostatted, photocopied, or other graphic matter of any kind or nature, however produced, reproduced, or stored, in any format including paper, digital, electronic, or otherwise, whether sent or received or neither, and whether permanent or temporary, including

4

all originals, drafts, copies, and non-identical copies bearing notations or marks not found on the original(s). The term "Document" specifically includes email, audio and video tapes, microfiche, notes (handwritten and typed), internal memoranda, facsimiles, telexes, telephone records, electronic mail, SMS messages, text messages, messages sent via instant messaging tools, online platforms or mobile apps, other electronically stored information ("ESI") (including any exchange of information between computers and all information stored in an electronic form or computer database), tape recordings (and transcripts of them), voicemail recordings, voicemail transcriptions, letters, drafts, non-identical copies, audit papers, ledgers, books of accounts, and files maintained on or in computer hard drives, servers, portable diskette drives, laptop computers, floppy diskettes, or off-site backup computer files. A draft or non-identical copy is a separate Document within the meaning of this term. For the avoidance of doubt, any request for "Documents" includes Communications.

12.     The term "financial arrangement" means any agreement, understanding, or transaction involving the provision, allocation, or exchange (or proposed provision, allocation, or exchange) of monetary value or financial resources, including loans, investments, joint ventures, placement agent services, book running services, broker-dealer services, investment banking services, guarantees, credit facilities, equity contributions, convertible instruments, or any other form of financial commitment or obligation.

13.     The term "Grant Thornton" means Grant Thornton LLP or Grant Thornton Advisors LLC, and any of its predecessors, successors, affiliates,

subsidiaries, divisions, and present or former officers, directors, employees, partners, agents, consultants, or any other person acting or purporting to act on behalf of such entities.

14.    The term "identify" means, with respect to Documents, to state the type of Document; the date appearing on the Document or, if it has no date, the date or approximate date such Document was prepared; the author(s), addressee(s), and recipient(s) of the Document; and the names of the person(s) having present possession, custody, or control of the Document.

15.    The term "including" means including but not limited to. The term "includes" has a correlative meaning.

16.    The terms "investor" and "prospective investor" mean any person or entity that has provided, committed to provide, or is considering providing capital, funding, or other financial resources to Abacus, whether in exchange for equity, debt, convertible securities, or any other form of consideration or return on investment.

17.    The term "KKR & Co." means Kohlberg Kravis Roberts & Co. L.P., and any of its predecessors, successors, affiliates, subsidiaries, divisions, and present or former officers, directors, employees, partners, agents, consultants, or any other person acting or purporting to act on behalf of such entities.  This includes KKR Capital Markets.

18.    The term "Lapetus" means Lapetus Solutions, Inc., and includes any of its predecessors, successors, affiliates, subsidiaries, divisions, and present or former

officers, directors, employees, partners, agents, consultants, representatives, divisions, affiliates, and any person or entity acting on its or their behalf.

19.    The term "life expectancy estimates" means any calculations, projections, assessments, or evaluations of the anticipated lifespan or remaining years of life of an individual or group of individuals, whether derived from actuarial data, medical opinions, statistical models, or other methodologies.

20.    The term "Life Insurance Settlement Association Conference" means the Life Insurance Association Conference held in Miami, Florida, from October 23-25, 2024.

21.    The term "metadata," in connection with a request for ESI or magnetic data, means information that describes the history, tracking, or management of an electronic file containing requested data, including the following: file name, title, size, location, path, creation date and time, subject, author, comments, modification date and time, revision number, last print date and time, date and time of last data access, date and time of last metadata modification, last save date and time, total editing time, and file permissions.

22.    The term "Morpheus" means Morpheus Research and any of its predecessors, successors, affiliates, subsidiaries, divisions, and present or former officers, directors, employees, partners, agents, consultants, or any other person acting or purporting to act on behalf of such entities.

23.    The term "Morpheus Reports" means (i) the report titled "Abacus Global Management: This $740 Million SPAC Is Yet Another Life Settlements Accounting

Scheme Manufacturing Fake Revenue By Systematically Underestimating When People Will Die" published by Morpheus on or about June 4, 2025, and (ii) the report titled "Abacus' Scattered Response Failed To Refute Any Of Our Allegations & Contradicted Its Own Statements To The SEC.  We Reveal New Evidence of Abacus Insiders Engaging In Undisclosed Related Party Dealings And Of Carlisle Round-Tripping Policies" published by Morpheus on or about June 12, 2025.

