# EXHIBIT J



**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
+1 215 994 4000 Main
+1 215 994 2222 Fax

**Michael McGinley**
*Partner*

Michael.McGinley@dechert.com
+1 215 994 2463 Direct
+1 215 655 2131 Fax

October 30, 2025

**Via Email**

Alex Zuckerman
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 5th Avenue, 9th Floor
New York, New York 10016
alexzuckerman@quinnemanuel.com

**Re:** ***Abacus Global Management, Inc. v. Coventry First LLC et al.*, No. 25-cv-01401 (M.D. Fla. 2025)– Plaintiff's Responses and Objections to Defendants' First Set of Requests for Production of Documents**

Counsel:

We write on behalf of Coventry First LLC and Alan Buerger (collectively, "Defendants") concerning numerous deficiencies in Abacus Global Management, Inc.'s ("Abacus") October 20, 2025 Responses and Objections to Defendants' First Set of Requests for Production of Documents (the "RFPs" and "Responses"). As we discussed previously, we would like to discuss these issues during next week's meet and confer. This letter does not contain an exhaustive list of Abacus's deficiencies, and Defendants expressly reserve, and do not waive, their right to identify additional deficiencies or to seek further production from Abacus in the future.

**<u>Abacus's Responses Stonewall Defendants by Failing to Adequately Address Defendants' Requests.</u>**

Abacus's Responses attempt to stonewall Defendants by overly relying on the meet and confer process and by flat out refusing to produce relevant documents. Indeed, Abacus agrees to run reasonable search terms and produce documents in response to only one Request.[1] Of Defendants' 95 Requests, Abacus stated that it either will not produce documents at all (41 Requests)[2] or refused

[1] RFP No. 2. Abacus also agreed to produce documents in response to a second Request (No. 92),but it improperly ignores that that Request seeks all documents Abacus "rel[ied] upon" in the Complaint.

[2] RFP Nos. RFP Nos. 6, 13, 15-18, 23, 25, 27-30, 33-34, 41-42, 46, 48, 57-59, 64, 67, 70-71, 73-83, 87, 91, 93-95.






to state whether it will or will not produce documents (18 Requests).[3] For an additional 34 Requests, Abacus commits only to produce documents based on "agreed-to" search terms pending a meet and confer.[4] *See Proxicom Wireless, LLC v. Macy's, Inc.*, 2018 WL 8344648, at *3 n.2 (M.D. Fla. Dec. 21, 2018) (explaining that a party is obligated to "conduct a reasonable search and produce responsive documents" without help from its opposition). By doing so, Abacus fails throughout its Responses to forthrightly "state[] whether any responsive materials are being withheld on the basis of an objection" or "specifically identif[y] those documents that are being or will be produced."[5]

Having brought a defamation, unfair trade practice and tort action that broadly puts Abacus's conduct, financial statements, business ethics and reputation at issue, Abacus cannot stonewall relevant discovery by repeating obstructionist and conclusory defective objections. At a minimum, Abacus should unequivocally commit to meeting its obligations to search for and produce documents for both the 34 categories it concedes it must produce and the 18 Requests where it takes no position. Before the meet and confer, Abacus should also revisit the 41 categories it has utterly refused to produce.

Please confirm that Abacus will do so.

**<u>Abacus's Responses are Improper Boilerplate Objections.</u>**

Abacus improperly asserts boilerplate objections in contravention of the Middle District of Florida's local rules. *See* Discovery Handbook § III.A.6 ("Boilerplate objections . . . are insufficient without a full, fair, explanation particular to the facts of the case."). Throughout its repetitive 140 pages of Responses, Abacus failed to heed the warning you cited in your October 24, 2025 letter: "[r]esponding with boilerplate will result in waiver of the objections." Dkt. 42 at 5.

