# EXHIBIT L



**DECHERT**



**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
+1 215 994 4000  Main
+1 215 994 2222  Fax

**Michael McGinley**
*Partner*

Michael.McGinley@dechert.com
+1 215 994 2463  Direct
+1 215 655 2131  Fax

November 26, 2025

**Via Email**

Alex Zuckerman
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 5th Avenue, 9th Floor
New York, New York 10016
alexzuckerman@quinnemanuel.com

> **Re:**   ***Abacus Global Management, Inc. v. Coventry First LLC et al.*, No. 25-cv-01401 (M.D. Fla. 2025) ("Abacus Litigation") – Discovery Meet and Confers on Parties' First Set of Requests for Production**

Counsel:

We write on behalf of Coventry First LLC and Alan Buerger (collectively, "Defendants") following our meet and confer calls on November 4, 5, and 7 (together, the "Meet and Confer"). This letter outlines our positions on the issues discussed during the Meet and Confer, seeks clarification where needed, and responds to your November 17 Letter to Defendants (the "November 17 Letter"). Defendants expressly reserve, and do not waive, their right to supplement these positions or seek further clarification from Abacus on its positions.

## I.      Abacus's Requests for Production to Defendants

Defendants set forth the following positions and responses[1] to Abacus's November 17 Letter regarding its First Set of Requests for Production to Defendants.[2]

---

[1] Defendants agree to produce responsive, non-privileged documents responsive to the following requests subject to negotiated search terms: Coventry/Buerger Request No. 10, Coventry Request No. 21/Buerger Request No. 23, Coventry Request Nos. 23-24/Buerger Request Nos. 25-26, Coventry Request Nos. 26-28/Buerger Request Nos. 28-29, Coventry Request Nos. 32-33/Buerger Request Nos. 33-34, and Coventry/Buerger Request No. 41.

[2] Where appropriate, "Buerger Request" or "Buerger RFP" shall mean Abacus's First Set of Requests for Production to Alan Buerger, "Coventry Request" or "Coventry RFP" shall mean Abacus's First Set of Requests for Production to Coventry First LLC, and "Abacus Request" or "Abacus RFP" shall mean Defendants First Set of Requests for Production to Abacus Global Management, Inc.



**DECHERT**

## Definition of Defamatory Statements

Abacus propounded numerous Requests for Production seeking documents related to the alleged "Defamatory Statements." *See* Buerger RFP Nos. 1, 27, 29, 32, 36, 38, 54, 57; Coventry RFP Nos. 1, 25, 28, 31, 36, 39, 56, 59. Defendants objected to these requests on the grounds that Abacus's definition of Defamatory Statements fails to limit the universe of such statements, leaving Defendants to have to guess as to what Abacus means. *See* Buerger Gen. Obj. No. 8, Coventry Gen. Obj. No. 11. During the Meet and Confer, Abacus indicated that every "instance" where defamation occurred was captured in the First Amended Complaint ("FAC"). But Abacus still refused to specify which statements it was challenging, declaring that its refusal was due to its desire not to amend its complaint if it were to somehow discover more allegedly defamatory statements. Defendants responded that this "hide the ball" strategy is improper, and Abacus's opposition to Defendants' motion to dismiss has only further muddled what Abacus actually views as the universe of "Defamatory Statements." Moreover, negotiating search terms could prove difficult if Abacus continues to refuse to clarify its position enough for us to conduct an adequate search for responsive documents.

Defendants stand on their objection to Abacus's definition of "Defamatory Statements" and each request incorporating this definition. Nevertheless, Defendants are willing to negotiate search terms and run an agreed upon set of search terms and produce responsive documents, to the extent feasible given Abacus's refusal to specify the precise universe of statements it alleges to be defamatory.[3]

## Personal Health Information

Both parties have acknowledged the potential sensitivities surrounding the sharing of personal health information that may be responsive to discovery requests on both sides. *See e.g.,* Abacus Request Nos. 1, 5, 6, 7, 11, 13, 19, 28-30, 40, 61-65, 79, 80, 85, 86; Coventry Request Nos. 2, 12, 14; Buerger Request Nos. 2, 12, 39; Buerger Obj. to Buerger Request No. 2; Abacus Obj. to Abacus Request No. 1.

However, your November 17 Letter now takes the position that "it is irrelevant how Lapetus creates [LEs] using the personal medical data." That is belied by the FAC's statement that, "Defendants' core claim is that Lapetus life expectancies are too short, and that Abacus relies on those estimates to intentionally overvalue the policies it buys and sells. This is false, misleading, and defamatory for several reasons, including that: a. Lapetus life expectancies are not less accurate than the estimates of any other life expectancy provider." FAC ¶ 7. Defendants' ability to measure the

---

[3] This does not apply to Coventry Request No. 31/Buerger Request No. 32 for the reasons discussed *infra*.



accuracy of Lapetus's LEs is critical to their defense. To be clear, we do not request an exchange of individual medical records underlying the individual LE reports.

