# EXHIBIT N



**Dechert LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
+1 215 994 4000  Main
+1 215 994 2222  Fax

---

**Michael McGinley**
*Partner*

Michael.McGinley@dechert.com
+1 215 994 2463  Direct
+1 215 655 2131  Fax

December 23, 2025

**Via Email**

Alex Zuckerman
QUINN EMANUEL URQUHART & SULLIVAN LLP
295 5th Avenue, 9th Floor
New York, New York 10016
alexzuckerman@quinnemanuel.com

> Re:   *Abacus Global Management, Inc. v. Coventry First LLC et al.*, No. 25-cv-01401 (M.D. Fla. 2025) ("Abacus Litigation") – Discovery Meet and Confers on November 4, 5, and 7 on Parties' First Set of Requests for Production

Counsel:

We write to supplement our November 26, 2025 Letter and respond to your December 12, 2025 Letter on behalf of Abacus concerning discovery in this matter.[1]

**I.   General Issues**

**Defamatory Statements**

Your December 12 Letter again failed to define the universe of alleged defamatory statements. In our initial Responses and Objections to Abacus's First Set of Requests for Production to both Defendants, we objected to your definition of "Defamatory Statements" as "ambiguous" because it "fail[ed] to define the universe of alleged defamatory statements." We raised the issue during our meet and confer calls, and you admitted that you did not want to specify exactly which statements were defamatory because you did not want to have to amend your complaint upon the potential discovery of new allegedly defamatory statements, but that each forum or occurrence of

---

[1] The following terms shall have the following meanings: "Abacus Request" shall refer to "Defendants' First Set of Requests for Production to Plaintiff Abacus Global Management," "Coventry Request" shall refer to "Plaintiff Abacus Global Management's First Set of Requests for Production to Defendant Coventry First LLC," "Buerger Request" shall refer to "Plaintiff Abacus Global Management's First Set of Requests for Production to Defendant Alan Buerger," "November 26 Letter" shall mean "Defendants' November 26 Letter to Plaintiff Abacus Global Management Re:  Discovery Meet and Confers on Parties' First Set of Requests for Production," and "December 12 Letter" shall mean "Plaintiff Abacus Global Management's December 12 Response Letter."



December 23, 2025<br>Page 2

defamation was contained in the First Amended Complaint—without ever specifically identifying what these fora or occurrences were.

You have listed some allegedly defamatory statements in the Amended Complaint's recitation of the claims, while insisting that your allegations go further. Yet, you have repeatedly refused to specify the precise contours of your allegations. Litigation is not supposed to be a guessing game for the Defendants. In our November 26 Letter, we repeatedly emphasized that your failure to identify what statements are defamatory has infected the parties' discovery efforts and has made it nearly impossible to ascertain the bounds of relevance in this litigation. *See* Nov. 26 Letter at 2, 3, 5, 11.

This basic defect remains uncorrected. The Abacus case is, at its core, a defamation lawsuit brought against Coventry and Alan Buerger. The key component of a defamation suit is the identification of statements alleged to be defamatory, and in turn, defenses to a defamation suit necessarily depend on the content of those statements. As with any other lawsuit, discovery is critical to developing the facts relevant to the claims and defenses—here, whether a statement is true or false. But all of this depends on what the challenged statement actually is. Where, as here, a party bringing a defamation suit fails to identify what specific statements are defamatory, fact development into the truth or falsity is stunted—because facts cannot be developed to determine the truth or falsity of an unknown and unidentified statement.

