# EXHIBIT O

**quinn emanuel** trial lawyers | new york

295 5th Avenue, 9th Floor, New York, New York 10016 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7234**

WRITER'S EMAIL ADDRESS
**alexzuckerman@quinnemanuel.com**

December 29, 2025

<u>VIA E-MAIL</u>

Michael H. McGinley
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
michael.mcginley@dechert.com

Re: *Abacus Global Management, Inc. v. Coventry First LLC*, 6:25-cv-01401-RBD-RMN (M.D. Fla.) – Discovery Disputes

Counsel:

We write regarding the outstanding continuing disputes over the scope of discovery between the parties, raised during November 4, 5, and 7, 2025 Meet-and-Confer Calls, and developed in Abacus's November 17 Letter to Defendants, Defendants' November 26 Response Letter, Abacus's December 12 Letter, and your most recent correspondence dated December 23, 2025 ("December 23 Letter").[1]

Without engaging in a discussion of the merits of Defendants' positions, *see* December 23 Letter at 3-5, in the interest of compromise Abacus accepts your proposals with regards to Individual Health Data and Coventry/Buerger Request No. 42, subject to the same qualifications set forth in your December 23 Letter, as well as the terms of the Confidentiality Agreement. The remainder of this letter deals with the areas in which the Parties have yet to reach an agreement.

**I.      DEFAMATORY STATEMENTS**

As an initial matter, you seemed to have changed your tune on the defamatory statements from the Meet-and-Confer Calls and subsequent letters to your December 23 Letter. Indeed, in your November 26 Response Letter you spent a mere two paragraphs of an 18-page letter on the issue and indicated Defendants' "willing[ness] to negotiate search terms" regarding the defamatory statements. Yet in your December 23 Letter you spend nearly two pages baselessly asserting that

---

[1] All capitalized terms used herein have the same meaning as those in the First Amended Complaint ("FAC") and Abacus's prior letters.

there is a "defect" that "remains uncorrected" and "demand that [Abacus] identify" the challenged defamatory statements. *Compare* November 26 Response Letter at 2 *with* December 23 Letter at 2-3. Moving the goalpost at the eleventh hour of a months-long discovery negotiation is not well-taken nor is it productive.

Your December 23 Letter claims that fact development is "stunted," because Abacus has (1) "repeated[ly] refus[ed] to identify what statements [it is] challenging" as defamatory, and (2) failed to identify each forum or occurrence of defamation alleged in the FAC. *See* December 23 Letter at 1-3. In your view, the current record makes it "nearly impossible to ascertain the bounds of relevance in this litigation." *Id.* at 2.

Not so. Abacus has been abundantly clear about the who, what, where, when, and how of Defendants' defamatory statements. For example, Abacus specifically alleges Defendants made defamatory statements in Coventry's press releases, FAC ¶¶ 98, 99, 121; in Buerger's statements at the LISA Conference, *id.* ¶¶ 101-13; in Coventry's meritless and now withdrawn lawsuit against the Florida Office of Insurance Regulation, *id.* ¶¶ 132-41; and in Buerger's May 22, 2025 Tegus Interview, *id.* ¶¶ 146-48. Moreover, Defendants cannot feign ignorance about the statements they made that Abacus alleges are defamatory given that they attached documents containing versions of the statements in question to their motion to dismiss, . *See* ECF Nos. 47-5, 47-6.[2]

Thus it is not accurate for you to say that Abacus claimed during the Meet-and-Confer Calls that it "did not want to specify exactly which statements were defamatory." December 23 Letter at 1. Our position during the Meet-and-Confer Calls has been that Abacus has adequately identified the myriad defamatory statements in sufficient detail. But as you will recall, we indicated during the Meet-and-Confer Calls that Abacus cannot say—and is not required to say at this premature juncture—that no other defamatory statements were made or may surface as it develops its claims through discovery. Instead, we have consistently taken the position that the defamatory statements in the FAC may not represent the whole universe of defamatory statements Defendants have made to harm Abacus. For example, at the time of filing, Abacus was not aware that Mr. Buerger had participated in more than one interview facilitated by Tegus, or that unedited versions of his interviews existed with additional inflammatory remarks calling Abacus a "house of cards" and promising "more action" from him against the Company. *See* AS_048 at 6, 10. Likewise, Abacus does not currently possess copies of the statements Defendants made to other third parties, which it is seeking in discovery and may warrant further amendments to its complaint.

