**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ABACUS GLOBAL
MANAGEMENT, INC.,

     Plaintiff,

v.

Case No. 6:25-cv-1401-RBD-RMN

COVENTRY FIRST LLC; and ALAN
BUERGER,

     Defendants.

_____

**<u>ORDER</u>**

Before the Court is Defendants' motion to dismiss. (Doc. 47.) The motion is

due to be granted in part and denied in part.

**BACKGROUND**[1]

In this defamation case, Plaintiff Abacus Global Management, Inc.

("Abacus") is a publicly traded "life settlement" company. (Doc. 38, ¶ 1.) Abacus

makes its money by buying insureds' life insurance policies for a lump sum,

packaging them in bulk, and selling the packages to institutional third parties at a

markup. (*See id.* ¶¶ 28–33.) Abacus considers many factors—including the

insured's life expectancy—in valuing the policies. (*Id.* ¶¶ 37–39.) Abacus primarily

---

[1] The factual allegations are taken as true for the purpose of the motion and presented in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

relied on a third party, Lapetus Solutions ("Lapetus"), to estimate life expectancies. (*Id.* ¶¶ 79–84.)

When a life settlement company values a policy, it would be to its benefit for the insured to die sooner—because that is when the company can stop paying the premiums and collect on the payout. (*See id.* ¶ 30.) So if a company knowingly underestimates the insured's life expectancy and then sells that policy to a buyer, the policy would be artificially overvalued because the insured will actually live longer and the buyer will pay premiums for longer than expected, delaying the payout. (*See id.* ¶ 68.)

Defendant Coventry First LLC ("Coventry") is a privately held competitor of Abacus. (*Id.* ¶ 3.) Defendant Alan Buerger is Coventry's cofounder and executive chairman. (*Id.* ¶ 4.) Both were active in the life settlement industry for decades. (*Id.* ¶ 37.) Abacus alleges that Buerger and Coventry decided to damage Abacus by spreading false information—specifically, that Abacus, through Lapetus, was systematically underestimating life expectancies in a scheme to drive up the price for the policies it sold. (*See id.* ¶¶ 89–91.)

Abacus alleges that Coventry and Buerger undertook a defamatory campaign to spread this falsehood. Coventry and Buerger commissioned a purportedly independent report that found Lapetus had underestimated life expectancies and inflated life settlement valuations. (*Id.* ¶¶ 98–99.) On October 24,

2

2024, Buerger and Lapetus's founder both spoke at an industry conference in Miami. (*Id.* ¶ 101.) There, Buerger told attendees that Lapetus systematically underestimates life expectancy. (*Id.* ¶ 102.) Buerger claimed that Abacus used Lapetus's life expectancy underestimates to calculate Abacus's discount rate, leading to Abacus improperly representing the net present value of its policies. (*See id.* ¶ 105.) Buerger allegedly knew this statement was false. (*Id.* ¶ 109.) Buerger concluded by saying that "the $250 million dollars out there" investors used to fund Abacus was "dead"—intimating that Abacus was conducting a Ponzi scheme. (*Id.* ¶¶ 112–13.) Coventry approached Abacus's auditor with the same false statements. (*Id.* ¶ 114.) Coventry commissioned another study to confirm its predetermined narrative that Lapetus underestimated life expectancies. (*Id.* ¶¶ 120–24.) Coventry also contacted market analysts in a bid to undermine their evaluation of Abacus's stock. (*Id.* ¶¶ 125–30.) And Coventry sued Florida's Office of Insurance Regulation ("OIR"), seeking disclosure of Lapetus's Florida audit reports. (*Id.* ¶¶ 131–42.) In that lawsuit, Coventry claimed Abacus controlled Lapetus and used it to inflate the values of its policies. (*Id.*) Buerger also participated in an interview where he made the same claims, which were disseminated to Abacus's shareholders. (*Id.* ¶¶ 143–51.)

Finally, Defendants contacted Morpheus, a research group that publishes reports on stocks it believes to be overvalued. (*Id.* ¶ 152.) Morpheus then published

3

a report that essentially repeated Defendants' alleged defamatory statements, causing Abacus's market capitalization to fall by nearly 40%. (*Id.* ¶¶ 152–63.) Following Morpheus's report, Abacus's business partners cut ties, and Abacus lost millions of dollars. (*Id.* ¶¶ 167–73.) And Lapetus closed shop, citing Coventry and Buerger's campaign as a contributing factor. (*Id.* ¶¶ 186–91.)

