**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| ABACUS GLOBAL MANAGEMENT, INC., a corporation,<br><br>  Plaintiff,<br><br>v.<br><br><br>COVENTRY FIRST LLC, a limited liability company; ALAN BUERGER, an individual,<br><br><br><br>  Defendants. | Case No.: 6:25-cv-01401-RBD-RMN |

**PLAINTIFF'S MOTION TO DISMISS DEFENDANTS'**
**COUNTERCLAIMS AND INCORPORATED LEGAL MEMORANDUM**

Plaintiff and Counterclaim Defendant Abacus Global Management, Inc. ("Abacus") moves to dismiss the counterclaims asserted by Defendants Coventry First LLC ("Coventry") and Alan Buerger ("Buerger" and, together with Coventry, "Counterclaimants" or "Defendants") under Fed. R. Civ. P. 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim. *See* Dkt. 101 ("Counterclaims"). For the reasons set forth in this memorandum, the Court should dismiss all Counts.

## INTRODUCTION

The Counterclaims reveal what Abacus made plain in its First Amended Complaint ("Complaint"):  Coventry and its co-founder and Chairman, Alan Buerger, cannot fairly compete with Abacus, so they have "devised a scheme to undermine Abacus through false and misleading statements."  Dkt. 38 ¶ 4. The Counterclaims are no different.  Cobbling together documents acquired from Abacus and third parties in discovery, Defendants claim to have found proof for their conspiracy theory that Abacus somehow controlled Lapetus, the life expectancy provider put out of business by Coventry in 2025, and that Abacus distorted Lapetus's life expectancies to inflate Abacus's own asset values.

The actual record developed to date in this litigation destroys Defendants' story.  Coventry's paid consultant refused to back up Mr. Buerger's claims that Abacus was a fraud, and opined that Mr. Buerger approached his takedown of Lapetus only hearing what he wanted to hear.  The only qualified actuary employed by Coventry testified that Defendants did not have enough data to conclude Lapetus life expectancies were wrong, let alone manipulated. And the short seller who initially gobbled up and regurgitated Defendants' falsehoods now admits Coventry "had an incentive to make [Abacus] look bad" and that Defendants' criticisms must be taken "with a grain of salt."   Most damning are Coventry's own actions.  While alleging Abacus's CEO allegedly

2

misappropriated trade secrets, ***the only "trade secret" Coventry seeks to protect is the fact that in 2022 Coventry was buying more life expectancies from Lapetus than Abacus was***.

As for the balloon surrounding Defendants' cloud of incendiary hot air, the Counterclaims fail as a matter of law. Defendants' attempts to exact revenge on Abacus and manufacture baseless claims of fraud should be dismissed on multiple, independently dispositive grounds:

*First*, Count I of the Counterclaims fails because Florida's Anti-SLAPP statute, Fla. Stat. § 768.295, does not create a private right of action. The statute's only damages provision limits its remedy to "damages arising from ***a governmental entity's violation of this section***." Fla. Stat. § 768.295(4) (emphasis added). And Florida courts have recognized that private parties may only use the statute as grounds for granting a dispositive motion. Moreover, in ruling that Abacus has plausibly pled defamation, defamation by implication, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Dkt. 100 at 6–17, this Court has already rejected Defendants' assertion that Abacus's suit is "without merit," as § 768.295(3) requires.

*Second*, Counts II and III should be dismissed because Counterclaimants have not adequately pled causation and, therefore, fail to state a claim. Perhaps recognizing that Florida's Anti-SLAPP statute does not countenance the remedy they seek, Counterclaimants try and fail to manufacture causes of

action under the Florida Viatical Settlements Act, Fla. Stat. §§ 626.991–993 ("FVSA"). But even if true, the allegedly violative actions pled by Counterclaimants—Abacus's reliance on Lapetus estimates (Count II) and Jay Jackson's board seat (Count III)—are entirely divorced from any alleged damages. Rather, Counterclaimants allege that the challenged conduct "culminated in and was the proximate cause of" Abacus filing **this lawsuit**, and that it is the lawsuit itself and not any underlying conduct that caused Coventry to incur "litigation costs, attorneys' fees, and reputational harms." Counterclaims ¶¶ 102–104, 113. Because Article III requires proximate causation between injury-in-fact and damages, and Counterclaimants have alleged no causal link between the alleged violations of the FVSA and their damages, these claims must be dismissed.

