# EXHIBIT 33

No Bates Number

# SECOND AMENDED AND RESTATED

# AGREEMENT OF LIMITED PARTNERSHIP

## OF

## ABACUS PREMIER INCOME FIXED, LP

## TABLE OF CONTENTS

Page

ARTICLE I        GENERAL PROVISIONS ...................................................................................1

    1.1      Continuation............................................................................................................1
    1.2      Partnership Name ....................................................................................................1
    1.3      Purpose....................................................................................................................1
    1.4      Registered Office and Registered Agent..................................................................2
    1.5      Fiscal Year and Fiscal Periods ...............................................................................2

ARTICLE II       DEFINITIONS; DETERMINATIONS ..........................................................2

    2.1      Definitions...............................................................................................................2
    2.2      Determinations ........................................................................................................7

ARTICLE III      ADMISSION OF LIMITED PARTNERS .......................................................8

    3.1      Admission of Limited Partners ...............................................................................8
    3.2      Initial Closing..........................................................................................................8
    3.3      Subsequent Closings ...............................................................................................8

ARTICLE IV       CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNT
                   ALLOCATIONS ..........................................................................................8

    4.1      Capital Accounts.....................................................................................................8
    4.2      Allocation of Income for Tax Purposes...................................................................8
    4.3      Treasury Regulations Compliance ..........................................................................9
    4.4      Distributions in Kind...............................................................................................9

ARTICLE V        DISTRIBUTIONS .........................................................................................9

    5.1      Distribution Policy ..................................................................................................9
    5.2      Distributions..........................................................................................................10
    5.3      Return of Distributions .........................................................................................10
    5.4      Withholding ..........................................................................................................11

ARTICLE VI       EXPENSES...................................................................................................12

    6.1      Expenses of the Partnership ..................................................................................12
    6.2      Organizational Expenses.......................................................................................12
    6.3      Overhead Expenses ...............................................................................................12
    6.4      Longevity Assets Transaction Fees .......................................................................12
    6.5      Management Fee.....................................................................................................12

ARTICLE VII    GENERAL PARTNER................................................................13

    7.1    Management of the Partnership .................................................13
    7.2    Powers of the General Partner .................................................13
    7.3    No Transfer, Withdrawal or Loans ..........................................14
    7.4    Limitation of Liability; Indemnification ..................................14
    7.5    No Personal Liability for Return of Capital..............................15
    7.6    General Partner Time and Attention .........................................15
    7.7    Removal of the General Partner................................................15

ARTICLE VIII    LIMITED PARTNERS...........................................................16

    8.1    Limited Liability ......................................................................16
    8.2    No Participation in Management ...............................................16
    8.3    Transfer of Interests .................................................................16
    8.4    Withdrawal and Loans ..............................................................17
    8.5    Mandatory Withdrawals............................................................17
    8.6    No Termination; Waiver of Partition ........................................17
    8.7    Confidential Information ..........................................................17

ARTICLE IX    DURATION AND DISSOLUTION............................................18

    9.1    Duration of the Partnership.......................................................18
    9.2    Fifth Year Withdrawal ..............................................................19
    9.3    Liquidation of the Partnership ..................................................19
    9.4    Procedure on Winding Up .........................................................19

ARTICLE X    BOOKS OF ACCOUNTS; MEETINGS ......................................20

    10.1    Books ........................................................................................20
    10.2    Audit of Books..........................................................................20
    10.3    Fiscal Year ................................................................................20
    10.4    Reports ......................................................................................20
    10.5    Tax Allocations.........................................................................22
    10.6    Partnership Representative.........................................................22
    10.7    Code §83 Safe Harbor Election .................................................23
    10.8    Non-U .......................................................................................23
    10.9    Passive Foreign Investment Company........................................24

ARTICLE XI    CERTIFICATE OF LIMITED PARTNERSHIP...........................24

    11.1    Certificate of Limited Partnership ............................................24
    11.2    Powers of Attorney ...................................................................24

ARTICLE XII    MISCELLANEOUS ..............................................................25

    12.1    Arbitration.................................................................................25
    12.2    Governing Law .........................................................................26

ii

12.3    Amendments ......................................................................................26
12.4    Successors ..........................................................................................27
12.5    Notices ...............................................................................................27
12.6    Entire Agreement ..............................................................................27
12.7    No Third-Party Beneficiaries ...........................................................29
12.8    Side Letters .......................................................................................29

**SECOND AMENDED AND RESTATED**

**AGREEMENT OF LIMITED PARTNERSHIP**
**OF**
**ABACUS PREMIER INCOME FIXED, LP**

THIS SECOND AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP, dated as of April 08, 2025, is made and entered into by and among Abacus Premier Income Fixed GP, LLC, a Delaware limited liability company (the "General Partner"), Abacus Premier Income Fixed, LP, a Delaware limited partnership (the "Partnership"), and each Person (as hereinafter defined) who the General Partner has or will accept as a limited partner of the Partnership (each a "Limited Partner," and collectively, the "Limited Partners"). The General Partner and the Limited Partners are collectively referred to herein as the "Partners."

WHEREAS, the Partnership was formed pursuant to filing of a certificate of limited partnership (the "Certificate") with the Delaware Secretary of State on February 5, 2025, under the name "Abacus Premier Income Fixed, LP;" and

WHEREAS, the parties hereto desire to amend and restate the Amended and Restated Agreement of Limited Partnership of the Partnership, dated as of March 1, 2025 (the "Prior Agreement") in its entirety in order to make the modifications hereinafter set forth.

NOW, THEREFORE, in consideration of the foregoing premises, which are hereby incorporated into the terms hereof, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Persons signing this Agreement below, or a counterpart hereof, agree that the business and affairs of the Partnership shall henceforth be governed by this Agreement.

NOW, THEREFORE, the parties hereto agree as follows:

ARTICLE I
GENERAL PROVISIONS

1.1     Continuation. The Partners hereby continue the Partnership pursuant to the Act. Except as otherwise provided in this Agreement, the rights and liabilities of the Partners are governed by the Act. Capitalized terms used in this Agreement shall have the meanings set forth in Section 2.1 below or as otherwise specified herein.

1.2     Partnership Name. The name of the Partnership shall be "Abacus Premier Income Fixed, LP" or such other name or names as the General Partner may designate from time to time. The General Partner shall promptly notify each Limited Partner in writing of any change in the Partnership's name.

1.3     Purpose. The Partnership is organized for the principal purposes of investing in tertiary market, non-variable individual life insurance contracts ("Mortality Contracts"), and individual and individual single premium income annuities ("Annuity Contracts," and together with Mortality Contracts, "Longevity Assets") and assets similar to or derivative of Longevity Assets.

1.4     Registered Office and Registered Agent. The address of the Partnership's registered office in the State of Delaware is located at 1209 Orange Street, Wilmington, Delaware 19801. The name of the Partnership's registered agent for service of process at such address is The Corporation Trust Company. The General Partner may designate a different registered agent and/or registered office at any time.

1.5     Fiscal Year and Fiscal Periods. The fiscal year of the Partnership shall end on December 31 of each year, subject to change by the General Partner from time to time. A new fiscal period ("Fiscal Period") shall commence on the first day of each fiscal year and the prior Fiscal Period shall end on the date immediately preceding such date of commencement of a new Fiscal Period.

ARTICLE II
DEFINITIONS; DETERMINATIONS

2.1     Definitions.

"Adverse Effect" means, with respect to a prospective Capital Contribution by a Limited Partner or such Limited Partner's continued participation in the Partnership, that such contribution or participation, when taken by itself or together with the contribution or participation by any other Partner(s), is reasonably likely to (i) result in a violation of a law, statute, rule, regulation, order or administrative guideline of a United States federal, state or local governmental authority or a non-U.S. governmental authority that is reasonably likely to have an adverse effect on the Partnership, the General Partner, Manager, Service Provider, or any of their respective partners, members, managers, shareholders or owners, (ii) subject any Person referred to in clause (i) to any material filing requirement, material regulatory requirement (including the registration or other requirements of the Investment Company Act of 1940, as amended, any additional requirements of the Investment Advisers Act of 1940, as amended) or material tax, withholding in respect of tax or expense to which it would not otherwise be subject (including withholding under FATCA), or materially increase any tax, withholding in respect of tax or expense, or make any filing or regulatory requirement materially more burdensome (including application for a license from the U.S. Department of Treasury's OFAC or FinCEN), (iii) impair, delay or otherwise have an adverse impact on the ability of the Partnership to make or continue to hold an investment or require the General Partner to modify the terms of any investment in a manner that is materially adverse to the Partnership, or (iv) have an adverse impact on the value or prospective value of an investment or the ability of the Partnership to exit an investment; and, in the case of any of the foregoing clauses, such result, as determined by the General Partner, would not be advisable in light of the circumstances.

"Affiliate" of any Person means any other Person, controlling, controlled by or under common control with such Person

"Act" means the Delaware Revised Uniform Limited Partnership Act, as amended from time to time.

2

"Agreement" means this Second Amended and Restated Agreement of Limited Partnership of Abacus Premier Income Fixed, LP, as amended, restated, waived, supplemented or otherwise modified from time to time in accordance with its terms.

"Applicable Percentage" means, with respect to each Partner, as of any date during the relevant period, ten (10.0%) percent per annum.

"Assets" means the value of all Partnership cash, Short-term Investments and other investments, including Longevity Assets.

"Base Rate" means, on any date, a variable rate per annum equal to the rate of interest most recently published by The Wall Street Journal as the "prime rate" at large U.S. money center banks.

"Business Day" means any day other than a Saturday or Sunday on which commercial banks are open for business in New York, New York.

"Capital Account" has the meaning set forth in Section 4.1.

"Capital Contribution" means, with respect to each Partner, subject to Section 3.2, the amount of cash received by the Partnership from such Partner.

"Certificate" has the meaning set forth in the recitals.

"Code" means the U.S. Internal Revenue Code of 1986, as amended from time to time.

