**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ABACUS GLOBAL MANAGEMENT, INC., a corporation,

*Plaintiff and Counterclaim Defendant*,

JAY JACKSON,

*Counterclaim Defendant*,

v.

COVENTRY FIRST LLC, a limited liability company; ALAN BUERGER, an individual,

*Defendants and Counterclaimants*.

Case No.: 6:25-cv-01401-RBD-RMN

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND ITS AMENDED COMPLAINT**

Defendants Coventry First LLC ("Coventry") and Alan Buerger (together with Coventry, "Defendants"), by and through their undersigned counsel, hereby respond to Plaintiff Abacus Global Management, Inc.'s ("Abacus") Motion for Leave to File a Second Amended Complaint, Dkt. 126 (the "Motion").

## I. INTRODUCTION

More than nine months after this Court's amendment deadline has passed, *see* Dkt. 42 at 3, and after the Court made clear that it "sees no good cause to extend the

amendment deadline . . . or the excusable neglect that would justify such a belated extension," Abacus asks this Court for a *third* bite at the apple. This time, Abacus's proposed Second Amended Complaint ("SAC") would rewrite the core factual allegations of its pleading, add a new theory of damages, and abandon central allegations on which Defendants have already taken discovery—based almost entirely on information in Abacus's files or that Abacus has long been aware of. Abacus therefore lacks the good cause required to disrupt this Court's amendment deadline.

Contrary to Abacus's insistence, the proposed SAC is not a narrow amendment that would add allegations Abacus only recently discovered. Instead, it would change Abacus's core factual allegations about its own business and offer sweeping changes to its theory of the case. In its First Amended Complaint ("FAC"), Abacus alleged that the heart of its defamation case was "Defendants' core claim . . . that Lapetus life expectancies are too short, and that Abacus relies on those estimates to intentionally overvalue the policies it buys and sells." FAC ¶ 6. After producing documents ***from its own files***—including years of email exchanges among its senior executives and Abacus's communications with its recently dismissed auditor proving the truth of "Defendants' core claim"—Abacus now attempts to fundamentally alter its allegations when it should be dismissing them entirely.

Indeed, the proposed SAC would shift the foundational premises of Abacus's pleadings. For example, Abacus's SAC would strike the words "or even primarily" from its allegation that it does not "solely or even primarily rely on Lapetus life

expectancies," Dkt. 126-1 at 6,[1] even though the statement by Mr. Buerger that Abacus alleges to be defamatory was that Abacus used Lapetus in its portfolio valuations "***not exclusively, but primarily***." FAC ¶ 199(b) (emphasis in original). Abacus's SAC would also replace its allegation that it does not use a "life expectancy-based methodology" to value the policies on its balance sheet with the narrower assertion that it does not use a methodology "grounded in a single life expectancy provider," *id.* Abacus's own valuation methodology, however, states that it "[redacted]" Dkt. 121-4, at 6 (emphasis added). The valuation methodology goes on to state that "[redacted]" *Id.* (emphasis added).

Moreover, Abacus would add a new damages theory based on Abacus's "shelf" of authorized but unissued stock from 2025, Dkt. 126-1 at 76–78, although Abacus needed no discovery from Defendants to know its own capital plans. It would also expand the universe of allegedly defamatory statements to include Mr. Buerger's statement that Lapetus was "duped by Abacus when they started"—a statement Abacus knew of as far back as November 2025. *Id.* at 91. And Abacus seeks to push back the start of Defendants' alleged campaign by six months, replacing the temporal limitation "[s]ince the beginning of 2024" with a reference to its July 2023 public

[1] For ease of reference, due to Abacus's extensive amendments that significantly changed paragraph numbers, all citations to Abacus's redlined complaint, Dkt. 126-1, are to page number rather than paragraph number.

listing. *Id.* at 5.

