**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ABACUS GLOBAL MANAGEMENT, INC., a corporation,

Plaintiff and Counterclaim Defendant,

JAY JACKSON,

Counterclaim Defendant

v.

COVENTRY FIRST LLC, a limited liability company; ALAN BUERGER, an individual,

Defendants and Counterclaimants.

Case No.: 6:25-cv-01401-RBD-RMN

**COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE COUNTERCLAIMANTS' AMENDED COUNTERCLAIMS AND INCORPORATED LEGAL MEMORANDUM**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................1

BACKGROUND ..........................................................................................5

STANDARD OF REVIEW ..........................................................................6

ARGUMENT ...............................................................................................7

I. Florida's Anti-SLAPP Statute Does Not Provide a Standalone Civil Cause of Action. ..............................................................................7

II. The Counterclaims Fail to Allege a Violation of the FVSA. .....................9

  A. Counterclaimants Do Not Plead a Fraudulent Act Under FVSA. .......................................................................................................9

  B. Mr. Jackson's Board Seat Did Not Violate the FVSA. ................. 12

III. Counterclaimants Lack Standing to Bring Counts II and III. .............. 14

  A. Counterclaimants Have Not Alleged Harm Caused by Abacus Purchasing Lapetus LEs. ............................................... 15

  B. Counterclaimants Were Not Harmed by Jackson's Lapetus Board Membership. ........................................................................ 16

IV. Count III is an Impermissible Attempt to Plead a Violation of FUTSA. ..................................................................................................... 17

V. The Counterclaims Do Not Allege Defamation *Per Se*. ......................... 19

VI. The Counterclaims do not Allege Violations of the FDUTPA. .............. 22

VII. The Counterclaims Seek Unavailable Remedies. .................................. 24

  A. The Counterclaims Fail to Allege Lost Profits or Reputational Harm. ................................................................. 24

  B. Punitive Damages Are Not Available. ......................................... 26

  C. Counterclaimants Cannot Seek Sanctions. .................................. 28

  D. Counterclaimants Seek Unavailable Injunctive Relief. .............. 28

VIII. ABACUS AND JACKSON ARE ENTITLED TO FEES AND COSTS UNDER FLORIDA'S ANTI-SLAPP STATUTE. ........................ 29

CONCLUSION ......................................................................................... 30

# TABLE OF AUTHORITIES

**Page**

## Cases

*Alan v. Wells Fargo Bank, N.A.*,
604 F. App'x 863 (11th Cir. 2015) .......... 19, 20

*Allegiance Healthcare Corp. v. Coleman*,
232 F. Supp. 2d 1329 (S.D. Fla. 2002) .......... 18

*Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*,
390 F. Supp. 2d 1170 (M.D. Fla. 2005) .......... 17

*Am. Registry, LLC v. Hanaw*,
2014 WL 12606501 (M.D. Fla. July 16, 2014) .......... 17, 18

*Am. United Life Ins. Co. v. Martinez*,
480 F.3d 1043 (11th Cir. 2007) .......... 9, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Barrish v. Interiors by Steven G., Inc.*,
2026 WL 1476408 (Fla. 3d DCA May 27, 2026) .......... 24

*Bedtow Grp. II, LLC v. Ungerleider*,
2015 WL 13310463 (S.D. Fla. Sept. 30, 2015) .......... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 6

*BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*,
235 P.3d 310 (Haw. 2010) .......... 18

*Bob's Space Racers, Inc. v. Hampton Co., Inc.*,
1996 WL 684440 (M.D. Fla. Nov. 25, 1996) .......... 7, 28

*Bongino v. Daily Beast Co., LLC*,
477 F. Supp. 3d 1310 (S.D. Fla. 2020) .......... 23, 30

*Branch v. Airtran Airways, Inc.*,
314 F. Supp. 2d 1194 (M.D. Fla. 2004) .......... 27

*Cook v. Deltona Corp.*,
753 F.2d 1552 (11th Cir. 1985)........................................................................ 27

*Corsi v. Newsmax Media, Inc.*,
519 F. Supp. 3d 1110 (S.D. Fla. 2021) ........................................................ 30

*Dolen v. Ryals*,
2010 WL 2079657 (M.D. Fla. May 24, 2010)............................................... 29

*Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of United Bthd. of Carpenters & Joiners of Am.*,
675 F.3d 1250 (11th Cir. 2012)........................................................................ 27

*Forest's Mens Shop v. Schmidt*,
536 So. 2d 334 (Fla. 4th DCA 1988)............................................................. 16

*Fridovich v. Fridovich*,
598 So. 2d 65 (Fla. 1992) ................................................................................ 23

*Grippa v. Rubin*,
133 F.4th 1186 (11th Cir. 2025) ..................................................................... 22

*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*,
466 F.3d 961 (11th Cir. 2006)..................................................................... 15, 16

*Gundel v. AV Homes, Inc.*,
264 So. 3d 304 (Fla. 2d DCA 2019) ...................................................................8

*Hutchings v. Fed. Ins. Co.*,
2008 WL 4186994 (M.D. Fla. Sept. 8, 2008).....................................................7

*Int'l Bus. Machs. Corp. v. Dale*,
2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011)................................................. 25

*ISO Claims Servs., Inc. v. Bradford Techs., Inc.*,
2011 WL 13176422 (M.D. Fla. Sept. 29, 2011)............................................ 17

*Kaser v. Swann*,
141 F.R.D. 337 (M.D. Fla. 1991) ................................................................... 11

*Ligeri v. Ariz. Daily Indep., LLC*,
2026 WL 1073057 (M.D. Fla. Mar. 10, 2026) ..................................................7

*Loomer v. Maher*,
2025 WL 756549 (M.D. Fla. Jan. 16, 2025) ........ 21

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........ 6

*Madow v. J.P. Morgan Chase & Co.*,
2011 WL 13299569 (M.D. Fla. Aug. 9, 2011) ........ 12

*Mangel v. Daza*,
2020 WL 1666032 (M.D. Fla. Apr. 3, 2020) ........ 29

*Marrache v. Bacardi U.S.A., Inc.*,
17 F.4th 1084 (11th Cir. 2021) ........ 24

*United States ex rel. Matheny v. Medco Health Sols., Inc.*,
671 F.3d 1217 (11th Cir. 2012) ........ 11

*Monster Energy Co. v. Consol. Distribs., Inc.*,
2013 WL 12156536 (M.D. Fla. Jan. 3, 2013) ........ 12

*Mortg. Now, Inc. v. Guaranteed Home Mortg. Co.*,
545 F. App'x. 809 (11th Cir. 2013) ........ 16

*N. Am. Clearing, Inc. v. Brokerage Comp. Sys., Inc.*,
2009 WL 2982834 (M.D. Fla. Sept. 11, 2009) ........ 25

