**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ABACUS GLOBAL MANAGEMENT, INC.,

Plaintiff and Counterclaim Defendant,

JAY JACKSON,

Counterclaim Defendant,

v.

COVENTRY FIRST LLC; ALAN BUERGER,

Defendants and Counterclaimants.

Case No. 6:25-cv-01401-RBD-RMN

**COUNTERCLAIMANTS' MEMORANDUM IN OPPOSITION TO COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE COUNTERCLAIMANTS' AMENDED COUNTERCLAIMS**

MICHAEL H. MCGINLEY (*pro hac vice*)
BRIAN A. KULP (*pro hac vice*)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

ALFRED J. BENNINGTON, JR.
GLENNYS ORTEGA RUBIN
BENJAMIN F. ELLIOTT
SHUTTS & BOWEN LLP
300 South Orange Ave.
Suite 1600
Orlando, FL 32801

ANDREW J. LEVANDER (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

ERIC AUSLANDER (*pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006

*Counsel for Coventry First LLC and Alan Buerger*

October 1, 2026

Counterclaimants Coventry First LLC ("Coventry") and Alan Buerger (together "Counterclaimants") hereby oppose Abacus Global Management, Inc. ("Abacus") and Jay Jackson's Motion to Dismiss and Motion to Strike the Amended Counterclaims ("AC"). Every one of the Motion's scattershot arguments is meritless.

## INTRODUCTION

This case implicates an unlawful scheme perpetrated by Abacus and Jackson. The life settlement industry has suffered from this sort of wrongdoing before. Indeed, multiple companies have collapsed from underestimating life expectancies ("LEs") to artificially inflate their valuation and create the illusion of financial growth. Florida responded to these scandals with stiff regulation through the Florida Viatical Settlement Act ("FVSA"). Yet, when Abacus went public, it defied those regulations. It invested in an LE provider, Lapetus Solutions ("Lapetus"), installed Abacus's CEO on Lapetus's board to [redacted]," and used Lapetus's knowingly short LEs whenever possible to inflate Abacus's books and mislead investors. Abacus and Jackson then inaccurately told the public and the SEC that Abacus did ***not*** rely on Lapetus LEs to value its portfolio.

Counterclaimants responded by expressing their concerns about the chronic problems with Lapetus and how Abacus's use of Lapetus LEs might harm investors. Unable to dispute that, Abacus and Jackson retaliated by weaponizing their pleadings in this case to double down on their false narrative that "Lapetus LEs are not used *at all* in the fair value analysis." They repeated those lies to investors in press releases. And they publicly smeared Counterclaimants to punish them for speaking the truth.

That only exposed Abacus and Jackson to further liability, and now, they provide no reason to dismiss any of the Counterclaims. They ignore that Florida's Anti-SLAPP Act expressly authorizes victims to assert a "claim" for fees. And Counterclaimants' evidence-backed allegations—not to mention Abacus's recent efforts to abandon its core allegations—show that Abacus's lawsuit is "without merit."

Abacus and Jackson likewise try to escape the FVSA's plain text, but the law unambiguously prohibits their "scheme" "relating to viaticated policies," which Counterclaimants have detailed with particularity. Abacus's misuse of this suit is undeniably part of that "scheme," which has inflicted harm on Counterclaimants. And the FVSA permits "[a]ny person damaged" by such a scheme—not just viators—to "bring a civil action against the person committing the violation." It also plainly prohibits Abacus from holding a Lapetus board seat through Jackson—a position that Jackson abused to harm Coventry and further Abacus's unlawful scheme.

As to the defamation *per se* claims, the statements at issue are actionable because they all—on their face—falsely accuse Counterclaimants of unlawful misconduct. The litigation privilege does not protect this malicious and extraneous false commentary.

Abacus and Jackson's effort to dismiss the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") claim fails for similar reasons. Their string of unfair and deceptive press releases harmed consumers, including Abacus's own investors. And Counterclaimants suffered actual damages from that defamatory campaign.

Finally, Abacus and Jackson fail to show that this Court should grant the drastic and disfavored remedy of striking certain forms of requested relief. In fact, the law is

clear that Counterclaimants may seek—and recover—everything in their prayer.

The Court should deny Abacus and Jackson's Motion in full.

## MEMORANDUM OF LAW AND ARGUMENT

### I. Counterclaimants State a Plausible Claim Under the Florida Anti-SLAPP Act (Count I).

Abacus's Anti-SLAPP arguments fail at every turn. The Act specifically authorizes victims of SLAPP suits to assert a "claim" for fees. Abacus provides no considered authority to the contrary. And its contention that its SLAPP suit has "merit" fails to accept Counterclaimants' evidence-backed allegations as true.

#### A. The Anti-SLAPP Act Specifically Authorizes a "Claim" for Fees.

Abacus is wrong that the Anti-SLAPP Act does not provide a cause of action. Florida courts "generally look to the legislative intent of a statute to determine whether a private cause of action" exists. *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994). And, in this case, the Court need not look beyond the "actual language used in the statute" to discern that intent. *Borden v. East-Euro. Ins. Co.*, 921 So. 2d. 587, 595 (Fla. 2006). Florida's Anti-SLAPP Act expressly authorizes parties to assert "a ***claim*** that an action was filed in violation of [the Act]." Fla. Stat. § 768.295(4) (emphasis added). And "the word 'claim' describes a 'cause of action.'" *Olympia Mortg. Corp. v. Pugh*, 774 So. 2d 863, 866 (Fla. Dist. Ct. App. 2000) (citation omitted); *see also* Claim, *Black's Law Dictionary* 301 (10th ed. 2014) (defining "claim" as a "cause of action"). The statute's plain text therefore provides a cause of action for violations of the law.