24.    The terms "person" or "persons" mean natural persons, proprietorships, corporations, limited liability companies, partnerships, trusts, joint ventures, groups, associations, organizations, and all other entities.

25.    The term "relate" and its variants encompass the terms "refer," "reflect," and "concern," and shall be construed to bring within the scope of the Request any information that comprises, evidences, constitutes, describes, explicitly or implicitly refers to, was reviewed in conjunction with, or was generated as a result of the subject matter of the Request, including all information that reflects, records, memorializes, discusses, evaluates, considers, reviews, reports, or otherwise evidences the existence of the subject matter of the Request.

26.    The term "short seller" means any entity, including hedge funds, investment advisers, broker-dealers, proprietary trading firms, market makers (to the extent acting other than in bona fide market making), banks, prime brokers, custodians, consultants, research firms, and any of their affiliates, parents, or subsidiaries, which prepares reports for dissemination prior to, while, or subsequent to entering into a short sale or holding a short position on a publicly traded company.

27.    The terms "TD Securities" and "TD Cowen" mean TD Securities, Inc.,

TD Securities (USA) LLC, and any of its affiliates, subsidiaries, divisions, and present

or former officers, directors, employees, partners, agents, consultants, or any other

person acting or purporting to act on behalf of such entities.

28.    The term "You" means Abacus.  The term "Your" has a correlative

meaning.

29.    Where applicable, any word or term used in this Request but not defined

above shall have its usual and ordinary meaning.

### INSTRUCTIONS

1.    You must respond to each request for production within thirty (30) days

after service.

2.    All objections to the productions of documents requested herein shall be

made in good faith and in writing and delivered to the office of Dechert LLP, Cira

Centre, 2929 Arch Street, Philadelphia, PA 19104-2808, on or before the date set for

production.

3.    Each Request seeks production of each Document in its entirety, without

abbreviation or redaction, and all drafts and non-identical copies of each Document.

4.    If any document called for was formerly in your possession, custody, or

control and has been destroyed, discarded, or otherwise disposed of, you shall furnish

a list setting forth, as to each Document or part thereof, the following information:

(a) the nature of the Document (e.g., letter, memorandum, telegram, etc.); (b) the

name, address, occupation, title, and business affiliation of each person who prepared,

received, reviewed, or has or has had possession, custody, or control of the Document;
(c) the date of the Document; (d) a description of the subject matter of the Document;
(e) the date of destruction or other disposition; (f) a statement of the reasons for
destruction or other disposition; (g) the name, address, occupation, title, and business
affiliation of each person who authorized destruction or other disposition; (h) the
name, address, occupation, title, and business affiliation of each person who destroyed
or disposed of the Document; and (i) the paragraph(s) and/or sub-paragraph(s) of these
Requests which call for the production of the Document.

5.     Except as otherwise noted, these Requests cover all Documents in your
possession, custody, or control, including any Documents in your constructive
possession whereby you have the right to compel production of Documents from a
third party and Documents maintained at any of its present or former offices, at its
attorneys' offices, or elsewhere.

6.     All Documents are to be produced as they are kept in the usual course of
business or are to be organized and labeled to correspond with the categories in the
Request.   In making production of ESI, including electronic data compilations,
electronic mail, or Documents that are kept in electronic format (through applications
such as Microsoft Outlook, Lotus Notes, Microsoft Word, Microsoft Excel, Microsoft
PowerPoint), produce all Documents as kept in the normal course of business and in
their native format linked to a single page tagged image file format.   In making such
production, also produce the "metadata" for any electronic Documents.

7.    Each Document produced pursuant to these Requests shall be produced in a manner that clearly identifies the source, location, and/or origin of said Document.

8.    Each Request herein should be construed independently and not with reference to any other Requests for the purpose of limitation.

9.    Each Request contemplates production of all Documents in their entirety. If only a portion of a document is responsive to one or more Requests, the Document shall be produced in its entirety.