Abacus repeatedly objects to Defendants' Requests on the grounds that they are "overbroad, unduly burdensome and disproportionate to the needs of the case" without providing any explanation as to why. *See* RFP Nos. 3-4, 9, 18-21, 25, 28-35, 39-42, 44-46, 48, 54, 64, 67-81. The mere insertion of *additional* boilerplate language, such as by saying that a Request has "no bearing on the falsity or misleading nature of Defendants' statements" or "is not reasonably tethered to any claims," does not cure the deficiency. Such objections do not give a "full, fair explanation particular to the facts of the case." Discovery Handbook § III.A.6. This is especially true when such boilerplate

---

[3] RFP Nos. RFP Nos. 9, 14, 19, 22, 26, 31-32, 38-40, 49, 53-55, 61, 69, 85-86.

[4] RFP Nos. 1, 3- 5, 7-8, 10- 12, 20-21, 24, 35-37, 43-45, 47, 50-52, 56, 60, 62-63, 65-66, 68, 72, 84, 88-90.

[5] Middle District Discovery (2021) § III.A.5.c-d ("Discovery Handbook"); FED. R. CIV. P. 34(b)(2)(C).





assertions are repeated nearly verbatim in response to 35 separate Requests. *See* RFP Nos. 18, 25, 28-35, 39-42, 44-46, 48, 54, 64, 67-81. These boilerplate objections make it impossible for Defendants to decipher what makes the Requests objectionable to Abacus, and, as a result, Defendants are unable to discern Abacus's position on the Requests (other than it wants to avoid producing highly relevant documents).

Please confirm that Abacus will not withhold documents based on these boilerplate objections.

<u>**Abacus's General Objections Contain Material Deficiencies.**</u>

**I. General Objection 1: "Abacus objects to the Requests to the extent they reflect a fundamental, deliberate mischaracterization of Abacus's claims and business model, including by seeking material related to life expectancy ("LE") estimate models produced by LE providers. The Requests further seek to impose unreasonable discovery burdens on Abacus based solely on Defendants' choice to have made false and defamatory statements about Abacus and its valuation model and represent a fishing expedition designed to harass Abacus and retaliate against it for filing this lawsuit."**

The first part of this objection appears to disclaim Plaintiff's entire complaint, which is predicated on its assertion that Defendants defamed Abacus by making statements about its use of certain life expectancy ("LE") estimates.

Abacus states in its Amended Complaint:

> Since the beginning of 2024, Coventry and Buerger have routinely disseminated false and misleading statements about Abacus, in particular targeting Abacus's relationship with Lapetus Solutions, Inc. ("Lapetus"), a third-party life expectancy provider that recently dissolved because of Defendants' conduct. *Defendants' core claim is that Lapetus life expectancies are too short, and that Abacus relies on those estimates to intentionally overvalue the policies it buys and sells*.[6]

Abacus has placed its business model and its use of LEs—especially of those done by Lapetus—at the center of this litigation, and Defendants are properly seeking documents relevant to the allegations asserted against them.

---

[6] Dkt. 38, Am. Compl. ¶ 6 (emphasis added).






The second part of this objection gets it backward. It is not *Defendants* that seek to impose discovery burdens on Abacus. Abacus brought this lawsuit. Abacus states in its Complaint that, "according to Coventry, the very business model that Abacus uses to deliver greater value and higher monetary payments to policyholders is actually a massive fraud against its shareholders—a baseless and defamatory narrative." Dkt. 38 ("Amended Complaint") ¶ 4. Defendants' discovery efforts are not "to harass Abacus and retaliate," but to defend itself in this litigation by seeking discovery on what Abacus asserts is the "core claim" at issue.

Please confirm that Abacus will not withhold documents based on this general objection.