In the interest of reaching a resolution and in light of your discussion in the November 17 Letter of the Coventry Studies, Defendants would be willing to produce the data tapes and underlying LE reports that Coventry sent to Professors Bauer and Zhu that were used in connection with the Coventry Studies if Abacus is willing to withdraw its objections to sharing of personal health information. This includes that, where responsive to Defendants' Requests and without limitation, Abacus will produce the data tapes for all tertiary pools that Abacus made available to buyers on the Tertiary Market for life settlements, as well as the underlying data and LE reports related to those pools, which could allow Coventry to prove the truth of any challenged statements by reviewing the accuracy of the data tapes. Please confirm whether you accept this proposal.

### Coventry Request Nos. 29-31/Buerger Request Nos. 30-32

The requests in Coventry Request Nos. 29-31/Buerger Request Nos. 30-32 seek "Documents and Communications between [Defendants] and any Government Entity" relating to Abacus, Lapetus, or the Defamatory Statements. During the Meet and Confer, Defendants indicated that we would not withdraw our objections to these requests because (1) these statements cannot form the basis of a defamation claim and (2) Defendants do not believe it is appropriate, without permission from the regulators themselves, to produce documents that may be part of a government investigation.

As an initial matter, Abacus' shotgun pleading and vague definition of Defamatory Statements makes it unclear whether any statement made to a government entity is alleged to be defamatory. Until Abacus decides to clarify whether and how it alleges that Defendants defamed Abacus in communications with government entities, Defendants stand on our relevance objection. Moreover, given the blunderbuss nature of Abacus's complaint and your refusal to clarify the precise universe of allegedly defamatory statements, it is nearly impossible to assess the applicability of relevant privileges. Thus, given Abacus's current allegations, Defendants maintain that any communications they had with government entities are protected by federal and state law privileges and thus cannot form the basis of a defamation claim. Florida law immunizes statements subject to certain privileges from defamation suits, including where, as here, they are "statements of a citizen to a political authority regarding matters of public concern" or statements where the speaker and audience have mutual moral, social, or legal interests or duties. *Nodar v. Galbreath*, 462 So. 2d 803, 809–10 (Fla. 1984). Courts have also long recognized a federal privilege that provides immunity from liability "to protect First Amendment petitioning of the government from claims brought under federal and state laws including … common-law tortious interference with contractual relations." *Silverhorse Racing, LLC v. Ford Motor Co.*, 232 F. Supp. 3d 1206 (M.D. Fla. 2017) (internal marks omitted) (noting that the *Noerr* doctrine has been "extended" beyond the



antitrust context).  Here, any statements responsive to these Requests would be statements made to a political authority regarding parties subject to that political authority's regulation and thus cannot make up the basis of Abacus's claims.

Finally, Defendants reiterate our concern with producing documents that could be part of an investigation undertaken by Coventry's and Abacus's regulators.  Notwithstanding Abacus's claimed ignorance of any investigation into it, Defendants will not produce any documents or communications with government entities without their approval.

Accordingly, Defendants will not produce any documents responsive to Coventry Request Nos. 29-31/Buerger Request Nos. 30-32, unless Abacus agrees that Defendants can first alert those government entities to the requests and provide them with the opportunity to object.

**Coventry/Buerger Request No. 42**

Abacus's Request No. 42 to both Defendants seeks, in relevant part, "Documents and Communications relating to [Defendants'] use of Lapetus as a Life Expectancy Provider[.]"  During the Meet and Confer, Defendants indicated that the bulk of Coventry's use of Lapetus came in instances where your affiliate, Carlisle Management SCA, requested Lapetus LEs.  We have confirmed that the *vast majority* of Lapetus LEs that Coventry provided to a buyer in connection with the purchase of a policy were provided to Carlisle.  At a minimum, Abacus should collect those documents from its own affiliate rather than burdening Coventry with identifying documents (which generally are not centrally stored or easily segregable) already in Abacus's possession.

You stated that you had "reason to believe" that Coventry used Lapetus in transactions with other entities.  Defendants maintain that these documents are irrelevant.  Abacus claimed that documents showing Coventry's use of Lapetus would demonstrate that Coventry did not believe what it says about Lapetus.  This argument misses the mark.  Defendants' chief concern with Abacus's use of Lapetus LEs is that it allows Abacus to overvalue the policies *already on its books*.  Thus, when Abacus makes its SEC disclosures using the inflated policy values from the Lapetus LEs, its representation of its financial position is inaccurate—threatening to tar the life settlements industry.  Because Coventry does not make those same public disclosures, this concern would not apply to Coventry.  In addition, there is a significant burden concerning this request.  Production in response to this request would require a review of countless documents and non-Lapetus LEs that may have been included in a tertiary market pool alongside or instead of Lapetus LEs, which would also involve the potential production of irrelevant, confidential trade secret materials by Coventry.