At this stage, Abacus's failure to identify what statements it is challenging has infected the specific discovery requests propounded in this litigation. Take, for example, Abacus's assertions that discovery related to National Insurance Brokerage ("NIB") and Manorhaven Capital are irrelevant even though they are based on topics related to the Morpheus Report. Your December 12 Letter declares that "this case is not about the Morpheus Report" and "not everything in that Report is relevant to the claims and defenses in this case." Dec. 12 Letter at 6, 8. But your complaint, which references the "Short Report" 38 times, tells a different story. Abacus alleges that:

- Morpheus "put[] out the Short Report **based on Defendants' lies**," FAC § V header (emphasis added);

- Buerger and Coventry **have been working on this dossier** since 2023," FAC ¶ 153 (emphasis added);

- "**Coventry has finally dealt Abacus substantial reputational harm through the** Tegus Interview and the **Short Report**," FAC ¶ 164 (emphasis added);



December 23, 2025<br>Page 3

- Morpheus was an "amplifier for their false and misleading statements aka when the Short Report was published." FAC ¶ 183;

- The Morpheus report is related to your various theories of damages. *See e.g.*, FAC ¶¶ 162–63, 167, 169, 171, 172, 176, 178–82;

The bounds of relevance in this case are necessarily governed by the content of the alleged defamatory statements. Abacus cannot use the ambiguities of its claims as both a sword to assert its claims and a shield to avoid discovery. *Cf. Wanna Play Prods. Inc. v. Emery*, 2021 WL 3552296, at *2 (M.D. Fla. Mar. 12, 2021) ("because these requests are limited by reference to the First Amended Complaint, the Court finds that these requests seek information that is relevant and proportional to the needs of the case").

Your repeated refusal to identify what statements you are challenging (or even which fora they were made in) makes it impossible to determine which topics fall within Rule 26 for the purposes of this litigation and which do not. Accordingly, Defendants again demand that you identify what statements you are challenging as defamatory.

**Personal Health Information**

Your December 12 Letter indicates your unwillingness to produce individual health data because, you contend, that "second-guessing LEs is not necessary to test the truth or falsity of Defendants' statements." Dec. 12 Letter at 2.[2] But this ignores that Abacus also brings a FDUTPA claim premised upon Defendants' "statements directed at Lapetus," where "Defendants' core claim is that Lapetus life expectancies are too short." *See* FAC ¶¶ 6, 242. Thus, those LEs are, at a minimum, highly relevant to Abacus's FDUTPA claim. And in reality, the accuracy of Lapetus's LEs are in fact relevant to Abacus's claim that the Defendants defamed it based on its reliance on Lapetus's LEs.

However, in the interest of solving our disputes, Defendants are willing to agree not to seek (or produce) individual health information or underlying LE reports. Further, Coventry is willing to accept LEs in a database or data tape format in the manner that Abacus has produced LEs to others, including Lewis & Ellis. Defendants reserve the right to seek specific individual health data at a later time should the accuracy of any specific LEs come into question.

---

[2] Discussion of Coventry Buerger Request No. 42, seeking documents sufficient to show Coventry/Buerger's use of Lapetus LEs, is discussed *infra*.



**II. Abacus's Requests for Production to Defendants[3]**

**Coventry Request Nos. 29-31/Buerger Request Nos. 30-32**

Your December 12 Letter asks us to "confirm that the Parties are at an impasse on these requests" and provide availability for a meet and confer prior to a motion to compel.  Dec. 12 Letter at 3. This is based on your assertions that (1) Abacus is not under investigation by any Government Entity, (2) investigatory privilege cannot be asserted, and (3) there is no doctrine barring discoverability of statements to a government entity for defamation claims.

But these arguments miss the mark.  Abacus's ignorance of a potential government investigation into it does not and cannot control discovery.  That is why the investigatory privilege exists in the first place—to keep confidential sources of information in the possession of the government that have not yet been made available to others, including the investigation's target and relevant third parties.  And that is why Defendants intend to seek permission from regulators to produce documents—because those regulators may wish for these documents to remain confidential until the government is ready for them to be made available.

In the interest of cooperation, Defendants are willing to produce Coventry's communications responsive to these Requests subject to (1) approval or acquiescence from the relevant regulators and (2) your identification of which statements constitute the "Defamatory Statements" as referenced in Coventry Request No. 31/Buerger Request No. 32.

**Coventry/Buerger Request No. 42**

Your December 12 Letter similarly seeks to confirm whether we are at an impasse regarding Coventry/Buerger Request No. 42, concerning Coventry's use of Lapetus LEs.  December 12 Letter at 3–4.  Your December 12 Letter also indicates that you will only produce the LE information shared with Tertiary Market purchasers if Coventry provides documents sufficient to show every instance of Coventry's use or purchase of a Lapetus LE.  Dec. 12 Letter at 2.  We believe this dispute can be resolved.