As for the June 4 Morpheus Report, Abacus has not put the entirety of the Report at issue.[3] Indeed, the FAC identifies which statements in the Report are at issue. What Abacus has alleged—

---

[2] Abacus further explicated its defamation claims in its opposition to Defendants' motion. *See* ECF No. 51 at 7 (providing examples of false and misleading statements). In light of all the explanatory detail available to Defendants at this time, it is curious that you still claim ignorance as to the nature of this case, and odder still that you have served two dozen subpoenas on third parties despite apparently not knowing what you are looking for. It would appear that it is Defendants, not Abacus, that are engaged in a fishing expedition.

[3] That is, of course, unless Defendants are prepared to admit they knowingly communicated with Morpheus prior to the June 4 Report's publication or that Buerger and/or anyone at Coventry wrote

2

and what early discovery has confirmed—is that (i) Buerger was contacting short sellers like Nate Anderson, head of Morpheus's predecessor, Hindenburg Research, in early 2024, FAC ¶ 154; and (ii) Morpheus relied on Defendants' statements in its June 4 Report and quoted them extensively on certain topics, *id.* ¶ 159. Accordingly, the subject of the sections in the June 4 Morpheus Report that do not relate to Defendants' defamatory statements—such as National Insurance Brokerage—are not relevant to this case.

We trust that the above clarifies the *current* scope of discovery related to the specific defamatory statements alleged in the FAC, with the understanding that Abacus reserves its rights to supplement its claims.[4]

**Please identify any of Abacus's requests to which you refuse to respond based on your position that Abacus has failed to identify the defamatory statements, and provide your availability for a meet and confer regarding our forthcoming motion to compel.**

II.     **ABACUS'S REQUESTS FOR PRODUCTION TO DEFENDANTS**

   A.     **DEFENDANTS' COMMUNICATIONS WITH GOVERNMENT ENTITIES (COVENTRY REQUEST NOS. 29-31/BUERGER REQUEST NOS. 30-32)**

Coventry and Buerger first raised the investigatory privilege as a bar to discovery of their communications with government entities when they served responses and objections to Abacus's First Set of Requests for Production on October 8. Eleven weeks and over 20% of the discovery window have now passed, *see* ECF No. 42 at 3, and you have not offered any legal authority to support your position that defendants in a defamation case may rely on an investigatory privilege to shield their communications with indifferent regulators. Nor have you provided any legal basis to demand the approval or acquiescence of government entities before producing responsive documents.

The law is clear. The investigatory privilege is not yours and—as you now recognize—the *Noerr-Pennington* doctrine does not apply in defamation cases. *Compare* November 26 Response Letter at 3-4 *with* December 23 Letter at 4. **We will move the Court on these requests no later than January 2, 2026. Please provide your availability for a final meet and confer before that date.**

---

some or all of the June 4 Report. On the other hand, it is now irrefutable that Defendants played a direct and significant role in the June 12 Morpheus Report on Abacus, which is not discussed in the FAC.

[4]  We clarify two other matters that seem to flow through many of the current disputes. Abacus's list of defamatory statements does not and will not include statements that are purely about Lapetus or Lapetus's LE methodology, because Abacus is not the proper party to bring them. Nor does Abacus intend to dispute that Lapetus and Abacus had a business relationship (as did Coventry), or that Jay Jackson served on Lapetus's board.