So Abacus sued Coventry and Buerger for: (1) defamation; (2) defamation by implication; (3) defamation *per se*; and (4) violating Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). (*Id.* ¶¶ 193–245.) Abacus also sued Buerger for tortious interference with business relations. (*Id.* ¶¶ 246–52.)

## STANDARDS

A plaintiff must plead "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). The complaint's factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept the factual allegations as true and construe them "in the light most favorable" to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009). But this "tenet . . . is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). So a pleading that offers mere "labels and conclusions" is insufficient. *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I.    Shotgun Pleading

Defendants first assert that the Complaint fails to put them on notice of the specific conduct relevant to each count, so it is a shotgun pleading. (Doc. 47, pp. 7–9.) A complaint "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action" is an impermissible shotgun pleading. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015). But not every detail in the complaint must be "entirely material," and plaintiffs are given significant leeway when the allegations involve multiple actors and multiple counts. *Williamson v. Travelport, LP*, 953 F.3d 1278, 1299 (11th Cir. 2020); *see Otto Candies, LLC v. Citigroup, Inc.*, 137 F.4th 1158, 1199–1200 (11th Cir. 2025). Here, Abacus's Complaint—lengthy though it is—adequately places Defendants on notice of their alleged conduct,[2] and each count explains how the factual allegations support Abacus's claims. (*See* Doc. 38.) And the Complaint involves Defendants' alleged conduct over several years with multiple counts, so some flexibility is warranted. *See Otto Candies*, 137 F.4th at 1199–1200. So the Complaint is not a shotgun pleading.

---

[2] Defendants' appendix to the motion also shows that Defendants understand the specific statements Plaintiff alleges are defamatory. (*See* Doc. 47, p. 29.)

## II.    Defamation & Defamation by Implication (Counts I–II)

As to Counts I and II, the elements of defamation are: "(1) publication; (2) falsity; (3) [the] actor must act . . . at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement[s] must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). Defendants do not contest publication and damages, but they contest the other three elements. (*See* Doc. 47, pp. 9–22.) The Court addresses each in turn.

### A.    Falsity

First, Defendants argue that most of the challenged statements are opinions, not statements capable of being proven true or false—and the rest are true. (Doc. 47, pp. 9–15.) Abacus counters that the Complaint adequately alleges falsity and the statements are not opinions. (Doc. 51, pp. 11–14.)

Only false statements of fact give rise to a defamation claim, and statements of opinion are not actionable. *See From v. Tallahassee Democrat*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981). Statements must be considered in their totality, including their context and audience. *See Hay v. Indep. Newspapers, Inc.*, 450 So. 2d 293, 295 (Fla. 2d DCA 1984). But at the motion-to-dismiss stage, a court "must proceed on the premise that any statements which [it] find[s] have factual connotations are false." *Fla. Med. Ctr., Inc. v. N.Y. Post Co.*, 568 So. 2d 454, 459 (Fla. 4th DCA 1990). And factual statements retain this presumption of falsity even if they are couched in

6

cautionary language. *See id.*; *Scott v. Busch*, 907 So. 2d 662, 668 (Fla. 5th DCA 2005) (statements actionable where speaker neither "disclose[d] the factual basis to support her opinion" nor explicitly "sa[id] it was just her opinion").

Here, most statements are pled as false and are not couched in opinion, so they are presumed false at this stage. (*See* Doc. 38, ¶¶ 9, 50, 69, 86, 108); *Fla. Med. Ctr.*, 568 So. 2d at 459. As to the statements purporting to offer opinion, taking the statements in their totality, Buerger and Coventry were not merely expressing opinions. Defendants were active in the life settlement industry for decades, so their assertions that Lapetus (and by extension Abacus) were deliberately underestimating life settlement values could be given great weight. (Doc. 38, ¶¶ 37, 102, 104–05, 112–30); *see Hay*, 450 So. 2d at 295. The Complaint alleges a scheme to destroy Abacus through suggestions of malfeasance, not simply an opinion about whether Abacus innocently underestimated life expectancies—and Defendants never shared the factual basis for this implication, further showing that the statements were false as pled. (*See* Doc. 38, ¶¶ 131–51); *Scott*, 907 So. 2d at 668. So Abacus has adequately pled falsity.[3]