*Third*, Count III independently fails because it is an improper attempt to repackage a trade secrets claim as a claim arising under the FVSA. Florida's Uniform Trade Secrets Act, Fla. Stat. § 688.001 *et seq.* ("FUTSA") displaces any other statutory or common-law cause of action based on the same core allegations. Counterclaimants allege that Abacus's CEO, Jay Jackson, engaged in "unfair trade practices which resulted in the misappropriation of confidential, valuable, proprietary business information" and seek "damages stemming from . . . misappropriation of trade secrets." Counterclaims ¶ 113 and Prayer for Relief. Counterclaimants cannot avoid FUTSA's

4

requirements—including meeting each of its elements and damages framework—simply by repackaging the claims as a FVSA claim. And, tellingly, Counterclaimants have not pled a violation of FUTSA, providing an independent basis on which the Court should dismiss Count III. Because FUTSA completely displaces a claim for trade secret misappropriation, Count III should be dismissed with prejudice.

*Fourth*, Counterclaimants' damages claims should be dismissed for failing to allege any specific lost profits or reputational harm, much less grounds to award to punitive damages. Counterclaimants seek damages for "reputational harm to Coventry and its business" (Count II) and "lost profits stemming from Abacus's improper consolidation of market share" (Count III). Counterclaims ¶¶ 104, 113. But outside of these conclusory paragraphs where Counterclaimants allege vaguely that they were harmed by Abacus's conduct, the Counterclaims do allege any specific lost profits or reputational harm. Because Counterclaimants fail to raise any specific instances of harm they have suffered or even an approximation of damages suffered, the Court should dismiss their claims for lost profits, reputational harm, and punitive damages.

## BACKGROUND

On September 18, 2025, Abacus filed its First Amended Complaint, alleging that Coventry and Buerger orchestrated a campaign of false and defamatory statements attacking Abacus's business practices and, in

5

particular, its relationship with Lapetus. *See generally* Dkt. 38. On June 25, 2026, the Court denied Coventry and Buerger's motion to dismiss as to Abacus's claims for defamation (Count I) and violation of the Florida Deceptive and Unfair Trade Practices Act (Count IV), and denied the motion as to defamation by implication (Count II) except for a single statement dismissed with prejudice as privileged. Dkt. 100 at 16–17. In denying dismissal of Counts I, II, and IV, the Court held that Abacus had plausibly alleged, among other things, that Coventry's and Buerger's public statements about Abacus's relationship with Lapetus were false and defamatory. *Id.* at 6–17.

On July 9, 2026, Coventry and Buerger filed their Answer, Affirmative Defenses, and Counterclaims. Defendants assert three counterclaims against Abacus, styled as claims under Florida's Anti-SLAPP statute and the Florida Viatical Settlements Act, and seek compensatory damages, punitive damages, attorneys' fees, and costs. Counterclaims ¶¶ 92–113; *id.* at 96–97.

**Count I: The Anti-SLAPP Counterclaim.** Count I alleges that Abacus brought this lawsuit "primarily because" Coventry and Buerger exercised their free-speech rights "in connection with a public issue." Counterclaims ¶ 93. Defendants allege that Abacus's underlying suit is "utterly baseless" because Abacus knew that Lapetus's life expectancies were "systematically shorter" than those of other providers and used them anyway to value its portfolio. *Id.* ¶ 94. Defendants further allege that they were not

the proximate cause of the June 2025 Morpheus report that damaged Abacus, and seek to recover the "court costs and attorneys' fees" they say they incurred in defending against Abacus's suit. *Id.* ¶¶ 95–96.

**Count II: The FVSA Counterclaim Based on Lapetus Life Expectancies.** Count II alleges that Abacus, as a viatical settlement provider, used "false, misleading, or deceptive" life expectancies from Lapetus "for its own financial gain," including to value its portfolio and sell policies on the secondary and tertiary markets. Counterclaims ¶¶ 98–101. Rather than alleging that this conduct directly harmed Coventry, Defendants allege that Abacus's "scheme . . . culminated in and was the proximate cause of" Abacus's filing of *this lawsuit*, and that it is the lawsuit itself, and the "public documents surrounding" it, that resulted in Coventry incurring "litigation costs, attorneys' fees, and reputational harms." *Id.* ¶¶ 102–104.