"Confidential Information" means (i) all information, materials and data relating to any Partnership Entity or any Partner that are not generally known to or available for use by the public (including this Agreement, information, materials and data relating to products or services, pricing structures (including historical, current or projected pricing, cost, sales and profitability of each product or service offered), accounting and business methods, financial data (including historical, current or projected performance data, investment returns, valuations, financial statements or other information concerning historical, current or projected financial condition, results of operations or cash flows), inventions, devices, new developments, methods and processes, prospective investments, customers, clients and investors, customer, client and investor lists, copyrightable works and all technology, trade secrets and other proprietary information and information, materials and data provided in connection with any opportunity to co-invest alongside the Partnership), (ii) all information, materials and data the disclosure of which the General Partner in good faith believes is not in the best interests of any Partnership Entity or any Partner and (iii) all other information, materials and data, if any, that any Partnership Entity or any Partner is required by applicable law, statute, rule, regulation or agreement to keep confidential. For purposes of this definition, all references to Partnership Entities shall include each vehicle controlled or sponsored by Abacus Premier Income Fixed GP, LP or any of its Affiliates.

"Current Income" means interest, dividend and similar income from Investments held by the Partnership (other than Short-Term Investment Income).

"Date of Acceptance" means the date of a subsequent investment into the Partnership in accordance with Section 3.3 hereof.

"Disclosure Recipient" means, with respect to any Limited Partner, each of such Person's Affiliates, directors, officers, employees, representatives, agents, attorneys and other financial or advisers who are authorized by the Limited Partner to receive Confidential Information from the Partnership.

"Effective Date" means March 31, 2025.

"FATCA" means the Foreign Account Tax Compliance provisions enacted as part of the U.S. Hiring Incentives to Restore Employment Act and codified in §§ 1471 through 1474 of the Code, all rules, regulations and other guidance issued thereunder, and all administrative and judicial interpretations thereof.

"GAAP" means U.S. generally accepted accounting principles, consistently applied.

"General Partner" means the Abacus Premier Income Fixed GP, LLC, a Delaware limited liability company, in its capacity as general partner of the Partnership, and any successor general partner of the Partnership in such capacity.

"GP Removal Notice" has the meaning set forth in Section 7.7.

"Initial Closing Date" means March 31, 2025.

"Interests" has the meaning set forth in Section 2.2(a).

"Investment" means any investment made by the Partnership in a Longevity Asset or other asset.

"Investment Advisers Act" means the U.S. Investment Advisers Act of 1940, as amended, and the rules and regulations promulgated thereunder.

"Investment Company Act" means the U.S. Investment Company Act of 1940, as amended, and the rules and regulations promulgated thereunder.

"Investment Proceeds" means all cash, securities and other property received by the Partnership in respect of any Investment or portion thereof (excluding any portion thereof that constitutes the Investment and excluding non-cash proceeds, except to the extent that such portion or such proceeds are distributed to the Partners in kind), net of any indebtedness repayment and any expenses or taxes borne by the Partnership in connection with such Investment (or proceeds with respect thereto).

"IRS Notice" has the meaning set forth in Section 10.8.

"Liability" has the meaning set forth in Section 5.3(b).

"Limited Partners" means the Persons listed on Schedule I as limited partners, in their capacity as limited partners of the Partnership, and, in its capacity as a limited partner of the Partnership, each Person who is admitted to the Partnership as an additional Limited Partner

pursuant to Section 3.1, in each case for so long as such Person continues to be a limited partner hereunder.

"Longevity Assets" means Mortality Contracts, Annuity Contracts, and any other assets similar or derivative thereto.

"Manager" means  LMA Series, LLC, a Florida limited liability company, or any other Person designated from time to time by the General Partner with as a manager with respect to the Partnership, and its successors or assigns.

"NAV" or "Net Asset Value" of the Partnership means the sum of the value of all Assets, minus all Partnership debts and borrowings.

"Organizational Expenses" means all expenses (including travel, printing, legal, capital raising, accounting, regulatory compliance (including expenses associated with the initial and/or preliminary registrations, filings and compliance obligations and other offering requirements), and any administrative or other filings) incurred (including to the extent incurred by any placement agents, finders or other third-parties performing similar services) in connection with the organization, funding and start-up of the Partnership, the General Partner, and any affiliated management company, including the preparation of, and negotiations with respect to, this Agreement and any Side Letters or similar agreements, but not including any Placement Fees.

"Overhead Expenses" means all fees, costs, expenses, liabilities and obligations relating to the Partnership's and/or its subsidiaries' operations activities, business, Longevity Assets or actual or potential investments, including with respect to any Person formed to effect the acquisition and/or holding of a Longevity Asset, including all fees, costs, expenses, liabilities and obligations relating or attributable to.

"Partners" has the meaning set forth in the introductory paragraph.

"Partnership" means Abacus Premier Income Fixed, LP.

"Partnership Entities" means, collectively, the Partnership, any alternative investment vehicles, the General Partner, the Manager and each of their respective Affiliates.

"Partnership Group" means the Partnership and any alternative investment vehicle formed by the General Partner of the benefit of the Partnership.

"Partnership Representative" has the meaning set forth in Section 10.6.

"Partnership Tax Audit Rules" means Code §§6221 through 6241, together with any guidance issued thereunder or successor provisions and any similar provision of state or local tax laws.

"Person" means an individual, a partnership (general, limited or limited liability), a corporation, a limited liability company, an association, a joint stock company, a trust, a joint venture, an unincorporated organization, or a governmental, quasi-governmental, judicial or regulatory entity or any department, agency or political subdivision thereof.

"Placement Fees" means any private placement or finders' fees paid by the Partnership to placement agents, finders or other third-parties performing similar services in connection with the organization or funding of the Partnership.

"Prior Agreement" has the meaning specified in the recitals.

"Preferred Return Amount" means, as of any date of determination, an amount equal to the return on a Partner's Unreturned Capital Contributions computed like interest at the Applicable Percentage. For purposes of determining the Preferred Return Amount, if the amount of a Partner's Unreturned Capital Contributions changes during any relevant period, the Preferred Return Amount shall be calculated on a prorated basis using the amount of Unreturned Capital Contributions, as of any such date(s) during the period.

"Short-Term Investment Income" means all income earned on Short-Term Investments, including any gains and net of any losses realized upon the disposition of Short-Term Investments and also net of any costs and expenses directly attributable thereto.

"Short-Term Investments" means (i) cash or cash equivalents, (ii) commercial paper rated no lower than "A-1" by Standard & Poor's Ratings Services or "P-1" by Moody's Investors Service, Inc. or a comparable rating by a comparable rating agency, (iii) any readily marketable obligations issued directly or indirectly and fully guaranteed or insured by a national, provincial, state or territorial government or any of its agencies or instrumentalities, having equivalent credit ratings to the securities listed in clause (ii) above, (iv) obligations of the United States, (v) U.S. state or municipal governmental obligations, money market instruments, or other short-term debt obligations having equivalent credit ratings to the securities listed in clause (ii) above, (vi) certificates of deposit issued by, or other deposit obligations of, commercial banks chartered by the United States, Hong Kong, Japan or any member nation of the European Union, each having, at the date of acquisition by the Partnership, combined capital and surplus of at least $500 million or the equivalent thereof, (vii) overnight repurchase agreements with primary dealers collateralized by direct United States obligations, (viii) pooled investment vehicles or accounts that invest only in securities or instruments of the type described in clauses (i) through (vii) above, and (ix) other similar obligations and securities having equivalent credit ratings to the securities listed in clause (ii) above, in each case maturing in one year or less at the time of investment by the Partnership or other Person.

"Side Letter" has the meaning set forth in Section 12.8.

"Tax Amount" means, with respect to a fiscal year and with respect to each Partner, an amount equal to the anticipated taxes with respect to the Partnership income allocated to such Partner for such fiscal year. All calculations of anticipated taxes pursuant to this definition shall assume that (i) each Partner is subject to the highest applicable marginal U.S. federal, state and local tax rates to which any of the General Partner's partners or former partners (or any of their respective direct or indirect beneficial owners) is subject, and taking into account the character of any income, gains, deductions, losses or credits and, in the event the limitation set forth in Section 164(b)(6)(B) of the Code (as amended by the Tax Cuts and Jobs Act of 2017) no longer applies, the Tax Amount for such fiscal year shall be calculated taking into account the deductibility of U.S. state and local taxes, subject to any applicable limitations on deductibility, (ii) for purposes

6

of determining the tax benefit of a deduction, loss or credit, each Partner's only income, gains, losses, deductions and credits for such fiscal year and each prior fiscal year are income, gains, deductions, losses and credits attributable to its ownership interest in the Partnership, (iii) with respect to any distribution of investments in kind received by any Partner, the Partnership's income allocable to such Partner includes an amount equal to the income that would have been recognized by such Partner if such investments had been sold in a taxable transaction immediately after their receipt by such Partner for an amount equal to their value determined for purposes of Section 3.1, and (iv) any Partnership losses allocated to such Partner in prior periods but not previously utilized as an offset against income or gains pursuant to this paragraph are available for offset against income and gains (to the extent permitted by applicable tax law) with respect to such fiscal year.

"Transfer" has the meaning set forth in Section 8.3.

"United States" or "U.S." means the United States of America, its territories and possessions, any State of the United States of America and the District of Columbia.

"Unreturned Capital Contributions" means, for each Partner, the excess, if any, of such Partner's Capital Contributions over the aggregate distributions made to such Partner pursuant to this Agreement. For purposes of the preceding sentence, distributed property will be valued as determined in accordance with the provisions of Article X (determined as of the time of distributions and net of liabilities secured by such property that the Partner assumes or to which the Partner's ownership of the property is subject).

    2.2    Determinations.

    (a)    Any determination to be made under this Agreement or the Act based upon a majority or other specified proportion or percentage of the "Capital Accounts" and any other vote hereunder or under the Act involving the Limited Partners shall disregard any consent, approval or vote with respect to any interests that are not entitled to vote on a particular matter pursuant to the terms of this Agreement, any Side Letter or similar agreement, or the Act. Such proportion or percentage shall be expressed as a fraction, based on Capital Accounts, as applicable, and shall be calculated by excluding from both the numerator and the denominator the aggregate of all interests held by affiliated persons of the General Partner. Any determination to be made under this Agreement or the Act based upon a majority or other specified proportion or percentage of certain Persons' "Interests" shall be determined based on the applicable Persons' Capital Account.