At the same time, the SAC would abandon a great deal of Abacus's prior pleadings that have long been the focus of Defendants' discovery efforts. For instance, the SAC would delete an entire damages section devoted to Abacus's acquisition of Carlisle Management Company, Dkt. 126-1 at 76–77, and strike the reference to "Carlisle's fundraising efforts" from its damages allegations, *id.* at 97. It would delete its allegation that a credit union's "wait and see approach since June 4, 2025" cost Abacus "at least $7 million in fees and gain on sale proceeds," *id.* at 75. And it would delete its allegation that the Morpheus Report, which the FAC falsely attributes to Coventry, "interrupted the progress of those transactions" on which Abacus was then negotiating, *id.* at 78. Those changes and others would alter the case midstream.

Following the Court's November 12, 2025 deadline to amend the pleadings, Defendants have engaged experts, pursued extensive discovery, examined witnesses, and formed a litigation strategy focused on rebutting the false allegations in the FAC. Abacus's lack of diligence in addressing the claims it knew to be baseless from the day they were filed belies its assertion of good cause for this dilatory and untimely motion. And Abacus's belated desire to change its case—in the middle of the parties taking depositions—is plainly prejudicial to Defendants. A plaintiff may abandon a theory. It may not do so nine months too late, after forcing its adversary to devote substantial time and resources to litigating that theory, and while treating its prior pleadings as though they had never been filed. Permitting the SAC as proposed would "restart this case with fresh pleadings" more than a year into litigation, Dkt. 124 at 2–3, and would

"significantly disrupt the calendar," *id.* at 3. Because Abacus has made no showing of good cause, the Court should deny the Motion.

## II. MEMORANDUM OF LAW

"[W]hen a motion for leave to amend a pleading is filed after the deadline set in a court's scheduling order, the court employs a two-step analysis." *Rothfos Corp. v. H&H Coffee Invs., LLC*, 2023 WL 9022694, at *3 (S.D. Fla. Dec. 29, 2023). At step one, "the movant must demonstrate good cause under Rule 16(b)." *Id.* Only if a movant can show good cause does the court then "determine whether an amendment to the pleadings is proper under Rule 15(a)." *Id.* Abacus fails at both steps.

### A. Abacus's Motion Does Not Demonstrate Good Cause.

Generally, "motions filed after the leave to amend deadline should be denied." *Fellner v. Cameron*, 2012 WL 3518379, at *1 (M.D. Fla. July 25, 2012). This general rule honoring courts' scheduling orders "may be modified only 'upon a showing of good cause.'" *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16(b)). "Good cause requires diligence." *Nat'l Indem. Co. of S. v. MA Alternative Transp. Servs., Inc.*, 2022 WL 19479009, at *2 (M.D. Fla. May 19, 2022).

When determining whether a moving party acted with diligence, courts look to: "(1) whether the movant failed to ascertain facts prior to filing the pleading or failed to acquire information during the discovery period; (2) whether the information supporting the proposed amendment was available to the movant; and (3) whether the movant delayed in requesting leave to amend even after acquiring the information."

*Rothfos Corp.*, 2023 WL 9022694, at *3. "A finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry." *Lord v. Fairway Elec. Corp.,* 223 F. Supp. 2d 1270, 1277 (M.D. Fla. 2002). Abacus cannot show any diligence regarding any of these factors, much less sufficient diligence to justify displacing the amendment deadline to which it agreed.

*First*, Abacus could have ascertained—and timely pled—relevant facts prior to filing its FAC. That is because Abacus's ***own documents*** from past years undermine the essential claims in its FAC, which it now seeks to alter through its proposed amendments. Three prime examples are Abacus's proposed amendments to allegations regarding (1) its own valuation methodology, (2) alleged injuries emanating from its desire to issue stock in June 2025, and (3) the allegations about its own operations that Abacus would now abandon after Defendants took discovery on them and exposed the false statements on these topics in Abacus's FAC. Abacus's redlined complaint tells this story. *See* Dkt. 126-1.