*Nebula Glass Int'l, Inc. v. Reichhold, Inc.*,
454 F.3d 1203 (11th Cir. 2006) ........ 25, 26

*New Lenox Indus., Inc. v. Fenton*,
510 F. Supp. 2d 893 (M.D. Fla. 2007) ........ 17

*Ortiz v. NAC Dynamics, LLC*,
2012 WL 13141461 (M.D. Fla. Dec. 6, 2012) ........ 28

*Ounjian v. Globoforce, Inc.*,
89 F.4th 852 (11th Cir. 2023) ........ 23

*Rasmussen v. Collier Cnty. Pub. Co.*,
946 So. 2d 567 (Fla. 2d DCA 2006) ........ 21

*Rollins, Inc. v. Butland*,
951 So. 2d 860 (Fla. 2d DCA 2006) ........ 22

*Ray v. Hill*,
2018 WL 3732140 (S.D. Fla. July 17, 2018) ............................................. 22

*Rosenthal v. Council on Am.-Islamic Rels., Fla., Inc.*,
2017 WL 6390102 (Fla. 17th Jud. Cir. Ct. Nov. 8, 2017) ........................... 30

*Rubinson v. Rubinson*,
474 F. Supp. 3d 1270 (S.D. Fla. 2020) ..................................................... 23

*Santilli v. Van Erp*,
2018 WL 2172554 (M.D. Fla. Apr. 20, 2018) ............................................. 29

*Schwarz v. Vills. Charter Sch., Inc.*,
2019 WL 8495898 (M.D. Fla. Oct. 29, 2019) ............................................. 29

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................ 14, 15

*Sterling v. De La Rosa*,
2026 WL 964850 (M.D. Fla. Mar. 30, 2026) ............................................. 30

*Sterling v. Doe*,
2021 WL 12418345 (M.D. Fla. Oct. 4, 2021), *aff'd,* 2022 WL 2112091 (M.D. Fla. Feb. 2, 2022) ........................................................................8

*Students for Just. in Pal. v. DeSantis*,
2024 WL 371875 (N.D. Fla. Jan. 31, 2024) ............................................... 26

*ThinkLite LLC v. TLG Sols., LLC*,
2017 WL 5972888 (S.D. Fla. Jan. 31, 2017) ............................................. 18

*Turner v. Wells*,
879 F.3d 1254 (11th Cir. 2018) .............................................................. 21

*U.S. Holdings, Inc. v. SunTrust Banks, Inc.*,
2010 WL 11506041 (S.D. Fla. Feb. 3, 2010) ............................................. 11

*Urquhart v. Manatee Mem'l Hosp.*,
2007 WL 2010761 (M.D. Fla. July 6, 2007) ..................................................6

*Utterback v. Morris*,
2024 WL 3809368 (N.D. Fla. July 24, 2024) ............................................. 21

*W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*,
2010 WL 11426150 (S.D. Fla. Mar. 25, 2010) .......... 9, 13

*Ward v. Triple Canopy, Inc.*,
2017 WL 3149431 (M.D. Fla. July 25, 2017) .......... 29

*XTec, Inc. v. Hembree Consulting Servs., Inc.*,
2014 WL 12729173 (S.D. Fla. Aug. 1, 2014) .......... 23

**Statutes**

Fla. Stat. §§ 501.201–213 (FDUTPA) .......... 4, 5, 6, 8, 17, 22, 23

Fla. Stat. Ann. § 626.9911 (FVSA) .......... 9, 10, 11, 12

Fla. Stat. § 626.99175 (FVSA) .......... 13, 14

Fla. Stat. § 626.9927 (FVSA) .......... 12, 14, 26

Fla. Stat. Ann. § 626.99275 (FVSA) .......... 9

Fla. Stat. § 688.001 (FUTSA) .......... 3, 4, 17, 18, 19

Fla. Stat. § 688.008 (FUTSA) .......... 17

Fla. Stat. § 768.295 (Florida Anti-SLAPP) .......... 1, 2, 5, 6, 7, 8, 9, 29, 30

**Rules**

Fed. R. Civ. P. 9(b) .......... 2, 9, 11

Fed. R. Civ. P. 11 .......... 28

Fed. R. Civ. P. 12(b)(1) .......... 1, 6

Fed. R. Civ. P. 12(b)(6) .......... 1, 6

Fed. R. Civ. P. 12(f) .......... 1, 7, 24

Counterclaim Defendants Abacus Global Management, Inc. ("Abacus") and Jay Jackson ("Jackson") move to dismiss the Amended Counterclaims asserted by Defendants Coventry First LLC ("Coventry") and Alan Buerger ("Buerger" and, together with Coventry, "Counterclaimants"). As explained below, the Counterclaims should be dismissed under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a claim. Abacus and Jackson further move under Rule 12(f) to strike certain categories of relief that are unavailable as a matter of law and seek fees under Florida's Anti-SLAPP statute. In support of these Motions, Abacus and Jackson state as follows.

## INTRODUCTION

Abacus brought this suit because Coventry and Buerger, its Chairman and co-founder, "devised a scheme to undermine Abacus through false and misleading statements" about its business, instead of competing fairly with Abacus in the marketplace. Dkt. 38 ¶ 4. The Counterclaims merely continue the same anticompetitive conduct. Armed with documents acquired from Abacus and third parties in discovery, Counterclaimants claim to have unearthed proof that Abacus secretly controlled Lapetus (the life expectancy provider Coventry itself drove out of business in 2025) and manipulated life expectancies to inflate its own asset values. But these claims are baseless: Counterclaimants misconstrue the documents they cite, strip them of context, and hold them up for propositions they do not support. Mischaracterizations

aside, the Counterclaims fail as a matter of law because they lack any viable statutory basis (Counts I–III), fail to allege standing (Counts II–III), seek remedies that are unavailable as a matter of law, and otherwise fail to state a claim. And while Counterclaimants spill much ink—62 pages and citations to approximately 60 individual documents—in an attempt to smear Abacus and Jackson, at bottom the Counterclaims are hollow and fail to demonstrate any legal basis for the drastic relief sought. The claims fail on multiple, independently dispositive grounds:

*First*, Count I fails as a matter of law because Florida's Anti-SLAPP statute does not create a private right of action. And the statute's only damages provision limits its remedy to "damages arising from ***a governmental entity's violation of this section***." Fla. Stat. § 768.295(4) (emphasis added). This improper claim must be dismissed.

*Second*, Counts II and III should be dismissed because Counterclaimants have not alleged a violation of the Florida Viatical Settlements Act ("FVSA"), which regulates the sale of life insurance policies by terminally or chronically ill individuals in exchange for an immediate cash payout. The FVSA prohibits a "fraudulent settlement act," but the statute only applies to contracts between Florida policy sellers (viators) and Florida providers, rather than disputes between marketplace competitors . Counterclaimants further fail to plead the fraud they allege with the specificity required by Rule 9(b). Their allegation

that Jackson violated the FVSA through his position on the Lapetus board of directors fares no better because the FVSA prohibits only a "viatical settlement broker, viatical settlement provider, or insurance agent in the business of viatical settlements" from serving as an officer of a life expectancy provider. Jackson is none of these, and Counterclaimants do not allege otherwise.