Abacus and Jackson conspicuously ignore this statutory text. And they fail to

give any "reason to depart from the 'normal rule of statutory construction' that words repeated in different parts of the same statute generally have the same meaning." *Law v. Siegel*, 571 U.S. 415, 422 (2014) (citation omitted). The immediately preceding paragraph of the Anti-SLAPP Act uses the word "claim" in the exact same way—as referring to a cause of action. *See* Fla. Stat. § 768.295(3). The text and statutory context thus compel the same conclusion.

Abacus and Jackson's rejoinders fall flat. They proclaim to have "well-settled caselaw" on their side. Mot. at 8. But they rely on a single line of unconsidered dicta from an unpublished decision. *See id.* at 7 (citing *Ligeri v. Ariz. Daily Indep., LLC*, 2026 WL 1073057, at *2 (M.D. Fla. Mar. 10, 2026)). That does not help them. Nor does their observation that the Act provides procedural mechanisms for quickly disposing of SLAPP actions. *See id.* at 7–8. Those optional "procedural mechanisms" for expeditious treatment are distinct from the victim's "substantive right" to fees. *Bongino v. Daily Beast Co.*, 477 F. Supp. 3d 1310, 1323 (S.D. Fla. 2020) (citation omitted). Under the law's plain text, targets of SLAPP suits can vindicate that substantive right by asserting a "claim," just as Counterclaimants have done here. Fla. Stat. § 768.295(4); *see also Tate v. Doe*, 2024 WL 195853, at *7 (S.D. Fla. Jan. 18, 2024) (noting that defendant raised the Anti-SLAPP Act as "a counterclaim").

**B. Abacus's Entire Lawsuit Is Without Merit.**

Abacus separately argues that its lawsuit is not "without merit" because the Court "recognized that Abacus had stated [some] plausible claims." Mot. at 8. But a motion to dismiss "merely tests the sufficiency of the complaint"; it "does not decide

the merits." *Persaud Props. FL Invs., LLC v. Town of Fort Myers Beach*, 658 F. Supp. 3d 1072, 1079 (M.D. Fla. 2023). Abacus conflates those two distinct determinations. Indeed, in the very case that Abacus cites, the court ultimately awarded fees under the Anti-SLAPP Act, even though the plaintiff had earlier pled a *prima facie* defamation claim. *See Sterling v. De La Rosa*, 2026 WL 964850, at *10 (M.D. Fla. Mar. 30, 2026).

Counterclaimants have plausibly alleged that Abacus's suit is destined for the same fate. In fact, they have already shown, with evidence, that Abacus's internal documents "corroborate the very statements Abacus told this Court were defamatory." AC ¶¶ 12, 31–38, 52, 68–73, 91–97. Discovery has thus "now revealed what the Court could not have known at the pleading stage: Abacus's own contemporaneous documents directly contradict [its] allegations." AC ¶ 97. That is no doubt why Abacus seeks to abandon those allegations in the proposed SAC—after forcing Counterclaimants to expend significant time and resources defending against those knowingly false allegations. Abacus has brought a quintessential SLAPP suit, and it is plainly "without merit." Fla. Stat. § 768.295(3).

## II. Counterclaimants State Plausible Claims Under the Florida Viatical Settlements Act (Counts II and III).

Abacus and Jackson also miss the mark in trying to dismiss the FVSA claims. They perpetrated an unlawful scheme related to viaticated policies. And they engaged in a prohibited relationship with an LE provider when Abacus appointed Jackson to fill its seat on Lapetus's board. Counterclaimants have plausibly alleged that these FVSA violations caused them damages. Nothing more was necessary to state a claim.

### A. Abacus and Jackson Engaged in a Fraudulent Scheme Related to Viaticated Policies.

#### 1. The FVSA's Plain Text Forbids Abacus and Jackson's Conduct.

Begin where Abacus and Jackson do not: with the statute's text. The FVSA makes it "unlawful" to "[e]ngage in a fraudulent viatical settlement act." Fla. Stat. § 626.99275(1)(f). "Fraudulent viatical settlement act" is a broadly defined statutory term. *Id.* § 626.9911(2). And it includes, as relevant here, knowingly or intentionally "[e]mploying a ***plan, financial structure, device, scheme, or artifice relating to viaticated policies*** for the purpose of perpetrating fraud." *Id.* § 626.9911(2)(b) (emphasis added).

That is exactly what Counterclaimants have alleged here. Abacus and Jackson employed a "scheme," "device," "plan," or "artifice" "relating to viaticated policies for the purpose of perpetrating fraud." *Id.* The plan was simple. Abacus and Jackson "knew that Lapetus LEs were consistently shorter than the other LE providers." AC ¶¶ 5, 32, 38–40, 52. Yet, they "chose to use them to value the company's portfolio" of viaticated policies "anyway precisely ***because*** Lapetus was materially shorter." AC ¶¶ 6, 35–37, 40, 60. This "allowed Abacus to report higher earnings and maintain the illusion of strong financial performance"—which artificially inflated the company's assets by almost "[redacted]" AC ¶¶ 7, 68, 94(d). All the while, Abacus and Jackson sought to cover up that scheme by lying to the SEC, the public, and this Court about the company's use of Lapetus, AC ¶¶ 46, 58–60, 63, 98, as well as the effect that this use had on the company's balance sheet, AC ¶¶ 60, 65–73, 98, 101. That is fraud. And it was no doubt committed "for

pecuniary gain." Fla. Stat. § 626.9911(2). In his own words, Jackson was "[redacted]" on "[redacted]" so that he and his co-founders could "[redacted]" AC ¶ 80.

That scheme persists to this day. With Jackson still at the helm, Abacus has manipulated its discount rate to further "conceal[] its true financial condition and meet[] its earning targets." AC ¶¶ 74–77. This enabled Abacus "[redacted]" as issues came to light. AC ¶¶ 8, 94(d). Worse yet, Abacus has "us[ed] client capital"—obtained from investors through still more deceit—to manufacture fake "market benchmarks" and "shed overvalued policies from its balance sheets" "through related-party transactions." AC ¶¶ 9, 79, 81–87.