10.    The use of the singular shall include the plural, and the use of one gender shall include the other, as appropriate in context.

11.    "Any" shall be construed as "all" and vice versa, as necessary to bring within the scope of the Request all Documents that might otherwise be construed to be outside of its scope.

12.    The connectives "and" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the Request all Documents that might otherwise be construed to be outside of its scope.

13.    The terms "all" and "each" shall be construed as all and each, as necessary to bring within the scope of the Request all Documents that might otherwise be construed to be outside of its scope.

14.    References to any natural person include that natural person's agents, attorneys, representatives, employees, and successors.

11

15.     References to any non-natural person (*e.g.*, corporation, partnership, limited liability company) include that non-natural person's respective predecessors, successors, divisions, subsidiaries, parents, assigns, and affiliates, foreign or domestic, each other person that is directly or indirectly, wholly or in part, owned by, controlled by, or associated with them, and any others acting or purporting to act on their behalf for any reason, and the present and former officers, directors, partners, managers, advisors, representatives, servants, employees, assigns, attorneys, and agents of any of them.

16.     The use of the past tense includes the present tense and vice versa, as necessary to bring within the scope of each request all responses that might otherwise be considered outside its scope.  Whenever a term is used herein in the present, past, future, subjunctive, or other tense, voice, or mood, it shall also be construed to include all other tenses, voices, or moods.

17.     If You object to any of the following requests ("Requests"), state the reasons for Your objections.  If You object to any part of a Request, specify the part. Similarly, if You do not object to a particular Request, but are unable to respond fully to that Request, respond to the fullest extent possible and provide an explanation for your lack of a full response.

18.     If, in responding to any of the following Requests, You encounter any ambiguity or confusion in construing either the Request or a Definition or Instruction relevant to a Request, set forth the matter deemed ambiguous, select a reasonable interpretation that you believe resolves the ambiguity, respond to the Request using

that interpretation, and explain with particularity the construction or interpretation selected by You in responding to the Request.

19.    You are required to produce all Documents and Communications, wherever located, that are described below and that are in your possession, custody or control, or to which You have access.

20.    All Documents should be Bates labeled, and should be produced in single page TIFF images (except that excel spreadsheets and other such file types that include logical formulae or files that, when converted to image format, take on an appearance noticeably different from the one the running-native file took when viewed on a computer screen, should be produced in native, with a "nativelink" file) with extracted text or OCR at the Document level and with the following load files:  LFP, OPT and DAT.  TIFF images should be 300 DPI Group IV compressed TIFF images.  The load files should be provided as delimited load files.  All metadata should be provided, including (at a minimum) the following: BEGDOC, ENDDOC, BEGATTACH, ENDATTACH, Page Count, Author, From, To, Cc, Bcc, Custodian, Date Sent, Time Sent, Subject, File Name, Date Last Modified, Time Last Modified, Time Created, MD5Hash and NATIVELINK (link to native on media if applicable).

21.    Each Request seeks production of every responsive Document in its entirety, without abbreviation or expurgation, including attachments and/or other matters affixed thereto, notwithstanding that portions of a Document may contain information that is not responsive.  You should produce all drafts as well as final versions of a Document, as well as copies that are not identical to the original

13

Document, whether due to handwritten notations, revisions, enclosures, attachments, underlining, highlighting, or otherwise.

22.     If any Document responsive to any particular Request is withheld in whole or in part based upon a claim of attorney-client privilege, the work product doctrine, or upon any other legal ground, You shall submit, with respect to each Document so withheld, a privilege log supporting the application of the privilege or work product protection.  If You claim privilege or any other basis for nondisclosure with regard to only part of a document, produce all other parts of the Document.  If a Document is withheld on the ground of privilege, state the specific basis for the claim of privilege, and provide the following information: (i) the date appearing on the Document; (ii) a description of the general nature of the Document (*e.g.*, whether it is a letter, memorandum, e-mail, etc.); (iii) the author of the Document; and (iv) the identity of each person to whom the Document was addressed and the identity of each person to whom a copy was sent.

23.     Unless otherwise specified in an individual Request, these Requests seek Documents and information prepared, sent, provided, received, or in Your possession during the period from June 1, 2021, through and including the present (the "Relevant Period").