**II. General Objection 2: "Abacus objects to the Requests to the extent they seek Documents that are not relevant to the claim or defense of any party, or not reasonably calculated to the lead to the discovery of admissible evidence."**

Defendants are permitted to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). In the Middle District of Florida, "[r]elevance is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Poleon v. Lines*, 2016 WL 1030803, at *1 (M.D. Fla. Mar. 15, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

In addition to this general objection, Abacus repeatedly, and in many cases improperly, objects to specific Requests on relevance grounds. As we noted above, in 34 of its Responses, Abacus states that it will only produce documents after meeting and conferring over search terms that "limit" the Request "to material relevant to the case." Abacus fails to explain why the Requests need to be limited or what portions of the Requests are irrelevant under the Federal Rules. To provide one example, Request 3 seeks "Documents and Communications concerning Lapetus's decision to cease operations on August 31, 2025." Abacus is wrong to assert that this Request is not relevant to the claims or defenses in this litigation when Abacus alleges in the Amended Complaint that Defendants' conduct caused Lapetus's business to dissolve. Am. Compl. ¶ 6.

Please confirm that Abacus will not withhold documents based on this general objection.

<u>**Abacus's Definitions and Instructions Contain Material Deficiencies.**</u>

**I. Objection to Definitions and Instructions: "Abacus" and "You."**






Abacus improperly attempts to reframe the definition of "Abacus" and "You" by providing alternative language that the Requests did not use. Defendants reject Abacus's purported rewriting of the definition. Abacus's purported redefinition of these terms would exclude, for example, the ABL Longevity Growth and Income Fund ("Fund"), which features prominently in its Amended Complaint, including several instances where Plaintiff seeks to speak for the Fund itself. *E.g.,* Am. Compl. ¶ 84 ("the Fund decided to use Lapetus because it knows Lapetus to be an honest broker. The Fund and Abacus have reason to believe that other LE providers have shared confidential policyholder data with Coventry to give Coventry a competitive edge in bidding processes. The Fund understands that Lapetus has not succumbed to Coventry's pressure to engage in these unfair and deceptive tactics.").

Please confirm that Abacus will withdraw its objections and use the definition as provided in Definition 1 of the Requests for the term "Abacus" and the definition provided in Definition 28 of the Requests for the term "You" to produce responsive, non-privileged documents.

**II. Objections to Definitions and Instructions: Undefined Terms.**

Abacus objects to five of Defendants' Definitions and two of Defendants' Instructions because they contain "undefined terms." *See* Definition Nos. 1, 4-6, 19; Instruction Nos. 14-15. However, as Defendants stated in number 29 of the Request's "Definition" section, "[w]here applicable, any word or term used in this Request but not defined above shall have its usual and ordinary meaning." This is consistent with the Middle District of Florida's procedure: "Words used in discovery normally should carry their plain and ordinary meaning unless the particular case requires a special or technical definition." Discovery Handbook § III.A.2. If Abacus believes that technical or special definitions are needed, the burden lies with Abacus to "specif[y] plainly and concisely" that such definitions are needed. *Id.* Abacus provided no such specificity.

To illustrate the irrationality of these blanket objections, Abacus—a life settlements company—objects to the Definition of "life expectancy estimates" because it uses the terms "calculations, projections, assessments, or evaluations." Abacus's own Amended Complaint uses the term "life expectancy estimate[s]" 15 times, and, by its own admission, Abacus "considers life expectancy estimates from at least half a dozen providers[.]"[7] Surely Abacus understands the meaning of life expectancy estimates and the calculations, projections, assessments, and evaluations that comprise them. Abacus's frivolous objection to this definition is another example of its obstructionist approach to discovery.

---

[7] Am. Compl. ¶ 7(b).






Please confirm that Abacus will withdraw these objections and use the definitions as provided in the "Definitions" section of the Defendants' Requests to produce responsive, non-privileged documents.

**III. Objections to Definitions and Instructions: Time Period.**

Abacus attempts to limit the time frame of the Requests by providing an alternative time period that Defendants did not use. Defendants reject this purported rewriting.

Abacus changed its business model in 2021 to focus on the secondary and tertiary life settlement markets.[8] This change would have required Abacus to value its policies for sales to third parties, as opposed to holding the policies until maturation as it did previously. As such, the facts that support the truthfulness of Defendants' at-issue statements arise from a time period beyond the *actual occurrence* of the alleged defamatory statements. Surely Abacus does not contend that an alleged defamatory statement cannot be truthful based on facts and conduct predating the statement in question. Hence, the conduct leading up to said statements is both relevant and material.