**DECHERT**

In the interest of reaching a resolution on this issue, and as contemplated *supra*, Coventry would be willing to produce Lapetus LEs that were provided to Professors Bauer and Zhu in connection with their work on the Coventry Studies.

**Coventry Request No. 43; Coventry Request Nos. 66-67**

Coventry Request No. 43 seeks "Documents and Communications relating to Your audited and unaudited consolidated financial statements from 2014 to present." Coventry Request Nos. 66-67 similarly seek "Documents and Communications relating to [Coventry's] profit margins on life insurance policies" and "Documents sufficient to show [Coventry's] revenues, profits, and market share." Defendants objected to these Requests on the grounds that they seek irrelevant, commercially sensitive information with no tie to Abacus's claims.

During the Meet and Confer and in the November 17 Letter, Abacus acknowledged these Requests' clear overbreadth and attempted to save Coventry Request No. 43 by narrowing the time frame of the Request to 2020 to present. Nov. 17 Letter at 6. Abacus further claims that Coventry's financial statements and information are probative of Mr. Buerger's mental state, including as to whether "Abacus's discount rate is 'not realistic.'" *Id.*

Coventry stands on its objections to this Request. To begin, Abacus's purported reason for the relevance of this Request—that it is probative of Mr. Buerger's mental state when he commented on Abacus's discount rate—is lacking.

First, it is unclear whether Abacus even alleges Mr. Buerger's statement regarding the 21% discount rate is defamatory. This statement is conspicuously omitted from Abacus's list of defamatory statements in its "Counts" section of the FAC, and the quoted language in the FAC mentions only that Mr. Buerger "stated that Coventry does not 'use a discount of 21%, because 21%, we all know . . . [is] not realistic.'" FAC ¶ 105.

Second, Abacus's explanation of relevance misses Mr. Buerger's central point in his critiques of Abacus: that Abacus's practices are improper for a *publicly traded company* who makes representations to the public. Abacus's decision to go public makes the accuracy of its discount rate (as well as the rest of its representations about its financial statements) a matter of public concern. The same cannot be said of private companies, like Coventry, whose financial statements and valuations are done only for the edification of their ownership.

Third, because this Request is not reasonably tethered to Abacus's claims and seeks confidential business information from a competitor, it is facially improper. *See Caliber Home Loans, Inc. v. Bales*, 2017 WL 8341699, at *2 (M.D. Fla. Aug. 17, 2017) (denying discovery on matters related



to "regular business practices" when those "business practices are not at issue here."). Coventry
will not permit its chief competitor, which brought this case, to use its defamation claims as a hook
to delve into the inner workings and finances of Coventry that are irrelevant to this action.

Accordingly, Coventry will not produce documents responsive to these Requests.

**Coventry Request Nos. 44-51/Buerger Request Nos. 43-49**

Abacus propounded Coventry Request Nos. 44-51/Coventry Request Nos. 43-49 which seek
documents relating to Coventry's internal valuation process and its transactions on the Secondary
and Tertiary Markets for life settlements. Defendants objected to these Requests on the grounds
that they seek irrelevant, commercially sensitive information about a competitor's core business
model with no relation to Abacus's claims. We additionally articulated the plain overbreadth of
these Requests. During the Meet and Confer, Abacus conceded the Requests' overbreadth but
contended that these Requests were relevant because they would offer a comparison point between
Coventry and Abacus. Given their overbreadth, Abacus offered slightly narrower formulations of
these Requests, while withdrawing Coventry Request No. 47/Buerger Request No. 49.

Defendants stand on their objections to these Requests. As above, these Requests seek documents
about the core business practices of Abacus's biggest competitor without any reasonable nexus to
Abacus's claims. The Middle District of Florida has denied discovery on matters relating to
"regular business practices" when those "business practices are not at issue here." *Caliber Home
Loans, Inc.*, 2017 WL 8341699, at *2. This is doubly true in instances where disclosure would be
to a competitor. *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 535 (M.D. Fla.
2003) ("courts have acknowledged that disclosure of confidential information to a competitor is
presumed to be harmful to the disclosing entity."); *see also United States v. United Fruit Co.*, 410
F.2d 553, 557 & n.11 (5th Cir.) (finding that a company would be harmed by disclosure of
confidential financial and marketing data to competitors); *Advanced Semiconductor Prods., Inc. v.
Tau Laboratories, Inc.*, 1986 WL 215149 (N.D.Cal.1986) ("[w]hen discovery by a competitor
could penetrate areas of business or scientific sensitivity, and when responding to that discovery
imposes burdens, it should not be sufficient simply to state that the material sought might lead to
the discovery of admissible evidence").