Your position fails to address our objections.  As discussed above and in our November 26 Letter, Abacus already has in its possession numerous documents showing that Coventry purchased LEs from Lapetus to sell policies to Abacus's affiliate, Carlisle.  Nov. 26 Letter at 5.  However, in the interest of cooperation and narrowing our disputes, Defendants are willing to produce all Lapetus

---

[3] Defendants agree that the following Requests are no longer in dispute: Coventry & Buerger RFP Nos. 1-28, 33-42, and 52-63; Coventry RFP Nos. 32, 49, 64, 65, 68, 69, 70, 71, 72; Buerger RFP Nos. 29, 47, 50, 51.



December 23, 2025<br>Page 5

LEs that Coventry has purchased, consistent with the database format described above concerning Personal Health Information.

**Coventry Request Nos. 43-51 & 66-67/Buerger Request Nos. 43-49**

Your December 12 Letter also seeks to confirm that we will not produce documents responsive to the above Requests, which seek documents related to Coventry's core business with no discernable connection to your claims that Defendants defamed you. We confirm that understanding.

You are incorrect that we have failed to offer any justification for not producing documents responsive to these Requests. Your fishing expedition into Coventry's core business operations is improper because this is a defamation claim purporting to challenge a handful of (still unidentified) statements that Defendants have allegedly made about Abacus. Abacus cannot abuse the litigation process by using its narrow (and still ambiguous) claims to conduct sweeping competitive intelligence on Coventry. That is simply improper, and you have provided no basis or authority to justify it.

Moreover, your attempt to minimize the distinction between Coventry's position as a private company and Abacus's obligations as a public company is similarly unavailing. The difference in regulatory and disclosure regimes that govern the two types of companies is a key distinction that is relevant to (what we presume to be) the allegedly defamatory statements. It is precisely the *public* nature of Abacus's representations, including without limitation press releases and regulatory filings, that gave rise to the alleged statements and this dispute. In short, nearly every concern Defendants articulated regarding Abacus stems from the fact that Abacus is a public company subject to different regulatory and disclosure regimes than Coventry as a private company.

Finally, the Parties' Confidentiality Agreement does not magically make relevant or proper your irrelevant and improper discovery requests. Defendants would still be heavily burdened by the turning over of our proprietary business information to a competitor when that information is not probative of the claims or defenses in this litigation.

We confirm that we will not produce documents responsive to these Requests.

**III. Defendants' Requests for Production to Abacus[4]**

---

[4] Defendants agree that the following Requests are no longer in dispute: Abacus RFP Nos. 1-5, 7, 8, 10-12, 15-26, 28-30, 32, 35-37, 39, 40, 42-75, and 79-95.



December 23, 2025
Page 6

**Relevant Time Period**

Your December 12 Letter states that "Abacus maintains that the Relevant Time Period begins on July 3, 2023" for all requests other than Request No. 18, for which Abacus will produce documents back to January 1, 2023.

Defendants do not accept this proposal. As explained in our November 26 Letter, documents dating to June 1, 2021, are relevant to proving the truth of Defendants' statements, as documents in this period offer a baseline of Abacus's business practices that would allow Defendants to identify any changes in practices that Abacus undertook when it began contemplating going public. Nov. 26 Letter at 9.

Moreover, this period would provide necessary and relevant information concerning the relationship between Abacus and Lapetus, which underlies all of Abacus's claims. Discovery produced to date confirms the relevance of this earlier period. *See, e.g.*, ABL_MR_0003763 (Morpheus-produced Feb. 3, 2022 article noting that Abacus CEO Jay Jackson "is so impressed with a new service provided by Lapetus Solutions Inc. that he has put the firm on his list of primary life expectancy providers he uses to price policies" and quoting Jackson himself as saying, "I'm not suggesting that Lapetus is always right, but it's another source of data that is useful in making an investment decision."); LSI000024 (Lapetus-produced Nov. 20, 2020 email from Jackson to Lapetus CEO Jay Olshansky inviting him to an "intro call" with Abacus's business partner, KKR).