3

**B.  INFORMATION RELATED TO COVENTRY'S BUSINESS PRACTICES (COVENTRY REQUEST NOS. 43-51 & 66-67; BUERGER REQUEST NOS. 43-49)**

Despite our willingness to narrow these requests, you are resisting discovery on matters related to Coventry's competing or comparable operations in the life settlements industry on the grounds that "Coventry's core business" has "no discernible connection to [Abacus's] claims." December 23 Letter at 5. It is your view that Coventry's private business is not discoverable because the public nature of Abacus's business is what "gave rise to the alleged statements and this dispute." *Id.*

We understand that you plan to argue that Defendants claim they had well-founded concerns about Abacus as a public company in light of the fates of earlier publicly-traded life settlements companies. *See, e.g.*, *id.* at 5; November 26 Response Letter at 11 ("Mr. Buerger's concern about Abacus . . . stems from the history of public company implosions in the life settlements industry.") But whether Defendants harbored such concerns is secondary to the core question: whether the statements Defendants made as an alleged result of those concerns were defamatory. And many of those statements directly referenced Coventry's own business practices as a basis for the statements and a basis for comparison. For example, when Buerger referenced his "knowledge of the market," FAC ¶ 106, or proclaimed that "Coventry is well positioned to know" about "policies that are being purchased by Abacus," AS_085 at 2, he was clearly drawing on his understanding of how Coventry, Abacus's largest competitor, operates in the same markets. Indeed, Buerger's grounds for making his defamatory statements about Abacus's discount rate, if not entirely fictitious, must come from his work at Coventry, since he admitted in the Tegus Interview that "I've never had a discussion with anybody at Abacus" on the subject. *Id.*; *see also id.* (comparing Abacus's discount rate to the "12% or 13% discount rate of most funds and others that use fair market valuation accounting for the asset").[5]

Nor have you addressed the point raised in our December 12 Letter that Buerger admits to using the same valuation methodologies as Abacus when he "want[s] to know what [his] policies are worth." FAC ¶ 148. Coventry and Buerger have both made numerous statements about the accuracy of Abacus's valuation methodology. *See, e.g., id.* ¶¶ 99, 105, 112, 146. If Defendants are using a similar methodology—or if Coventry is using a different fair market valuation—that is surely relevant to Buerger's state of mind when claiming Abacus is on the verge of implosion. *See id.* ¶¶ 147-48.

**We will move the Court on these requests no later than January 2, 2026.  Please provide your availability for a final meet and confer before that date.**

---

[5]  In a subsequent interview with Tegus, Buerger again drew a comparison between his own company and Abacus, noting "[w]e use a 15% [discount rate]." AS_048 at 13.

### III.  DEFENDANTS' REQUESTS FOR PRODUCTION TO ABACUS

#### A.  RELEVANT TIME PERIOD

Defendants seek discovery back to 2021 to establish "a baseline of Abacus's business practices that would allow Defendants to identify any changes in practices that Abacus undertook when it began contemplating going public." December 23 Letter at 6. Again, as the FAC makes clear, Abacus alleges Defendants have made defamatory statements about Abacus's use of Lapetus, its policy acquisitions and sales functions, and its valuations, all since the 2023 go-public transaction. None of the defamatory statements that Buerger or Coventry made about Abacus were made prior to July 2023, when Abacus was a private company. Indeed, as you noted in your most recent letter, "nearly every concern Defendants articulated regarding Abacus stems from the fact that Abacus is a public company." *Id.* at 5. Why then is a two-year period during which your clients apparently had no concerns relevant to this litigation over statements they made about Abacus's business practices from 2023-25?

As for Lapetus, Abacus's relationship with the defunct LE provider does not "underlie[] all of Abacus's claims" as you so claim. *Id.* at 6. Nonetheless, we have agreed to provide discovery on Abacus's relationship with Lapetus during the relevant time period. As you admit, Defendants were not concerned with Mr. Jackson's communications with and about Lapetus prior to 2023 when Abacus was private, which explains why they were not the subject of the defamatory statements, and also why Defendants are not entitled to more discovery relating to Lapetus than that which we have already agreed to provide.

**We are available to meet and confer further on time period any afternoon this week.**

#### B.  ABACUS REQUEST NO. 9 (STOCK REPURCHASE PLAN(S))

Without engaging in the merits of Defendants' proffered "reasonableness" defense at this time (though we note Defendants did not provide appropriate authority justifying the validity of such a defense, *see* December 23 Letter at 6-7), we are willing to represent to you that Abacus is not pursuing Buerger's statements about Abacus's stock repurchase plan(s), FAC ¶¶ 146(f), 214(f), as a basis for its defamation claim. We trust that this resolves this issue.