---

[3] While Defendants make only a passing reference to Abacus's defamation by implication claim (Doc. 47, p. 9), the Complaint adequately alleges that Defendants deliberately used true statements "conveyed in such a way as to create a false impression" that Abacus was using Lapetus to defraud its investors with undervalued life expectancies. *Jews for Jesus*, 997 So. 2d at 1108. So falsity is also satisfied for Count II.

### B.     Actual Malice v. Negligence

Defendants next argue that Abacus is a public figure, requiring actual malice as opposed to only negligence (as pled), which is all that is required for private persons. (Doc. 47, pp. 15–20.) But whether a plaintiff is a public figure is generally not decided on a motion to dismiss due to the fact-specific nature of the inquiry. *See Hadley v. Perez*, No. 25-CV-22162, 2026 WL 1017588, at *5 (S.D. Fla. Apr. 15, 2026) (applying Florida law); *cf. Turner v. Wells*, 879 F.3d 1254, 1271–72 (11th Cir. 2018) (applying Florida law) (where plaintiff was NFL coach and was the focus of TV show, the Eleventh Circuit had "little difficulty" deciding he was a public figure on motion to dismiss). Nothing in the Complaint indicates that Abacus is obviously a public figure. (*See* Doc. 38); *cf. Turner*, 879 F.3d at 1271–72. Because the inquiry is necessarily fact-specific, and the Complaint does not make it clear that Abacus is a public figure, Abacus need not show actual malice at this stage. *See Hadley*, 2026 WL 1017588, at *5.

### C.     Defamatory Statements

Defendants next argue that two statements—that Abacus was trying to "get [its] stock price up" and that it must "choose which accounting method" it will use—are not defamatory because they either do not harm Abacus's reputation or are not about Abacus. (Doc. 47, pp. 20–21.) "[A] defamatory statement is one . . . that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or

reputation or occupation." *Jews for Jesus*, 997 So. 2d at 1108–09. Again, this is a context-specific inquiry. *See Smith v. Cuban Am. Nat'l Found.*, 731 So. 2d 702, 705 (Fla. 3d DCA 1999). Devoid of context, these statements might not injure Abacus's reputation, but in the context of Defendants' alleged broader campaign, they imply Abacus was trying to dishonestly inflate its valuation, so they are defamatory as pled. *See Jews for Jesus*, 997 So. 2d at 1108–09; *Smith*, 731 So. 2d at 705.

Next, Defendants argue that many of the challenged statements are about Lapetus, not Abacus. (Doc. 47, p. 20.) A defamatory statement must be "of and concerning" the plaintiff to be actionable. *See Thomas v. Jack. Television, Inc.*, 699 So. 2d 800, 805 (Fla. 1st DCA 1997). But statements that do not name the plaintiff can be actionable if context makes it clear that the statement concerns the plaintiff. *See Harwood v. Bush*, 223 So. 2d 359, 362 (Fla. 4th DCA 1969). Here, while some statements in isolation refer to Lapetus, Defendants made explicit that they viewed Abacus as controlling Lapetus, so their attacks on Lapetus would be understood as part of their broader campaign accusing Abacus of fraud, making these statements sufficiently pled. *See id.*

Defendants also attack the Complaint's incorporation of a statement made during Defendants' lawsuit against the state. (Doc. 47, pp. 21–22, Doc. 38, ¶ 214(b).) Abacus does not respond to this argument. (*See* Doc. 51.) Statements made during litigation are absolutely privileged against defamation "so long as the statements

9

are relevant to the subject of inquiry." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 607 (1994). Here, the statement accuses Abacus of influencing Lapetus's life expectancy estimates, which is relevant to the public records lawsuit's goal to obtain an audit of those estimates. (Doc. 47-8, p. 8 n.4.) So this statement is privileged and cannot form the basis for the defamation claim; this portion of the claim will be dismissed. *See Levin*, 639 So. 2d at 607.