**Count III: The FVSA Counterclaim Based on Jay Jackson's Lapetus Board Seat.** Count III alleges Abacus CEO Jay Jackson served on the board of directors of Lapetus, a registered life expectancy provider, from November 2021 through November 2024—a period during which Jackson simultaneously served as an officer and director of Abacus and its affiliates. Counterclaims ¶¶ 106–108. Defendants allege that this dual service violated the FVSA's prohibition on viatical settlement providers holding directorships at life expectancy providers, and that while on the Lapetus board, Jackson

"distributed" Coventry's and other industry members' "sensitive and confidential trade secret information to Abacus employees, misappropriating that information." *Id.* ¶¶ 109–111. Defendants allege that this conduct caused them "actual harm in the form of lost profits stemming from Abacus's improper consolidation of market share due to its unlawfully obtained trade secrets." *Id.* ¶ 113.

## STANDARD OF REVIEW

A motion under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction over a case. Such jurisdiction is lacking without "a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted); *see also Urquhart v. Manatee Mem'l Hosp.*, 2007 WL 2010761, at *3 (M.D. Fla. July 6, 2007) ("[t]he second requirement to establish standing is proximate causation.").

To survive a motion under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts well-pleaded facts as true but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Threadbare recitals supported by conclusory statements are insufficient. *Id.*; *see also U.S. ex rel. Clausen v. Lab'y Corp.,* 290 F.3d 1301, 1314 & n.25 (11th Cir. 2002)

("[E]ven where allegations are based on information and belief, the complaint must set forth a factual basis for such belief.").

## ARGUMENT

As set forth below, the counterclaims fail as a matter of law. Count I cannot proceed because Florida's Anti-SLAPP statute affords no private cause of action to a party in Defendants' position, and because this Court's own ruling on Abacus's underlying claims forecloses any argument that Abacus's suit is "without merit." Counts II and III fail because Article III standing requires that a plaintiff's damages flow from the defendant's violation of the statute itself, and Defendants instead trace their alleged harms to this lawsuit or, as to Count III, to allegations of trade secret misappropriation so vague and conclusory that they cannot possibly suffice under Florida's Uniform Trade Secrets Act (which, in any event, Counterclaimants have not pled). The Court should separately dismiss Count III which seeks to plead a trade secrets claim under the FVSA to circumvent the requirements of FUTSA. Finally, the Court should independently dismiss Counterclaimants' damages claims, which are impermissibly vague and unavailable under the FVSA.

## I. Florida's Anti-SLAPP Statute Does Not Provide a Standalone Civil Cause of Action

Count I must be dismissed for the simple reason that the statute Counterclaimants invoke does not authorize the relief they seek. Florida's

Anti-SLAPP statute prohibits the filing of a lawsuit, cause of action, claim, cross-claim, or counterclaim "without merit and primarily because" the party against whom it is filed exercised free-speech rights. Fla. Stat. § 768.295(3). The Anti-SLAPP statute *does not* provide a private, standalone cause of action. *See, e.g.*, *Ligeri v. Arizona Daily Indep., LLC*, 2026 WL 1073057, at \*2 (M.D. Fla. Mar. 10, 2026) ("Florida's Anti-SLAPP statute is n[ot] a standalone claim."). Instead, the statute authorizes the victim of a SLAPP suit to dismiss such suit through either a motion to dismiss or a motion for summary judgment. *See* Fla Stat. § 768.295(4) ("A person or entity may move the court for an order dismissing the action or granting final judgment in favor of that person or entity. The person or entity may file a motion for summary judgment … seeking a determination that the claimant's or governmental entity's lawsuit has been brought in violation of this section."); *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 312–14 (Fla. 2d DCA 2019). Counterclaimants' attempts to wield Florida's Anti-SLAPP statute as an affirmative cause of action are defeated by the plain language of the statute and well-settled caselaw and, accordingly, Count I must be dismissed.