    (b)    For purposes of obtaining any approval or consent under the Investment Advisers Act with respect to a transaction that would result in any "assignment" (within the meaning of the Investment Advisers Act) with respect to the General Partner, the Manager or any other investment advisory Affiliate of the General Partner, the General Partner may request such approval or consent and require a response within a specified reasonable time period (which shall not be less than 45 days), and failure by a Limited Partner to respond within such time period shall be deemed to constitute such Limited Partner's approval or consent.

7

## ARTICLE III
## ADMISSION OF LIMITED PARTNERS

3.1     Admission of Limited Partners. The General Partner is authorized to admit as Limited Partners persons or entities who meet the requirements for admission to the Partnership set forth herein and in the subscription agreement of the Partnership (the "Subscription Agreement"). The General Partner may in its discretion reject any subscription in whole or in part. Upon acceptance by the General Partner, a Subscription Agreement and the obligations and representations contained therein are binding and non-revocable unless otherwise agreed to by the General Partner. The minimum initial investment in the Partnership is one hundred thousand dollars ($100,000); provided, however, that the General Partner may accept investments of a lesser amount.

3.2     Initial Closing. On the Initial Closing Date, each Partner shall make a Capital Contribution to the Partnership. Interests in the Partnership will be offered continuously by the General Partner during the Investment Period.

3.3     Subsequent Closings. The General Partner may admit additional Limited Partners, or accept additional Capital Contributions from existing Partners, on the first day of each month and at such other times as the General Partner determines. The minimum subsequent investment in the Partnership by an existing Limited Partner is ten thousand ($10,000) dollars; provided; however, that the General Partner may accept subsequent Capital Commitments of a lesser amount. Commitments by existing or prospective Limited Partners after the Initial Closing will be effective as of the first Business Day of each month or on any other date selected by the General Partner, and new Limited Partners will be considered admitted to the Partnership as of such date ("Date of Acceptance").

## ARTICLE IV
## CAPITAL CONTRIBUTIONS; CAPITAL ACCOUNT ALLOCATIONS

4.1     Capital Accounts. The Partnership shall maintain a separate capital account for each Partner (each, a "Capital Account") according to the rules of U.S. Department of Treasury Reg. §1.704-1(b)(2)(iv). For this purpose, the Partnership may, upon the occurrence of any of the events specified in U.S. Department of Treasury Reg. §1.704-1(b)(2)(iv)(f), increase or decrease the Capital Accounts in accordance with the rules of such regulation and U.S. Department of Treasury Reg. §1.704-1(b)(2)(iv)(g) to reflect a revaluation of Partnership property.

4.2     Allocation of Income for Tax Purposes. Ordinary Deductions and Ordinary Income. For Federal income tax purposes, all items of deduction other than realized capital losses, and all items of income other than realized capital gains, shall be allocated, as nearly as is practicable, in accordance with the manner in which such items of deduction or income affected the amounts that were either deducted from or added to the Capital Accounts of the Partners.

(a)     Capital Gains and Losses on Contributed Securities. For Federal income tax purposes, capital gains and losses (short and long-term, as the case may be) recognized by the Partnership on the disposition of securities contributed by a Partner to the capital of the Partnership

shall be allocated in accordance with the provisions of Section 704(c) of the Internal Revenue Code of 1986, as amended (the "Code").

(b)    Other Capital Gains and Losses. Except as provided in Section 4.2(c) hereof, for Federal income tax purposes, capital gains and capital losses recognized in any Fiscal Period (short and long-term, as the case may be) shall be allocated, as nearly as is practicable, in accordance with the manner in which the increase or decrease in the value of the securities positions giving rise to such gains or losses was added to or deducted from the Capital Accounts of the Partners in such Fiscal Period and prior Fiscal Periods.

(c)    Allocation of Capital Gains to Withdrawing Partners. Notwithstanding Section 4.2 above, in the event a Partner withdraws all of his Capital Account from the Partnership, the General Partner, in its sole discretion, may make a special allocation to said Partner for Federal income tax purposes of the capital gains recognized by the Partnership in such a manner as will reduce the amount, if any, by which such Partner's Liquidating Share exceeds his Federal income tax basis in his interest in the Partnership before such allocation.

4.3    Treasury Regulations Compliance. The provisions of this Article VI and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with section 1.704-1(b) and other applicable sections of the Treasury Regulations, and shall be interpreted and applied in a manner consistent with them. If the General Partner determines that it is prudent to modify the manner in which the Capital Accounts are computed in order to comply with the Treasury Regulations, the General Partner may make such modifications, provided they do not have a material (net) adverse effect on the amounts distributable to any Limited Partner.

4.4    Distributions in Kind.

(a)    The General Partner shall not distribute to the Limited Partners any Partnership Asset other than cash.

ARTICLE V
DISTRIBUTIONS

5.1    Distribution Policy.

(a)    Subject to Sections 5.1(b) and Section 5.3 below, the General Partner may, but shall not be required to, cause the Partnership to make distributions of cash, securities and other property to the Partners at any time and from time to time in the manner described in this Agreement.

(b)    The General Partner shall use its commercially reasonable efforts to cause the Partnership to distribute cash, Current Income and Short-Term Investment Income at least quarterly, subject to the availability of cash after paying Overhead Expenses and after setting aside appropriate reserves for anticipated expenses (including premium on Longevity Assets), liabilities, obligations and commitments of the Partnership.

9

(c)    Any distribution by the Partnership pursuant to this Agreement to the Person shown on the Partnership's records as a Partner or to such Person's legal representatives, or to the transferee of such Person's right to receive such distributions as provided herein, shall, to the maximum extent not prohibited by applicable law acquit the Partnership and the General Partner of all liability to any other Person that may be or may purport to be interested in such distribution by reason of any actual or purported Transfer of such Person's Interest in the Partnership for any reason (including a Transfer of such Interest by reason of the death, incompetency, bankruptcy or liquidation of such Person).

(d)    Notwithstanding anything to the contrary contained in this Agreement, neither the Partnership nor the General Partner on behalf of the Partnership shall be required to make a distribution to any Partner on account of its Interest in the Partnership to the extent such distribution would violate this Agreement, the Act or other applicable law.

5.2    Distributions. Distributable amounts shall be apportioned preliminarily among the Partners in proportion to their respective Capital Accounts. The amount so apportioned to each other Partner shall be distributed between the General Partner and such Partner as follows:

(a)    First, 100% to such Partner until such Partner has received cumulative distributions pursuant to this Section 5.2 equal to such Partner's aggregate Capital Contributions and such Partner's Preferred Return Amount.

(b)    Thereafter, twenty percent (20%) to the General Partner and eighty percent (80%) percent to such Partner.

5.3    Return of Distributions.

(a)    If, after exhausting all available insurance coverage, the Partnership or any subsidiary thereof incurs any Liability the Partnership may recall distributions made to the Partners pursuant to this Agreement pro rata according to the amount that such Liability would have reduced the distributions received by such Partners had such Liability been incurred by the Partnership prior to the time such distributions were made (in each case, the recalled amounts shall be refunded to the Partnership by the Partners within ten (10) days following notice in the form of a capital call notice or other written request by the General Partner); provided in no event shall any Partner be required to refund capital pursuant to this Section 5.3 in excess of the lesser of (a) the aggregate amount of distributions received by such Partner from the Partnership pursuant to this Agreement, and (b) 20% of such Partner's Capital Commitment; provided, further, that in no event shall any Partner be required to refunded amounts pursuant to this Section 5.3 that exceed the aggregate amount of distributions received by such Partner from the Partnership pursuant to this Agreement on or after the date 24 months prior to the date on which the General Partner notified the Partners in writing of such Liability or Liabilities or potential Liability or Liabilities, net of any such period's distributions returned by such Partner to the Partnership pursuant to this Section 5.3.

(b)    For purposes of this Section 5.3, "Liability" means any liability or obligation that the Partnership would be required by this Agreement or otherwise to pay if it had adequate funds, including (i) the expenses of investigating, defending or handling any pending or threatened litigation or claim arising out of the Partnership's activities, investments or business,

10

but excluding such expenses that arise out of the General Partner's gross negligence, willful misconduct, or breach of its fiduciary duties of good faith and fair dealing (ii) the amount of any judgment or settlement arising out of such litigation or claim, (iii) the Partnership's obligation to return proceeds following the disposition of any Investment and (iv) the Partnership's obligation to indemnify any Partner or other Person pursuant to Section 7.4 or otherwise.

(c)    Any amounts contributed by a Partner pursuant to Section 5.3(a) shall be credited to such Partner's Capital Account but shall not constitute a Capital Contribution hereunder. Any debit pursuant to Section 4.1 on account of a Liability shall be allocated to the Partners' Capital Accounts after crediting the contributions required by this Section 5.3 to the Partners' Capital Accounts.

(d)    A Partner's obligation to make contributions to the Partnership under this Section 5.3 shall survive the dissolution, liquidation, winding up and termination of the Partnership, subject to any limitations on survival expressed elsewhere in this Section 5.3, and for purposes of this Section 5.3, the Partnership may pursue and enforce all rights and remedies it may have against each Partner under this Section 5.3, including instituting a lawsuit to collect any contribution with interest and reimbursement of collection costs from the date such contribution was required to be paid under Section 5.3(a) calculated at a rate equal to the Base Rate plus six percentage points per annum (but not in excess of the highest rate per annum permitted by applicable law as determined by the General Partner).

(e)    The rights and remedies contained in this Section 5.3 shall be exercisable only by the General Partner for the benefit of the Partnership and the General Partner, and nothing in this Section 5.3 is intended to or shall provide any Person that is not a party hereto with any rights or remedies with respect to or under this Agreement.