Abacus seeks to make a number of amendments to the factual predicates underlying its defamation claims regarding ***its own business practices***. In a tacit acknowledgement that it ***did*** primarily rely on Lapetus life expectancies—a fact known for years to Abacus as well as Coventry and others in the industry—Abacus's proposed SAC would delete the assertion that it does not "primarily rely on Lapetus life expectancies." Dkt. 126-1 at 5; *see also id*. at 84. Abacus would also delete the assertion that it "does not use a life expectancy-based methodology to value the policies on its

balance sheet." *Id.* Abacus additionally would delete its claim that "Abacus has ***never said it uses Lapetus to value the assets on its balance sheet, nor has it ever done so***." *Id.* at 8 (emphasis in original). And Abacus would delete its allegation that "Abacus has never stated that it uses a single life expectancy provider for any part of its deal flow or valuation." *Id.* at 28. Each assertion Abacus now seeks to disavow was integral to the factual premise of the FAC's "core claim." Abacus survived a motion to dismiss by relying on those core allegations, and it now seeks to abandon them only after discovery and Defendants' pleadings have exposed them as knowingly false.

As detailed in Abacus's own documents—including written policies and the internal emails of key Abacus employees—Abacus was unquestionably aware that its valuation methodology was primarily Lapetus-based when it filed the FAC. Indeed, in a May 7, 2025 email Armando Cabrera told Jay Jackson that "[redacted]" Dkt. 121-6, at 1, which is the precise number that Abacus reported a day later as its "Life settlement policies, at fair value" in its May 8, 2025 10-Q filing. And, in a recent deposition, Abacus's external actuarial valuation firm—who Abacus had previously claimed had "validated" that Abacus did not use Lapetus on its balance sheet, *see* FAC ¶ 160 n.27—agreed that Abacus's policy holdings demonstrated a "[redacted]" for Lapetus because there was "[redacted]" of Lapetus LEs. Morrow Dep. 178:8–9; *see also id.* at 151:6–9 ([redacted]).

Abacus was also aware that using Lapetus LEs would inflate the value of Abacus's portfolio. In January 2023, as Abacus was preparing to go public, an Abacus employee estimated that using Lapetus LEs to value Abacus's policy holdings would "[redacted]" from other, more established and reputable life expectancy providers. Dkt. 121-5, at 1. Subsequently, in May 2025, Abacus conducted an analysis showing that if it were to "[redacted]" [redacted], while using a similar discount rate, its portfolio value [redacted] *See* Dkt. 121-6, at 1. This chart from Abacus's ***own analysis*** says it all:

[redacted]

Abacus chose to plead facts in its FAC that were flatly at odds with its own documents. Abacus now seeks to delete those allegations only after Defendants have exposed them as false. And it has made that request more than nine months after the amendment deadline passed. But the documents that prompted these amendments were Abacus's own and had been in Abacus's possession throughout, *see* Dkt. 127 ¶¶ 6–7, 34–40. That is not diligence.

Moreover, Abacus now seeks to introduce an entirely new theory of harm stemming from its purported desire to make stock issuances in June 2025. *See* Dkt. 126-1 at 76–79. But Abacus was certainly aware of ***its own plans*** to issue stock in June 2025. Thus, it could have pled these allegations of harm in its initial complaint in June 2025, in its FAC in September 2025, or at least before the amendment deadline in November 2025. Instead, Abacus sat on these new allegations of harm ***for the entire duration of this lawsuit***, springing these allegations on Defendants in the middle of depositions. "So not only was the information supporting the proposed amendment available to [Abacus] early in the case, but [it] also delayed in seeking amendment." *Colucci v. Health First, Inc*, 2023 WL 7128769, at *2 (M.D. Fla. Feb. 7, 2023). And these allegations of harm constitute a "new theory of recovery" belatedly pled by Abacus, which Abacus itself concedes is sufficient to deny a motion to amend. *See* Mot. at 6 (quoting *Cowen v. Sec'y of State of Georgia*, 2025 WL 3216878, at *4 (11th Cir. Nov. 18, 2025)). The specifics of Abacus's new damages allegations confirm the point. The proposed SAC would allege for the first time that Abacus's "authorized but unissued stock has dropped in value, curtailing merger and acquisition activity, and limiting Abacus's ability to fundraise through capital markets." Dkt. 126-1 at 91. Abacus needed no discovery from Defendants to learn the contents of its own shelf, its own capital plans, or its own board's deliberations from more than a year ago.