*Third,* Counts II and III should be dismissed because Counterclaimants have not adequately pled causation and, therefore, fail to state a claim. Even if true, the conduct Counterclaimants challenge—Abacus's reliance on Lapetus estimates (Count II) and Jackson's board seat (Count III)—is entirely divorced from any alleged damages. Rather, Counterclaimants allege that the challenged conduct was, at most, the proximate cause of Abacus filing ***this lawsuit***, and that it is the lawsuit itself that caused Coventry to incur "litigation costs, attorneys' fees, and reputational harms." Dkt. 127 ("Counterclaims") ¶ 124. In any event, Counterclaimants' allegations of damages are wholly speculative and unsupported, warranting dismissal.

*Fourth*, Count III fails because it is an improper attempt to repackage a trade secrets claim as a claim arising under the FVSA. Florida's Uniform Trade Secrets Act ("FUTSA") preempts any other statutory or common-law cause of action based on the same core allegations. Fla. Stat. § 688.001 *et seq.* Counterclaimants allege Jackson engaged in "unfair trade practices" that resulted in the misappropriation of confidential business information.

Counterclaims ¶¶ 135–37. But Counterclaimants cannot plead around the requirements of FUTSA by filing the same claim under a different statute.

*Fifth*, Count IV fails for multiple reasons. The statements Coventry relies on cannot support a defamation *per se* claim because, as this Court has made clear, determining whether such statements are false and defamatory requires context outside the statements themselves, which defeats a *per se* theory as a matter of law. Dkt. 100 at 10–11. The challenged statements also constitute legitimate opinions about this litigation, and such statements cannot support a defamation *per se* claim. Finally, because the challenged statements all pertain to this ongoing litigation—indeed they are strikingly similar to statements Abacus made about Defendants in its own pleadings—they are subject to a qualified privilege.

*Sixth*, Counterclaimants' Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim fails because it is an attempt to repackage Counterclaimants' doomed defamation claim into a claim for violation of the FDUTPA, a gambit that Florida law does not permit. Independently, Count V is barred by Florida's single action doctrine and fails to allege the kind of actual, non-speculative consumer harm FDUTPA requires.

*Seventh*, if Counterclaimants' causes of action are not dismissed, their damages claims should be struck for failing to allege any specific lost profits or reputational harm, much less grounds to award punitive damages.

Counterclaimants also seek sanctions and an order requiring Abacus and Jackson to retract certain unenumerated statements. But the Counterclaims do not allege any specific lost profits or reputational harm, and otherwise fail to allege any acts by Abacus and Jackson that, even if true, would entitle them to these categories of relief. The Court should therefore strike subsections (b) and (d) through (f) of Counterclaimants' Prayer for Relief.

*Finally*, Abacus and Jackson are entitled to fees and costs under Florida's Anti-SLAPP statute, which permits fee shifting where, as here, a party is forced to defend against a meritless suit brought against a party who exercises their right to protected speech.

**BACKGROUND**

On September 18, 2025, Abacus filed its First Amended Complaint, alleging that Coventry and Buerger orchestrated a campaign of false and defamatory statements attacking Abacus's business practices and, in particular, its valuation methodology. *See generally* Dkt. 38. On June 25, 2026, the Court denied Defendants' motion to dismiss as to Abacus's claims for defamation (Count I), violation of FDUTPA (Count IV), and defamation by implication (Count II), except for a single statement dismissed with prejudice as privileged. Dkt. 100 at 16–17. In denying dismissal of Counts I, II, and IV, the Court held Abacus had plausibly alleged that Coventry's and Buerger's public statements about Abacus were false and defamatory. *Id.* at 6–17.

On July 9, 2026, Coventry and Buerger filed their Answer, Affirmative Defenses, and Counterclaims asserting three counterclaims against Abacus based on Florida's Anti-SLAPP statute and the Florida Viatical Settlements Act, and sought compensatory damages, punitive damages, attorneys' fees, and costs. Dkt. 120. Counterclaimants amended their counterclaims on August 20, 2026, raising substantially similar allegations and adding claims for defamation *per se* and violation of FDUTPA. *See* Dkt. 127.[1]

## STANDARD OF REVIEW

A motion under Rule 12(b)(1) challenges the Court's subject-matter jurisdiction over a case. Such jurisdiction is lacking without "a causal connection between the injury and the conduct complained of." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also Urquhart v. Manatee Mem'l Hosp.*, 2007 WL 2010761, at *3 (M.D. Fla. July 6, 2007) ("The second requirement to establish standing is proximate causation.").

To survive a motion under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts well-pleaded facts as true but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

---

[1] Abacus has also sought leave to amend its Complaint a second time to add new defamatory statements and streamline its pleading based on discovery to date. *See* Dkt. 126.

"[A] motion to strike [under Rule 12(f)] is the appropriate mechanism to pursue removal of the prayer for . . . damages in the Complaint." *Hutchings v. Fed. Ins. Co.*, 2008 WL 4186994, at *2 (M.D. Fla. Sept. 8, 2008); *see also Bob's Space Racers, Inc. v. Hampton Co., Inc.*, 1996 WL 684440, at *3 (M.D. Fla. Nov. 25, 1996) (granting Rule 12(f) motion to strike portion of prayer for relief seeking sanctions).

## ARGUMENT

### I. Florida's Anti-SLAPP Statute Does Not Provide a Standalone Civil Cause of Action.

Count I must be dismissed because the statute Counterclaimants invoke does not authorize the relief they seek. Florida's Anti-SLAPP statute prohibits the filing of a lawsuit, cause of action, claim, cross-claim, or counterclaim "without merit and primarily because" the party against whom it is filed exercised free-speech rights. Fla. Stat. § 768.295(3). The Anti-SLAPP statute does ***not*** provide a private, standalone cause of action. *See, e.g.*, *Ligeri v. Ariz. Daily Indep., LLC*, 2026 WL 1073057, at *2 (M.D. Fla. Mar. 10, 2026) ("Florida's Anti-SLAPP statute is n[ot] a standalone claim.").

Instead, the statute authorizes the victim of a SLAPP suit to dismiss such suit through either a motion to dismiss or a motion for summary judgment. *See* Fla. Stat. § 768.295(4) ("A person or entity may move the court for an order dismissing the action or granting final judgment in favor of that

person or entity. The person or entity may file a motion for summary judgment . . . seeking a determination that the claimant's or governmental entity's lawsuit has been brought in violation of this section."); *Gundel v. AV Homes, Inc.*, 264 So. 3d 304, 312–14 (Fla. 2d DCA 2019); *see also* discussion *infra* Section VIII. Counterclaimants' attempt to wield Florida's Anti-SLAPP statute as an affirmative cause of action (Counterclaims ¶¶ 108–15) is defeated by the plain language of the statute and well-settled caselaw.