Abacus and Jackson cannot deny that the instant lawsuit is also part of their "scheme" to defraud the market. Fla. Stat. § 626.9911(2)(b). After all, "[t]he success of that fraudulent scheme require[s] Abacus and Jackson to suppress the truth and deceive the public." AC ¶ 123. So, when the truth emerged, "Abacus filed this frivolous lawsuit as a contrivance designed to reassure its investors" and "perpetuate Abacus's fraudulent scheme." AC ¶¶ 88, 123. Abacus's own documents confirm that it knew Counterclaimants' challenged statements were true "***when it filed this lawsuit***." AC ¶¶ 91, 94–97. "Yet Abacus invoked this Court's process to tell the public precisely the opposite." AC ¶ 98. That is another unlawful act in furtherance of the scheme.

In short, the FVSA's plain text forbids Abacus and Jackson's overarching "scheme." Fla. Stat. § 626.9911(2)(b). And it authorizes Counterclaimants to sue for that "fraudulent viatical settlement act" as "person[s] damaged" by Abacus and

Jackson's "violation" of the law. *Id.* §§ 626.9911(2)(b), 626.9927(1), (3).

Abacus and Jackson have no real response. They insist that "Counterclaimants have lost sight of the statute's purpose." Mot. at 10. But Abacus and Jackson have lost sight of the statute's plain language. "It is well settled that a statute's purpose 'is to be gathered only from the text itself.'" *Schultheis v. Schultheis*, 430 So. 3d 987, 994 (Fla. Dist. Ct. App. 2026) (citation omitted). Accordingly, "[c]ourts cannot use context or purpose 'to contradict text or supplement it.'" *Atl. Candy Co. v. Yowie N. Am., Inc.*, 400 So. 3d 850, 854 (Fla Dist. Ct. App. 2025) (citation omitted). And Abacus and Jackson's misconduct falls squarely within the text's prohibition.

Besides, the cases that Abacus and Jackson cite have nothing to do with the FVSA provisions at issue. They instead analyze the FVSA's choice-of-law provision for transactions with viators from other States that have enacted similar statutes. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1058 (11th Cir. 2007).

More fundamentally, these cases predate the provisions that Counterclaimants invoke. The Florida legislature first added the "fraudulent viatical settlement act" provisions in 2017, *see* Fla. Sess. Laws 2017, c. 2017-178, §§ 5, 8, several years ***after*** the cases that Abacus and Jackson rely on for their view that the law only "protects viators." Mot. at 11. It is also no surprise that the 2017 legislature chose to more broadly punish fraudulent "scheme[s]" "relating to viaticated policies." Fla. Stat. § 626.9911(2)(b). The Life Partners and Mutual Benefits scandals had just "wreak[ed] havoc on the life settlement industry." AC ¶¶ 4, 10, 25–27. The legislature responded accordingly. And the Act's longstanding civil remedy provision allows "***[a]ny person***

damaged" by such schemes—not just viators—to "bring a civil action against the person committing the violation." Fla. Stat. § 626.9927(3) (emphasis added); *see also United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("[T]he word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (citation omitted)).

**2. Counterclaimants Have Satisfied Rule 9(b).**

Abacus and Jackson's arguments under Rule 9(b) are equally meritless. Counterclaimants do not "rely on sweeping, vague allegations that Abacus's purchase of Lapetus LEs somehow constitutes fraud." Mot. at 11. Instead, they have alleged—in painstaking detail and with dozens of exhibits—how Abacus has engaged in a multi-year financial scheme to defraud the market and regulators. *See supra* Section II.A.1. In particular, the allegation is not that purchasing Lapetus LEs was itself fraud. It is that Abacus knew the LEs were chronically short and nevertheless used them to value the policies on its books, thereby fraudulently inflating its reported financial results by [redacted] AC ¶¶ 6–7, 32, 34–36, 38–40, 52, 60, 68. And the fraud goes far beyond that. As the industry recognized the problems with Lapetus, *see* AC ¶¶ 45, 49, 52, Abacus repeatedly lied to regulators and the public about its rampant use of the LE provider, AC ¶¶ 1, 46, 58–59, 62–63, 65, 69–73, 98. It also deceived credit unions and other investors to secure capital that has enabled Abacus to continue its scheme. AC ¶¶ 79–87. And it lied time and again to this Court. AC ¶¶ 91–97.

Abacus ignores the bulk of these misrepresentations. And Counterclaimants have detailed every one of them with "accompanying exhibits" and particularized allegations that specify the "who, what, where, when, and how" of Abacus and

Jackson's fraudulent scheme. *Gose v. Native Am. Servs. Corp.*, 109 F.4th 1297, 1318–1319 (11th Cir. 2024) (citation omitted); *cf. Burgess v. Religious Tech. Ctr., Inc.*, 600 F. App'x 657, 662–63 (11th Cir. 2015) ("The particularity requirement may be relaxed for allegations of 'prolonged multi-act schemes[.]'" (citation omitted)).[1] There is accordingly "more than enough information" to make Abacus and Jackson "aware of the particular circumstances for which [they] will have to prepare a defense at trial." *Gose*, 109 F.4th at 1317. Abacus identifies nothing else that it might need to know.