14

## REQUESTS FOR PRODUCTION

1.      Documents and Communications with or concerning Lapetus, including any agreements, contracts, invoicing, pricing analyses, or business relationships.

2.      Documents and Communications concerning Lapetus's August 18, 2025 email announcing that "Lapetus is Closing."

3.      Documents and Communications concerning Lapetus's decision to cease operations on August 31, 2025.

4.      Documents and Communications concerning any decision related to You using Lapetus as a life expectancy provider or using Lapetus's life expectancy estimates.

5.      Documents and Communications concerning your relationship with Lapetus, including those concerning the relationship's formation or termination.

6.      Documents and Communications concerning data and information used by or provided to Lapetus to develop any life expectancy table, including in connection with Lapetus Life Event Solutions.

7.      Documents and Communications with Lapetus concerning Lapetus's life expectancy estimates, including any Documents related to concerns, issues, or questions relating to the accuracy of Lapetus's life expectancy estimates, and any Documents relating to Your attempts to modify or influence Lapetus's methodologies or life expectancy estimates.

8.      Documents and Communications concerning or containing the Lapetus statement to investors referenced in ¶ 189 of Your Amended Complaint.

9.     Documents and Communications concerning Your stock repurchase plans, including details of each trade and Your decisions to authorize such repurchases.

10.     Documents and Communications concerning Your decision to account for all life insurance policies using the fair value method.

11.     Documents and Communications concerning the life expectancy estimates that have been used to value Your policies using the fair value method.

12.     Documents and Communications concerning the trade spreads referenced in ¶ 48 of Your Amended Complaint.

13.     Documents and Communications concerning the life expectancy estimates that were used in the historical life settlement transactions referenced in ¶ 77 of Your Amended Complaint.

14.     Documents and Communications concerning (i) investments, (ii) convertible notes, or (iii) any other financial arrangements involving Lapetus.

15.     Documents and Communications concerning Jay Jackson's role with You or Lapetus, including as a director of Lapetus.

16.     Documents and Communications concerning Jay Jackson's co-authorship of any book or publication with any employee, officer, or affiliate of Lapetus, including Dr. Jay Olshansky, from July 26, 2018, to July 26, 2020.

17.     Documents and Communications concerning Jay Jackson's decision to become a member of Lapetus's Board of Directors and his subsequent resignation of his Lapetus directorship.

16

18.     Documents and Communications concerning Your decision to enter into a business combination with East Resources Acquisition Company.

19.     Documents and Communications concerning Your relationship with Carlisle Management SCA, including the initiation of the relationship, any transactions between You and Carlisle Management SCA, and Your decision to acquire Carlisle Management SCA.

20.     Documents and Communications concerning Carlisle Management SCA's "pipeline of potential commitments to its ongoing fund raise," as referenced in the Amended Complaint, including all documents concerning its size, scope, membership, and diminishment.

21.     Documents and Communications concerning the slowing or diminishment of Your "deal flow" as referenced in the Amended Complaint, including all "deal[s] in progress" and any reasons for the alleged diminishment of deal flow both related and unrelated to the claims in this Action.

22.     Documents and Communications concerning any lines of credit that You have sought.

23.     Documents and Communications concerning the termination or rejection of any lines of credit that You have sought, including any line of credit referenced in the Amended Complaint.

24.     Documents and Communications with or concerning the "large credit union"—including the credit union's Chief Financial Officer—referenced in ¶ 247 of Your Amended Complaint.

25.    Documents and Communications between You and any insurance carriers or reinsurers regarding underwriting and Buy-Back Programs.

26.    Documents and Communications concerning life settlement policies that You sold or at any point offered for sale, including all bids received for such life settlement policies.

27.    Documents and Communications concerning audits, exams, reviews, or investigations of Abacus conducted by any state or federal agency, including the Florida Office of Insurance Regulation.

28.    Documents and Communications between You and any third party concerning Lapetus's life expectancy estimates or methodology, including Grant Thornton, TD Securities, and any market analyst or financial institution.

29.    Documents and Communications between You and any person or third party concerning Lapetus's life expectancy estimates or methodologies, including discussions relating to any report, analysis, evaluation, or study.