Please confirm that Abacus will withdraw this objection and use the time period from June 1, 2021 through the present to produce responsive, non-privileged documents.

**<u>Abacus's Responses to the Specific Requests Contain Material Deficiencies.</u>**

The below deficiencies relate generally to Responses where Abacus states that it will not produce responsive documents. To the extent Abacus intends to withhold documents responsive to Requests where it has sought to meet and confer, Defendants expect that any categories of documents Abacus intends to withhold will be discussed during next week's meet and confer.

**I. Lapetus Documents.**

Abacus's blanket refusal to produce documents in response to 20 Requests related to its relationship with Lapetus is entirely improper, because this relationship is at the heart of the claims and defenses in this litigation. *See* RFP Nos. 6, 13, 15-17, 28-30, 46, 64, 67, 70-71, 73-78, 80. As noted above,

---

[8] *See* Abacus Global Management, Inc., Registration Statement (Form S-1) at 66 ("In 2021, we shifted our focus from a service based only business model and began directly acquiring life insurance policies. Our first purchase under the expanded model was in June 2021, and the revenue related to that purchase is included in the Active management revenue line item in the accompanying financial statements for the period ended December 31, 2022. We have seen rapid growth in this segment as we have continued to dedicate capital and resources towards our marketing and diversified origination channels.").





in addition to its 213 references to Lapetus, Abacus's Amended Complaint alleges that "Defendants' core claim is that Lapetus life expectancies are too short, and that Abacus relies on those estimates to intentionally overvalue the policies it buys and sells." Am. Compl. ¶ 6.

The documents sought by Defendants' Lapetus-related Requests are discoverable. For example, Requests 15 through 17 request documents related to Abacus Chairman Jay Jackson and his relationship with Lapetus. These Requests stem from assertions made by Abacus in its Amended Complaint. *See, e.g.*, Am. Compl. ¶ 135 ("A prior unpaid nominal board position held by Mr. Jackson in which Mr. Jackson was in an advisory position, he did not have authority or capacity to act on Lapetus's behalf, and he was only minimally involved with Lapetus's operations."). Abacus's categorical refusal to produce any documents in response to Requests about this relationship—especially given Abacus's own Amended Complaint putting the relationship directly at issue—is utterly improper and sanctionable.

To take another example, Request 30 seeks "reports, analyses, evaluations, or studies concerning life expectancy estimates and methodologies prepared by, obtained from, or concerning Lapetus or any other third party." Again, Abacus refuses to produce documents. The importance of these documents to the litigation cannot be overstated. It is plainly improper for Abacus to withhold discovery concerning these core claims.

Please confirm that Abacus will withdraw the objections and produce responsive, non-privileged documents related to Lapetus.

**II. Abacus's Own Allegations.**

Abacus refuses to produce documents in response to Requests regarding specific factual assertations made in its own Amended Complaint. *See* RFP Nos. 13, 23, 57-59, 82-83. Discovery concerning the very allegations in a plaintiff's complaint is proper under any reading of the Federal Rules. *See Wanna Play Prods. Inc. v. Emery*, 2021 WL 3552296, at *2 (M.D. Fla. Mar. 12, 2021) ("[B]ecause these requests are limited by reference to the First Amended Complaint, the Court finds that these requests seek information that is relevant and proportional to the needs of the case.").

Among its list of boilerplate objections in response to many of these Requests, Abacus asserts an objection premised upon Section IV.C.2 of the Discovery Handbook, which relates to interrogatories. *See, e.g.*, RFP Nos. 58-59, 82-83. An objection applicable to contention interrogatories is irrelevant to these requests for production of documents. Nevertheless, even if this were a valid objection, Defendants have made their Requests in conformance with this local procedure. In fact, if contention interrogatories are used in the Middle District, they "should be





designed (1) to target claims, defenses, or contentions that the propounding attorney reasonably suspects may be the proper subject of early dismissal or resolution or (2) to identify and narrow the scope of unclear claims, defenses, and contentions." Discovery Handbook § IV.C.2. Defendants do this. For example, Request 59 seeks information regarding a specific company that Abacus alleges broke off its business talks because of Defendants statements. The information in Abacus's possession surrounding this allegation could both provide the subject of early dismissal (e.g., no such company exists, or Defendants' statements were not the basis for the end of the talks) or identify and clarify unclear claims and contentions. Indeed, vague references to an "intermediary representing a multi-trillion-dollar investment fund"[9] is hardly a sufficient factual basis to support Abacus's claims, and Defendants have properly requested clarifying documentation.