Further, Abacus's attempts to seek individual transaction data unrelated to its defamation claims
smacks of an effort to weaponize the discovery process to obtain commercially sensitive
information from a competitor. Indeed, as Abacus itself notes, this case puts at issue "the very
business model that *Abacus uses*," not the business model that Coventry uses. FAC ¶ 4 (emphasis
added). Finally, Abacus's relevance arguments again miss the key distinction between private and
public companies that is central to Mr. Buerger's statements. Abacus chose to become a public



company, which makes the accuracy of its financial statements a matter of public concern, as individual investors rely on the truthfulness of Abacus's representations.  That is not true of private companies like Coventry.

Accordingly, Defendants will not produce documents responsive to these Requests and will stand on their objections.

**Coventry Request No. 52/Buerger Request No. 50**

Coventry Request No. 52/Buerger Request No. 50 seeks "Documents containing any internal analysis of Abacus's transactions in the Secondary Market or Tertiary Market."  Defendants agreed to produce non-privileged documents responsive to this Request while withholding analyses relating to transactions where Coventry and Abacus competed directly.  While we dispute the substance of your arguments in the November 17 Letter, in the interest of reaching a resolution on this issue, we agree to produce documents responsive to this Request subject to negotiation regarding search terms.  Search terms for this Request will need to be limited to avoid unduly burdensome review and the production of irrelevant, and highly confidential, information.

**Coventry Request Nos. 58-59/Buerger Request Nos. 56-57**

Coventry Request Nos. 58-59/Buerger Request Nos. 56-57 seek "Documents and Communications between [Defendants] and any Life Expectancy Provider other than Lapetus relating to" Lapetus or the Defamatory Statements.  Abacus's November 17 Letter stated that, during our meet-and-confer, Defendants said that "if Abacus was willing to change its position and produce documents and communications with non-LE [sic] providers, the Defendants would do the same."  Nov. 17 Letter at 7.  This misrepresents Defendants' position.  Defendants' position was that we would not consider producing documents responsive to Requests that sought documents and communications with entities not related to Abacus's claims unless Abacus first showed willingness to produce Lapetus-related communications with other third parties.

Defendants are willing to produce non-privileged documents and communications responsive to this Request to the extent they relate to claims and defenses in this litigation (rather than anything at all concerning Lapetus).

**Coventry Request Nos. 60-61/Buerger Request Nos. 58-59**

Abacus conceded the overbreadth of the initially proffered Coventry Request Nos. 60-61/Buerger Request Nos. 58-59 and has fashioned new Requests more tethered to Abacus's claims.  Nov. 17



Letter at 7. Accordingly, Defendants will produce non-privileged documents responsive to the narrowed Requests set forth in the November 17 Letter.

**Coventry Request No. 68**

Coventry Request No. 68 seeks "Documents and Communications relating to any analysis of competitive threats posed by Abacus or the impact of Abacus's business model on Your business." Coventry objected to this Request on multiple grounds. During the Meet and Confer we articulated our belief that every document responsive to this Request would be captured by other requests. Abacus stated it believed there was a "delta" between this Request and others, such that there would be relevant documents responsive to this Request alone. Abacus did not discuss this Request in its November 17 Letter. Given that it was not mentioned in the November 17 Letter, please confirm that you are withdrawing this Request.

**Coventry Request No. 69**

Coventry Request No. 69 initially sought "Documents and Communications relating to Your attempts to securitize life insurance policies or create investment funds backed by life insurance policies for Tertiary Market investors." Coventry objected to this Request on the grounds that it was irrelevant to Abacus's claims because it had no tie to Abacus or Lapetus, and it requested commercially sensitive documents unrelated to Abacus's claims. During the Meet and Confer, we articulated that we did not understand the relevance of this Request given it has no facial tie to Abacus or Lapetus.

Abacus agreed in the November 17 Letter to narrow its Request as follows: "Documents and Communications sufficient to show the policy acquisition and valuation procedures of any investment fund that Coventry or Coventry's affiliates manage on behalf of Tertiary Market investors." Because neither Coventry nor its affiliates manage any investment fund on behalf of Tertiary Market investors, Coventry expects to have no documents responsive to this Request.

II.    **Defendants Requests for Production to Abacus[4]**

**Relevant Time Period**

---

[4] Defendants agree that the parties can attempt to resolve disputes concerning the following Abacus Requests through the negotiation of search terms: Nos. 26, 57, 61 (Defendants reserve their rights to seek additional documents over the course of search term negotiations given the key relevance of this Request), 62, 65, 73, 74, and 79. You also agreed that Abacus would produce documents responsive to Abacus Request Nos. 91-95 consistent with its ongoing duty to supplement.



Defendants instructed Abacus that the Relevant Period for the Abacus Requests was June 1, 2021, to the present day. *See* Instruction No. 23. Abacus objected to this Relevant Period on the grounds that it is overbroad and extends prior to the commencement of the alleged defamatory statements. Instead, Abacus insisted on using the date that Abacus went public.