Examples like these, which reflect Abacus's decision making regarding making Lapetus a "primary" LE provider and inviting that LE provider to calls with its business partners, are directly relevant to the claims and defenses in this action.

Accordingly, Defendants seek to meet and confer on this topic prior to the filing of a motion to compel.

**Abacus Request No. 9**

Your December 12 Letter asks us to provide our "authority" for "reasonableness" as a defense to a defamation claim in order for you to produce documents responsive to this Request. But this is merely an attempt to cherry-pick one word from a longer response in order to avoid the actual thrust of the argument made in our November 26 Letter. There, we indicated that this Request is relevant because the FAC calls Mr. Buerger's statement regarding Abacus's stock repurchase plan "false and misleading." Nov. 26 Letter at 9; FAC ¶¶ 146, 146(f), 214.



Of course, you still have not specified which statements referenced in the FAC you allege to be defamatory. But assuming that you are challenging Mr. Buerger's statement about Abacus's stock repurchase plan as defamatory, this Request is clearly relevant. You appear to take issue with producing documents concerning Abacus's stock repurchase plans that followed Mr. Buerger's alleged statements. But those documents could tend to show Abacus's intent to pursue stock repurchases or could reference earlier conversations or considerations regarding potential repurchases.

Accordingly, either clarify that you are not alleging this statement to be defamatory or confirm whether you will produce documents responsive to this Request throughout the Relevant Period. If not, Defendants wish to meet and confer in anticipation of a motion to compel.

**Abacus Request No. 27**

Your December 12 Letter declares that "no responsive documents exist" regarding this Request, which seeks documents and communications concerning "audits, exams, reviews or investigations of Abacus" by government agencies. Yet, on November 1, 2024, the SEC sent a comment letter to Abacus, evidencing that at least some sort of "review" of Abacus had occurred. *See* SEC Comment Letter to Abacus at *1 (Nov. 1, 2024) ("We have conducted a limited review of your registration statement"); *id*. at *2 ("Please allow adequate time for us to review any amendment prior to the requested effective date of the registration statement.").

Please explain why you stated no documents exist responsive to this Request while omitting any discussion of the SEC Comment Letter and any other responsive documents concerning the referenced review or any other audits, exams, reviews, or investigations.

**Abacus Request Nos. 31, 33 & 34**

As discussed above, you refuse to produce documents responsive to these Requests regarding National Insurance Brokerages ("NIB"). In doing so, you assert that "this case is not about the Morpheus Report." Yet, the FAC makes numerous allegations about Defendants' purported role in carrying out the Morpheus Report, alleges damages stemming from the Morpheus Report, and even threatens further litigation against Coventry from Abacus executives because of statements in the Morpheus Report. *See supra*; FAC ¶ 159(e) n.26. If Abacus now believes "this case is not about the Morpheus Report," it is free to seek leave of court to amend its complaint, remove the dozens of references to the report, and strike its multiple theories of damages that depend on the report. Absent that, the content of the Morpheus Report, including its discussion of NIB and Abacus's potential related party transactions, is germane to this litigation.



December 23, 2025
Page 8

Further, your December 12 Letter fails to explain how the FAC's repeated citations to an SEC comment letter and response that involve NIB, do not subject Abacus to discovery concerning that letter. As we noted in our November 26 Letter, Abacus put that letter directly at issue, noting in its complaint, "the SEC issued the November 1 comment letter because Coventry contacted the SEC in October of 2024." FAC ¶ 116.

While Abacus might wish to hide from discovery one of the three issues raised in that brief letter, the truthfulness and accuracy of that letter is directly relevant to the claims and defenses in this action—as is Abacus's treatment of potential related parties. Your client chose to plead a sweeping, blunderbuss complaint. Defendants are entitled to conduct discovery on all of the topics that your client chose to include in that pleading.

Accordingly, Defendants wish to meet and confer on these requests in anticipation of the filing of a motion to compel.