#### C.  ABACUS REQUEST NO. 27 (GOVERNMENT INQUIRIES)

In your November 26 Response Letter, you clarified the scope of Abacus Request No. 27 and justified the request on the grounds that "inquiries from state and federal regulators into Abacus's business could demonstrate the merits of Defendants' concerns about Abacus's business practices." *Id.* at 12. Since neither party has put Abacus's entire business at issue, we were puzzled by your overbroad request; it is not clear why an "inquiry" that "could demonstrate the merits" of your "concerns" has anything to do with whether or not Defendants' statements are true or false. Surely Coventry and Buerger have many "concerns" about Abacus that have nothing to do with their false claims about Abacus's market-based valuation methodology. But just because Defendants have general "concerns" about Abacus does not make those concerns relevant to this case and therefore subject to discovery.

That said, we are willing to produce non-privileged documents related to the November 1, 2024 Comment Letter, to the extent not duplicative of information already publicly available, and subject to a reasonable search terms and custodians protocol. If you have other reviews or inquiries in mind specifically grounded in the allegations contained in the FAC, we are open to further discussion.

### D.     ABACUS REQUEST NO. 38 (ABACUS PAYS PORAL)

None of Defendants' statements alleged in the FAC, or disclosed through discovery to date, relates to the Abacus Pays Portal. Accordingly, we are willing to represent at this time that Abacus's defamation claims are not related to the Portal. We trust that this resolves this issue.

### E.     ABACUS REQUEST NOS. 41 & 42 (ASSET-BACKED DEBT)

We now understand from AlphaSense's (Tegus's parent company) production that Buerger was referring to Abacus doing "what [GWG] did . . . to issue asset-backed debt against their portfolio." AS_047. While that has been our working understanding throughout these discovery negotiations, the unabridged transcript is helpful. We once again confirm that Abacus does not have any asset-backed debt of this kind.

### F.     ABACUS REQUEST NOS. 75 & 80 (KKR & NOVA TRADING)

As for KKR and Nova Trading, we understand from your November 26 Response Letter that you "agree that this Request will be addressed through search terms and custodians." *Id.* at 17. The only remaining dispute seems to relate to the relevant date range; you request a start of November 20, 2020, based on an email between Jay Jackson, Jay Olshansky, and KKR. December 23 Letter at 8-9. While we do not agree that this single email justifies a three-year extension of the discovery window, we are open to a further discussion of relevance, and—if in agreement—to running search terms specific to this request over a broader date range

### G.     ABACUS REQUEST NOS. 76 & 77 (SOCIETE GENERALE & LADENBURG THALMANN)

We still struggle to understand the relevance of Societe Generale and Ladenburg Thalmann, two entities that worked with Abacus on securities transactions in February 2024 and July 2025. These requests are overbroad and not relevant because the defamatory statements Buerger made do not relate to either of these transactions. Indeed, your December 23 Letter is the first time we are aware of Defendants, or anyone acting on their behalf, questioning those transactions. Abacus will not produce documents related to Societe Generale or Ladenburg Thalmann (that are not otherwise encompassed in an agreed-upon search protocol) unless you are able to articulate a more convincing basis for their relevance.

### H.     ABACUS REQUEST NO. 78 (MANORHAVEN CAPITAL LLC)

With the understanding that your interest in Manorhaven Capital LLC is related to the value of the Carlisle acquisition and the damages to that value alleged in the FAC, *see* December 23 Letter at 9, Abacus agrees to produce non-privileged documents relevant to the claims and defenses

6

in the case, subject to an agreement on search terms and custodians, in a date range from July 3, 2023, through the filing of the FAC.

* * *

Abacus reserves all rights with regard to its Requests and Objections, and may supplement them in due course as the circumstances require.

Sincerely,

*/s/ Alex Zuckerman*

Alex Zuckerman


cc:     All counsel of record (via email).