### III.    Defamation *Per Se* (Count III)

Defendants then turn to Abacus's defamation *per se* claim, arguing that none of the challenged statements is defamatory standing alone; Abacus again does not respond.[4] (Doc. 47, pp. 20–21; *see* Doc. 51.) Defamation is actionable *per se* if a statement: "(1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (4) to injure a person in his trade or profession." *Adams v. News-J. Corp.*, 84 So. 2d 549, 551 (Fla. 1955). Unlike an ordinary defamation claim, defamation *per se* is not context-specific — the statement must be defamatory on its face. *See Campbell v. Jack. Kennel Club*, 66 So. 2d 495, 497 (Fla. 1953). As described above, determining whether

---

[4] Abacus's failure to respond provides an independent basis to dismiss Count III. *See* Local Rule 3.01(d).

Defendants' statements were false requires examining context beyond the statements themselves, which "would run afoul of the very nature of a *per se* action." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259 (S.D. Fla. 2021). So Count III is due to be dismissed.

### IV.    FDUTPA (Count IV)

As to Count IV, the elements of a FDUTPA claim are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Defendants argue that FDUTPA does not apply to them, Abacus fails to allege a deceptive act or unfair practice, Abacus fails to allege a statement made in "trade or commerce," Abacus fails to allege harm to consumers, and the single publication doctrine bars the FDUTPA claim. (Doc. 47, pp. 22–26.) The Court addresses each argument in turn.

#### A.    Safe Harbor

Defendants first argue that FDUTPA does not apply to them under the statute's safe harbor provision because they are regulated by OIR. (Doc. 47, pp. 22–23.) Abacus counters that the safe harbor provision does not apply because the Complaint does not allege activity covered by the safe harbor. (Doc. 51, pp. 20–21.) FDUTPA does not apply to "any person or activity regulated under laws administered by" OIR. Fla. Stat. § 501.212(4)(a). "In determining whether FDUTPA applies, courts must look to the alleged activities in the lawsuit and determine if

11

that activity is subject to regulation by OIR." *Hotchkiss v. Blue Cross & Blue Shield of Fla., Inc.*, 277 So. 3d 760, 762 (Fla. 1st DCA 2019). OIR regulates "licensing, rates, policy forms, market conduct, claims, issuance of certificates of authority, solvency, viatical settlements, premium financing, and administrative supervision." Fla. Stat. § 20.121(3)(a)(1). Here, Plaintiff bases its FDUTPA claim on the alleged campaign to destroy Lapetus and Abacus, not conduct in the insurance industry regulated by Florida law. (Doc. 38, ¶¶ 242–43); *see Hotchkiss*, 277 So. 3d at 762. So the safe harbor does not apply, and Defendants are subject to FDUTPA.

### B.    Deceptive Act or Unfair Practice

Next, Defendants argue that Abacus fails to allege a deceptive act or unfair practice because the FDUTPA claim is predicated on the alleged defamatory statements, which Defendants argue are neither deceptive nor unfair. (Doc. 47, pp. 23–24.) But for the reasons described above, Abacus successfully pled defamation. And defamatory statements can be a deceptive act or unfair practice. *See Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1262–63 (N.D. Fla. 2007). So this argument fails.

### C.    Trade or Commerce

Defendants then asserts that the challenged statements were not made in trade or commerce as required. (Doc. 47, p. 24.) Abacus counters that FDUTPA's trade or commerce requirement is interpreted liberally. (Doc. 51, p. 22.) FDUTPA

12

proscribes "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). "'Trade or commerce' means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, or any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). Courts interpret this provision broadly. *See Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1306 (S.D. Fla. 2008) (operating internet forum with defamatory comments posted by users sufficient); *Buis*, 504 F. Supp. 2d at 1263 (defamatory statements made to secure "business advantage" sufficient). Here, the Complaint alleges that Defendants operated a scheme to defame Abacus for their "perceived gain." (Doc. 38, ¶ 242.) Given how broadly courts construe FDUTPA's trade or commerce requirement, Abacus's recitation of the defamation campaign adequately alleges an unfair practice or deceptive act in trade or commerce. *See Buis*, 504 F. Supp. 2d at 1263; *Hennessey*, 629 F. Supp. 2d at 1306.