Independently, the Court should dismiss Count I because Counterclaimants cannot meet the strictures of § 768.295(3), which requires a showing that the action at issue was filed "without merit." Counterclaimants argue, for example, that "Abacus's underlying lawsuit is utterly baseless."

10

Counterclaims ¶ 94.  Not so.  Coventry tried and failed to dismiss Abacus's claims; the Court recognized that Abacus had stated plausible claims for Defamation, Defamation by Implication, and violations of the FDUTPA.  *See* Dkt. 100 at 6–16.  Under equivalent circumstances, Florida courts routinely reject even Anti-SLAPP arguments raised (unlike here) in support of dismissal.  *See, e.g.*, *Hadley v. Perez,* 2026 WL 1017588, at \*6–8 (S.D. Fla. Apr. 15, 2026) (finding party had clearly alleged all required elements of defamation and defamation *per se* and rejecting both motion to dismiss and anti-SLAPP argument); *Markle v. Markle,* 2023 WL 2711341, at \*13–14 (M.D. Fla. Mar. 30, 2023) (explaining that plaintiff would be able to make out a defamation claim after amending complaint, and therefore refusing to decide that the claim was "without merit" as required by anti-SLAPP statute); *Sterling v. Doe*, 2021 WL 12418345, at \*2 (M.D. Fla. Oct. 4, 2021), *aff'd,* 2022 WL 2112091 (M.D. Fla. Feb. 2, 2022) (having previously found that plaintiff had pled a *prima facie* case against defendant, anti-SLAPP statute did not apply).[1]

---

[1]  In any event, Count I also fails because Coventry's statements were not made "in connection with a public issue."  § 768.295(3).  As Plaintiff has explained, "those charged with defamation cannot, by their own conduct, create their own defense," *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979), and a purported public controversy "must have preexisted the alleged defamation."  *Little v. Breland*, 93 F.3d 755, 757 (11th Cir. 1996).  *See* Dkt. 51 at 14–17.  Because the only "controversy" Defendants identify is the product of their own defamatory campaign, their speech does not qualify for anti-SLAPP protection.

## II.   The Counterclaims Fail to Plead Causation

Counts II and III should be dismissed because Counterclaimants fail as a matter of law to establish any causal link between Abacus's allegedly violative acts and Counterclaimants' alleged harm. "[A] statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014); *see also Rayborn v. Credit Pros Int'l, LLC*, 2024 WL 6982827, at *5 (S.D. Fla. Oct. 2, 2024) ("[A]lleging the mere violation of a federal statute is insufficient for an injury to be concrete; the plaintiff must show how the violation brought cognizable harm upon them.").

### A. Coventry Was Not Harmed by Abacus's Relationship with Lapetus

Count II alleges that "Abacus's scheme to use false, misleading, or deceptive life expectancies culminated in and was the proximate cause of their filing of this instant lawsuit." Counterclaims ¶ 102. Counterclaimants further allege that "[t]his lawsuit has produced significant actual damages to Counterclaimants, in the form of litigation costs, attorneys' fees, and reputational harms." *Id.* ¶ 103.

Even assuming that Abacus's use of Lapetus life expectancies somehow constitutes a violation of the FVSA, the Counterclaims do not allege that such use caused any harm to Coventry. Rather, Counterclaimants make clear that

12

their alleged harm is a result of Abacus's filing of this action. But the Counterclaims do not allege—nor could they—that the mere filing of this action by Abacus is a violation of the FVSA. Of course, it is not. And Counterclaimants have otherwise failed to connect the harm alleged by Count II—reputational damage—to the conduct challenged—Abacus's use of Lapetus life expectancies. This is insufficient to establish Article III standing. *See, e.g.*, *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 965 (11th Cir. 2006) ("[A] plaintiff must demonstrate a causal connection between the injury and the conduct complained of to have standing in a federal court.") (citation omitted). In any event, reputational harm arising from "[s]tatements made during litigation" is, as this Court has recognized, "***absolutely privileged*** against defamation" when "relevant to the subject of inquiry." Dkt. 100 at 9-10 (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 607 (Fla. 1994)).