5.4    Withholding. Any taxes, fees or other charges the Partnership is required to withhold under applicable law with respect to any Partner shall be withheld by the Partnership (and paid to the appropriate governmental authorities) and shall be deducted from the Capital Account of such Partner as of the last day of the Fiscal Period with respect to which such amount is required to be withheld. If the Partnership incurs a withholding tax or other tax obligation (including, for the avoidance of doubt, any "imputed underpayment" within the meaning of Code §6225 and any associated interest or penalties related thereto that is paid by the Partnership) with respect to the share of Partnership income allocable to any Partner, then the General Partner, without limitation of any other rights of the Partnership or the General Partner, will cause the amount of the obligation to be debited against the Capital Account of the Partner when the Partnership pays the obligation and otherwise reduce the amount distributable to such Partner for such withholdings (as determined by the General Partner in its discretion). The General Partner will not be obligated to apply for or obtain a reduction of, or exemption from, withholding tax on behalf of any Partner that may be eligible for the reduction or exemption. Each Partner will, as applicable, take such actions as are required to establish to the reasonable satisfaction of the General Partner that such Partner is not subject to any withholding tax obligations imposed under applicable laws (including by Code §1471 or §1472). In addition, each Partner will assist the Partnership and the General Partner with any applicable information-reporting or other obligation imposed on the Partnership, the General Partner, or their respective Affiliates, pursuant to FATCA.

11

ARTICLE VI
EXPENSES

6.1     <u>Expenses of the Partnership</u>. The General Partner (or an entity designated by it) shall be authorized to incur and pay in the name and on behalf of the Partnership all reasonable expenses that it deems necessary or desirable in furtherance of the purposes of and in the best interest of the Partnership. The Partnership shall reimburse the General Partner or its Affiliates for any fees, costs or expenses which were advanced by such person.

6.2     <u>Organizational Expenses</u>. The General Partner and its Affiliates shall pay all Organizational Expenses of the Partnership and any parallel investment vehicles in excess of $500,000. All Organizational Expenses up to this amount shall be borne by the Limited Partners of the Partnership and any other parallel investment funds, as a whole, pro rata to their relative Capital Commitments.

6.3     <u>Overhead Expenses</u>. The Partnership shall pay or reimburse the General Partner, the Manager or any Person advancing payment of such expenses, all Overhead Expenses including, but not limited to: (a) expenses incurred in connection with the Investments (including related due diligence expenses); (b) auditing, accounting, investment banking, consulting, finder's, custody, transfer, registration or other similar fees and expenses; (c) expenses associated with preparation of the Partnership's financial statements, tax returns, annual and special meetings of the Limited Partners and K-1s; (d) expenses associated with out-sourcing certain financial, administrative and accounting services provided to the Partnership; (e) commissions or brokerage fees or similar charges associated with the acquisition, holding and disposition of the Investments; (f) any taxes, fees or other governmental charges levied against the Partnership; (g) expenses associated with the conduct of Limited Partner meetings; (h) any extraordinary expenses, including the costs of any litigation or investigation involving activities of the Partnership, excluding any matters as to which the General Partner is not ultimately indemnified (advancement of any expenses permitted for this clause shall be subject to repayment if willful misconduct is found to have occurred and/or indemnification is not ultimately available pursuant to <u>Section 7.4</u>); (i) costs and expenses for terminating, dissolving and winding up the Partnership and the General Partner; and (j) any fees and expenses payable to the Manager and any other consulting, legal, accounting, and other professional fees and any other ongoing expenses. All Overhead Expenses shall be borne by the Partners and any parallel investment funds, as a whole, pro rata to their relative Capital Contributions; <u>provided</u>, <u>however</u>, that any expenses that are specifically attributable to a particular Investment shall be borne pro rata by those Partners that participate in such Investment.

6.4     <u>Longevity Assets Transaction Fees</u>. The Partnership may pay certain Affiliates of the Manager a transaction fee equal to one percent (1.0%) of the face value cap of any Longevity Asset transaction where such Affiliate of the Manager serves as a life settlement provider for the Partnership's purchase or sale of a Longevity Asset.

6.5     <u>Management Fee</u>. Commencing on the Initial Closing Date, the Partnership will pay the Manager an annual management fee (the "Management Fee") equal to one half of one percent (0.5%) of the aggregate Capital Accounts.

ARTICLE VII
GENERAL PARTNER

7.1    <u>Management of the Partnership</u>. The Partnership shall be managed by the General Partner, which shall have the sole discretion of making investments on behalf of the Partnership and of exercising the powers set forth in <u>Section 7.2</u> hereof, subject to the limitations set forth herein. The General Partner may appoint such agents of the Partnership as it deems necessary or appropriate who shall hold such offices and shall exercise such powers of the General Partner in the management of the Partnership and perform such duties in connection therewith as shall be determined from time to time by the General Partner. The General Partner has granted discretionary authority over the management of the investment activities and decisions of the Partnership to LMA Series, LLC (the "<u>Manager</u>"). The General Partner shall devote so much of its time and efforts to the affairs of the Partnership as may, in its judgment, be necessary to accomplish the purposes of the Partnership. Nothing contained herein shall prevent the General Partner, the Manager or any of their respective members, officers, directors, employees or affiliates or any other Partner from conducting any other business, including any business within the life settlements industry, whether or not such business is in competition with the Partnership. Without limiting the generality of the foregoing, the General Partner, the Manager and their respective members, officers, directors, employees or affiliates may act as general partner, investment adviser or investment manager for others, may manage funds, separate accounts or capital for others, may have, make and maintain investments in their own name or through other entities, and may serve as an officer, member, manager, director, consultant, partner or stockholder of one or more investment funds, partnerships, securities firms or advisory firms, including where such funds, partnerships, securities firms or advisory firms are engaged in investment activities and employ investment strategies which are the same or substantially similar to those employed by the Partnership.  For the avoidance of doubt, the foregoing does not waive, abrogate, or limit the General Partner's fiduciary duty of loyalty and duty of care under Delaware law.

7.2    <u>Powers of the General Partner</u>. Except as otherwise expressly provided herein, the General Partner shall have, to the fullest extent of the Act, the power to take any and all actions on behalf of the Partnership, which power shall be exercised in accordance with <u>Section 7.1</u> hereof, and includes, without limitation, the power:

     (a)    To purchase, hold, and sell mortality contracts and related assets;

     (b)    To open, maintain and close bank accounts and draw checks or other orders for the payment of moneys;

     (c)    To enter into, make, and perform any other contracts, agreements, or other undertakings it may deem advisable in conducting the business of the Partnership, including but not limited to contracts, agreements, or other undertakings with persons, firms, or corporations with which the General Partner or any other Partner is Affiliated;

     (d)    To appoint the Manager, or such other entity as the General Partner shall determine from time to time in its sole discretion, to serve as the investment adviser to the Partnership to provide certain investment-related and administrative services to the Partnership; and

13

(e)      To act for the Partnership in all other matters.

7.3      <u>No Transfer, Withdrawal or Loans</u>. Without the consent of a majority in interest of the Limited Partners, the General Partner shall not (i) voluntarily Transfer its general partner interest in the Partnership, nor (ii) borrow or withdraw any funds or assets from the Partnership.

7.4      <u>Limitation of Liability; Indemnification</u>.

(a)      The General Partner, the Manager, each of their respective directors, members, partners, shareholders, officers, employees, agents, and affiliates (including, without limitation, any third party administrator of the Partnership), and any person or persons designated pursuant to <u>Section 9.3</u> (Liquidation of the Partnership) of this Agreement shall not be liable for any loss or cost arising out of, or in connection with, any act or activity undertaken (or omitted to be undertaken) relating to the Partnership or in fulfillment of any obligation or responsibility under this Agreement, including any such loss sustained by reason of any investment or the sale or retention of any security or other asset of the Partnership, except that any person exculpated from liability under this section shall not be exculpated from any liability arising from losses caused by his, her or its gross negligence, willful misconduct, or violation of applicable laws, including but not limited to the General Partner's fiduciary duty of loyalty and duty of care under Delaware law.

(b)      The General Partner, the Manager, each of their respective directors, members, partners, shareholders, officers, employees, agents and affiliates (including, without limitation, any third party administrator of the Partnership), and each person designated pursuant to <u>Section 9.3</u> (Liquidation of the Partnership) of this Agreement (each an "<u>Indemnitee</u>") shall be indemnified and held harmless by the Partnership to the fullest extent legally permissible under and by virtue of the laws of the State of Delaware, as amended from time to time, from and against any and all loss, liability and expense (including, without limitation, judgments, fines, amounts paid or to be paid in settlement and reasonable attorneys' fees and expenses) incurred or suffered by the Indemnitee in connection with the good faith performance by the Indemnitee of his, her or its responsibilities to the Partnership; <u>provided</u>, <u>however</u>, that an Indemnitee shall not be indemnified for losses resulting from his, her or its gross negligence, willful misconduct, or violation of applicable laws, including but not limited to the General Partner's fiduciary duty of loyalty and duty of care under Delaware law. The Partnership shall, in the discretion of the General Partner, advance amounts and/or pay expenses as incurred in connection with the indemnification obligation herein. In the event that this indemnification obligation shall be deemed to be unenforceable, whether in whole or in part, such unenforceable portion shall be stricken or modified so as to give effect to this paragraph to the fullest extent permitted by law.

(c)      If the Partnership is made a party to any claim, dispute or litigation or otherwise incurs any loss or expense as a result of or in connection with any Limited Partner's actions unrelated to the Partnership's business, such Limited Partner shall indemnify and reimburse the Partnership for all loss and expense incurred, including reasonable attorneys' fees. Without limiting the foregoing or the provisions of <u>Section 8.1</u> (but without duplication for any indemnification payment made under <u>Section 8.1</u> or deduction from or charge against any Capital Account pursuant to <u>Section 8.1</u>), if the Partnership is obligated to pay any amount to a governmental agency (or otherwise makes a payment) because of a Limited Partner's status or otherwise specifically attributable to a Limited Partner (including, without limitation, federal

14

withholding taxes with respect to foreign partners, state personal property taxes, state unincorporated business taxes, etc.), then such Limited Partner shall indemnify the Partnership in full for the entire amount paid (including without limitation, any interest, penalties and expenses associated with such payments). The amount to be indemnified shall be charged against the Capital Account of such Limited Partner, and, at the option of the General Partner:

(i)     promptly upon notification of an obligation to indemnify the Partnership, such Limited Partner shall make a cash payment to the Partnership equal to the full amount to be indemnified (and the amount paid shall be added to the Limited Partner's Capital Account),

(ii)     the Partnership shall reduce subsequent distributions which would otherwise be made to the Limited Partner, until the Partnership has recovered the amount to be indemnified, or

(iii)     the Partnership shall redeem sufficient limited partnership interests held by such Limited Partner and retain the proceeds for its benefit up to the amount needed for the Partnership to recover the amount to be indemnified.