*Second*, Abacus concedes the dispositive facts. Abacus tells this Court that the documents it received in discovery allegedly "would have supported Abacus's original

claim for defamation per se, but Abacus did not amend its complaint because Defendant's [sic] Motion to Dismiss (ECF No. 47) was still pending at the time." Mot. at 9. It repeats the concession a paragraph later: "even once Abacus received documents confirming its theory of defamation per se, there was no immediate need to amend its complaint." *Id.* Abacus thus admits it had the facts and made a considered decision not to plead them. That resolves the third *Rothfos* factor—"whether the movant delayed in requesting leave to amend even after acquiring the information"—based on Abacus's own words. *Rothfos Corp.*, 2023 WL 9022694, at *3. And "[a] finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry." *Lord*, 223 F. Supp. 2d at 1277.

Abacus's remaining explanation—that it had no reason to amend until this Court dismissed Count III on June 25, 2026, *see* Mot. at 9; Dkt. 100—is not good cause either. Indeed, this excuse makes no sense. An order resolving a motion to dismiss supplies no new ***facts***. It tells a plaintiff only that the allegations it chose to plead were insufficient. If a Rule 12 ruling reopened an expired Rule 16 deadline, every scheduling order would be provisional and every partial dismissal would be an invitation to replead the case from scratch.

*Third*, what additional information Abacus received during discovery, it sat on for months. For example, the proposed SAC would add as a new allegedly defamatory statement Mr. Buerger's contention during the second Tegus interview—which was never released or published—that Lapetus was "duped by Abacus when they started." Dkt. 126-1 at 8, 90. But Abacus was first made aware of this statement and the second

Tegus interview in November 2025 when it received its third-party production from AlphaSense. Abacus has therefore "delayed in requesting leave to amend even after acquiring the information." *Rothfos Corp.*, 2023 WL 9022694, at *3. The same is true of the other discovery material Abacus invokes. Abacus says it learned of Coventry's April 2024 communications with Florida regulators on May 25, 2026, and of Mr. Buerger's March 2024 email to CNBC on July 8, 2026. Mot. at 8–9. Abacus nonetheless waited until August 18, 2026—nearly three months and six weeks later, respectively—and offers no explanation for either interval.

Abacus's Motion ignores these examples of it sitting on information for months. Instead, Abacus portrays the proposed amendment as having a "limited scope" based on discovery Abacus received in May 2026 and press statements Coventry made in early August about documents this Court did not find good cause to keep under seal. Mot. at 7. But the scope of this proposed amendment is anything but limited.

Abacus's SAC would quietly try to paper over patently false statements in its FAC that Defendants pointed out in their Counterclaims, Dkt. 127 ¶¶ 91–97,[2] recast its untrue allegations about the relationship between Defendants and Morpheus, Dkt. 126-1 at 9, 67–70, and invent a new theory of harm based on Abacus's internal capital plans from June 2025, *id*. at 76–79. These changes are neither timely nor "limited."

[2] Abacus's belated attempt to correct some of the blatant false statements in its FAC—falsehoods that Abacus knew at the start of this litigation—similarly does not create "good cause," especially where Abacus "had ample opportunity to conduct discovery and to correct any misleading information contained" in its FAC. *Catz v. United States*, 2011 WL 6319166, at *3 (M.D. Fla. Nov. 30, 2011). In fact, "such delays" in correcting these misstatements indicate "a lack of due diligence on the part of Plaintiff's counsel." *Id*.

Furthermore, affording Defendants sufficient time to investigate the factual premises underlying Abacus's new allegations of defamation and harm would require extensive changes to discovery—in terms of document production, depositions, and expert reports.[3] And the additional discovery (as well as another round of repleading) would, as this Court noted in its Order dated August 6, 2026, "significantly disrupt the calendar," Dkt. 124 at 3.