The Court should dismiss Count I for a second, independent reason: Section 768.295(3) requires a showing that the action at issue was filed "without merit." Counterclaimants allege, for example, that "Abacus's underlying lawsuit is utterly baseless and without merit." Counterclaims ¶ 112. But the Court recognized that Abacus had stated plausible claims for defamation, defamation by implication, and violations of the FDUTPA. *See* Dkt. 100 at 6–17. In these circumstances, Florida courts reject even properly raised Anti-SLAPP arguments. *See, e.g.*, *Sterling v. Doe*, 2021 WL 12418345, at *2 (M.D. Fla. Oct. 4, 2021), *aff'd,* 2022 WL 2112091 (M.D. Fla. Feb. 2, 2022) (having found that plaintiff pled a *prima facie* defamation case against defendant, Anti-SLAPP statute did not apply).

## II. The Counterclaims Fail to Allege a Violation of the FVSA.

### A. Counterclaimants Do Not Plead a Fraudulent Act Under FVSA.

Count II must be dismissed because the FVSA applies only to contracts between Florida viators and Florida providers, not between competitors in the marketplace. Count II also fails because it does not allege fraud with the particularity required by Rule 9(b).

Counterclaimants allege that Abacus and Jackson violated the FVSA by "valuing Abacus's portfolio and selling policies to the funds it manages based on Lapetus LEs" and that this was done "for the purpose of perpetrating fraud." Counterclaims ¶¶ 119, 120 (Count II). They further allege that "[t]he instant lawsuit" was part of a "scheme" to "suppress the truth and deceive the public." *Id.* ¶ 123. But Fla. Stat. Ann. § 626.99275(1)(f), like the rest of the Florida Viatical Settlement Act, only applies to contracts between Florida viators and Florida providers. *W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*, 2010 WL 11426150, at *6 (S.D. Fla. Mar. 25, 2010) (citing *Am. United Life Ins. Co. v. Martinez,* 480 F.3d 1043, 1058–59 (11th Cir. 2007)).[2] That section incorporates Fla. Stat. Ann. § 626.9911(2)(b), which Counterclaimants allege

[2] The contract that the Court is referring to is a "viatical settlement contract," which means "a written agreement entered into between a viatical settlement provider . . . and a viator." Fla. Stat. Ann. § 626.9911(12).

Abacus and Jackson violated for the purpose of perpetuating fraud. Counterclaims ¶¶ 119, 120.

Section 626.9911(2)(b), however, defines a particular variety of "[f]raudulent viatical settlement act":

> 'Fraudulent viatical settlement act' means an act or omission committed by a person who ***knowingly, or with intent to defraud*** for the purpose of depriving another of property or for pecuniary gain, commits … any of the following acts: … [including] [e]mploying a plan, financial structure, device, scheme, or artifice relating to viaticated policies ***for the purpose of perpetrating fraud***. (Emphasis added.)

Counterclaimants have lost sight of the statute's purpose: to protect Florida viators—the terminally or chronically ill policyholders who sell their life insurance policies for an immediate cash payment—from a scheme to defraud by Florida providers. *Bedtow Grp. II, LLC v. Ungerleider*, 2015 WL 13310463, at *7 (S.D. Fla. Sept. 30, 2015) ("the statute does not provide that a viatical settlement provider has the right to void a contract due to it being unlicensed"). Neither Coventry nor Buerger are "viators" as that term is defined in § 626.9911. Nor can Counterclaimants' purported injuries be causally related to a supposed scheme to defraud viators (discussed in detail *infra* Section III). In fact, Counterclaimants plead no facts from which the Court could even infer that Abacus and Jackson engaged in such a scheme. Per Counterclaimants, Abacus and Jackson used misleading life expectancies for valuing and selling

Abacus's portfolio of policies to funds that Abacus manages, and in so doing harmed the investors of those funds. Counterclaims ¶¶ 116–127. Investor harm of that kind is not a cognizable claim under § 626.9911(2)(b), which protects viators—not competitors or their investors.

Further, Counterclaimants cannot meet their heavy burden of pleading fraud. Under Rule 9(b), allegations of fraud—including alleged statutory violations—must be pleaded with particularity. *See U.S. Holdings, Inc. v. SunTrust Banks, Inc.*, 2010 WL 11506041, at *3 (S.D. Fla. Feb. 3, 2010). Thus, Counterclaimants are required to set forth "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012) (citation omitted). Counterclaimants must also demonstrate "how [they have] been defrauded" by Abacus and Jackson. *Kaser v. Swann*, 141 F.R.D. 337, 341 (M.D. Fla. 1991).

Counterclaimants have not met their burden on either front. First, the Counterclaims rely on sweeping, vague allegations that Abacus's purchase of Lapetus LEs somehow constitutes fraud, without any of the specificity required by Rule 9(b). Counterclaims ¶¶34–40. Second, they utterly fail to allege how Coventry and Buerger were supposedly victimized by any alleged fraud. Counterclaimants' allegation that Abacus and Jackson violated Section

626.9911(2)(b) of the FVSA expressly requires a showing of fraud, and thus, the pleading must contain allegations that would establish the elements of common law fraud with specificity.

As to the assertion that *this lawsuit* itself is "part of Abacus and Jackson's 'plan' or 'scheme'" (Counterclaims ¶ 123), Counterclaimants ask this Court to treat the very act of seeking its protection as a fraud. The litigation privilege exists to foreclose exactly that. *See, e.g.*, *Madow v. J.P. Morgan Chase & Co.*, 2011 WL 13299569, at *3 (M.D. Fla. Aug. 9, 2011) ("The litigation privilege provides immunity to statements or actions taken during a judicial proceeding"). Its immunity is absolute and reaches the alleged statutory violations Counterclaimants assert here. *See, e.g.*, *Monster Energy Co. v. Consol. Distrib., Inc.*, 2013 WL 12156536, at *21 (M.D. Fla. Jan. 3, 2013).

**B. Mr. Jackson's Board Seat Did Not Violate the FVSA.**

Counterclaimants allege that (i) Jackson's "service on the [Lapetus Board of Directors from November 2021 through 2024] . . . constitutes an 'unfair trade practice' under Fla. Stat. § 626.9927," (ii) he "distributed information about Coventry and other industry members to Abacus in order to further the company's fraudulent scheme," and (iii) "Counterclaimants have

suffered actual damages in the form of lost profits" as a result. Counterclaims ¶¶ 131–38 (Count III).[3]

The plain text of the FVSA forecloses this argument. The FVSA prohibits a "viatical settlement broker, viatical settlement provider, or insurance agent in the business of viatical settlements" from "own[ing] or be[ing] an officer, director, or employee of a life expectancy provider." Fla. Stat. § 626.99175(6). The Counterclaims do not allege Jackson is a broker, provider, or insurance agent; because he is not and never has been. Nor has Abacus owned or served as an officer of Lapetus.[4] Even accepting the allegations as true, Counterclaimants fail to allege any violation of the FVSA.