Counterclaimants have also alleged how they were "victimized" by Abacus and Jackson's fraudulent scheme, Mot. at 11, as explained below, *see infra* Section II.A.3. And, to be clear, Rule 9(b)'s "particularity requirement extends to the 'circumstances constituting fraud or mistake,' but does not require a [counterclaimant] to plead damages with that same level of specificity, as [Abacus and Jackson] suggest[]." *Smith v. Getmehealthcare, LLC*, 2026 WL 2089044, at *3 (M.D. Fla. July 21, 2026) (citation omitted). Counterclaimants' "damages allegations suffice, as both reputational harm and the burden of defending a suit are valid bases to allege damages." *Id.*

[1] Consider just a few "particular examples" of the scheme in action. *Burgess*, 600 F. App'x at 663. Abacus issued a press release on July 1, 2025, telling the public that it does "not" use Lapetus LEs "to derive its balance sheet valuations." AC ¶ 98 (quoting press release); *see* AC ¶ 65 (similar, on June 10, 2025). It likewise told the SEC on November 4, 2024, that the company "does not rely solely or even materially" on Lapetus LEs. AC ¶¶ 58–59. But Abacus's own documents show that it "continuously employed [a] Lapetus-dependent valuation methodology for years," including at the times it made those statements. AC ¶¶ 35, 40, 60 (citing exhibits containing Abacus's methodology that "[redacted]" policy values for Abacus's books "[redacted]"). That allowed the company to inflate its portfolio value by [redacted]. AC ¶ 94(d). In another instance of fraud, Abacus told the SEC in a public filing on April 14, 2025, that Lapetus "provide[d] the most conservative life expectancy predictions." AC ¶ 46 (quoting filing). Abacus, however, knew that Lapetus LEs were "significantly lower on average" compared to other LE providers. AC ¶¶ 38–39, 52(a)–(d), 94(e) (quoting internal email and gathering other exhibits confirming such knowledge). It misrepresented the truth to cover up its financial scheme and deceive investors and regulators.

### 3. Counterclaimants Have Alleged Harm Caused by Abacus and Jackson's Fraudulent Scheme.

Unable to deny their violations of the FVSA, Abacus and Jackson try to drum up a problem of "Article III standing" because Counterclaimants supposedly do not "connect the alleged harm" to the "conduct challenged." Mot. at 15. That is wrong.

Article III causation "is 'not an exacting standard.'" *Mobile Baykeeper, Inc. v. Ala. Power Co.*, 175 F.4th 1316, 1323 (11th Cir. 2026) (citation omitted). It "demands less than a showing of proximate cause" and is "satisfied" even "when a defendant indirectly causes a plaintiff's injury." *Id.* (citations omitted). That standard is even less rigorous at the pleading stage. Plaintiffs need only "allege that their injuries are 'connected with the conduct of which they complain.'" *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019) (alterations adopted; citation omitted). The Court must accept these allegations as true, and "'general factual allegations of injury' are enough." *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1337 (11th Cir. 2021) (citation omitted).

Counterclaimants have easily cleared this low hurdle. They expressly alleged business and reputational harms caused by Abacus and Jackson's scheme. AC ¶ 125. And this is not the first time that Counterclaimants have experienced such harm. As life settlement industry participants, they have "suffered this kind of damage before," when the Mutual Benefits and Life Partners blowups "undermined public confidence in the life settlement market." AC ¶¶ 25–26, 54, 125. Abacus and Jackson "inflicted similar harm by engaging in misconduct that once again threatens investor confidence

in the integrity of life settlement valuations." AC ¶ 125. As a result, "Coventry has suffered resulting harm to its business and reputation" as "one of the industry's principal participants." AC ¶¶ 23, 125. Abacus and Jackson simply ignore these allegations, which alone establish standing.

On top of that, Abacus and Jackson ***admit*** that Counterclaimants have alleged "particularized harm," Mot. at 15, in the form of a bank "paus[ing] negotiations with Coventry on a loan facility," AC ¶ 124. They insist that this "harm flowing from the instant lawsuit" does not suffice because Abacus's fraudulent suit does not itself violate the FVSA. Mot. at 15. But that is a merits argument, and "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). In any event, Abacus and Jackson's argument fails even on its own terms. "The instant lawsuit is part of Abacus and Jackson's 'plan' or 'scheme,'" which itself violates the FVSA. AC ¶ 123; *see supra* Section II.A.1.

In addition, this fraudulent action has indisputably caused Counterclaimants to incur significant "litigation costs, attorneys' fees, and reputational harms" in having to defend themselves. AC ¶ 124. That, too, gives Counterclaimants standing. *See, e.g.*, *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, 2022 WL 4091738, at *4 (11th Cir. Sept. 7, 2022) ("Time or money spent in defending against a legal action" is sufficient for standing).

#### 4. The Litigation Privilege Does Not Apply.

Abacus and Jackson's appeal to the "litigation privilege" misfires as well. That

privilege is "not without exception." *Cent. Fla. Psych Consultants, Inc. v. Comas*, 434 So. 3d 795, 800 (Fla. Dist. Ct. App. 2026). "Rather, the applicability of the privilege must be assessed in light of the specific conduct for which the defendant seeks immunity." *Sun Life Assur. Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1219 (11th Cir. 2018). For instance, the privilege "does not act as a bar to a malicious prosecution claim." *Debrincat v. Fisher*, 217 So. 3d 68, 70 (Fla. 2017). It similarly does not immunize "the filing of a lawsuit where that specific act breaches a contract." *Sun Life*, 904 F.3d at 1219. And, most relevant here, it does not protect the "retaliatory filing of a lawsuit." *Toloza v. Ruiz*, 2024 WL 5680678, at *9 (S.D. Fla. Aug. 9, 2024).

The common thread through these exceptions is "the misuse of legal machinery for an improper purpose." *Id.* (citation omitted). And that is what Abacus has done here too. It "filed this meritless lawsuit in retaliation to muzzle Counterclaimants, cover up Abacus's deception, and perpetuate Abacus's fraudulent scheme." AC ¶ 123. Abacus cites "no case applying a litigation privilege to provide immunity from [such] a claim that the act of filing a lawsuit" itself constituted the actionable wrong. *Sun Life*, 904 F.3d at 1219. Nor should this Court be the first.