30.    Documents and Communications concerning any reports, analyses, evaluations, or studies concerning life expectancy estimates and methodologies prepared by, obtained from, or concerning Lapetus or any other third party.

31.    Documents and Communications with Grant Thornton concerning Coventry, Lapetus, National Insurance Brokerage, LLC, and any of Your filings or communications with the Securities and Exchange Commission.

32.    Documents and Communications concerning any internal or external audits of Your financial statements, including those done by Grant Thornton.

33.     Documents and Communications concerning National Insurance Brokerage, LLC, including all commission statements, ledgers, payment records, employment records, member records, contracts, agreements, commission arrangements, distributions to members, financial records, 1099s, or tax filings,

34.     Documents and Communications concerning any life insurance policy that National Insurance Brokerage, LLC placed, arranged, brokered, or otherwise procured for any person, including applications, names of insureds, policy numbers, issuance dates, face amounts, and communications with insurers.

35.     Documents and Communications concerning the Life Insurance Settlements Association Conference.

36.     Documents and Communications concerning the Coventry Writ referenced in ¶ 131 of Your Amended Complaint.

37.     Documents and Communications concerning Your purported loss of management fees, including on any "private fund deal," as referenced in Your Amended Complaint.

38.     Documents and Communications concerning Your "Abacus Pays" portal or policy value calculator, including the methodologies used to approximate policy values, all policy values generated by Your "Abacus Pays" portal or policy value calculator, and the corresponding purchase price for every such policy that You acquired.

39.     Documents and Communications concerning the development and organization of the ABL Longevity Growth and Income Fund.

40.    Documents and Communications concerning the decision to use Lapetus as ABL Longevity Growth and Income Fund's primary life expectancy provider, including those concerning the "data set" referenced in ¶ 83 of Your Amended Complaint, or the origin of that data set.

41.    Documents and Communications concerning any Asset-Backed Loan, including any drafts, term sheets, proposals, offers, negotiations, discussions, and agreements, that You have negotiated, entered into, or sought to negotiate or enter into.

42.    Documents and Communications with any Asset-Backed Lender.

43.    Documents and Communications concerning press releases, website postings, conference presentations, and public remarks referencing Coventry, Lapetus's life expectancy estimates, or the valuation of life settlements, including final submissions and drafts.

44.    Documents and Communications concerning Coventry or Alan Buerger.

45.    Documents and Communications with Your investors and prospective investors concerning Coventry or Alan Buerger.

46.    Documents and Communications with Your investors and prospective investors concerning Lapetus and Lapetus's life expectancy estimates.

47.    Documents and Communications with Your investors and prospective investors concerning any short seller report.

48.    Documents and Communications from January 1, 2015, through December 31, 2017, concerning Your application for a life settlement provider's

20

license in Florida, including all Documents and Communications concerning the Florida Office of Insurance Regulation's denial of Your application.

49. Documents and Communications concerning Your financial position on annual, quarterly, and monthly bases, including balance sheets, profit and loss statements, and statements of cash flow.

50. Documents and Communications concerning Morpheus or the Morpheus Reports.

51. Documents and Communications concerning Your Securities and Exchange Commission filings.

52. Documents and Communications concerning ABL Longevity Growth and Income Fund's Securities and Exchange Commission filings and communications.

53. Documents and Communications concerning the November 1, 2024, Securities and Exchange Commission Comment Letter on Abacus's Form S-1/S-3 filing.

54. Documents and Communications with the Securities and Exchange Commission concerning You or the ABL Longevity Growth and Income Fund.

55. Documents and Communications with any short sellers concerning Your valuation.

56. Documents and Communications concerning Alan Buerger's interview with Tegus on May 22, 2025.

21

57.    Documents and Communications concerning Hindenburg Research or Nate Anderson.

58.    Documents and Communications concerning the Morpheus Report with "one of [Abacus's] service providers" as mentioned in ¶ 167 of Your Amended Complaint.

59.    Documents and Communications with the "intermediary representing a multi-trillion-dollar investment company" as referenced in ¶ 169 of Your Amended Complaint, including discussions about the forming of the "fund-of-one" and the decision to break off talks.