In addition, Abacus states that it will not produce documents responsive to Request 57, which seeks documents "concerning Hindenburg Research or Nate Anderson," because "no such documents exist." This is inconceivable given that Abacus's Amended Complaint asserts that "[a]s early as January 2024, Buerger had previously shopped a hit piece to Morpheus's predecessor, Hindenberg Research, but Hindenberg passed." Am. Compl. ¶ 154. If Abacus made such an allegation, it must have documents or information in its possession to support it.

Please confirm that Abacus will withdraw its objections and produce responsive, non-privileged documents related to its own allegations.

**III. Abacus's Business Practices.**

Contrary to Abacus's belief, Abacus's business practices are directly at issue in this litigation, and Abacus's refusal to produce documents responsive to Requests about Abacus's business practices is improper. *See* RFPs 13, 18, 25, 27, 33-34, 41-42, 48, 59, 64, 67, 70-71, 73-81, 87.

Among many others, Abacus's Amended Complaint alleges that Defendants:

- "[P]ublished multiple malicious and defamatory statements disparaging Abacus's business integrity and accusing Abacus of securities law violations as well as improperly inflating its enterprise valuation." Am. Compl. ¶ 154.

- "[S]pread[] false and misleading statements about Abacus's business." Am. Compl. ¶ 18.

- "[H]ave adversely affected Abacus's otherwise good business reputation." Am. Compl. ¶ 222.

[9] Am. Compl. ¶ 169.






- Claim "the very business model that Abacus uses to deliver greater value and higher monetary payments to policyholders is actually a massive fraud against its shareholders." Am. Compl. ¶ 4.

Because Abacus alleges that it had proper business practices and a good reputation that was tarnished by Defendants' allegedly defamatory statements, Defendants may seek discovery relevant to Abacus's business practices, such as those pertaining to its relationships with third parties, and any audits, exams, or similar reviews conducted of the business. This information is central and material to the claims and defenses in this litigation.

Please confirm that Abacus will remove its objections and produce responsive, non-privileged materials regarding its business practices.

**IV. Abacus's and Defendants' Similar Requests.**

Abacus refuses to produce documents in response to three Requests for which Abacus requested near-identical documents of Defendants, and Defendants agreed to production. *Compare* RFP Nos. 91, 93, 95 *with* Abacus's First Set of Requests for Production of Documents to Alan Buerger ("Buerger RFPs"), Nos. 62, 64-65 *and* Abacus's First Set of Requests for Production of Documents to Coventry First LLC ("Coventry RFPs"), Nos. 71, 73-74. Obviously, in a defamation action like this, Defendants are entitled to far more expansive discovery of Plaintiff than vice versa. But Abacus's request for essentially the same documents covered by Defendants in these Requests only underscores the relevance of these requests and Abacus's bad faith. Defendants therefore demand that Abacus remove its baseless objections to these Requests. In addition, due to the related and analogous nature of Request 94, Defendants request the same.

Please confirm that Abacus will withdraw the objections and produce responsive, non-privileged documents in response to Requests 91, 93, 94, and 95. If Abacus refuses to produce documents in response to these Requests, Defendants will seek a court ruling before producing documents responsive to the near-identical requests in the Buerger RFPs and Coventry RFPs.

* * *

As we have discussed, we anticipate discussing these deficiencies during next week's meet and confer call. We reserve all rights, including seeking appropriate sanctions.





Very truly yours,

__________________________

Michael H. McGinley