During the Meet and Confer, Defendants explained that the requested time period was both relevant and reasonably tailored because it marks the beginning of Abacus's business model transition from life settlement origination to engagement on the Secondary and Tertiary Markets. *See* Abacus Form S-1, at 66. (filed July 25, 2023). Abacus's practices during this period—that is, while Abacus was still a private company but engaging in the Secondary and Tertiary Markets, including by using Lapetus LEs—would establish a baseline from which the factfinder could analyze future deviations. For example, if Abacus changed its valuation methods around the time it went public, including by using Lapetus life expectancies more frequently, documents before Abacus's go-public date would be necessary to (1) see that change in valuation method and (2) evaluate Abacus's motivations for making that change. Documents prior to Abacus going public—including its use of Lapetus in the earlier period—are thus highly relevant to Abacus's defenses.

Please confirm that your document production will use the Relevant Period as instructed by Defendants First Set of Requests for Production to Abacus.

**Abacus Request No. 9**

Request No. 9 seeks from Abacus "Documents and Communications concerning Your stock repurchase plans, including details of each trade and Your decisions to authorize such repurchases." Abacus initially sought to meet and confer to discuss the scope of this Request.

During the Meet and Confer, Defendants articulated that this Request relates directly to Abacus's allegations in the FAC, including its claim that Defendants engaged in defamation by implication by discussing the stock repurchase plan. FAC ¶ 214(f). Abacus questioned whether only documents concerning stock repurchase plans from prior to Mr. Buerger's statements were relevant. We stated that all documents responsive to this Request throughout the Relevant Period are relevant. For example, evidence that Abacus was or is undertaking stock repurchase plans to increase its stock price after any allegedly defamatory statements would go toward proving his statement's reasonableness.

Abacus did not raise any objections to Request No. 9 in its November 17 Letter. Accordingly, please confirm that you will produce non-privileged documents responsive to this Request.

**Abacus Request No. 14**



Request No. 14 seeks "Documents and Communications concerning (i) investments, (ii) convertible notes, or (iii) any other financial arrangements involving Lapetus."  Abacus initially sought to meet and confer to discuss the scope of this Request.  During the Meet and Confer, Defendants explained that this Request is tied to allegations in the FAC, where Abacus makes factual claims regarding the financial entanglements between Abacus and Lapetus in an effort to rebut Mr. Buerger's statements about the "unique relationship" between the two companies.  FAC ¶¶ 134–36.  Defendants thus seek documents responsive to this Request which is tied directly to the allegations in the FAC.

Abacus did not raise any objections to Request No. 14 in its November 17 Letter.  Please confirm that Abacus will produce non-privileged documents responsive to this Request.

**Abacus Request No. 16**

Defendants' Request No. 16 to Abacus seeks "Documents and Communications concerning Jay Jackson's co-authorship of any book or publication with any employee, officer, or affiliate of Lapetus, including Dr. Jay Olshansky, from July 26, 2018, to July 26, 2020."  Abacus has refused to produce any documents responsive to this Request, both in its initial Responses and Objections and in the November 17 Letter.  In light of Abacus's agreement to produce documents responsive to other Requests concerning Lapetus, including Request Nos. 15 and 17, Defendants are willing to withdraw this Request.

**Abacus Request No. 18**

Defendants' Request No. 18 to Abacus seeks "Documents and Communications concerning Your decision to enter into a business combination with East Resources Acquisition Company."  Abacus initially refused to produce any documents responsive to this Request, arguing this Request is irrelevant to the claims and defenses in this case.

During the Meet and Confer, Defendants explained that Mr. Buerger's alleged defamatory statements all relate to Abacus's status as a public company, thus information surrounding Abacus's *decision* to go public is all relevant to proving the truth or reasonableness of Mr. Buerger's statements.  Abacus then acknowledged that there is likely room for compromise on this Request, subject to search terms.  In the November 17 Letter, though, Abacus indicated it would



only run search terms pursuant to this Request if we could "tie" this theory "to any of the defamatory statements."

Putting aside Abacus's continuing failure to identify the universe of defamatory statements that we could "tie" this Request to, this Request is tailored toward proving the reasonableness of Mr. Buerger's sentiments about Abacus as a public company in the life settlements space. Mr. Buerger's concern about Abacus's business practices stems from the history of public company implosions in the life settlements industry. Abacus's documents and communications about its go-public transaction could provide evidence of the truth or reasonableness of Mr. Buerger's concerns. By way of an obvious example, if Abacus had discussions about the previous public life settlement company failures when making its decision to go public, and compared the practices of those companies to Abacus, it could point to the truth or reasonableness of Mr. Buerger's concerns.

Accordingly, please confirm that Abacus will produce non-privileged documents responsive to this Request.

**Abacus Request Nos. 22 & 23**

Defendants withdraw Request Nos. 22 & 23 to Abacus.