**Abacus Request No. 38**

You refuse to produce documents responsive to this Request unless "Defendants can tie aspects of the Portal to the actual subject matter of the defamatory statements." Dec. 12 Letter at 6. Yet, you refuse to identify which statements are defamatory, making it impossible to ascertain what the "actual subject matter" of those statements is. Because of this, Defendants will not withdraw this Request unless and until Abacus identifies which statements it is challenging.

**Abacus Request Nos. 41 & 42**

We appreciate your representation that Abacus has no asset-backed debt. For clarity's sake, we also ask you to confirm that there are no documents from the relevant time period concerning asset-backed debt as defined in the November 26 Letter, including any conversations, discussions, or other communications contemplating, evaluating, or in any way referencing asset backed debt.

**Abacus Request Nos. 75 & 80**

In light of third-party discovery received since our last correspondence and discussed above, we believe that correspondence concerning KKR and Nova Trading dating back to at least November 2020, is relevant to this dispute. Further, while you agree to produce only "information and data tapes sufficient to show the terms of transactions of insurance policies with KKR and/or Nova Trading" in your December 12 Letter, we assume that, consistent with our conversations during the meet and confer calls, you will also produce documents and communications concerning Lapetus



as they relate to these Requests. Please confirm whether you are willing to produce documents responsive to Request Nos. 75 and 80, as written, using a time period beginning November 1, 2020.

**Abacus Request Nos. 76 & 77**

Your December 12 Letter asks us to clarify the relevance of these Requests. Dec. 12 Letter at 7. It is our understanding that both Societe Generale and Ladenburg Thalmann have served as book-runners for or have otherwise serviced Abacus's various securities offerings.[5] Given the relevance of your decision to become a public company, the thrust of Mr. Buerger's statements pertaining to your actions as a public company, and your allegations that Mr. Buerger made false statements about your plans regarding securities offerings, these document requests are plainly relevant.

**Abacus Request No. 78**

Like the requests pertaining to NIB, you refuse to produce documents responsive to this request concerning Manorhaven. December 12 Letter at 7–8. But those documents pertain to Abacus's acquisition of Carlisle, which was discussed in the Morpheus Report.

As explained above, Abacus's contention that the Morpheus Report is somehow no longer part of this litigation is unavailing. After glibly stating that, "unless Defendants wrote the Morpheus Report, not everything in that Report is relevant to the claims and defenses in this case," you ask Defendants to "provide the basis, if any, connecting the statements in the Morpheus Report about Carlisle to Abacus's allegations against Defendants."

That basis is laid out explicitly in Abacus's complaint. Under the header, "Defendants' False Claims Harm Abacus's Most Recent Major Acquisition," Abacus alleges: "[f]ollowing the release of the Short Report, Carlisle's pipeline has shrunk, and it has been as a direct result of investors questioning Carlisle's corporate parent (Abacus) and its practices." FAC § VI.B Header & ¶ 176. Any reasonable reader would view Abacus's allegations to include the Morpheus Report's discussion of the Carlisle transaction. But, again, this disagreement seems to flow directly from Abacus's refusal to specify which allegations in its voluminous complaint actually make up its claims.

---

[5] *See e.g.*, Press Release, *Abacus Life, Inc. Prices Public Offering of $25 Million Additional 9.875% Notes Due 2028*, Abacus Global Mgmt. (Feb. 13, 2024) ("Piper Sandler & Co., A.G.P. / Alliance Global Partners, and Ladenburg Thalmann & Co. Inc. are serving as joint book-running managers for the offering"); Prospectus, Offer to Exchange Warrants to Acquire Shares of Common Stock (July 28, 2025) ("The dealer manager for the Offer and Consent Solicitation is: SOCIETE GENERALE").



December 23, 2025
Page 10

Please confirm whether you will produce documents responsive to this Request. Otherwise, Defendants wish to meet and confer on this Request in anticipation of a motion to compel.

\*     \*     \*

Defendants reserve all rights regarding their Requests and Responses and Objections, including the right to amend or supplement them.

Very truly yours,

Michael H. McGinley