### D.   Damages

Defendants then turn to the damages element, arguing that Abacus fails to allege actual harm to consumers. (Doc. 47, pp. 24–25.) A plaintiff must allege "that there was an injury or detriment to consumers." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. 4th DCA 2015). A

13

FDUTPA claim must allege "actual damages," and courts routinely allow claims for past lost profits. *See, e.g.*, *Diamond Resorts Int'l, Inc. v. Aaronson*, 317 F. Supp. 3d 1088, 1115 (M.D. Fla. 2019) (Dalton, J.); *Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1286 (S.D. Fla. 2021). Here, the Complaint alleges that Abacus, as a consumer and client of Lapetus, was harmed by Defendants' attacks on Lapetus because it had to switch its life expectancy estimator, costing it money. (Doc. 38, ¶ 245); *see Caribbean Cruise Line*, 169 So. 3d at 169. It further alleges that Defendants harmed consumers by consolidating market share. (Doc. 38, ¶ 244); *see Caribbean Cruise Line*, 169 So. 3d at 169. And the Complaint alleges further actual damages to Abacus via lost profits. (Doc. 38, ¶ 244); *see Aaronson*, 317 F. Supp. 3d at 1115. So the Complaint adequately alleges actual damages.

### E.    Single Publication Doctrine

Finally, Defendants argue that the Florida's single publication doctrine bars the FDUTPA claim because it overlaps with the defamation claims. (Doc. 47, pp. 25–26.) Abacus argues, among other things, that the single publication doctrine only applies when a defamation claim fails. (Doc. 51, pp. 23–24.) It is clear that a plaintiff may not recast a *failed* defamation claim as another tort. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992). Courts are divided about whether a *successfully pled* defamation claim bars another tort claim based on the same facts. *Emergency Recovery, Inc. v. Gov't Emps. Ins. Co.*, 773 F. Supp. 3d 1304, 1314 n.4 (M.D.

14

Fla. 2025) (collecting cases). The Court in *Emergency Recovery* held that the doctrine only applies to failed defamation claims. *Id.* at 1320. The Undersigned agrees. The Florida Supreme Court's opinion in *Fridovich* related specifically to when a plaintiff seeks to "transform a defamation action into a claim for intentional infliction of emotional distress." 598 So. 2d at 70. So because the rule was fashioned to prevent the evasion of privileges against defamation, "if the privilege barred the defamation claim, the reasoning behind the single action rule supported barring a closely related tort." *Emergency Recovery*, 773 F. Supp. 3d at 1316. The doctrine was not intended to bar successfully pled defamation claims. So Count IV survives.

### V.    Tortious Interference (Count V)

Finally, Buerger argues that Abacus fails to state a claim for tortious interference because it fails to allege an identifiable business relationship. (Doc. 47, pp. 26–27.) Abacus counters that it need only allege a relationship with some entity or group smaller than the general population. (Doc. 51, pp. 24–25.) The elements of tortious interference are "(1) the existence of a business relationship . . . ; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). "As a general rule, an

15

action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Here, the Complaint references an unnamed "credit union" that was "considering" investing in Abacus, along with "several large investors." (Doc. 38, ¶¶ 170, 247.) But such allegations fail to allege a tortious interference claim because "considering" entering a business relationship is not an "actual and identifiable understanding" that would "in all probability" have been completed. *Ethan Allen*, 647 So. 2d at 815. Nor is a reference to vague, unnamed investors sufficient to allege an actual business relationship. *Cotton*, 463 So. 2d at 1127. So Abacus fails to state a tortious interference claim.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendants' motion (Doc. 47) is **GRANTED IN PART AND DENIED IN PART**:

1.  The motion is **DENIED** as to Counts I and IV, which proceed.

2.  The motion is **GRANTED** as to the privileged statement listed in Count II, which portion of the claim is **DISMISSED WITH PREJUDICE**. (Doc. 38, ¶ 214(b).) The motion is **DENIED** in all other respects as to Count II, which otherwise proceeds.

16

3.    The motion is **GRANTED** as to Counts III and V, which are

**DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on June 25, 2026.



ROY B. DALTON, JR.
United States District Judge

17