Nor can Coventry rest its damages claim on "the public documents surrounding this lawsuit like Abacus's press releases." Counterclaims ¶ 104. The Counterclaims are bereft of a single statement, other than Count II's *ipse dixit* assertion, demonstrating that Coventry has suffered reputational harm. It is well-settled that "a plaintiff alleging reputational harm must show *how* the defendant's actions harm her reputation." *Students for Justice in Palestine at the Univ. of S. Fla. v. DeSantis*, 2024 WL 371875, at *6 (N.D. Fla. Jan. 31,

13

2024) (quoting *McNaught v. Nolen*, 76 F.4th 764, 772 (8th Cir. 2023)). Counterclaimants' pleading lacks a single, concrete allegation of harm *and* utterly fails to connect Abacus's alleged statutory violation with its claimed damages.  This is insufficient to establish standing.

### B. Counterclaimants Were Not Harmed by Jay Jackson's Board Membership

Equally unavailing is Counterclaimants' argument they were harmed by Abacus CEO Jay Jackson allegedly sitting on the board of Lapetus.  *See* Counterclaims ¶¶ 6, 29, 105-113.  The Counterclaims allege that (i) Jay Jackson sat on the Lapetus Board of Directors from November 2021 through 2024, (ii) Jackson's "service on the [board] . . . constitutes an unfair trade practice under Fla. Stat. § 626.9927," (iii) Jackson "misappropriate[ed]" trade secrets belonging to Coventry and "other industry members," and (iv) "Counterclaimants have suffered actual harm in the form of lost profits" as a result.  *Id.* ¶¶ 108-113.  Defendants' bald assertions, supported by a citation to a single exhibit, Dkt. 102-13, are squarely contradicted by the exhibit and its attachment.  The only information therein that references Coventry merely points out that, while Coventry was telling the world that Abacus should not have been relying on Lapetus's allegedly problematic LE reports, Coventry was in fact the largest buyer of Lapetus's LE reports, that Coventry continued to purchase dozens of LE reports per week in January 2022, and that Coventry

was likely to use Lapetus LEs for their entire current and future book of business on a going-forward basis.  As alleged in the Amended Complaint, Coventry's extensive use of Lapetus LEs was no secret.  Dkt. 38 ¶¶ 86, 100–103.

The Counterclaims fall short because Counterclaimants do not allege a causal link between any alleged misappropriation and their damages, nor do they specify what trade secret information was misappropriated by Mr. Jackson or any reasonable steps taken by Coventry to protect such information.  Counterclaimants' passing reference to lost profits in the "Claims" and "Prayer for Relief" section of their brief is plainly insufficient to establish, as a matter of Article III standing, any causal link between any violation of the FVSA as a result of Mr. Jackson's board membership, if true, and any damages.  "When a party seeks lost future profits, the party must prove that the lost profits were a direct result of the defendant's actions and that the amount of the lost profits can be established with reasonable certainty." *Mortg. Now, Inc. v. Guaranteed Home Mortg. Co., Inc.*, 545 F. App'x. 809, 812 (11th Cir. 2013); *see also Forest's Mens Shop v. Schmidt*, 536 So. 2d 334, 336 (Fla. 4th DCA 1988) ("[A]n award of lost profits cannot be based on mere speculation or conjecture.").  Setting aside that the Counterclaims are utterly devoid of any allegations supporting the claim that Mr. Jackson misappropriated confidential trade secrets, even taken as true, the

15

Counterclaims fail to draw any connection between Mr. Jackson's alleged misappropriation and Coventry's supposed lost profits. The Counterclaims cannot proceed on the bare speculation that Mr. Jackson *might* have violated the FVSA and that this violation *might* have caused Coventry to lose profits; Article III requires more.

The Counterclaims also fail to plausibly allege that trade secrets were misappropriated. To qualify as a "trade secret," the "information [in question] must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." *Seacoast Banking Corp. of Fla. v. Diemer*, 2020 WL 1674309, at *3 (M.D. Fla. Jan. 17, 2020) (citation omitted). A party alleging misappropriation under FUTSA must also demonstrate that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *RxStrategies, Inc. v. CVS Pharmacy, Inc.*, 390 F. Supp. 3d 1341, 1351 (M.D. Fla. 2019) (citation omitted).