7.5     <u>No Personal Liability for Return of Capital</u>. The General Partner shall not be liable for the return or repayment of all or any portion of the capital or profits of any Limited Partner, it being expressly agreed that any return of capital or profits made pursuant to this Agreement shall be made solely from the assets (which shall not include any right of contribution from the General Partner) of the Partnership.

7.6     <u>General Partner Time and Attention</u>. The General Partner and the Manager shall devote such time as necessary to manage the affairs of the Partnership.

7.7     <u>Removal of the General Partner</u>. (a)  Limited Partners holding at least a majority of the Aggregate Commitments may remove the General Partner as general partner of the Partnership by delivering a written notice to the General Partner (the "GP Removal Notice") to such effect not later than 90 days after the occurrence of any of any of the following events: (i) the General Partner, the Management Company, or the key employees of the General Partner or the Management Company (the "Cause Persons") have been convicted of fraud, embezzlement or a similar felony involving misappropriation of funds and, in the case of a an employee or agent of the General Partner, such Person's involvement in the affairs of the Partnership has not been terminated within 30 days after such conviction and in the event of fraud or embezzlement or a similar felony involving misappropriation of funds from the Partnership, the General Partner has not caused the Partnership to be reimbursed for any such amounts within 120 days after such conviction; (ii) a Cause Person has been convicted of any felony conviction other than auto-related, (iii) a Cause Person has materially breached this Agreement (whether or not willful), (iv) a Cause Person breached any federal or state securities laws, (v) a Cause Person has engaged in willful misconduct with respect to the Partnership; (vi) a Cause Person (A) files a voluntary petition in bankruptcy, (B) is involuntarily dissolved and commences its winding up, or (C) consents to or acquiesces to the appointment of a trustee, receiver or liquidator of such Cause Person; (vii) a Cause Person has entered against it an order for relief in a federal bankruptcy proceeding which order is not stayed, vacated or dismissed within 90 days; or (viii) a Cause Person has materially

15

breached any of its material obligations under this Agreement in a manner that materially and adversely affects the Limited Partners and such breach is not substantially cured within 60 days (or if in the process of being cured within 60 days, is not substantially cured within 120 days) (it being understood that, in order to cure such breach, the General Partner shall be required to make the Partnership whole for any actual financial loss which such breach had caused the Partnership).

ARTICLE VIII
LIMITED PARTNERS

8.1    Limited Liability. The Limited Partners shall not be personally liable for any obligations of the Partnership and shall have no obligation to make contributions to the Partnership in excess of their respective Capital Accounts specified in Schedule I, except to the extent required by this Agreement or the Act; provided that a Limited Partner shall be required to return any distribution made to it in error or as required pursuant to Section 5.3 hereof. To the extent any Limited Partner is required hereunder or by the Act to return to the Partnership any distributions made to it and does so, such Limited Partner shall have a right of contribution from each other Limited Partner similarly liable to return distributions made to it to the extent that such Limited Partner has returned a greater percentage of the total distributions made to it and required to be returned by it than the percentage of the total distributions made to such other Limited Partner and so required to be returned by it.

8.2    No Participation in Management. The Limited Partners (in their capacity as such) shall not participate in the control, management, direction or operation of the affairs of the Partnership and shall have no power to bind the Partnership.

8.3    Transfer of Interests.

(a)    A Limited Partner may not sell, assign, transfer, pledge, encumber, mortgage, grant a security interest in or otherwise dispose of, whether by merger, operation of law or otherwise (a "Transfer"), all or any of its Interest in the Partnership (including any transfer or assignment of all or a part of its Interest to a Person who becomes an assignee of a beneficial interest in Partnership profits, losses and distributions even though not becoming a substitute Limited Partner) unless the General Partner has consented to such Transfer in writing, which consent may be withheld in the General Partner's reasonable discretion.

(b)    Unless the General Partner otherwise determines, the transferor and transferee of any Limited Partner's Interest shall be jointly and severally obligated to reimburse the General Partner and the Partnership for all reasonable expenses (including transfer taxes, attorneys' fees and expenses and any immediate or ongoing accounting costs attributable to the Partnership's compliance with the requirements of Code §743(b) or (e) with respect to the transferred Interest) of any Transfer or proposed Transfer of a Limited Partner's Interest, whether or not consummated.

(c)    The transferee of any Limited Partner Interest shall be treated as having made all of the Capital Contributions made by and received all of the allocations and distributions received by the transferor of such Interest in respect of such Interest.

16

(d)      Any Transfer that violates this <u>Section 8.3</u> shall, to the maximum extent not prohibited by applicable law, be void and the purported buyer, assignee, transferee, pledgee, mortgagee, or other recipient shall have no interest in or rights to Partnership assets, profits, losses or distributions and neither the General Partner nor the Partnership shall be required to recognize any such Interest or rights.

8.4      <u>Withdrawal and Loans</u>. No Limited Partner may withdraw as a Partner of the Partnership, nor may a Limited Partner borrow or withdraw any portion of its Capital Account from the Partnership, without the prior written consent of the General Partner, which it may withhold in its reasonable discretion.

8.5      <u>Mandatory Withdrawals</u>. The General Partner may require a Limited Partner to withdraw all or any part of its Capital Account from the Partnership at any time if the General Partner deems it to be in the best interests of the Partnership to do so.  A non-exclusive list of matters the may cause the General Partner to terminate a Limited Partner's participation in the fund include if the Limited Partner might (i) cause the Partnership to violate any law, rule or regulation, (ii) expose the General Partner, the Manager or the Partnership to the risk of litigation, arbitration, administrative proceedings or any similar action or proceeding, (iii) require the Partnership to register under the 1940 Act, or (iv) have any other Adverse Effect on the Partnership, the General Partner may require such Limited Partner to withdraw all or any part of its Capital Account from the Partnership at any time immediately upon notice, such withdrawal to be effective on the date specified in such notice. A Limited Partner who is required to withdraw all of its Capital Account pursuant to this <u>Section 8.5</u> shall (i) be entitled to receive the value of its Liquidating Share and (ii) shall be deemed to have withdrawn from the Partnership (and shall cease thereafter to be a Partner as of the effective date of the complete withdrawal).

8.6      <u>No Termination; Waiver of Partition</u>. Neither the substitution, death, incompetency, dissolution (whether voluntary or involuntary) nor bankruptcy of a Limited Partner shall, in and of itself, affect the existence of the Partnership, and the Partnership shall continue for the term set forth in <u>Section 9.1</u> unless sooner dissolved in accordance with this Agreement or the Act. Except as may otherwise be provided by applicable law in connection with the dissolution, liquidation and final winding-up of the Partnership, each Limited Partner hereby irrevocably waives any and all rights that it may have to maintain an action for partition of any of the Partnership's property.

8.7      <u>Confidential Information</u>.

(a)      Notwithstanding anything contained herein to the contrary (other than as expressly required by <u>Sections 10.4(a)</u>, <u>10.4(b)(i)</u> and 10.4(c), to the maximum extent not prohibited by applicable law, the General Partner has the right not to disclose any Confidential Information or other information or materials to any Limited Partner or to the Limited Partner's Disclosure Recipients if the General Partner determines that such disclosure (x) is not in the best interest of the Partnership, any Partner, and/or any actual or prospective investment or (y) is not permitted by applicable law, statute, rule, regulation or judicial or governmental order, judgment or decree. Each Limited Partner shall keep confidential and shall not disclose, or permit any of its Disclosure Recipients to disclose, any information or materials regarding the Partnership Entities, or the other Partners (whether or not such information or materials have been designated by the

17

General Partner as Confidential Information), except (and then only) to the extent that (i) the disclosure of such information or materials is expressly required by applicable law, (ii) the information or materials were previously known to such Limited Partner other than as disclosed by any Partnership Entity (as documented in writing by such Limited Partner), (iii) the information or materials become publicly known other than through the actions or inactions of such Limited Partner or its Disclosure Recipients, provided that the source of such information is not bound by a confidentiality agreement or other contractual, legal or fiduciary obligation or duty of confidentiality or (iv) the disclosure of such information and materials by such Limited Partner is to its Disclosure Recipients (provided that, in each case, such Persons agree in writing to keep such information and materials confidential to the same extent as if they were Limited Partners of the Partnership or are otherwise required under applicable law to keep such information confidential and such Limited Partner and Disclosure Recipient shall be jointly responsible for the failure of any such Person to so comply). Without limiting the foregoing, in the event that any Limited Partner or any of its Disclosure Recipients is required by any applicable law, statute, governmental rule or regulation or judicial or governmental order, judgment or decree to disclose any Confidential Information, unless otherwise agreed to by the General Partner, prior to such disclosure such Person shall promptly notify the General Partner (to the extent not prohibited by applicable law from giving notice) in writing of such anticipated disclosure, which notification shall include the nature of the legal requirement and the extent of the required disclosure and, except where such disclosure is required to be made to an agency or similar body that regulates such Person or any of its activities, shall be accompanied by an opinion of such Limited Partner's counsel that such disclosure is required by applicable law, and such Person shall cooperate with the General Partner to preserve the confidentiality of such information consistent with applicable law (including withholding disclosure of such Confidential Information until such time as it has been finally determined that such disclosure is required under applicable law and advising any recipients of the confidential nature of such Confidential Information). No Limited Partner may use, and each Limited Partner shall cause any Disclosure Recipient to which it directly or indirectly discloses any Confidential Information to hold such information confidential to the same extent as would be required if such Person were a Limited Partner and not to use, any Confidential Information it receives for any purpose other than monitoring and evaluating such Limited Partner's investment in the Partnership. Any information provided to a Person at a Limited Partner's direction shall be treated instead as having been provided to such Person by such Limited Partner, and such disclosure by the Limited Partner shall be subject to the requirements of this Section 8.7.