Finally, Abacus's unsupported allegations of discovery delays creating "good cause" similarly fail. Mot. at 5. As this Court recently noted in granting Abacus its desired extension, "the parties[]" have undertaken "active efforts to timely complete discovery." Dkt. 124 at 2. Indeed, Abacus itself argued in seeking an extension that "the Parties have engaged in significant and voluminous discovery efforts," Dkt. 122 at 3, "the Parties have largely worked cooperatively and diligently to negotiate and resolve disputes without significant Court intervention," *id*. at 4, and "[t]he Parties have made diligent attempts to progress case discovery," *id*. at 10. Abacus cannot opportunistically change its tune depending on what motion it asks the Court to grant.

Accordingly, this Court should deny Abacus's Motion because Abacus has utterly failed to demonstrate good cause under Rule 16.

[3] Abacus's representation that its amendment "requires no additional discovery," Mot. at 3, cannot survive a reading of its own redline. The new shelf-based damages theory alone would require document discovery and testimony concerning Abacus's June 2025 shelf and stock issuance planning, its communications with bankers and underwriters, its board's deliberations, and its damages computation. Other changed allegations and theories would require new document discovery and reopening and adding new depositions.

**B. Rule 15(d) Does Not Rescue Abacus's Untimely Amendments.**

Abacus invokes Rule 15(d) for alleged conduct occurring after it filed the FAC. Mot. at 6, 9–10. Rule 15(d) permits a party, "on just terms," to serve a supplemental pleading "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). But leave to supplement remains discretionary, and Rule 15(d) does not permit a party to use a supplemental pleading to "assert an entirely new theory of recovery" at a late stage of litigation. *Cowen v. Sec'y of State of Georgia*, 2025 WL 3216878, at *4 (11th Cir. Nov. 18, 2025); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1229 (11th Cir. 2008).

Rule 15(d) reaches, at most, the August 4, 2026 press release. It does not reach, *inter alia*, Abacus's proposed revisions to its valuation allegations, its new shelf-based damages theory, the Tegus statements obtained through a November 2025 production, or its wholesale abandonment of the Carlisle damages section—none of which "happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Abacus may not bootstrap a year's worth of untimely amendments and a wholesale retreat from its own pleaded claims onto a single recent press release.

**C. Abacus's Motion Also Fails Under Rule 15.**

Even if Abacus could demonstrate good cause, Abacus's proposed SAC fails under step two of the analysis. Amendment need not be permitted "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would

be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). A motion to amend is brought with undue delay where, as here, the operative facts pled have been known to the movant for months and "there is no good reason why [the movant] could not have made the motion earlier." *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003). And a motion to amend is unduly prejudicial "where, as here, additional discovery will be required, and the defendant has already expended a significant amount of time and money on discovery." *Shea v. Specialized Loan Servicing, LLC*, 2022 WL 2197940, at *6 (M.D. Fla. Jan. 31, 2022) (collecting cases).

*First*, Abacus's Motion was brought with undue delay. As discussed above, Abacus was aware of the material facts underlying the vast majority of its changes in the proposed SAC before it filed its initial complaint in June 2025. In June 2025 (and for years prior), Abacus was aware it used a valuation methodology that primarily relied on Lapetus life expectancies as an input. *See* Dkt. 127 ¶ 40. And Abacus was aware of the facts underlying its new allegations of harm stemming from its supposed "plans" to issue stock in June 2025 as well. Dkt. 126-1 at 77. Abacus has known the facts underlying these changed allegations for over a year and sat on them. In addition, the proposed SAC also relies on facts obtained in discovery many months ago, most notably in November 2025.

These indisputable facts are textbook examples of undue delay. *See, e.g.*, *Andrx Pharmaceuticals, Inc. v. Elan Corp.*, 421 F.3d 1227, 1237 (11th Cir. 2005) (denying a motion to amend as unduly delayed where movant knew of complaint defects for over

a year); *Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1214, 1218 (11th Cir. 2004) (same, six months after the amendment deadline); *Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1275 (11th Cir. 2001) (same, over a year after complaint filed and eleven months after amendment deadline); *Brewer–Giorgio v. Producers Video, Inc.*, 216 F.3d 1281, 1284 (11th Cir. 2000) (same, over a year after complaint filed and eight months after amendment deadline).