Again, Counterclaimants refuse to acknowledge the scope and purpose of the FVSA. *See W. Coast Life Ins. Co.*, 2010 WL 11426150, at *6 (citing *Am. United Life Ins. Co.*, 480 F.3d at 1058–59) (explaining that the FVSA only applies to viatical settlement agreements between Florida residents). This statute speaks to the licensing requirements of life expectancy providers—

---

[3] Counterclaimants falsely claim they only learned of Jackson's board seat during the pendency of this lawsuit. *Id.* ¶ 136. Counterclaimants themselves point to a ***2024*** news article that discusses Jackson's board seat. *Id.* ¶ 33 n.2. And, Coventry's own produced documents show that not only did Buerger correspond with the article's author, Donna Horowitz, about Jackson's board seat throughout 2024, but he regularly fed Horowitz information to harm Abacus.

[4] The FVSA's enumerated list includes both entities (brokers and providers) alongside an individual (insurance agents). Had the Florida legislature intended to preclude directors of a viatical settlements provider—*i.e.*, Jackson—from serving as a board member of a life expectancy provider, such as Lapetus, it could have written the FVSA accordingly. It did not. As written, the plain text of the FVSA forecloses Counterclaimants' argument.

neither Abacus nor Jackson is one. *Compare* Fla. Stat. § 626.99175(6) ("***Life expectancy providers***; registration required; denial, suspension, revocation") (emphasis added) *with id.* § 626.9912 ("***Viatical settlement provider*** license required; application for license") (emphasis added). A viatical settlement provider and its CEO cannot violate a statute that governs the licensure of life expectancy providers.[5]

**III. Counterclaimants Lack Standing to Bring Counts II and III.**

Counts II and III should be dismissed because Counterclaimants fail to establish any causal link between the alleged violative acts and the purported harm and, therefore, fail to establish Counterclaimants' standing to bring the claims. Section 626.9927(3) states that "[a]ny person damaged by the acts of a person in violation of this act may bring a civil action against the person committing the violation . . . ." Fla. Stat. § 626.9927(3). Nevertheless, an injury in fact is a constitutional requirement that Congress or the Florida legislature "cannot erase . . . by statutorily granting the right to sue a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citations omitted). In order to have Article III standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

[5] Moreover, a plain reading of § 626.99175(6) reveals its aim: to protect viators from exploitation by regulating potential conflicts of interest that could jeopardize arms-length pricing of viatical settlements, driving down purchase prices. Counterclaimants allege the opposite: Abacus viators are being paid too handsomely, and Coventry can't compete. Their reliance on the FVSA is entirely misplaced.

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 338. To survive a motion to dismiss, the pleading must demonstrate a causal connection between the injury and the alleged statutory violations. *See, e.g., Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 965 (11th Cir. 2006).

### A. Counterclaimants Have Not Alleged Harm Caused by Abacus Purchasing Lapetus LEs.

In Count II, Counterclaimants make clear that their only alleged harms are the consequences of Abacus's lawsuit, the filing of which Counterclaimants do not allege is itself a violation of the FVSA. *See* Counterclaims ¶¶ 123–24. And Counterclaimants have otherwise failed to connect the alleged harm—reputational damage—to the conduct challenged (the litigation itself).

The only particularized harm Counterclaimants identify—that "at least one bank . . . paus[ed] negotiations with Coventry"—is explicitly tied to "***Abacus's lawsuit and related public disclosures***." *Id.* ¶ 124 (emphasis added). In other words, Coventry alleges harm flowing from the instant lawsuit, which is not a violation of the FVSA because filing a defamation suit cannot reasonably be read to constitute a "fraudulent viatical settlement act."[6] These allegations are insufficient to establish Article III standing as a matter

[6] And, in any event, as explained above, such conduct is covered by the litigation privilege. *See supra* Section II.A,

of law. *See, e.g.*, *Gulf States*, 466 F.3d at 965 ("[A] plaintiff must demonstrate a causal connection between the injury and the conduct complained of to have standing in a federal court.") (citation omitted).

**B. Counterclaimants Were Not Harmed by Jackson's Lapetus Board Membership.**

Equally unavailing is Counterclaimants' argument they "suffered actual damages in the form of lost profits" by Jackson sitting on the Lapetus board where he allegedly siphoned trade secrets. Counterclaims ¶¶ 33, 41–43, 137.

Counterclaimants do not allege a causal link between any alleged misappropriation and their damages. The passing reference to lost profits in the "Claims" and "Prayer for Relief" section of the Counterclaims is insufficient to establish any causal link between any purported violation of the FVSA as a result of Jackson's board membership and damages. "When a party seeks lost future profits, the party must prove that the lost profits were a direct result of the defendant's actions and that the amount of the lost profits can be established with reasonable certainty." *Mortg. Now, Inc. v. Guaranteed Home Mortg. Co.*, 545 F. App'x. 809, 812 (11th Cir. 2013); *see also Forest's Mens Shop v. Schmidt*, 536 So. 2d 334, 336 (Fla. 4th DCA 1988) ("[L]ost profits cannot be based on mere speculation or conjecture.").

Even taken as true, the Counterclaims fail to draw any connection between Jackson's alleged misappropriation and Coventry's supposed lost

profits. The Counterclaims cannot proceed on the bare speculation that Jackson *might* have violated the FVSA and that this violation *might* have caused Coventry to lose profits; Article III requires more.

## IV. Count III is an Impermissible Attempt to Plead a Violation of FUTSA.

Count III must also be dismissed for the independent reason that it is preempted by the Florida Uniform Trade Secrets Act ("FUTSA"). Fla. Stat. §§ 688.001–09. FUTSA "displace[s] conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." *Id.* § 688.008(1); *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005) ("FUTSA preempts all claims, other than claims *ex contractu,* based on misappropriation of trade secrets."). Claims are preempted when they involve "the same underlying factual allegations as a claim for trade secret misappropriation." *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 908 (M.D. Fla. 2007). This includes claims based on other state statutory provisions or where the allegedly misappropriated information does not constitute a trade secret. *See Am. Registry, LLC v. Hanaw*, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014) (claim under FDUTPA dismissed as preempted by FUTSA because it was "based solely on the misappropriation of plaintiff's [trade secrets]"); *ISO Claims Servs., Inc. v. Bradford Techs., Inc.*, 2011 WL 13176422, at *4 (M.D. Fla. Sept. 29, 2011) (noting that FUTSA "has

been uniformly interpreted to preempt previously existing misappropriation of trade secret actions, whether statutory or common law." (citation omitted)).[7] If allegations of trade secret misappropriation are not "separate and distinct," FUTSA preempts them. *ThinkLite LLC v. TLG Sols., LLC*, 2017 WL 5972888, at *4 (S.D. Fla. Jan. 31, 2017).