**B. Abacus and Jackson Had a Prohibited Relationship with Lapetus.**

**1. The FVSA's Plain Text Forbids Abacus and Jackson's Conduct.**

Abacus and Jackson's plea for dismissal of Count III also founders on the statutory text. They admit that Abacus is a "viatical settlement provider." Mot. at 14. And, as a "viatical settlement provider," Abacus could not "directly or indirectly own or be an officer, director, or employee of a life expectancy provider." Fla. Stat.

§ 626.99175(6). Yet, that is what it did. Abacus directly—or at least indirectly—occupied a Lapetus board seat by exercising its "contractual right" to install Jackson as a "full voting member" on Lapetus's board. AC ¶¶ 3, 33, 41. Jackson thus served at Abacus's behest, and he in turn abused that position for Abacus's benefit. AC ¶ 135.

Abacus neglects the fact that it appointed Jackson to fill its own Lapetus board seat. Instead, Abacus again seeks to distract with the law's supposed "purpose," which it says is about "licensing requirements of life expectancy providers." Mot. at 13. "The glitch in this argument is of course the text" that Florida's legislature enacted. *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 306 (2017). That text forbids "viatical settlement provider[s]" from directly or indirectly serving as a "director . . . of a life expectancy provider." Fla. Stat. § 626.99175(6). Abacus violated that unambiguous command.

Jackson, for his part, ignores that he too is a "viatical settlement provider." AC ¶ 129. As Abacus's CEO, Jackson surely "effectuate[d]" or brought about at least one "viatical settlement contract." Fla. Stat. § 626.9911(14) (defining "viatical settlement provider"). Even if he did not, Jackson was "personally involved" in Abacus's violation, *Orlovsky v. Solid Surf, Inc.*, 405 So. 2d 1363, 1364 (Fla. Dist. Ct. App. 1981); *see* AC ¶¶ 31–33, and so he can be held "personally liable" for the resulting damages, *Littman v. Comm. Bank & Tr. Co.*, 425 So. 2d 636, 640 (Fla. Dist. Ct. App. 1983).

**2. Jackson's Unlawful Service on Lapetus's Board Is Not Preempted by FUTSA.**

Reaching further, Abacus and Jackson argue that Count III is preempted by the Florida Uniform Trade Secret Act ("FUTSA"). Mot. at 17–19. In doing so, however,

they attempt to manufacture a FUTSA claim that Counterclaimants never pled. The gravamen of Count III is not the misappropriation of a trade secret. It is the prohibited relationship itself—the structural conflict of interest created when a viatical settlement provider's officer sits on a life expectancy provider's board. AC ¶¶ 128–38.

To the extent Abacus and Jackson's conduct involved distributing confidential information, that is "a subsidiary allegation in support of [the FVSA] claim, not its main factual basis." *Audiology Distrib., LLC v. Simmons*, 2014 WL 7672536, at *10 (M.D. Fla. May 27, 2014). FUTSA preempts a claim only "if the allegations of trade secret misappropriation ***alone*** comprise the underlying wrong." *Jabil, Inc. v. Essentium, Inc.*, 2020 WL 10353824, at *4 (M.D. Fla. May 29, 2020) (citation omitted). And that is not the case here. The FVSA violation is complete once the prohibited relationship is formed—whether or not the information Jackson later exploited qualifies as a "trade secret." It is "unclear at this juncture" whether the information was a "trade secret[]" under FUTSA in the first place. *777 Partners LLC v. Leadenhall Cap. Partners, LLC*, 2025 WL 3736704, at *2 (S.D. Fla. Jan. 17, 2025). But, regardless, "[b]ecause the underlying wrong stretches beyond trade secret misappropriation, FUTSA does not apply." *Hytto Pte. Ltd. v. Olivaresii*, 2026 WL 764088, at *2 (M.D. Fla. Mar. 18, 2026).

### 3. Counterclaimants Have Alleged Harm from Jackson's Lapetus Board Membership.

Taking a different tack, Abacus and Jackson rely on a pair of decisions issued ***after trial*** to argue that Counterclaimants do not sufficiently "allege a causal link" between Jackson's unlawful board seat and Counterclaimants' "lost profits." Mot. at

16. Again, though, "[a]t the pleading stage, 'general factual allegations of injury' are enough." *Tsao*, 986 F.3d at 1337 (citation omitted). And Counterclaimants have "allege[d] that their injuries are caused by the conduct they challenge." *Mobile Baykeeper*, 175 F.4th at 1323. They need not do more.

The alleged causal connection is straightforward. Jackson "wield[ed] his insider position to funnel information to Abacus personnel about [redacted] Lapetus's chronically low life expectancies in the marketplace." AC ¶ 135. That "allowed Abacus to target unwitting counterparties and investors" in furtherance of its scheme, even as sophisticated players caught on to Lapetus's problems. *Id.* And that, in turn, enabled Abacus to leverage its unlawful informational "[redacted]" to "increase its market share and harm its competitors," thereby causing Coventry to suffer "lost profits." AC ¶¶ 42, 135, 137. Those causal allegations—which Abacus and Jackson ignore—must be accepted as true. *See Mobile Baykeeper*, 175 F.4th at 1323.

## III. Counterclaimants State a Plausible Defamation *Per Se* Claim (Count IV).

Abacus and Jackson fare no better on the defamation *per se* claim. Every one of the challenged statements falsely accuses Coventry and Buerger of lies and unlawful conduct. None of the statements is an opinion. Nor is any statement privileged.