60.    Documents and Communications with the credit union referenced in ¶ 170 of Your Amended Complaint, including discussions about the forming of the "fund-of-one" and the decision to take a "wait-and-see approach."

61.    Documents and Communications concerning the creation, development, collection, methodology, peer review, or publication of data used by You to calculate fair value and net present value of life insurance policies, including data related to age, gender, health, life expectancy, future premium projections, and the face value of the underlying policy.

62.    Documents and Communications concerning any analysis of Your transactions in the secondary or tertiary markets for life settlements.

63.    Documents and Communications concerning all purchases You have made on the tertiary market for life settlements, including any life expectancies or other data used to determine the prices of those transactions.

64. Documents and Communications with or concerning ClearLife Limited, ClearLife LLC, or any affiliated person or entity, including any data related to life expectancies.

65. Documents and Communications with or concerning Acumen Financial Advantage, LLC, including Documents relating to Your business practices and valuation methods.

66. Documents and Communications with or concerning Lewis & Ellis, including any engagement letters, scopes of work, instructions, supporting documents, policy information (including premium streams, life expectancies, face values of policies and discount rates), drafts, and materials created in connection with Your engagement of Lewis & Ellis to review Your policy balance sheet, as referenced in Your press release dated June 10, 2025.

67. Documents and Communications with or concerning The Terry Group or any of its personnel, including any documents relating to any analyses of Your business practices, or of Lapetus, and any related audits.

68. Documents and Communications with or concerning Piper Sandler & Co., including any documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; the Morpheus Reports; and Your transactions and financial arrangements with Piper Sandler & Co.

69. Documents and Communications with or concerning Northland Securities, Inc. or Northland Capital Markets, including any documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or

23

ratings of Abacus; the Morpheus Reports; and Your transactions and financial arrangements with Northland Securities, Inc. or Northland Capital Markets.

70.    Documents and Communications with or concerning B. Riley Securities, Inc. or B. Riley Financial, Inc. including any Documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; the Morpheus Reports; and Your transactions and financial arrangements with B. Riley Securities, Inc. or B. Riley Financial, Inc.

71.    Documents and Communications with or concerning Daniel Bergman or TD Cowen, including any Documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; the Morpheus Reports; and Your transactions and financial arrangements with Daniel Bergman or TD Cowen.

72.    Documents and Communications with or concerning Andrew Kligerman or TD Securities, Inc., including any Documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; the Morpheus Reports; and Your transactions and financial arrangements with Andrew Kligerman or TD Securities, Inc.

73.    Documents and Communications with or concerning Maxim Group LLC, including any Documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; and the Morpheus Reports.

74.    Documents and Communications with or concerning A.G.P./Alliance Global Partners, including Documents relating to Abacus's and Lapetus's business

24

practices and any transactions and financial arrangements with A.G.P/Alliance Global Partners.

75.   Documents and Communications with or concerning KKR & Co., including Documents relating to Abacus's and Lapetus's business practices and financial arrangements with KKR & Co.

76.   Documents and Communications with or concerning Societe Generale Americas, including Documents relating to Abacus's and Lapetus's business practices and any transactions and financial arrangements with Societe Generale Americas.

77.   Documents and Communications with or concerning Ladenburg Thalmann & Co., Inc., including Documents relating to Abacus's and Lapetus's business practices and any transactions and financial arrangements with Ladenburg Thalmann & Co., Inc.

78.   Documents and Communications with or concerning Manorhaven Capital LLC and any of its affiliates, including Documents relating to Abacus's and Lapetus's business practices and any transactions and financial arrangements with Manorhaven Capital LLC or any of its affiliates.

79.   Documents and Communications with or concerning ULI Funding, LLC, including any of its affiliates, subsidiaries, or divisions, as well as present or former officers, directors, employees, partners, agents, consultants, or any other person acting or purporting to act on behalf of such entity.

80.   Documents and Communications with or concerning Nova Trading (US), LLC, Nova Holding (US) LP, or KKR & Co., including Documents and

Communications concerning the sale of any life insurance policies, the repurchasing of any life insurance policies, the prices of those transactions, and the life expectancies relied upon by either side in those transactions.

81.     Documents and Communications with or concerning Daniel Zeplain or Treyled Life Settlements LLC, including any Documents relating to Jay Jackson or Coventry.