**Abacus Request No. 25**

Defendants' Request No. 25 to Abacus seeks "Documents and Communications between You and any insurance carriers or reinsurers regarding underwriting and Buy-Back Programs." During the Meet and Confer, we offered to narrow this Request. Our narrowed Request is below.

***Request No. 25:*** Documents and Communications between You and any insurance carrier or reinsurer or their respective affiliates concerning underwriting criteria for policies eligible for Your Buy-Back Programs.

Please confirm that Abacus will produce non-privileged documents responsive to this Request.

**Abacus Request No. 27**

Defendants' Request No. 27 to Abacus seeks "Documents and Communications concerning audits, exams, reviews, or investigations of Abacus conducted by any state or federal agency, including the Florida Office of Insurance Regulation."



Notably, unlike some of its other Responses, Abacus did not insist that there were no documents responsive to this Request.  *Compare* Abacus R&O to Request No. 41 *with* Abacus R&O to Request No. 27.  Instead, Abacus merely asserts that there have been no investigations into Abacus while seeming to claim this Request is irrelevant.  Nov. 17 Letter at 15.  Yet this Request is plainly relevant to proving the truth or reasonableness of Mr. Buerger's statements.  Any inquiries from state and federal regulators into Abacus's business could demonstrate the merits of Defendants' concerns about Abacus's business practices.

Accordingly, please confirm that you will produce documents responsive to this Request.  If no documents exist, please state as much.

**Abacus Request Nos. 31, 33 & 34**

You take issue with the inclusion of National Insurance Brokerage ("NIB") within these requests.

Defendants maintain that these Requests are relevant to the claims and defenses in this case.  Not only does Morpheus Research, which Abacus alleges is part of an ill-defined campaign of defamation, refer to the ties between Abacus and NIB, but the SEC's November 1, 2024 comment letter to Abacus noted several details with respect to Abacus's disclosures concerning NIB.  Abacus put that letter directly at issue, noting in its complaint, "the SEC issued the November 1 comment letter because Coventry contacted the SEC in October of 2024."  FAC ¶ 116.  The SEC's comments concerned potential related parties NIB and Lapetus.

Whether Abacus engaged in related party transactions with NIB is relevant to whether Abacus was making misrepresentations in its SEC filings, including in the very filing where it defends its disclosures relating to Lapetus.  That very filing stated that Abacus "has no significant contractual, transactional, or affiliate relationship with [NIB]."  Nov. 4, 2024 Letter to SEC.  Less than six months later, Abacus had "completed the acquisition of [NIB]."  Abacus Form DEF14A (Apr. 28, 2025).  Any misrepresentations within these SEC filings would go to the heart of the claims and defenses here, including the truth of Coventry and Buerger's views.

Accordingly, please confirm that Abacus will produce documents responsive to these Requests, including documents related to Abacus's decision to characterize its relationship with NIB as it did in its SEC filings.

**Abacus Request No. 38**

Defendants' Request No. 38 to Abacus seeks "Documents and Communications concerning Your 'Abacus Pays' portal or policy value calculator, including the methodologies used to approximate



policy values, all policy values generated by Your 'Abacus Pays' portal or policy value calculator, and the corresponding purchase price for every such policy that You acquired." During Meet and Confer and in its November 17 Letter, Abacus agreed to produce some documents responsive to this Request but would withhold "the underlying methodology [that] is competitively sensitive and not relevant."

Defendants do not agree with Abacus's unilateral narrowing of this Request. Abacus says that it is "the 'Abacus Pays' portal" that "has resulted in Abacus making larger life settlement payments to policyholders.," which is a key fact that would tend to support or refute the claims in this action. FAC ¶ 63. Abacus states that it provides policyholders with "the approximate NPV of their policy based on basic demographic characteristics, policy type, and face value." Defendants seek documents that would support that assertion, which include both the inputs and outputs of the Abacus Pays portal as well as the life expectancy table(s) and discount rate(s) used in connection with the Abacus Pays portal or policy value calculator. Given that Abacus's own filing ties its claims against Mr. Buerger to the mechanics of the "Abacus Pays" portal, Defendants do not agree to narrow this Request.

Accordingly, please confirm that you will not withhold documents responsive to this Request.

**Abacus Request Nos. 41 & 42**

Defendants' Request Nos. 41 & 42 to Abacus seek, in short, "Documents and Communications concerning any Asset-Backed Loan" or "Documents and Communications with any Asset-Backed Lender."

Abacus represented that no such documents exist. During the Meet and Confer, Abacus indicated that Abacus was not sure what is meant by "asset-backed debt" but has no asset-backed debt in the way that it is traditionally understood. In its November 17 Letter, you represented that Abacus does not have and has never had "debt secured by assets" and that it has never "considered" such debt. Please confirm whether Abacus's response remains the same assuming that our definition includes: indebtedness, obligations, or other liabilities secured, directly or indirectly, by assets or by the proceeds derived therefrom.