The Counterclaims lack any such allegations. First, defendants have not (and could not) allege that the information in question "derives economic value" from not being readily ascertainable. As plaintiffs have shown, it is a matter of public record that Coventry used Lapetus LEs. *See, e.g.*, Dkt. 38 ¶ 102 n.8.

16

It is unclear, therefore, how such publicly-available information could plausibly constitute a trade secret. Nor is it clear that the alleged secrets even belonged to Coventry, since it was Lapetus that would know what fraction of its LEs were sold to Coventry. Further, defendants fail to explain what steps Coventry took to protect the alleged trade secrets. Even assuming that there are valid trade secrets within the meaning of FUTSA, Defendants fail to allege that such trade secrets were improperly obtained. Finally, the Counterclaims lack any allegations demonstrating a causal connection between the alleged misappropriation and any alleged damages. Under the circumstances, in addition to failing to plead and allege a violation of FUTSA, Counterclaimants have not satisfied their obligation to allege causation sufficient to satisfy Article III.

### III. Count III Is an Impermissible Attempt to Plead a Violation of FUTSA

Count III must also be dismissed for the independent reason that it is preempted by FUTSA. FUTSA "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." FUTSA § 688.008(1); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005) ("FUTSA preempts all claims, other than claims *ex contractu,* based on misappropriation of trade secrets."). Claims are preempted when they involve "the same underlying

17

factual allegations as a claim for trade secret misappropriation." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007). This includes claims based on other state statutory provisions or where the allegedly misappropriated information does not constitute a trade secret. *See Am. Registry, LLC v. Hanaw*, 2014 WL 12606501, at \*6 (M.D. Fla. July 16, 2014) (claim under Florida Deceptive and Unfair Trade Practices Act dismissed as preempted by FUTSA because it was "based solely on the misappropriation of plaintiff's [trade secrets]"); *ISO Claims Servs., Inc., ACI Div. v. Bradford Techs., Inc.*, 2011 WL 13176422, at \*4 (M.D. Fla. Sept. 29, 2011) (noting that the UTSA "has been uniformly interpreted to preempt previously existing misappropriation of trade secret actions, whether statutory or common law." (citation omitted)).[2] If allegations of trade secret misappropriation are not "separate and distinct," FUTSA preempts them. *ThinkLite LLC v. TLG Sols., LLC*, 2017 WL 5972888, at \*4 (S.D. Fla. Jan. 31, 2017).

*Allegiance Healthcare* is instructive. *See Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329 (S.D. Fla. 2002). There, a medical supply company sued a departed salesperson and her new employer for both trade-

---

[2] Put another way, the Uniform Trade Secrets Act provides the "sole noncontractual civil remedy for misappropriation of a trade secret." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 235 P.3d 310, 319 (Haw. 2010) (discussing Hawaii's version of FUTSA) (cited with approval in *Hanaw*, 2014 WL 12606501, at \*5).

secret misappropriation and common-law unfair competition. *Allegiance Healthcare*, 232 F. Supp. 2d at 1331–32. The court dismissed the unfair-competition count as preempted by FUTSA. *Id.* at 1335–36. Comparing the two counts, the court found that both were "based on . . . misuse of certain information" the salesperson had obtained, and that the plaintiff "ha[d] not identified any material distinction between the wrongdoing alleged in the trade secret claim and that alleged in the unfair competition claim." *Id.* at 1336. Because "allegations of trade secret misappropriation alone comprise[d] the underlying wrong," the claim was foreclosed by § 688.008. *Id.* at 1335–36.

The logic of *Allegiance Healthcare* applies with equal force here. While denominated as a claim under the Viatical Settlements Act, it is undeniable that Count III is a civil claim based on misappropriation of trade secrets. *See, e.g.*, Counterclaims ¶ 111 (alleging that Jackson "distributed [and misappropriated] . . . trade secret information."). The General Allegations incorporated into Count III make clear that misappropriation of alleged trade secrets is Coventry's concern, as "Jackson's spot on the Lapetus Board" supposedly gave him the opportunity to misappropriate trade secrets. *See id.* ¶ 37. Count III is a creative but futile attempt to recast Jackson's actions as misappropriation of trade secrets. Because there is no material difference between Count III and an ordinary trade secrets claim under FUTSA,

19

Coventry's claim for relief under the Viatical Settlements Act must be dismissed.