(b)    The General Partner may agree (i) to limit the applicability of any confidentiality related obligation(s), including those contained in this Section 8.7, to a particular Limited Partner and/or (ii) to limit disclosure of the name of, or any other information regarding, a particular Limited Partner and, in each such case, any such agreement shall not be a Side Letter or similar agreement for purposes of Section 12.8.

ARTICLE IX
DURATION AND DISSOLUTION

9.1    Duration of the Partnership. The Partnership shall continue from the Effective Date until the fifth (5th) anniversary of the Initial Closing Date (the "Term"); provided however, the General Partner in its discretion may extend the Term for up to five (5) consecutive one (1) year

18

periods, and thereafter for additional one (1) year Terms with the consent of a majority in interest of the Limited Partners. Further, the General Partner may earlier terminate the Term with the consent of a majority in interest of the Limited Partners.

    9.2    <u>Fifth Year Withdrawal.</u>

    (a)    Upon not less than ninety (90) days' prior written notice to the General Partner, the Limited Partners shall be permitted to withdraw all or part of their Capital Account, effective as of the last Business Day of the fiscal quarter in which the fifth anniversary of the Initial Closing Date occurs.

    (b)    The General Partner may in its discretion (i) delay payment of any requested withdrawals or (ii) suspend withdrawals if it cannot liquidate sufficient amounts of Partnership assets without adversely affecting the Capital Accounts of the non-withdrawing Limited Partners (including, for the avoidance of doubt, if the Partnership is unable to sell any Longevity Asset at or above the fair market value set by the Partnership's third-party valuation firm). The General Partner will use good faith efforts to notify withdrawing Limited Partners if it anticipates that a delay or suspension of withdrawals will affect any withdrawal request. In such case, the General Partner will pay withdrawals *pro rata* in accordance with the Withdrawal Amount so requested, in each case, up to the amount requested. The General Partner will release additional withdrawal amounts on the last Business Day of each subsequent calendar month as funds for Withdrawals become available.

    (c)    The right of any Partner (or its legal representative) requesting a withdrawal of ninety (90%) percent or more of his, her or its Capital Account may be subject to a reserve hold-back of ten (10) percent of the Withdrawal amount until completion of the Partnership's next financial audit, after which the reserve amount may be uncreased or decreased based upon the outcome of the audit. The reserve amount shall be held in a segregated, interest-bearing account.

    9.3    <u>Liquidation of the Partnership</u>. Upon dissolution, the affairs and assets of the Partnership shall be wound up in an orderly manner in accordance with the provisions of this Agreement and the Act. The General Partner shall be the liquidator to wind up the affairs of the Partnership pursuant to this Agreement or, if the General Partner is not able to act as the liquidator, a liquidating trustee (in either case, the "Liquidator") shall be appointed by the Limited Partners holding a majority of the Interests held by such Persons.

    9.4    <u>Procedure on Winding Up</u>. Upon the winding up of the Partnership, a full account of the assets and liabilities of the Partnership shall be taken and the assets of the Partnership shall be liquidated to the extent determined by the General Partner (or the Liquidator) and, as promptly as practicable, the cash proceeds thereof shall be applied in the following order of priority:

    (i)    to the payment of all debts, taxes, obligations and liabilities of the Partnership (including amounts owed to Partners who are creditors) including the expenses of liquidation; <u>provided</u> that the General Partner (or the Liquidator) may establish reserves for contingent liabilities of the Partnership in an amount (including estimated expenses, if any, in connection therewith) determined by the General Partner (or the Liquidator) and upon the

19

satisfaction of such contingent liabilities the amounts, if any, remaining in such reserves shall be distributed as provided in subparagraphs (i) and (ii) of this Section 9.4(a); and

        (ii)     after all allocations and adjustments to the Capital Accounts as contemplated by this Agreement, to the payment to Partners of their remaining positive Capital Accounts, if any, in proportion to the amounts thereof.

        (b)     Distributions to a Partner pursuant to subparagraph (a)(ii) may be made in installments and shall be made in cash or, in the discretion of the General Partner (or the Liquidator), in assets selected by the General Partner (or the Liquidator), or partly in cash and partly in securities selected by the General Partner (or the Liquidator).

        (c)     Upon the winding up of the Partnership, the name of the Partnership and its goodwill shall not be appraised, sold or otherwise liquidated but shall remain the exclusive property of the General Partner.

        (d)     Within ninety (90) calendar days after the completion of the winding up of the Partnership, the General Partner (or the Liquidator) shall cause to be prepared and forwarded to each Partner a final statement and report of the Partnership, prepared in accordance with Article X hereof.

## ARTICLE X
## BOOKS OF ACCOUNTS; MEETINGS

10.1    Books. The Partnership shall maintain complete and accurate books of account of the Partnership's affairs at the General Partner's or the Manager's principal office, which books shall be open to inspection by any Limited Partner (or its authorized representative who is a Disclosure Recipient) for any purpose reasonably related to such Limited Partner's Interest in the Partnership at any time during ordinary business hours upon at least ten (10) Business Days' prior notice, subject in each case to any portion of the books that, to the maximum extent not prohibited by applicable law, may otherwise be kept confidential with respect to any Limited Partner as provided in this Agreement.

10.2    Audit of Books. The books of account and records of the Partnership shall be audited as of the end of each fiscal year by an independent certified public accounting firm designated from time to time by the General Partner, with the first audit of the Partnership to be for the period beginning after the Partnership commences operations through December 31, 2025. The General Partner may, in its sole discretion, change the Partnership's auditors without further notice to the Limited Partners.

10.3    Fiscal Year. The fiscal year of the Partnership shall be the calendar year, unless otherwise determined by the General Partner.

10.4    Reports. The General Partner shall furnish to each Limited Partner:

        (a)     within 60 days after the end of each of the first three (3) fiscal quarters of each fiscal year and commencing with the first fiscal quarter in which the Initial Closing Date

20

occurs, an unaudited quarterly financial statement for the Partnership for such quarter showing such Partner's closing Capital Account balance as of the end of such quarter;

     (b)    within 120 days after the end of each fiscal year commencing with the first year in which the Partnership is either in operation for a full fiscal year or makes an Investment, (i) financial statements for the Partnership for such year (audited by a firm of independent certified public accountants of recognized national standing selected by the General Partner and prepared in accordance with GAAP) and (ii) valuations of the Partnership's Longevity Assets as of the end of such year (including a statement of such Partner's closing Capital Account balance as of the end of such year); and

     (c)    within 120 days after the end of each fiscal year, such Partner's Schedule K-1 for such fiscal year.

The financial reports and schedules described in this Section 10.4 are dependent upon information to be provided to the General Partner with respect to the Partnership's assets. Therefore, notwithstanding the foregoing time periods, the General Partner may furnish such reports and schedules to the Limited Partners after the expiration of such time periods, but as soon as reasonably practical, following receipt of all financial and other information with respect to each asset necessary, advisable or desirable to prepare such documents. In addition to the documents described in this Section 10.4, at the Partnership's or requesting Limited Partner's expense, in each case as determined by the General Partner, the General Partner shall furnish to a Limited Partner (or such Limited Partner's authorized representative who is a Disclosure Recipient) as promptly as practicable such additional information concerning the Partnership, distributions by the Partnership, and valuations of Partnership assets and Investments as such Limited Partner (or such authorized representative) may reasonably request from time to time, subject in each case to any such information that may otherwise be kept confidential with respect to any Partner as provided in this Agreement. The General Partner may also agree to furnish, at the Partnership's or such Person's expense, in each case as determined by the General Partner, additional reports and other information to one or more Limited Partners at such Person's request in order to allow such Person to comply with its reporting, monitoring, regulatory, tax and other similar obligations (which agreement shall not be a Side Letter or similar agreement for purposes of Section 12.8).

The General Partner may choose to furnish certain or all of such financial reports, statements, schedules, narrative summaries and other information described in this Section 10.4 to the Limited Partners electronically via email, the Internet and/or another electronic reporting medium in lieu of providing the Limited Partners with paper copies of such documents; provided that the General Partner may agree in writing (which agreement shall not be a Side Letter or similar agreement for purposes of Section 12.8) and at the request of any Limited Partner to limit the applicability of any portion of this sentence to such Limited Partner. As you are aware email and electronic communications are not fully secure and may be intercepted by third parties. Unless you advise us otherwise in writing, you understand agree to our use of email for correspondence and document transmission. In keeping with information security best practices for confidentiality, the Partnership recommends encrypting all sensitive data you send to us.

No Limited Partner shall take a position on its tax return that is inconsistent with an IRS Schedule K-1 provided by the Partnership, except as required by applicable law.

21

10.5    Tax Allocations.

(a)    All income, gains, losses and deductions of the Partnership shall be allocated, for U.S. federal, state and local income tax purposes, among the Partners in accordance with the allocation of such income, gains, losses and deductions among the Partners for computing their Capital Accounts in accordance with Section 4.1, except that if any such allocation for tax purposes is not permitted by the Code or other applicable law, the Partnership's subsequent income, gains, losses and deductions shall be allocated among the Partners for tax purposes so as to reflect as nearly as possible the allocation set forth in Section 4.1. Further, the General Partner shall have the discretion to cause the Company to make any special allocations required under U.S. Department of Treasury Reg. §§ 1.704-1(b) and 1.704-2. For the avoidance of doubt, the items of expense or deduction in respect of Placement Fees shall be allocated among the Partners in accordance with the relative amounts contributed by such Partners with respect thereto as provided in Article IV.

(b)    If any Partner is treated for income tax purposes as realizing ordinary income because of receipt of its Partnership Interest (whether under Code §83 or any similar provisions of any law, rule or regulation or any other applicable law, rule, regulation or doctrine) and the Partnership is entitled to any offsetting deduction, the Partnership's deduction shall be allocated among the Partners in such manner as to, as nearly as possible, offset such ordinary income realized by such Partner.