*Second*, allowing Abacus's amendment would unduly prejudice Defendants. Defendants have propounded and responded to hundreds of requests for production, served dozens of third-party subpoenas, taken and defended four depositions, and engaged in extensive expert-related discovery to defend against Abacus's allegations in the FAC and rebut Abacus's theories of harm. Allowing Abacus to amend its pleading to offer an entirely new theory of damages and to pivot away from the fundamental factual allegations about Abacus's valuation methodology and reliance on Lapetus LEs, among many other changes, will require Defendants to propound a slew of new discovery requests, alter their deposition strategy, and incur significant additional costs. In fact, Defendants are in the middle of taking depositions focused on the very factual assertions that Abacus now seeks to abandon in its SAC. The fact that discovery is exposing Abacus's pleadings as false is not a basis for allowing Abacus to recast its case. This "would be tantamount to making [Defendants] hit a moving target." *Catz*, 2011 WL 6319166, at *3. That is quintessential prejudice.

*Finally*, Abacus's proposed amendments only further reveal the meritless nature of Abacus's claims. Abacus's SAC would delete the core factual allegations

underpinning the core theory of its defamation claims—that Abacus "does not use Lapetus to value the policies on its balance sheet," Dkt. 126-1 at 63—while retaining allegedly defamatory statements that depend on that very proposition. Indeed, Abacus's new theory of defamation stemming from the August 4, 2026 press release would still turn on the premise that it is defamatory to suggest that Abacus "***knowingly relied*** on" short Lapetus LEs. *See* Mot. at 9 (emphasis added). Given that Abacus's proposed amendments now admit it did rely on Lapetus LEs for its balance sheet valuations—as its own documents make abundantly clear—its theory of defamation is without merit.

Furthermore, Abacus's newly concocted defamation claim based on the August 4, 2026 press release contains no express allegations of falsity nor a cogent theory of harm. Instead, all that Abacus can offer is a half-hearted charge that the press release was "misleading" because Coventry discussed Lapetus's Actual-to-Expected ratio under the traditional Actual-to-Expected framework and did not adopt Lapetus's bespoke Distance-to-Death formula. But Lapetus's own actuary disclaimed that formula as "neither probabilistic nor actuarial in nature" nor "covered by any current Actuarial Standard of Practice." Dkt. 120-20, at 2. In a recent deposition, Abacus's external actuarial valuation firm acknowledged that "[redacted]" Morrow Dep. 98:18–22. And while Abacus awkwardly attempts to shoehorn this defamation claim into its new theory of damages based on diminution of the value of its shelf, it offers ***no***

allegations that it attempted to use its shelf since the August 4, 2026 press release was published.

Where, as here, the Defendants have "devoted substantial resources to the discovery process already" and "additional discovery will be required" to address the facts Abacus has known from the outset of this litigation, denial of an untimely motion to amend is well warranted. *Shea*, 2022 WL 2197940, at *6. In short, Abacus should not be permitted to shift the factual premises of this case after Defendants have built their defense—and taken testimony—around the allegations Abacus chose to plead despite the contrary facts in its own files and communications. Abacus has already made two attempts to file a viable complaint. There has been no showing of good cause or excusable neglect that would warrant a third.[4]

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Abacus's Motion.

[4] Should this Court grant Abacus's Motion, Defendants respectfully request that this Court permit Defendants to (i) re-open previously completed depositions; (ii) further extend discovery deadlines, including their expert deadline; (iii) use Abacus's superseded allegations in the FAC as party admissions under the Federal Rules of Evidence; and (iv) that this Court impose attorneys' fees on Abacus for the cost of additional discovery and the responsive briefing to its Motion.

Dated: September 1, 2026

Respectfully Submitted,

*/s/ Andrew J. Levander*

Andrew J. Levander (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

Eric Auslander (*pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006

Michael H. McGinley (*pro hac vice*)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

Alfred J. Bennington, Jr.
Glennys Ortega Rubin
Benjamin F. Elliott
SHUTTS & BOWEN LLP
300 South Orange Ave.
Suite 1600
Orlando, FL 32801

*Counsel for Defendants Coventry First LLC and Alan Buerger*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 1, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.

*/s/ Andrew J. Levander*
Andrew J. Levander