*Allegiance Healthcare Corp. v. Coleman* is instructive. 232 F. Supp. 2d 1329 (S.D. Fla. 2002). There, a medical supply company sued a departed salesperson and her new employer for trade secret misappropriation and common law unfair competition. *Id.* at 1331–32. The court dismissed the unfair competition count as preempted by FUTSA. *Id.* at 1335–36. Comparing the two counts, the court found that both were "based on . . . misuse of certain information" the salesperson had obtained, and that the plaintiff "ha[d] not identified any material distinction between the wrongdoing alleged in the trade secret claim and that alleged in the unfair competition claim." *Id.* at 1336. Because "allegations of trade secret misappropriation alone comprise[d] the underlying wrong," the claim was foreclosed by Section 688.008. *Id.* at 1335–36.

---

[7] Put another way, FUTSA provides the "sole noncontractual civil remedy for misappropriation of a trade secret." *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 235 P.3d 310, 319 (Haw. 2010) (discussing Hawaii's version of FUTSA) (cited with approval in *Hanaw*, 2014 WL 12606501, at *5–6).

This logic applies with equal force here. While denominated as a claim under the FVSA, it is undeniable that Count III is a civil claim based on misappropriation of trade secrets. *See, e.g.*, Counterclaims ¶ 42 (alleging that Jackson "misappropriated and shared . . . confidential" information about Coventry). The General Allegations incorporated into Count III make clear that alleged misappropriation of trade secrets is Coventry's concern, due to Jackson's spot on the Lapetus board. *See id.* ¶ 135. There is no material difference between Count III and an ordinary trade secrets claim under FUTSA. Accordingly, Count III must be dismissed.

## V. The Counterclaims Do Not Allege Defamation *Per Se*.

Count IV must be dismissed because the challenged statements are not defamatory, constitute legitimate opinions about the litigation, and are otherwise privileged. The standard for a claim of defamation *per se* is higher than for ordinary defamation: it requires the statement at issue, "***considered alone and without innuendo***," to be of such a character that it is inherently defamatory (emphasis added). *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015). As Counterclaimants know, *per se* statements require no context or explanation—they must be "so obviously defamatory" and "damaging to reputation" that their injurious nature is apparent from the words themselves. *Id.* (citation omitted).

None of the statements Counterclaimants identify meet this high standard. Against the backdrop of an extraordinarily complex valuation dispute—anticipated to require extensive expert assistance—none of Statements (a) through (g), which express opinions regarding the fraudulent and misleading nature of Counterclaimants' own conduct, can be understood as defamatory standing alone. *See* Counterclaims ¶ 142. The alleged falsity of these statements necessarily requires further proof and investigation beyond their face. Indeed, Counterclaimants themselves claim that their alleged falsity has only been exposed after the parties "engaged in nearly a year of discovery."[8] *Id.* ¶ 2.

Further, each statement Counterclaimants take issue with is merely a statement of opinion about the course and likely outcome of the litigation. As Counterclaimants themselves have previously argued in this case, only verifiably false factual statements can give rise to a defamation *per se* claim, whereas "statements of pure opinion are protected from defamation actions by

[8] Abacus's Proposed Second Amended Complaint also alleges, among other things, that Coventry made additional defamatory statements by weaponizing confidential discovery material. However, both in that Proposed Second Amended Complaint and in prior iterations of its pleadings, Abacus has asserted a host of other defamatory statements by Defendants, many of which do not require discovery material ***to appreciate their truth or falsity***. *See* Dkt. 126-1 ¶¶ 161–68; *see also* Dkt. 100. In any event, Abacus's claims of defamation and defamation by implication (Counts I and II) do not require that the statements be "considered alone and without innuendo," meaning context surrounding Coventry and Buerger's defamatory statements is fair game in assessing whether they are liable on those Counts. *See* Dkt 126-1 ¶¶ 169–99; *Wells Fargo*, 604 F. App'x at 865. By contrast, the only defamation claim Counterclaimants have pled is defamation *per se*.

the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018). For example, Statement (c)—"[T]he underlying facts ***are going to prove*** a gross defamation scheme of monumental proportions enacted by Coventry" (Counterclaims ¶ 142(c) (emphasis added))—amounts to the speaker's "prediction of future events," which is "essentially an expression of opinion" and is thereby not actionable. *Utterback v. Morris*, 2024 WL 3809368, at *9 (N.D. Fla. July 24, 2024). And Statement (e)—"Coventry is ***backed into a corner***, so it is doing anything it can to try to get off the hook for its defamatory and anti-competitive practices" (Counterclaims ¶ 142(e) (emphasis added))—amounts to editorializing Counterclaimants' actions in response to this lawsuit, which is a public proceeding in which most important facts to date are "known or available to the reader or listener as a member of the public." *See, e.g.*, *Loomer v. Maher*, 2025 WL 756549, at *3 (M.D. Fla. Jan. 16, 2025) (citation omitted) (collecting cases); *see also Rasmussen v. Collier Cnty. Pub. Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006) (upholding summary judgment denying defamation claim in part because commentary or opinion based on known or available facts is "not the stuff of libel").

Finally, Defendants' claims of defamation *per se* will ultimately fail because the statements on which they rely are protected by the qualified litigation privilege. Florida recognizes a qualified litigation privilege for "ex-parte, out-of-court statements" that are related to the underlying lawsuit and

are made without express malice. *Grippa v. Rubin*, 133 F.4th 1186, 1194 (11th Cir. 2025) (citation omitted). Statements (a) through (g) were made in connection with Abacus' own defamation suit against Coventry; several are near-identical paraphrases of Abacus's First Amended Complaint. *Compare, e.g.,* Counterclaims ¶¶ 142 (f) and (g) *with* Dkt. 38 ¶¶ 4 and 17, respectively; *see also* Dkt. 126-1 ¶¶ 4, 18. Abacus and Mr. Jackson's statements about the very litigation they brought against Defendants, made while that litigation is still pending, are subject to qualified privilege and they have a complete defense to this Counterclaim on that basis. *See Ray v. Hill*, 2018 WL 3732140, at *4 (S.D. Fla. July 17, 2018) (qualified litigation privilege applied to comments pertaining to pending litigation).

## VI. The Counterclaims do not Allege Violations of the FDUTPA.

Count V must be dismissed because Counterclaimants have failed to plead the essential elements of a FDUTPA claim: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Moreover, this claim is barred by Florida's single action doctrine because it improperly attempts to recast the failed defamation *per se* claim. *See* Counterclaims ¶ 152.