### A. The Statements at Issue Are Actionable *Per Se*.

A statement is "actionable *per se*" if it falsely "imputes to another" either "conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, [or] profession." *Campbell v. Jacksonville Kennel Club, Inc.*, 66 So. 2d 495, 497 (Fla. 1953). Thus, "statements regarding fraud and dishonest[y] are *per se*

defamatory." *Happy Tax Franchising, LLC v. Hill*, 2021 WL 3811041, at *5 (S.D. Fla. July 7, 2021); *see also, e.g.*, *Theodoris v. Doctor*, 2026 WL 809562, at *2 (M.D. Fla. Mar. 24, 2026) (denying motion to dismiss where plaintiff called defendant a "scammer"); *Carroll v. TheStreet.com, Inc.*, 2012 WL 13134547, at *4 (S.D. Fla. May 25, 2012) (same, where article suggested plaintiff was a "con artist[]" and "troubling character[]").

That is precisely the case here. Every statement at issue falsely and publicly accuses Counterclaimants of perpetuating "lies," "false statements," "malfeasance," "anti-competitive practices," or unlawful "defamation." AC ¶ 142. These statements, unlike those in Abacus's complaint, "require no context or explanation." Mot. at 19. They are "defamatory on their face." *Boyles v. Mid-Fla. TV Corp.*, 431 So. 2d 627, 635 (Fla. Dist. Ct. App. 1983).

Abacus and Jackson cannot deny this. So, they urge that the "alleged falsity" requires "further proof and investigation." Mot. at 20. That argument, however, conflates ***falsity*** with the ***defamatory nature*** of the statements. It is the latter that matters. A *per se* claim will lie, as here, where the publication "does not require any additional explanation in order to prove the defamatory nature of the statement." *Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259 (S.D. Fla. 2021) (citation omitted).

**B. The Statements at Issue Are Not Pure Opinions.**

Abacus and Jackson next contend that their statements are "pure opinion." Mot. at 20 (citation omitted). Not so. "[A]t the motion-to-dismiss stage, [the] court 'must proceed on the premise that any statements which [it] find[s] have factual connotations are false.'" ECF 100 at 7 (quoting *Fla. Med. Ctr., Inc. v. N.Y. Post Co.*, 568

So. 2d 454, 459 (Fla. Dist. Ct. 1990)). That includes "where [the] speaker neither 'disclose[d] the factual basis to support her opinion' nor explicitly 'sa[id] it was just her opinion.'" *Id.* (quoting *Scott v. Busch*, 907 So. 2d 662, 668 (Fla. Dist. Ct. 2005)).

The statements here "are pled as false and are not couched in opinion, so they are presumed false at this stage." *Id.*; *see* AC ¶¶ 99–105, 142–43. Indeed, Abacus and Jackson tellingly do not even address the falsity of five of the seven statements. That alone requires the Court to deny the motion as to these statements, since the "moving party bears the burden to show that the complaint should be dismissed." *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (citation omitted).

As to the two that Abacus and Jackson bother to engage with, they are not pure opinions. On the contrary, stating that "[t]he ***underlying facts*** are going to prove a gross defamation scheme of monumental proportions enacted by Coventry," AC ¶ 142(c) (emphasis added), is a straightforward assertion of fact. And even if it were an opinion, the "factual basis for [this] statement was not known to the audience." *Scott*, 907 So. 2d at 668. Abacus has not substantiated its claims in this case, let alone in the press release itself—which is unsurprising given that Abacus's own documents confirm that it knew Counterclaimants did not engage in defamation. AC ¶¶ 2, 35, 52, 60, 94–97.

Abacus and Jackson's defense of "Statement (e)" suffers for the same reasons. That statement openly accuses Coventry of "defamatory and anti-competitive practices." AC ¶ 142(e). A "'reasonable reader'" could take the press release at its word to conclude that Coventry "actually engaged" in such misconduct—even though it did not. *Techtronic Indus. Co. v. Bonilla*, 2023 WL 8543762, at *6 (M.D. Fla. Dec. 11,

2023) (citation omitted). And Jackson's supposed "editorializing" only makes things worse. Mot. at 21. It further conveys that Coventry is "backed into a corner" based on discovery in this case. Nothing could be further from the truth. AC ¶¶ 92–97.

### C. The Statements at Issue Are Not Protected by a Qualified Privilege.

Abacus and Jackson also suggest the defamation *per se* claim "will ultimately fail" based on the "qualified litigation privilege." Mot. at 21. To the extent they mean to raise this defense as a ground for dismissal, it fails. The privilege does not protect "extraneous commentary" about litigation in a "press release." *Emerg. Recovery, Inc. v. Gov. Emps. Ins. Co.*, 2024 WL 2332167, at *3 (M.D. Fla. Mar. 13, 2024); *see also Ball v. D'Lites Enters., Inc.*, 65 So. 3d 637, 640 (Fla. Dist. Ct. App. 2011).

Even if it did, "[s]tatements are protected under the qualified privilege only if the defendant made them without express malice." *Grippa v. Rubin*, 133 F.4th 1186, 1199 (11th Cir. 2025). Abacus and Jackson do not argue—even in conclusory fashion—that this inherently "factual inquir[y]" can be resolved on a motion to dismiss. *Delmonico v. Traynor*, 116 So. 3d 1205, 1220 (Fla. 2013). And the truth is that they spoke out "with malice" and for the "purpose" of "injur[ing] Coventry and Mr. Buerger." AC ¶ 144; *see* AC ¶¶ 99–105 (detailing Abacus and Jackson's public smear campaign to injure their competitor). The qualified privilege does not apply.

Counterclaimants have thus stated a plausible defamation *per se* claim. And, having "sufficiently stated a claim," there is no basis for Anti-SLAPP fees at this stage (or ever). *Buckley v. Moore*, 2021 WL 3173185, at *10 (S.D. Fla. July 26, 2021). *Contra* Mot. at 29–30. To recover such fees, Abacus and Jackson must prove that the claim

is both "without merit" and brought "primarily because" they engaged in constitutionally protected speech. Fla. Stat. § 768.295(3). They cannot show either, particularly not from "the face of the complaint." *Buckley*, 2021 WL 3173185, at *10.