82.     Documents and Communications with the "Industry insiders" referenced in ¶ 91 of Your Amended Complaint concerning Coventry's supposed plans "to damage the image and stock price of Abacus."

83.     Documents and Communications concerning or supporting Your "belief" that Buerger contacted life expectancy providers to tell them to "lengthen their estimates," as stated in ¶ 96 of Your Amended Complaint.

84.     Documents concerning and Communications with the "consultancy" referenced in ¶ 167 of Your Amended Complaint relating to the Morpheus Reports or the alleged "agreement in principle" that the consultancy allegedly "broke off."

85.     Documents and Communications concerning transactions where You, acting as principal for Your own account, have sold any life insurance policy to or purchased any life insurance policy from a client or affiliate, including any disclosures made and consents received in connection with such transactions, as well as Documents and Communications concerning the life expectancies used in those transactions, the prices of those transactions, and the realized spreads for those transactions.

86.    Documents and Communications concerning any transaction where You have sold any life insurance policy to or purchased any life insurance policy from any person or entity who is not affiliated with You, including Documents and Communications concerning the life expectancies used in those transactions, the prices of those transactions, and the realized spreads for those transactions.

87.    Documents and Communications concerning any meeting of Your Board of Directors or any committee thereof, including any special, regular, and executive sessions, and including any agendas, board packets, minutes, transcripts, recordings, notes, presentations, and any other materials from Your Board of Directors or any individual director or attendee.

88.    Documents and Communications concerning Abacus's media and advertising, including any communications with journalists, reporters, representatives of any publication, or any other media members, Your television and radio commercials, and Your digital  and print media advertising.

89.    Documents and Communications concerning any press releases or statements to the public You have issued, including any documents demonstrating their reach, number of impressions, or placement in any publications.

90.    Documents and Communications concerning any distributor network from whom Abacus originates policies through agent or broker networks, including documents concerning any distributor network's decision to pause its listing of Abacus.

27

91.    Documents and Communications that You rely upon or may rely upon
for Your responses to the interrogatories in this Action.

92.    Documents and Communications that you rely upon or reference,
explicitly or implicitly, in the Complaint.

93.    Documents and Communications that tend to support or negate the
allegations contained in Your Complaint.

94.    Documents and Communications produced to You by any non-party in
response to any subpoena or any other discovery request in this Action.

95.    Documents and Communications You may rely upon or introduce in
any expert report, at any deposition, at trial, or during any other proceeding in this
Action.

Dated: September 19, 2025                    Respectfully Submitted,

                                             /s/ Michael H. McGinley

ANDREW J. LEVANDER (*pro hac vice*)          MICHAEL H. MCGINLEY (*pro hac vice*)
DECHERT LLP                                  BRIAN A. KULP (*pro hac vice*)
Three Bryant Park                            DECHERT LLP
1095 Avenue of the Americas                  Cira Centre
New York, NY 10036                           2929 Arch Street
Telephone: (212) 698-3500                    Philadelphia, PA 19104
Facsimile: (212) 698-3599                    Telephone: (215) 994-4000
andrew.levander@dechert.com                  Facsimile: (215) 914-2222
                                             michael.mcginley@dechert.com
ERIC AUSLANDER (*pro hac vice*)              brian.kulp@dechert.com
DECHERT LLP
1900 K Street, NW                            ALFRED J. BENNINGTON, JR.
Washington, DC 20006                         GLENNYS ORTEGA RUBIN
Telephone: (202) 261-3300                    BENJAMIN F. ELLIOTT
Facsimile: (202) 261-3333                    SHUTTS & BOWEN LLP
eric.auslander@dechert.com                   300 South Orange Ave.
                                             Suite 1600
                                             Orlando, FL 32801
                                             Telephone: (407) 423-3200
                                             Facsimile: (407) 425-8316
                                             bbenington@shutts.com
                                             grubin@shutts.com
                                             belliott@shutts.com

*Counsel for Defendants Coventry First LLC and Alan Buerger*

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2025, the foregoing was served on

upon Plaintiff's counsel via electronic mail.

/s/ *Michael H. McGinley*
Michael H. McGinley