**Abacus Request No. 46**

Defendants' Request No. 46 to Abacus seeks "Documents and Communications with Your investors and prospective investors concerning Lapetus and Lapetus's life expectancy estimates." Abacus has largely agreed to produce documents responsive to this Request, but "reserve[s] the



**DECHERT**

right to redact investor names to protect confidential business relationships[.]" Nov. 17 Letter at 9.

Defendants do not accept Abacus's unilateral narrowing of this Request. The parties' Confidentiality Agreement exists to permit Abacus to designate, as appropriate, documents related to these "confidential business relationships." Abacus's desire to withhold these names is even more improper given that Abacus's claims and theory of damages depend on allegations that Mr. Buerger communicated with investors and Abacus lost prospective investors. FAC ¶¶ 183–85, 216(c).

**Abacus Request No. 48**

Defendants' Request No. 48 to Abacus seeks "Documents and Communications from January 1, 2015, through December 31, 2017, concerning Your application for a life settlement provider's license in Florida, including all Documents and Communications concerning the Florida Office of Insurance Regulation's denial of Your application."

Abacus has stated it will not produce documents responsive to this Request, arguing during the Meet and Confer and in its November 17 Letter that this Request is not relevant to Abacus's defamation claims. Nov. 17 Letter at 15–16.

Defendants disagree. Mr. Buerger's statements manifest his concerns about Abacus and its business practices. The reasons why the Florida Office of Insurance Regulation refused to grant Abacus a life settlement provider's license could certainly indicate a pattern of questionable business practices which give credence to Mr. Buerger's concerns. This is especially true given Abacus's core leadership—including Messrs. Jackson, McNealy, Ganovsky, and Kirby—were in place in 2017 and remain in place today.

In the interest of resolving this dispute, Defendants are willing to narrow this Request to: Documents sufficient to show the reason or reasons for the Florida Office of Insurance Regulation's denial of Your application for a life settlement provider's license in Florida.

Accordingly, please confirm that you will produce documents responsive to this narrowed Request.

**Abacus Request No. 64**

Defendants' Request No. 64 to Abacus seeks "Documents and Communications with or concerning ClearLife Limited, ClearLife LLC, or any affiliated person or entity, including any data related to life expectancies." Abacus has refused to produce any documents responsive to this Request.



However, Abacus has also stated that all documents and communications responsive to this Request that relate in any way to Lapetus will be produced in response to other Requests from Defendants. In light of that representation, and without prejudice to any future requests for production that may provide information concerning the potential for additional relevant documents, Defendants agree to withdraw this Request.

**Abacus Request No. 67**

Defendants' Request No. 67 to Abacus seeks, in short, "Documents and Communications with or concerning the Terry Group or any of its personnel[.]"  Abacus initially declared it would not produce documents responsive to this Request.  Then in the November 17 Letter, Abacus represented that it has not worked with the Terry Group in a way that is relevant here.

Defendants cannot accept your representation that Abacus is "unaware" of any work with The Terry Group "that is relevant here."  We understand that documents concerning the Terry Group or its personnel are relevant to the accuracy of Lapetus LEs. Abacus must conduct a reasonable search for documents responsive to this Request.

**Abacus Request Nos. 68–72**

Defendants' Request Nos. 68–72 to Abacus seek "Documents and Communications with or concerning" Piper Sandler & Co., Northland Securities, B. Riley Securities, TD Cowen, and TD Securities "including any Documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; the Morpheus Reports; and Your transactions and financial arrangements with" these entities.

During the Meet and Confer and in the November 17 Letter, you agreed that documents related to Lapetus and the Morpheus report and the responses thereto were relevant.  We expect that documents related to those issues, and any related stock ratings issued by the named entities, will be produced.  You believed these Requests may be overbroad to the extent they also seek documents related to all transactions between Abacus and these entities.

But these transactions are relevant.  To the extent these financial institutions with whom Abacus does business have raised concerns similar to those of Defendants, those concerns would tend to support Defendants' defenses.

In the interest of a good faith resolution of discovery issues, Defendants propose the following narrowed version of Request Nos. 68–72: "Documents and Communications with or concerning



[each entity named or referenced in Request Nos. 68-72], including any documents related to Your and Lapetus's business practices and valuation methods; reports, analyses, or ratings of Abacus; and the Morpheus Reports." Defendants' removal of language concerning "Your transactions and financial arrangements with" each entity is not meant to permit the exclusion of any document or communication that concerns Abacus's valuation, LEs, or life insurance policy values, even if the document or communication was created in the context of an unrelated transaction. We believe the proposed narrowing can be accomplished through the negotiation of appropriate search terms.

**Abacus Request Nos. 75 & 80**

Defendants' Request Nos. 75 & 80 seek "Documents and Communications with or concerning" KKR & Co. and Nova Trading (US) LLC, a KKR affiliate. Abacus refused to produce documents responsive to these Requests, contending that its joint venture with KKR falls outside of the "relevant time window." Nov. 17 Letter at 14.