Even if the Court declines to dismiss Count III as preempted, it should dismiss anyway because Coventry is not authorized to bring this claim. Coventry pleads Count III under the Florida Viatical Settlements Act § 626.9927. However, § 626.9927(3) provides that only a "person damaged by the acts of a person in violation of this act may bring a civil action against the person committing the violation." Even assuming that Abacus was in violation of FVSA, Coventry has failed to show that its speculative damages are caused by "acts . . . in violation of [FVSA]." The damages, in other words, do not flow from the violation of the statute itself. *See* Discussion *supra* Section II; *Colceriu v. Barbary*, 543 F. Supp. 3d 1277, 1280 (M.D. Fla. 2021) (explaining that "[a] statutory violation alone is not a concrete injury" for Article III purposes). Coventry's pleaded damages do not flow from the alleged statutory violation. The only violation Coventry identifies is Jackson's service on the Lapetus Board. Counterclaims ¶¶ 108–113. But the harm Coventry alleges, namely "lost profits," does not flow from Jackson's status as a director, nor does Coventry explain how it was harmed by his alleged misappropriation and use of Coventry's trade secrets. *Id.* ¶ 113. Because Jackson's mere presence on the Lapetus board (*i.e.*, the alleged violation of FVSA) did not injure Coventry, Count III must be dismissed.

## IV.    Counterclaimants Fail to Allege Damages

A party seeking damages for lost profits or reputational harm, or punitive damages, must plead and prove them with reasonable certainty. To demonstrate entitlement to lost profit damages, the claimant "must prove that 1) the defendant's action caused the damage and 2) there is some standard by which the amount of damages may be adequately determined." *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1214 (11th Cir. 2006) (citing *W.W. Gay Mech. Contractor, Inc. v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1350–51 (Fla. 1989)). Similarly, a party that has "alleg[ed] reputational harm must show *how* the defendant's actions harm her reputation." *Students for Justice in Palestine at the Univ. of S. Florida v. DeSantis*, 2024 WL 371875, at *6 (N.D. Fla. Jan. 31, 2024) (citing *McNaught v. Nolen*, 76 F.4th 764, 772 (8th Cir. 2023)). And "punitive damages are available only upon a showing that the act complained of is characterized by willfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, deliberate violence, moral turpitude, insult, or fraud." *Cook v. Deltona Corp.*, 753 F.2d 1552, 1563 (11th Cir. 1985) (citation omitted).

A. The Counterclaims Fail to Allege Lost Profits

Counterclaimants have failed to set forth any facts that, even if taken as true, would demonstrate the specificity required to adequately plead lost profit damages. Rather, Counterclaimants simply allege in conclusory fashion that

21

they "have suffered actual harm in the form of lost profits stemming from Abacus's improper consolidation of market share due to its unlawfully obtained trade secrets."  Counterclaims ¶ 113.  Outside of this bare allegation, the Counterclaims are devoid of a single sentence explaining what lost profits Coventry has apparently suffered or how such lost profits are capable of being "adequately determined."  "Although a precise accounting of damages need not be pled, [Coventry's] threadbare allegations of harm do not plausibly establish that it was damaged by [Abacus's] conduct." *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 2009 WL 2982834, at *8 (M.D. Fla. Sept. 11, 2009); *see also Int'l Bus. Machs. Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011)  ("[A]n allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*.").

And even accepting as true Defendants' vague and conclusory allegations that Mr. Jackson misappropriated Coventry's trade secrets—which Counterclaimants do not sufficiently allege, *see* Discussion *supra* Section II— the Counterclaims are entirely devoid of any explanation of how the damages they allude to were caused by Mr. Jackson's alleged conduct, as required by Article III.  *See* Discussion *supra* Section II.  Counterclaimants' failure to establish any causal connection between their alleged damages and the conduct complained of dooms their claims.