(c)    Notwithstanding any other provision of this Agreement, if a Partner unexpectedly receives an adjustment, allocation or distribution described in U.S. Department of Treasury Reg. §1.704-1(b)(2)(ii)(d)(4), (5) or (6) that gives rise to a negative Capital Account (or that would give rise to a negative Capital Account when added to expected adjustments, allocations or distributions of the same type) that exceeds the amount such Partner is required to restore, such Partner shall be allocated items of income and gain in an amount and manner sufficient to eliminate such deficit balance as quickly as possible; provided that the Partnership's subsequent income, gains, losses and deductions shall be allocated among the Partners so as to achieve as nearly as possible the results that would have been achieved if this Section 10.5(c) had not been in this Agreement, except that no such allocation shall be made that would violate the provisions or purposes of U.S. Department of Treasury Reg. §1.704-1(b). This Section 10.5(c) is intended to constitute a "qualified income offset" under U.S. Department of Treasury Reg. §1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

10.6    Partnership Representative. The General Partner is hereby designated as the "partnership representative" of the Partnership for purposes of the Partnership Tax Audit Rules and any similar provision of state, local, or any other applicable law (the "Partnership Representative"). In addition, (a) the General Partner is hereby authorized to (i) designate any other Person selected by the General Partner as the Partnership Representative, and (ii) take, or cause the Partnership to take, such other actions as may be necessary or advisable pursuant to Treasury Regulations or other guidance to ratify the designation, pursuant to this Section 10.6, of the General Partner (or any Person selected by the General Partner) as the Partnership Representative and (b) each Limited Partner agrees to take, such other actions as may be requested by the General Partner to ratify or confirm any such designation pursuant to this Section 10.6. The

22

Partnership shall indemnify and hold harmless the Partnership Representative from and against any loss, liability, damage, cost or expense (including reasonable attorneys' and accountants' fees) sustained or incurred as a result of any good faith act or decision concerning Partnership's tax matters and within the scope of such person's responsibility as Partnership Representative. All amounts indemnified shall be advanced as incurred. The Partnership Representative shall be entitled to rely on the advice of outside legal counsel and accountants as to the nature and scope of its responsibilities and authority, and any act or omission of the Partnership Representative in good faith reliance upon such advice in no event shall subject the Partnership Representative to liability to the Partnership or any Partner. The Partnership Representative is an express third-party beneficiary of this Agreement for the purposes of the foregoing.

10.7     Code §83 Safe Harbor Election.

(a)     By executing this Agreement, each Partner authorizes and directs the Partnership to elect to have the "Safe Harbor" described in the proposed Revenue Procedure set forth in Internal Revenue Service Notice 2005-43 (the "IRS Notice") apply to any Interest in the Partnership transferred to a service provider by the Partnership on or after the effective date of such Revenue Procedure in connection with services provided to the Partnership. For purposes of making such Safe Harbor election, the General Partner is hereby designated as the "partner who has responsibility for federal income tax reporting" by the Partnership and, accordingly, execution of such Safe Harbor election by the General Partner constitutes execution of a "Safe Harbor Election" in accordance with Section 3.03(1) of the IRS Notice. The Partnership and each Partner hereby agree to comply with all requirements of the Safe Harbor described in the IRS Notice, including the requirement that each Partner shall prepare and file any U.S. federal income tax returns that such Partner is required to file reporting the income tax effects of each "Safe Harbor Partnership Interest" issued by the Partnership in a manner consistent with the requirements of the IRS Notice. A Partner's obligations to comply with the requirements of this Section 10.7 shall survive such Partner's ceasing to be a Partner of the Partnership and/or the dissolution, liquidation, winding up and termination of the Partnership, and, for purposes of this Section 10.7, to the maximum extent not prohibited by applicable law, the Partnership shall be treated as continuing in existence.

(b)     Each Partner authorizes the General Partner to amend this Section 10.7 to the extent necessary to achieve substantially the same tax treatment with respect to any Interest in the Partnership transferred to a service provider by the Partnership in connection with services provided to the Partnership as set forth in Section 4 of the IRS Notice (e.g., to reflect changes from the rules set forth in the IRS Notice in subsequent Internal Revenue Service guidance); provided that such amendment is not materially adverse to such Partner (as compared with the after-tax consequences that would result if the provisions of the IRS Notice applied to all Interests in the Partnership transferred to a service provider by the Partnership in connection with services provided to the Partnership).

10.8     Non-U.S. Taxes and Filing Obligations. The General Partner will use reasonable best efforts to cause the Partnership to not take any action or engage in any activity, including making, holding or disposing of an investment, that would subject a Limited Partner (or any of its direct or indirect beneficial owners) to (i) a tax return filing obligation or (ii) a requirement to directly pay any tax in a jurisdiction outside of the United States solely as a result of its Interest in

23

the Partnership or an alternative investment vehicle. If notwithstanding such reasonable best efforts, the General Partner becomes aware that a Limited Partner (or any of its beneficial owners) has any such tax return filing or payment obligation, it will promptly notify such Limited Partner of such obligation and shall provide reasonable assistance with respect to such tax return filing obligation or payment obligation.

10.9    Passive Foreign Investment Company. The General Partner shall use commercially reasonable efforts, without undue cost or expense, within 90 days after the end of each taxable year to determine whether any (1) Partnership Entity is a "passive foreign investment company" ("PFIC"), as defined in Section 1297 of the Code for such year and (2) whether any Investment represents an interest in a PFIC. In the event the General Partner determines that any such entity is a PFIC, the General Partner shall (a) notify the Investor, and (b) (i) if the PFIC is owned directly by the Partnership or a Partnership Entity that is a United States Person (as defined in Section 7701(a)(30) of the Code), use reasonable efforts to cause (to the extent permitted under the Code) the Partnership or applicable Partnership Entity timely to file and maintain an effective "qualified electing fund" election (a "QEF election") with respect to such PFIC pursuant to Section 1295 of the Code or (ii) if the interest in a PFIC is not owned directly or indirectly by a Partnership Entity that is a United States Person (as defined in Section 7701(a)(30) of the Code), or if the Partnership or applicable Partnership Entity is not eligible to make a QEF Election as a result of a change in applicable law, regulation or other guidance after the date hereof, use reasonable efforts to provide the Investor with a PFIC Annual Information Statement or an Annual Intermediary Statement, as applicable and in each case within the meaning of U.S. Treasury Regulations Section 1.1295-1, and such other information, documentation and agreements as the Investor (or their beneficial owners) may reasonably require to timely file and maintain an effective QEF election with respect to such PFIC. The General Partner shall use reasonable, best efforts to prepare and send, within 90 days after the end of the taxable year and with respect to each PFIC, the information and documentation necessary to enable the Investor to meet its reporting obligations with respect to such PFIC.

ARTICLE XI
CERTIFICATE OF LIMITED PARTNERSHIP

11.1    Certificate of Limited Partnership. The General Partner has previously caused the Certificate to be filed and recorded in the office of the Secretary of State of the State of Delaware and to the extent required by applicable law, the General Partner shall cause the Partnership to register for authority to do business in the appropriate place in each state in which the Partnership may hereafter establish a place of business, but the Partnership shall not be obligated to provide the Limited Partners with a copy of any amendment to or restatement of the Certificate. The General Partner shall also use commercially reasonable efforts to file or cause to be filed, recorded and published, such statements, notices, certificates or other instruments required by any provision of any applicable law that governs the formation of the Partnership or the conduct of its business from time to time.

11.2    Powers of Attorney. Power of Attorney. Each Limited Partner by executing this Agreement does irrevocably constitute and appoint the General Partner with power of substitution, as his true and lawful attorney-in-fact, in his name, place and stead, to execute, acknowledge,

24

swear to (and deliver as may be appropriate) on his behalf and file and record in the appropriate public offices and publish (as may be appropriate):

(a)    this Agreement, including any amendments adopted as provided herein;

(b)    certificates of limited partnership in various jurisdictions, and amendments thereto, and certificates of assumed name or doing business under a fictitious name with respect to the Partnership;

(c)    all conveyances and other instruments which the General Partner deems appropriate to qualify or continue the Partnership in the jurisdictions in which the Partnership may conduct business which may be required to be filed by the Partnership or the Partners under the laws of any jurisdiction to reflect the dissolution or termination of the Partnership or to reorganize or refile the Partnership in a different jurisdiction, provided that the reorganization or refiling does not result in a material change in the rights of the Partners;

(d)    to admit additional Limited Partners and, to the extent that it is necessary under the laws of any jurisdiction, to file amended certificates or agreements of limited partnership or other instruments to reflect such admission, to execute, file and deliver such certificates, agreements and instruments;

(e)    to file, prosecute, defend, settle or compromise litigation, claims or arbitrations on behalf of the Partnership;

(f)    to enter into agreements with third parties (including Affiliates of the General Partner) to conduct the Partnership's business; and

(g)    any documents required to be submitted by or on behalf of the Partnership to any governmental or administrative agency or body, to any securities exchange, board of trade, clearing corporation or association or to any self-regulatory organization or trade association.

The Power of Attorney granted herein shall be irrevocable and deemed to be a power coupled with an interest and shall survive the incapacity or death of a Limited Partner. Each Limited Partner agrees to be bound by any representation made by the General Partner and by any successor thereto, acting in good faith pursuant to such Power of Attorney, and each Limited Partner hereby waives any and all defenses which may be available to contest, negate or disaffirm the action of the General Partner and any successor thereto, taken in good faith under such Power of Attorney. In the event of any conflict between this Agreement and any instruments filed by such attorney pursuant to the Power of Attorney granted in this Section 11.2, this Agreement shall control.

ARTICLE XII
MISCELLANEOUS

12.1    Arbitration.

(a)    Any dispute, controversy or claim arising out of, relating to, in connection with or in respect of this Agreement, including any question regarding its existence, validity,

25

interpretation, breach or termination, shall be finally resolved by arbitration under the Commercial Arbitration Rules of the American Arbitration Association, which Rules are deemed to be incorporated by reference into this Section 12.1.

(b)    The tribunal shall consist of three (3) arbitrators (the chairman of which shall be a lawyer with at least 10 years' experience with partnerships or private investment funds).

(c)    The seat of the arbitration shall be Wilmington, Delaware.

(d)    The language of the arbitration shall be English.