*First*, Counterclaimants fail to allege any viable deceptive or unfair trade practice. Counterclaimants' FDUTPA claim is premised on their defamation *per se* allegations. *See id.* ¶ 152 (explicitly incorporating the alleged

defamatory statements into the FDUTPA claim); *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1321 & n.5 (S.D. Fla. 2020) (describing this practice as "improper pleading"). Just as Counterclaimants' defamation *per se* claim fails (*supra* Section V), so too does their FDUTPA claim. *See, e.g.*, *XTec, Inc. v. Hembree Consulting Servs., Inc.*, 2014 WL 12729173, at *4–6 (S.D. Fla. Aug. 1, 2014) (jointly dismissing defamation and FDUTPA claims).

*Second*, because Counterclaimants have failed to meet their burden on defamation *per se*, Florida's single action doctrine bars the coextensive FDUTPA claim. Dkt. 100 ("It is clear that a plaintiff may not recast a *failed* defamation claim as another tort.") (citing *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992)); *see Rubinson v. Rubinson*, 474 F. Supp. 3d 1270, 1278–79 (S.D. Fla. 2020) (applying single publication rule to defamation per se).

*Third*, a FDUTPA claim "must allege an unfair or deceptive practice *directed at consumers*." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 861 (11th Cir. 2023) (emphasis added). The only plausible consumers identified in the Counterclaims are nebulous "investors." *See* Counterclaims ¶ 154. But Counterclaimants do not identify who those investors are or how they were allegedly harmed by Abacus and Jackson.

*Finally*, the FDUTPA claim fails because it fails to allege actual damages. A FDUTPA claim must allege damages that can be "measured according to the difference in the market value of the product or service in the

condition in which it was delivered and its market value in the condition in which it should have been delivered." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (citation and internal quotation marks omitted). But the conclusory allegations in the Counterclaims fail to "establish a basis for discovery of [Defendants] actual costs" and thus "fail[] to ground a FDUTPA claim." *Barrish v. Interiors by Steven G., Inc.*, 2026 WL 1476408, at *3 (Fla. 3d DCA May 27, 2026) (FDUTPA claim fails where it "provides no way to discern actual damages under [claimants'] theory of the case"); *see Marrache*, 17 F.4th at 1098.

## VII. The Counterclaims Seek Unavailable Remedies.

To the extent not dismissed, the Court should independently strike subsections (b) and (d) through (f) of Counterclaimants' Prayer for Relief[9] pursuant to Rule 12(f).

### A. The Counterclaims Fail to Allege Lost Profits or Reputational Harm.

A party seeking damages for lost profits or reputational harm must plead them with reasonable certainty. For lost profit damages, the claimant must allege "that 1) the defendant's action caused the damage and 2) there is some standard by which the amount of damages may be adequately determined."

[9] These subsections seek: (b) reputational harms and lost profits; (d) punitive damages; (e) sanctions; and (f) a retraction. Counterclaims at 61–62.

*Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1214 (11th Cir. 2006) (citing Florida caselaw). "Although a precise accounting of damages need not be pled, [Counterclaimants'] threadbare allegations of harm do not plausibly establish that [they were] damaged by [Abacus's] conduct." *N. Am. Clearing, Inc. v. Brokerage Comp. Sys., Inc.*, 2009 WL 2982834, at *8 (M.D. Fla. Sept. 11, 2009); *see also Int'l Bus. Machs. Corp. v. Dale*, 2011 WL 4012399, at *2 (S.D.N.Y. Sept. 9, 2011) ("[A]n allegation that defendant 'suffered damages' without particular facts as to how she was damaged does not satisfy *Twombly* and *Iqbal*."). And a party that has "alleg[ed] reputational harm must show *how* the defendant's actions harm her reputation." *Students for Just. in Pal. v. DeSantis*, 2024 WL 371875, at *6 (N.D. Fla. Jan. 31, 2024).

Counterclaimants' allegations of reputational harm suffer from incurable pleading deficiencies. Counterclaimants have merely alleged in wholly conclusory fashion that "Abacus's press releases and Jackson's other statements to the press [have] caused actual damages to Counterclaimants, including reputational harm to Coventry and its business." Counterclaims ¶ 126. They further allege that "at least one bank . . . pause[d] negotiations with Coventry on a loan facility, with the bank specifically citing Abacus's lawsuit and related public disclosures." *Id.* ¶ 124. This is insufficient to demonstrate standing. The only particularized injury Counterclaimants cite—one bank "paus[ing] negotiations with Coventry on a loan facility"—is traceable to

"***[t]his lawsuit***," and not Jackson's position on the Lapetus board. *Compare id.* ¶¶ 120–123 *with id.* ¶ 124. Under this theory, whether Jackson's position on the Lapetus board violated the FVSA is irrelevant because Counterclaimants trace their harm to the filing of this lawsuit, not anything Jackson did or did not do. Such an attenuated theory of causation cannot give rise to Article III standing or damages under the FVSA.

Counterclaimants have also failed to adequately plead lost profit damages. Counterclaimants simply allege in conclusory fashion that they "have suffered actual damages in the form of lost profits." *Id.* ¶ 137. Outside of this bare allegation, the Counterclaims do not "plausibly establish that" Coventry and Buerger were harmed by Abacus and Jackson, much less how such lost profits are capable of being "adequately determined." *Nebula Glass*, 454 F.3d at 1214.

**B. Punitive Damages Are Not Available.**

Counterclaimants are not entitled to punitive damages because (1) they are not expressly contemplated by the FVSA and (2) Counterclaimants do not allege the requisite level of culpability.

First, Counterclaimants may not recover punitive damages for the simple reason that the FVSA does not authorize them. Fla. Stat. § 626.9927(3). The FVSA allows a party to seek "damages, together with court costs and reasonable attorney's fees incurred by the plaintiff." *Id.* Under analogous

circumstances, Florida courts hold that punitive damages are not available unless specifically contemplated by statute. *Cf. Branch v. Airtran Airways, Inc.*, 314 F. Supp. 2d 1194, 1196 (M.D. Fla. 2004) (holding that the statutory language "[a]ny compensatory damages allowable at law" indicates that punitive damages are not available under the Florida Whistleblower Act); *see also Fid. Interior Const., Inc. v. Se. Carpenters Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.*, 675 F.3d 1250, 1264 (11th Cir. 2012) ("The ordinary meaning of the term 'damages' includes actual, compensatory damages.") (citation modified). The FVSA does not clearly authorize punitive damages, nor does it include any provisions providing for damage multipliers, such as trebled damages, that would evince a statutory intent to allow for punitive damages. For these reasons, the punitive damages Counterclaimants seek are not available under the FVSA.