## IV. Counterclaimants State a Plausible Claim Under the Florida Unfair and Deceptive Trade Practices Act (Count V).

Next, Abacus and Jackson raise four arguments for dismissing the FDUTPA claim. Each one is unavailing. ***First***, Abacus and Jackson insist the claim fails for the same reasons as the defamation *per se* claim. Mot. at 22–23. But, as demonstrated above, Counterclaimants have plausibly alleged their defamation *per se* claim. *See supra* Section III. And, as this Court previously held, "defamatory statements can be a deceptive act or unfair practice" under Florida law. ECF 100 at 12 (citation omitted).

***Second***, Abacus and Jackson invoke the "single action doctrine." Mot. at 22. Yet this Court has already concluded that the doctrine does "not . . . bar successfully pled defamation claims." ECF 100 at 15. So, again, because Counterclaimants have stated a plausible defamation *per se* claim, the single action doctrine does not apply.

***Third***, Abacus and Jackson contend that their unfair and deceptive practices were not "directed at consumers." Mot. at 23 (citation omitted). That argument, too, runs headlong into this Court's prior decision. While FDUTPA requires "an injury or detriment to consumers, the claimant does not have to be a consumer to bring the claim." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 169 (Fla. Dist. Ct. App. 2015) (emphasis omitted). And Counterclaimants have "allege[d] that [Abacus and Jackson] harmed consumers by consolidating market

share." ECF 100 at 14; *see* AC ¶ 154. That is enough. *See* ECF 100 at 14.

Even if it were not, Counterclaimants have further alleged that Abacus and Jackson's false public statements "harmed consumers by misleading investors" through "market deception." AC ¶ 154. That is not a "nebulous" allegation. Mot. at 23. Certainly, it is much more definite than Abacus's own FDUTPA allegations. It identifies a defined class of market participants, a specific mechanism of deception, and a concrete competitive harm. Indeed, the whole point of the press releases was to "cover up Abacus's fraud" and "deceiv[e] the public," particularly "investors" in Abacus's stock and funds. AC ¶¶ 152, 154; *see also Ritz Inv. Ltd. v. Abacus Glob. Mgmt., Inc.*, 2026 WL 1256563, at *13 (M.D. Fla. May 7, 2026) (denying motion to dismiss FDUTPA claim based on Abacus's "communications to investors"); *Hodges v. Monkey Cap., LLC*, 2018 WL 9686569, at *7–8 (S.D. Fla. Aug 24, 2018) (similar).

***Fourth***, Abacus and Jackson urge that Counterclaimants fail to plead "actual damages." Mot. at 23. But their formulation of the "actual damages" standard "is meaningless in the context of a competitor's claim." *ADT LLC v. Alarm Prot. Tech. Fla., LLC*, 2013 WL 11276119, at *5 (S.D. Fla. Apr. 18, 2013). Counterclaimants may recover "those damages recoverable at common law" as their "actual damages." *Id.* (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)). That includes "reputation harm" and "other damages commonly observed in business tort claims." *Trasco Wellness, LLC v. Tampa Bay Spine & Sports Med., Inc.*, 2024 WL 1466322, at *3 (M.D. Fla. Apr. 4, 2024) (citation omitted). Here, Counterclaimants

have alleged that Abacus and Jackson's repeated FDUTPA violations directly "harm[ed] [their] reputation in the marketplace." AC ¶ 154. That suffices at this stage. And, regardless of these actual damages they suffered, Counterclaimants can still always "seek[] injunctive and other equitable relief." *Office of the AG v. Bilotti*, 267 So. 3d 1, 3 (Fla. Dist. Ct. App. 2019).

## V. The Court Should Deny the Motion to Strike Because the Counterclaims Seek Proper Forms of Relief.

Abacus and Jackson also come nowhere close to showing that this Court should grant the "drastic" and "disfavored" remedy of striking certain requests for relief. *S. Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1079 (M.D. Fla. 2021).

### A. Lost Profits and Damages for Reputational Harms Are Available Remedies.

To start, Abacus and Jackson strangely move to strike Counterclaimants' prayer for damages stemming from "reputational harms" and "lost profits." *See* Mot. at 24–26. But "prayers for damages are not appropriately addressed on a motion to strike." *Powell v. Carey Int'l, Inc.*, 2006 WL 3008070, at *2 (S.D. Fla. Oct. 19, 2006). That is especially true where, as here, the movants do not contend that the damages are "categorically unavailable" for the asserted causes of action. *Sada v. City of Altamonte Springs*, 2008 WL 5110799, at *10 (M.D. Fla. Nov. 25, 2008).

To the extent Abacus and Jackson mean to argue that Counterclaimants have not ***plausibly*** alleged "standing or damages," that argument fails too. Mot. at 25–26. As already explained, Counterclaimants have plausibly alleged business, reputational, and litigation-related harms flowing from Abacus and Jackson's fraudulent scheme.

*See supra* Section II.A.3. And they have plausibly alleged lost profits resulting from Jackson's abuse of his unlawful board position. *See supra* Section II.B.3. Abacus and Jackson argue otherwise based on *Nebula Glass, Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203 (11th Cir. 2006). But that decision arose after trial. *See id.* at 1209.[2] "[A]t this stage of the litigation," Counterclaimants are "not required to prove lost profits, only to plausibly allege that [they have] incurred damages in the form of lost profits." *Cargo Logistics Int'l, LLC v. Overseas Moving Specialists, Inc.*, 557 F. Supp. 3d 381, 402 (E.D.N.Y. 2021). They have done just that. *See supra* Section II.B.3. Simply put, it is "sufficient that [Counterclaimants] point to damages and that it is plausible that those damages are attributable" to Abacus and Jackson's violations of the law. *Naval Logistic, Inc. v. A 50' Nortech Vessel*, 2026 WL 2015957, at *7 (S.D. Fla. July 10, 2026).