Defendants dispute that Abacus's "relevant time window" controls here. As discussed *supra*, Defendants' Relevant Period extends back to June 2021, which would cover Abacus's joint venture with KKR and the related party transactions therein. Second, Nova (as well as Abacus executives' ownership interest) is all over Abacus's current disclosures, appearing in every single quarterly filing by Abacus during its proposed relevant period. Just this month, Abacus stated, "The Company earned $— and $56,539 in service revenue related to the Nova Funds for the three months ended September 30, 2025 and 2024, respectively. The Company earned $— and $362,394 in service revenue related to the Nova Funds for the nine months ended September 30, 2025 and 2024, respectively. The Company at times purchased policies it serviced for the Nova Funds for active management trading purposes. As of September 30, 2024 the Company paid $65,900,029 to acquire policies from the Nova Funds." Abacus Form 10-Q (Nov. 7, 2025).

Abacus also stated in its most recent proxy:

> [t]he Company provides certain life settlement policy servicing and origination services, respectively, to Nova Trading (US), LLC … and Nova Holding (US) LP … Jay Jackson, Sean McNealy, Matthew Ganovsky and Scott Kirby jointly have an indirect minority ownership interest in the Nova Funds. The Company earns service revenue by providing administrative work to keep life insurance policies in force at the most advantageous premium levels on behalf of the Nova Funds … The Company earned $471,094 in service revenue from the Nova Funds for the year ended December 31, 2024. *The Company may at times purchase policies it services for the Nova Funds for active management trading purposes. During 2024, the Company paid $98,400,029 to acquire policies from the Nova Funds.*



> *The Nova Funds sold their entire life policy settlement portfolio during 2024.* The
> Company earned $471,094 in service revenue from the Nova Funds for the year
> ended December 31, 2024 and $0 for the three months ended March 31, 2025."
> Abacus Form DEF14A (Apr. 28, 2025) (emphasis added).

We stand on our Request, including the requested time period, though we agree that this Request
will be addressed through search terms and custodians.

**Abacus Request Nos. 76 & 77**

Defendants' Request Nos. 76 & 77 seek documents related to Societe Generale and Ladenburg
Thalmann & Co. Abacus initially refused to produce documents responsive to these Requests but
indicated an openness during the Meet and Confer. In the November 17 Letter, though, Abacus
did not address these Requests. Please confirm that you will produce documents responsive to
these Requests.

**Abacus Request No. 78**

Defendants' Request No. 78 to Abacus seeks "Documents and Communications with or concerning
Manorhaven Capital LLC and any of its affiliates, including Documents relating to Abacus's and
Lapetus's business practices and any transactions and financial arrangements with Manorhaven
Capital LLC or any of its affiliates."

Notably, Manorhaven served as Carlisle's investment banker in Abacus's acquisition of Carlisle.
Yet, Abacus has refused to produce documents responsive to this Request, arguing that it "falls
beyond the scope of this case." Nov. 17 Letter at 11.

Defendants disagree. The Carlisle transaction, which Abacus seemingly finds relevant in agreeing
to produce documents responsive to Abacus Request No. 19, is relevant to the truth or
reasonableness of Mr. Buerger's statements about Abacus's business practices. As noted in the
Morpheus Report, Carlisle had a history of potential issues with inaccurate valuations of the assets
held by the funds it controlled.[5] Any discussions with Manorhaven about the acquisition of Carlisle
and its history of potentially overvaluing assets are directly relevant.

Please confirm that you will produce documents responsive to this Request.

---

[5] *Abacus Global Management: This $740 Million SPAC Is Yet Another Life Settlements Accounting Scheme
Manufacturing Fake Revenue By Systematically Underestimating When People Will Die*, Morpheus Rsch.
(June 4, 2025), https://www.morpheus-research.com/abacus/.



**DECHERT**

**Abacus Request No. 81**

Defendants withdraw Request No. 81 to Abacus.

**Abacus Request No. 87**

Defendants' Request No. 87 to Abacus seeks "Documents and Communications concerning any meeting of Your Board of Directors or any committee thereof, including any special, regular, and executive sessions, and including any agendas, board packets, minutes, transcripts, recordings, notes, presentations, and any other materials from Your Board of Directors or any individual director or attendee."

During the Meet and Confer, the parties agreed that this Request should be narrowed to include only documents relevant to the claims and defenses in this litigation, including without limitation Coventry, Lapetus, the Morpheus Report, and the accuracy of LEs. Abacus agreed not to withhold any non-privileged documents responsive to this Request. Please confirm this understanding.

                              *        *        *

Defendants reserve all rights regarding their Requests and Responses and Objections, including the right to amend or supplement them.

Very truly yours,

_____
Michael H. McGinley