B. The Counterclaims Fail to Allege Reputational Harm

22

Counterclaimants' allegations of reputational harm suffer from the same pleading deficiencies. As with their allegations of lost profits, Counterclaimants have merely alleged in wholly conclusory fashion that "Abacus's scheme to use this pattern of false, misleading, or deceptive life expectancies … caused actual damages to Counterclaimants, including reputational harm to Coventry and its business." Counterclaims ¶ 104. But the Counterclaims lack a single, concrete allegation explaining what reputational harm Coventry suffered, or how any of Abacus's actions caused such harm. This is plainly insufficient to demonstrate Counterclaimants' entitlement to damages for reputational harm. *See, e.g.*, *Geller v. Von Hagens*, 2010 WL 4867540, at *5 (M.D. Fla. Nov. 23, 2010) ("Stating that Plaintiffs 'have suffered and will continue to suffer irreparable damage to their reputation, business, trade and relationships in Florida and elsewhere,' without more, is simply not sufficient under the new pleading standard required by *Iqbal*.").

C. Punitive Damages Are Not Available

Counterclaimants may not recover punitive damages for the simple reason that the FVSA does not authorize them, and even if authorized by the statute, the Counterclaims fail to allege the requisite level of culpability to award punitive damages. The FVSA allows a party to seek "damages, together with court costs and reasonable attorney's fees incurred by the plaintiff."

23

FVSA § 626.9927(3).  Under analogous circumstances, Florida courts hold that punitive damages are not available unless specifically contemplated by statute. *Cf. Branch v. Airtran Airways, Inc.*, 314 F. Supp. 2d 1194, 1196 (M.D. Fla. 2004) (holding that the statutory language "any compensatory damages allowable at law" indicates that punitive damages are not available under the Florida Whistleblower Act); *see also Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of United Broth. of Carpenters & Joiners of Am.*, 675 F.3d 1250, 1264 (11th Cir. 2012) ("The ordinary meaning of the term 'damages' includes actual, compensatory damages.") (citation omitted).

The FVSA's damages provision authorizes "damages, together with court costs and reasonable attorney's fees" but does not include any provision allowing for punitive damages.  Nor does the statute include any provisions providing for damage multipliers, such as trebled damages, that would evince a statutory intent to allow for punitive damages.  For these reasons, the punitive damages Counterclaimants seek are not available under the FVSA.

Finally, Counterclaimants cannot seek punitive damages because they have not alleged—nor can they allege—that Abacus acted with the requisite level of culpability.  An award of punitive damages is appropriate only where a party engages in fraud or acts with malicious intent.  *See Cook*, 753 F.2d at 1563.  The Counterclaims do not contain any allegations of malice, gross negligence, recklessness, or any other activity that would merit an award of

24

punitive damages, even if Counterclaimants' accusations were accepted as true and construed favorably. Accordingly, the Court should order that punitive damages are not available to Counterclaimants and dismiss these claims.

## CONCLUSION

For all these reasons, the Court should dismiss the Counterclaims.

## Local Rule 3.01(g) Certificate

Pursuant to Local Rule 3.01(g), I hereby certify that Plaintiff's counsel conferred with Defendants' counsel by email in advance of filing this motion. Defendants oppose the relief requested in this motion.

DATED:  July 30, 2026

/s/  *Alex Zuckerman*

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Jason D. Sternberg (Fla. Bar No. 72887)
jasonsternberg@quinnemanuel.com
Osvaldo Rodriguez (Fla. Bar No. 1039307)
osvaldorodriguez@quinnemanuel.com
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 402-4880

Alex Zuckerman (*pro hac vice*)
alexzuckerman@quinnemanuel.com
Teodora Pasca (*pro hac vice*)
teodorapasca@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

Kathleen S. Messinger (*pro hac vice*)
kathleenmessinger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Nicole Arata
nicolearata@quinnemanuel.com
111 Huntington Avenue, Suite 520
Boston, MA 02199

26

(617) 712-7150

*Attorneys for Plaintiff Abacus Global Management, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 30, 2026, a true and correct copy of the foregoing document was electronically served via the CM/ECF system on all parties authorized to accept service by CM/ECF.

*/s/ Alex Zuckerman*

Alex Zuckerman