(e)    Judgment upon the award rendered by the tribunal may be entered in any court having jurisdiction thereof. Any award of the tribunal shall be binding from the day it is made, and the parties hereby waive any right to refer any question of law and any right of appeal on the law and/or merits to any court.

(f)    Nothing in these dispute resolution provisions shall be construed as preventing either party from seeking injunctive, equitable or similar interim relief in any court of competent jurisdiction.

12.2    Governing Law. Governing Law; Severability. This Agreement shall be governed by, construed and enforced solely in accordance with the laws of the State of Delaware, without regard to its conflict of law rules thereof or the application of any law of any other jurisdiction, and, to the maximum extent possible, in such manner as to comply with all the terms and conditions of the Act. If it is determined by a court of competent jurisdiction that any provision of this Agreement is invalid under applicable law, such provision shall be ineffective only in such jurisdiction and only to the extent of such prohibition or invalidity, without invalidating the remainder of this Agreement. THE PARTIES AGREE THAT ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS AGREEMENT SHALL BE ARBITRATED AND LITIGATED ONLY IN THE STATE AND FEDERAL COURTS LOCATED IN NEW CASTLE COUNTY IN THE STATE DELAWARE. EACH PARTY WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS OR TO OBJECT TO SUCH VENUE AND HEREBY CONSENTS TO ANY COURT ORDERED RELIEF.

12.3    Amendments. This Agreement may be amended by the General Partner in its sole discretion without the consent of the Limited Partners so long as such amendments, in the reasonable judgment of the General Partner, do not materially adversely affect the rights of the Limited Partners. For avoidance of doubt but in no way by limitation, the Agreement may be amended to admit additional Limited Partners, accept additional capital contributions, or cure any ambiguity in or to correct or supplement any provision of the Partnership Agreement. This Agreement may also be amended with the consent of (a) the General Partner and (b) the Limited Partners owning a majority in interest of the Capital Accounts owned by the Limited Partners at the time of the amendment, provided that such amendment does not discriminate among the Limited Partners.

12.4    Successors. Except as otherwise provided herein, this Agreement shall inure to the benefit of and be binding upon the Partners and their legal representatives, heirs, permitted successors and assigns.

12.5    Notices. All notices provided for under this Agreement shall be in writing and shall be deemed to have been duly given as indicated if sent to the Partner's address as set forth in the schedule in the files of the Partnership as of the date of such notice:

(a)    If delivered in person or by courier, on the date it is delivered;

(b)    If sent by certified or registered mail (airmail, if overseas) or the equivalent (return receipt requested), on the date that mail is delivered or its delivery is attempted;

(c)    If sent by first-class mail, two (2) Business Days after the date of postmark; and

(d)    If sent by facsimile, on generation of confirmation.

Notice by any Limited Partner to the Partnership shall be deemed effective upon receipt by the Partnership. A Limited Partner may change his address for purposes of this Agreement upon five (5) Business Days' prior written notice to the General Partner.

12.6    Entire Agreement. This Agreement and the Subscription Agreements and any Side Letters entered into as provided in Section 12.8, constitute (for the respective Partners that are parties thereto or bound thereby) the entire agreement among the Partners with respect to the subject matter hereof and supersede any prior agreements or understandings among them with respect to such subject matter.

(a)    Counterparts. This Agreement may be executed in any number of counterparts, and each Partner may execute a separate signature page, with the same effect as if all of the Partners had signed the same document. All counterparts shall be construed together and shall constitute one agreement.

(b)    Descriptive Headings. Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.

(c)    Construction. In this Agreement, unless the context otherwise requires:

(i)    a capitalized term has the meaning assigned to it;

(ii)    the word "or" is not exclusive;

(iii)    words in the singular include the plural, and words in the plural include the singular;

(iv)    provisions apply to successive events and transactions;

27

(v)      the words "herein", "hereof" and other words of similar import refer to this Agreement as a whole and not to any particular Clause, provision or other subdivision;

(vi)      references to the "United States" and the "U.S." are references to the United States of America;

(vii)      references to "US$", "USD" and "US Dollars" are references to the official currency of the United States;

(viii)      a company is a "subsidiary" of another company, if that other company: (a) controls the composition of the board of directors of the first mentioned company; (b) controls more than half of the voting power of the first mentioned company; or (c) holds more than half of the issued share capital of the first mentioned company (excluding any part of it which carries no right to participate beyond a specified amount in a distribution of either profits or capital), (d) or if it is a subsidiary of a company which is itself a subsidiary of that other company;

(ix)      the expression "control" (including its correlative meanings, "controlling", "controlled by" or "under common control with") means: (a) the direct or indirect ownership of in excess of 50% of the equity interests (or interests convertible into or otherwise exchangeable for equity interests) in a Person; or (b) the possession of the direct or indirect right to vote in excess of 50% of the voting share or to elect in excess of 50% of the board of directors or other governing body of a Person (whether by share ownership, contract or otherwise), or otherwise the ability to direct the affairs of a Person;

(x)      all references herein to Clauses, sub-Clauses, paragraphs, sub-paragraphs or Schedules, are references to the clauses, sub-clauses, paragraphs, subparagraphs of, or schedules to, this Agreement;

(xi)      the terms "gross negligence" and "willful misconduct" incorporate the customary meanings attributed to them through the Act and case law interpreting the Act.

(xii)      any pronoun used in this Agreement shall include the corresponding masculine, feminine or neuter forms;

(xiii)      the words "include", "includes" and "including" shall be deemed to be followed by the phrase "without limitation";

(xiv)      the word "extent" in the phrase "to the extent" shall mean the degree to which a subject or other thing extends, and such phrase shall not mean simply "if";

(xv)      unless otherwise expressly provided herein, any agreement, instrument or statute defined or referred to herein or in any agreement, instrument or statute that is referred to herein means such agreement, instrument or statute as from time to time amended, restated, waived or otherwise modified or supplemented, including in the case of agreements or instruments, by waiver or consent, and in the case of statutes, by succession of comparable successor statutes, and references to all attachments thereto and instruments incorporated therein; and

28

(xvi)    all references to any Partner shall mean and include such Partner and any Person duly admitted as a partner in the Partnership in substitution therefor in accordance with this Agreement.

Each Limited Partner acknowledges that it participated in, or had the meaningful opportunity to participate in, the negotiations and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed to be the product of meaningful individualized negotiations between the General Partner and each Limited Partner and, to the maximum extent not prohibited by applicable law, no presumption or burden of proof shall arise favoring or disfavoring any Partner by virtue of the authorship of any of the provisions of this Agreement.

(d)    Further Assurances. Each Limited Partner hereby covenants and agrees on behalf of itself and its successors and assigns, without further consideration, to prepare, execute, acknowledge, file, record, publish and deliver such other information, instruments, documents, tax forms and statements requested by the General Partner and to take such other actions as may be necessary, advisable or appropriate to enable the General Partner to effectively carry out the purposes of the Partnership and this Agreement. The General Partner may agree to limit or otherwise modify a Limited Partner's obligations pursuant to this Section 12.6(d), and any such agreement shall not be a Side Letter or similar agreement for purposes of Section 12.8.

12.7    No Third-Party Beneficiaries. Except as otherwise expressly set forth in Section 8.3, with respect to the Partnership's creditors that have provided indebtedness to the Partnership for borrowed money that remains outstanding, (a) no Person (including creditors of the Partnership) that is not a party hereto shall have any rights or obligations pursuant to this Agreement, (b) the provisions of this Agreement are intended to benefit the Partners and, to the maximum extent not prohibited by applicable law, shall not be construed as conferring any benefit upon any creditor of the Partnership and (c) in no event shall any provision of this Agreement be enforceable for the benefit of any Person other than the Limited Partners, the General Partner and their respective successors and assigns. To the maximum extent not prohibited by applicable law, neither the Limited Partners nor the General Partner shall have any duty or obligation to any creditor of the Partnership to make any contribution to the Partnership or recall any distribution, except as specifically provided in this Agreement.

12.8    Side Letters. Notwithstanding the provisions of this Agreement or any Subscription Agreement, it is hereby acknowledged and agreed that the General Partner, on its own behalf or on behalf of the Partnership, and without the approval of any Limited Partner, may enter into a side letter or similar agreement (a "Side Letter") to or with respect to a Limited Partner which has the effect of establishing rights under, or altering or supplementing the terms of this Agreement or any Subscription Agreement with respect to such Limited Partner. The parties agree that any terms contained in a Side Letter to or with respect to a Limited Partner shall govern with respect to such Limited Partner notwithstanding the provisions of this Agreement or any Subscription Agreement.

[Signature Pages follow]

29

IN WITNESS WHEREOF, this Agreement has been executed and delivered by the General Partner effective as of the date first above written and is effective with respect to each other party hereto as of the date that such party is first admitted to the Partnership.

GENERAL PARTNER:

Abacus Premier Income Fixed GP, LLC

By:  LMA Series, LLC, as attorney-in-fact

By:_____

     Name:    Jay Jackson
     Title:     CEO

The FUND:

Abacus Premier Income Fixed, LP, by
Abacus Premier Income Fixed GP, LLC

By:  LMA Series, LLC, as attorney-in-fact

By:_____

     Name:   William McCauley
     Title:    Managing Member / CFO

LIMITED PARTNERS:

All Limited Partners now and hereafter admitted pursuant to powers of attorney granted to the General Partner

Abacus Premier Income Fixed GP, LLC, as attorney-in-fact and agent for the parties subscribing for limited partner Interests and hereby admitted as Limited Partners as set forth in Schedule I hereto

By:  LMA Series, LLC, as attorney-in-fact

By:_____

     Name:
     Title:

## SCHEDULE I[1]

<u>Names, Addresses and E-mail Addresses</u>                <u>Capital Account</u>

<u>General Partner</u>:

Abacus Premier Income Fixed GP, LLC
2101 Park Center Drive Ste 250
Orlando, FL 32835
(407) 988-1084

E-mail Address:  bill@lmagrp.com;
frank@lmagrp.com

<u>Limited Partners</u>:

[TO BE INSERTED]

---

[1] Form attached for reference purposes. Actual Schedule I to be maintained with the books and records of the Partnership at the General Partner's principal office.