Second, Counterclaimants cannot seek punitive damages because they have not alleged—nor can they allege—that Abacus acted with the requisite level of culpability. An award of punitive damages is appropriate only where a party alleges "the act complained of is characterized by willfulness, wantonness, maliciousness, gross negligence or recklessness, oppression, outrageous conduct, deliberate violence, moral turpitude, insult, or fraud." *Cook v. Deltona Corp.*, 753 F.2d 1552, 1563 (11th Cir. 1985) (citation modified). The Counterclaims do not contain any allegations of malice, gross negligence,

recklessness, or any other activity that would merit an award of punitive damages. Rather, the alleged *per se* defamatory statements, as explained *supra* in Section V, merely reflect matters of opinion and/or statements protected by the litigation privilege. Accordingly, the Court should order that punitive damages are not available to Counterclaimants and strike this relief.

**C. Counterclaimants Cannot Seek Sanctions.**

Sanctions for a frivolous lawsuit are available only via a properly filed and supported Rule 11 Motion. *See Bob's Space Racers, Inc. v. Hampton Co., Inc.*, 1996 WL 684440, at *3 (M.D. Fla. Nov. 25, 1996) ("Under Fed. R. Civ. P. 11(c)(1)(A), a party's request for sanctions must be made by motion separate of other motions and shall describe the specific" violative conduct). Because Counterclaimants have failed to do so, the Court should strike this improper relief.[10]

**D. Counterclaimants Seek Unavailable Injunctive Relief.**

The Court should also strike subsection (f) of the Prayer for Relief seeking "[a]n order requiring Abacus and Jackson to retract their false statements about Counterclaimants." Counterclaims at 62. "Under Florida

10 Even if Counterclaimants had followed the proper procedure, their request for sanctions is meritless. Rule 11 sanctions are appropriate only "where a party demonstrates that an opposing party's claim (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose." *Ortiz v. NAC Dynamics, LLC*, 2012 WL 13141461, at *1 (M.D. Fla. Dec. 6, 2012). Even a procedurally proper Rule 11 request would be squarely foreclosed by the Court's partial denial of Defendants' Motion to Dismiss (Dkt. 100).

law, there is a well-settled rule prohibiting injunctive relief in defamation cases." *Santilli v. Van Erp*, 2018 WL 2172554, at *3 (M.D. Fla. Apr. 20, 2018) (citation and internal quotation marks omitted); *see also Dolen v. Ryals*, 2010 WL 2079657, at * 1 (M.D. Fla. May 24, 2010) (injunctions should not issue in defamation cases absent extraordinary circumstances). Florida courts treat requests like Counterclaimants' as a form of injunctive relief. *See Ward v. Triple Canopy, Inc.*, 2017 WL 3149431, at *4–5 (M.D. Fla. July 25, 2017).

Counterclaimants effectively seek an injunction restraining Abacus and Jackson's speech. But "apologies and retractions are not cognizable forms of equitable relief." *Schwarz v. Vills. Charter Sch., Inc.*, 2019 WL 8495898, at *5 (M.D. Fla. Oct. 29, 2019). Regardless, Counterclaimants have not made the requisite showing, and the Court should strike their requested injunctive relief. *See, e.g.*, *Mangel v. Daza*, 2020 WL 1666032, at *3 (M.D. Fla. Apr. 3, 2020) (describing permanent injunctive relief as an "extraordinary and drastic remedy" and explaining the showing necessary to obtain such relief).

## VIII. ABACUS AND JACKSON ARE ENTITLED TO FEES AND COSTS UNDER FLORIDA'S ANTI-SLAPP STATUTE.

Section 768.295, Florida Statutes, is "a garden variety fee shifting provision" that mandates an award of attorney's fees and costs when a suit is (1) "without merit" and (2) brought "primarily because" the defendant has exercised her right to speech protected under applicable law. *Corsi v. Newsmax*

*Media, Inc.*, 519 F. Supp. 3d 1110, 1127–28 (S.D. Fla. 2021); *see* Fla. Stat. § 768.295(2)(a).

This suit satisfies both requirements. *First*, a suit is "without merit under Florida Statute § 768.295(3)" when, like this one, it "fails to state a claim for defamation." *Bongino*, 477 F. Supp. 3d at 1322. *Second*, the speech Coventry and Buerger sue on is "free speech in connection with a public issue" because the Counterclaims focus exclusively on statements made in Abacus press releases, which "provided commentary on [Counterclaimants'] actions," are "made available to the public" through online publication and "widely disseminat[ed]." *See Sterling v. De La Rosa*, 2026 WL 964850, at *8–9 (M.D. Fla. Mar. 30, 2026) (social media posts are subject to Florida's Anti-SLAPP statute). As demonstrated above, the Counterclaims are retaliatory and lack any semblance of legal basis, particularly as to Jackson, who never should have been "dragged through the courts" because of his protected speech. *Rosenthal v. Council on Am.-Islamic Rels., Fla., Inc.*, 2017 WL 6390102, at *3 (Fla. 17th Jud. Cir. Ct. Nov. 8, 2017).

## CONCLUSION

For all these reasons, the Court should dismiss the Counterclaims, strike the relief sought therein, and award Abacus and Jackson fees and costs.

## LOCAL RULE 3.01(G) CERTIFICATE

Pursuant to Local Rule 3.01(g), I hereby certify that Counterclaim Defendants' counsel conferred with Counterclaimants' counsel by telephone in advance of filing these Motions on September 10, 2026. Counterclaimants oppose the relief requested therein.

DATED: September 10, 2026


**GORDON, FOURNARIS & MAMMARELLA, P.A.**
Neil R. Lapinski (DE Bar No. 3645) (*pro hac vice*)
Phillip A. Giordano (DE Bar No. 5756) (*pro hac vice*)
Madeline R. Silverman (DE Bar No. 6920) (*pro hac vice*)
1925 Lovering Avenue
Wilmington, DE 19801
Telephone: (302) 652-2900
Email: nrlapinski@gfmlaw.com
Email: pgiordano@gfmlaw.com
Email: msilverman@gfmlaw.com

*/s/ Alex Zuckerman*
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Jason D. Sternberg (Fla. Bar No. 72887)
jasonsternberg@quinnemanuel.com
Osvaldo Rodriguez (Fla. Bar No. 1039307)
osvaldorodriguez@quinnemanuel.com
2601 South Bayshore Drive, 15th Floor
Miami, FL 33133
(305) 402-4880

Alex Zuckerman (*pro hac vice*)
alexzuckerman@quinnemanuel.com
Teodora Pasca (*pro hac vice*)
teodorapasca@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

Kathleen S. Messinger (*pro hac vice*)
kathleenmessinger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

Nicole Arata
nicolearata@quinnemanuel.com
111 Huntington Avenue, Suite 520
Boston, MA 02199
(617) 712-7150

*Attorneys for Plaintiff Abacus Global Management, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 10, 2026, a true and correct copy of the foregoing document was electronically served via the CM/ECF system on all parties authorized to accept service by CM/ECF.

*/s/ Alex Zuckerman*
Alex Zuckerman