**B. Punitive Damages Are an Available Remedy.**

Abacus and Jackson next argue that the FVSA does not "authorize punitive damages." Mot. at 26–27. But, as they admit, "[t]he FVSA allows a party to seek 'damages.'" *Id.* at 26 (quoting Fla. Stat. § 626.9927(3)). And the Florida legislature has expressly authorized parties to seek punitive damages in "***any action for damages***" involving "intentional misconduct or gross negligence." Fla. Stat. §§ 768.71, 768.72 (emphasis added); *see Morton v. Polichak*, 931 So. 2d 935, 940 (Fla. Dist. Ct. App. 2006).

The FVSA does not conflict with that general statutory command, and Abacus and Jackson's reliance on *Branch v. Airtran Airways, Inc.*, 314 F. Supp. 2d 1194 (M.D.

[2] The words that Abacus and Jackson quote to suggest otherwise—"plausibly establish that"—appear nowhere in *Nebula Glass*. *See* Mot. at 26 (purportedly quoting *Nebula Glass*, 454 F.3d at 1214).

Fla. 2004), is misplaced. The "unambiguous language" of the law in that case allowed courts to "order ***only*** certain types of relief," such as "compensatory damages." *Id.* at 1196 (citation omitted). Here, by contrast, the FVSA more broadly authorizes "damages." Fla. Stat. § 626.9927(3). And "punitive damages are just that, damages." *Bishop v. Osborn Transp., Inc.*, 838 F.2d 1173, 1174 (11th Cir. 1988).

There is also no question that Abacus and Jackson have engaged in intentional misconduct. Fraud and other knowing misrepresentations "necessarily" suffice "to create a jury question regarding punitive damages." *First Interstate Dev. Corp. v. Ablanedo*, 511 So. 2d 536, 539 (Fla. 1987). And, here, "Abacus has perpetrated a fraud at the heart of its business, orchestrated by Jackson himself." AC ¶ 2. For years, they deceived and lied to investors, regulators, and the public. AC ¶¶ 3–7, 31–43, 52, 58–60, 65–73, 82–87. Then, when Counterclaimants "began exposing the facts underlying that scheme, Abacus doubled down by covering up its misconduct with still more falsehoods" in its pleadings. AC ¶¶ 1, 49–51, 53–54, 90–96. Beyond those knowing misrepresentations to the Court, Abacus and Jackson "pursued the same strategy" outside the courtroom by "repeatedly making false statements to the press," peddling lies on top of lies. AC ¶ 1, 96–105. Punitive damages are plainly appropriate here.

**C. Retraction Is an Available Remedy.**

Counterclaimants' narrow request for retraction is likewise appropriate. Where "statements of a party have been determined to be false and are the bases for finding liability, courts have approved orders requiring the parties to correct those statements." *Kelly Sutherlin McLeod Arch., Inc. v. Schneickert*, 194 Cal. App. 4th 519, 531–32 (2011)

(collecting cases). After all, "there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974). So nothing prohibits a court from ordering a simple retraction of such statements that are "unprotected under the First Amendment." *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 52 (2d Cir. 1996).

### D. Sanctions Are an Available Remedy.

Nor does anything warrant striking the prayer for sanctions. While Abacus and Jackson's misconduct certainly warrants Rule 11 sanctions, they cite no authority to strike a prayer for sanctions prior to the formal filing of a Rule 11 motion.[3] They are also wrong that sanctions "are available only via a properly filed and supported Rule 11 Motion." Mot. at 28. The Court can impose Rule 11 sanctions on its own initiative. *See* Fed. R. Civ. P. 11(c)(3). Separately, 28 U.S.C. § 1927 authorizes sanctions for "unreasonabl[e] and vexatious" conduct. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2006) (citation omitted). And the Court's "inherent powers" permit sanctions when a party has "acted in bad faith." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). All of these sanctions are warranted in this case.

## CONCLUSION

The Court should deny Abacus and Jackson's Motion in full.

[3] Perhaps recognizing that a Rule 11 motion would have merit, Abacus and Jackson attempt to plant the seed that it "would be squarely foreclosed by the Court's partial denial of Defendants' Motion to Dismiss." Mot. at 28 n.10. That is plainly incorrect. In permitting certain claims to proceed, this Court was required to "accept the factual allegations as true." ECF 100 at 4 (citation omitted). Its analysis therefore has no bearing on whether sanctions are warranted, because Abacus's claims rest on false premises that it knew were false when it filed its FAC—as detailed above and in the Amended Counterclaims. AC ¶¶ 93–98. That misconduct is sanctionable, as the court may always "impose sanctions if a party knowingly files a pleading contain[ing] false contentions." *Hood v. Tompkins*, 197 F. App'x 818, 819 (11th Cir. 2006).

Dated: October 1, 2026

Respectfully Submitted,

*/s/ Andrew J. Levander*
ANDREW J. LEVANDER (*pro hac vice*)
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036
Telephone: (212) 698-3500
Facsimile: (212) 698-3599
andrew.levander@dechert.com

ERIC AUSLANDER (*pro hac vice*)
DECHERT LLP
1900 K Street, NW
Washington, DC 20006

MICHAEL H. MCGINLEY (*pro hac vice*)
BRIAN A. KULP (*pro hac vice*)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

ALFRED J. BENNINGTON, JR.
GLENNYS ORTEGA RUBIN
BENJAMIN F. ELLIOTT
SHUTTS & BOWEN LLP
300 South Orange Ave.
Suite 1600
Orlando, FL 32801

*Counsel for Coventry First LLC and Alan Buerger*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 1, 2026, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court using CM/ECF, and a version of the foregoing document, without redactions, was served on Counsel for Abacus and Jackson by electronic mail.

*/s/ Andrew J. Levander*
Andrew J. Levander