# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
CASE NUMBER 6:25-cv-1401-RBD-RMN

ABACUS GLOBAL MANAGEMENT, INC., a corporation,
Plaintiff,
v.
COVENTRY FIRST LLC, a limited liability company, ET AL.,
Defendants.

Orlando, Florida
January 29, 2026
10:01 a.m.

TRANSCRIPT OF MOTION TO COMPEL HEARING (DOC 67)

BEFORE THE HONORABLE ROBERT M. NORWAY
UNITED STATES MAGISTRATE JUDGE

Court Reporter: Amie R. First, RDR, CRR, CRC, CPE
Federal Official Court Reporter
401 West Central Boulevard, Suite 4600
Orlando, Florida 32801
AmieFirst.CourtReporter@gmail.com

Proceedings recorded by Realtime Stenography.
Transcript produced by Computer-Aided Transcription.



APPEARANCES:

Counsel for Plaintiff: Alex Zuckerman, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue, 9th Floor
New York, NY 10016

Kathleen S. Messinger, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street
10th Floor
Los Angeles, CA 90017

Jason D. Sternberg, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
2601 South Bayshore Drive
Suite 1550
Miami, FL 33133

Counsel for Defendants: Michael H. McGinley, Esq.
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104

Glennys Ortega Rubin, Esq.
Shutts & Bowen LLP
300 South Orange Avenue
Suite 1600
Orlando, FL 32801



**INDEX OF PROCEEDINGS**


Argument by Attorney Zuckerman ........... 6
Argument By Attorney McGinley ............ 15
Rebuttal by Attorney Zuckerman ........... 25




**P R O C E E D I N G S**

*****

(Court called to order.)

**THE COURT:** Thank you very much.

Good morning, gentlepeople. Please be seated.

All right. Mr. Jernigan, would you please call the case and have the parties make their appearances for the record.

**THE DEPUTY CLERK:** Case Number 6:25-cv-1401, Abacus Global Management, Inc. versus Coventry First LLC, et al.

Counsel, please state your appearances for the record.

**ATTORNEY ZUCKERMAN:** Good morning, Your Honor. For Abacus Global Management, Alex Zuckerman. I'm here with Kathleen Messinger and Jason Sternberg.

**THE COURT:** Good morning.

You may be seated. Thank you.

**ATTORNEY McGINLEY:** Good morning, Your Honor. Michael McGinley of Dechert LLP on behalf of the defendants. I'm joined by my colleague, Glennys Ortega Rubin.

**THE COURT:** And good morning to you both. Please be seated.

All right. So we are here today to hear argument

Page 21

And your clients presumably still want to produce a profit.

**ATTORNEY McGINLEY:** Yes, that's right.

But I guess our point is it's still an apples-to-oranges comparison because the way that we would go about conducting valuations would be different because we're not regulated by the SEC in the same way. We're not making representations --

**THE COURT:** Why isn't that relevant to the statements that your clients are making publicly and to other market participants?

**ATTORNEY McGINLEY:** Because I understand what they want to do is to say let's look at how you do it. And if it looks like how we do it, then the statements you made about us must be false.

And what we've said is that's an apples-to-oranges comparison. But what we are willing to do is to show you who are the LE providers that we use and what are the discount rates that we use.

Because we understand to be that -- that is what they're challenging about Mr. Buerger and Coventry's statements. And so our compromise offer was to say we will produce that to you sufficient to show those two things.

And the response that we got was, well, no, we want to be able to run our entire methodology over your entire portfolio.

Page 22

And we don't think that that's relevant to the case. And we also think that it veers deeply into competitive intelligence that just seems inappropriate, particularly at this stage of the litigation and discovery.

**THE COURT:** I mean, we can deal with that and the parties can deal with that just by simply agreeing to a confidentiality agreement that appropriately segregates out the businesspeople.

**ATTORNEY McGINLEY:** We do have that, Your Honor. I am not sure how they could go about conducting a full scale --

**THE COURT:** They can hire experts. I mean, that's what parties do, especially in these large cases.

**ATTORNEY McGINLEY:** Okay. So the other thing that we would say, Your Honor, is it's not just about the communications with market participants or the particular policies, but they also ask for profit margin information, revenue information, things that to us seem to be completely far afield of what is at issue.

**THE COURT:** I mean, they want your balance sheet, right, the financials. I think that was the first request.

**ATTORNEY McGINLEY:** The financials -- here. I have them here, Your Honor.

**THE COURT:** The audited and unaudited consolidated financial statements. Yeah, that's 43.

Page 23

**ATTORNEY McGINLEY:** Well, so there's some -- yeah. So 43 to Coventry is audited/unaudited consolidated financial statements. 43 to Buerger is communications related to valuation of life policies.

But then when you get to the Coventry 66 and 67, it's documents and communications related to your profit margins on life insurance policies, including offering memorandum marketing materials, documents sufficient to show your revenue --

**THE COURT:** Right. That's the spread. That's the trade spread that they're asking for, information that they can show the trade spread. Correct? That's what 67 is?

**ATTORNEY McGINLEY:** Well, I understand that to be much larger than that, Your Honor.

**THE COURT:** I mean, it is larger but I think that's what it's generally --

**ATTORNEY McGINLEY:** That may be what they're trying to get at, but it's asking for much more than that, Your Honor.

**THE COURT:** Well, documents sufficient to show.

Okay. Any other arguments, or is that the crux of your argument that they don't need your client's internal and external communications about their own business actions to prove their claims?

**ATTORNEY McGINLEY:** It's that, Your Honor, but

Page 24

then also I'm just making a few quick points in response to what my friend said today.

He pointed out that it's really that they're looking at the discount rate issue. Again, we offered to give them that information.

And, you know, we do have a disagreement as to the nature of what Mr. Buerger's statements regarding marketplace knowledge was referring to. We have agreed to give them a number of things about the statements he made to others in the market and his own and Coventry's own evaluations of Abacus and Lapetus within the market.

And then the last point that I would make is that you asked the question about where are we in discovery. We've been negotiating both the contours of the RFPs -- I think that we've done -- both sides, I believe, have been very productive in trying to narrow down their disputes only to the last remaining items. We are actively negotiating on search terms. We fully are prepared to start producing documents soon.

**THE COURT:** Okay. I do have a question about the discount rate info. Well -- and maybe some of your other things.

I don't know what you mean about we've agreed to provide some of the information. What information have you provided? What information aren't you providing and why?

**ATTORNEY McGINLEY:** So what we've offered to them -- it's not completely concrete because we offered it as a compromise before this hearing and it was rejected.

But what we said is we would produce documents sufficient to show which LE providers we're using and what discount rates we're applying.

**THE COURT:** But not any of the backup information that your clients would have used to potentially get to that information?

**ATTORNEY McGINLEY:** Yeah. For example, they're asking for all the data tapes that were sent out for every single transaction that we engaged in over the last three years. And we think that that's just overbroad.

But we're willing to work with them to figure out if what they're really concerned with is whether or not Coventry's use of LE's or discount rates are vastly different from Abacus' or look like Abacus'.

We're willing to provide documents sufficient to show those things and we're willing to work with them to identify what those would be.

**THE COURT:** Okay. I think I understand your position. Thank you.

**ATTORNEY McGINLEY:** Thank you, Your Honor.

**THE COURT:** Do you have any rebuttal, sir?

**ATTORNEY ZUCKERMAN:** Two very quick points,



Your Honor. One is just on the discount rate point.

I think you understand this. But the discount rate is downstream in Abacus' valuation of the trade spread information. So we understand that Coventry may have a different way to get to their discount rate, but simply getting their discount rate is not going to give us the information we need to understand if someone in Alan Buerger's position reading Abacus' description of its valuation could think, well, there's no way they're getting that trade spread. I never get that kind of trade spread.

**THE COURT:** So, I mean, what information do you need for that?

**ATTORNEY ZUCKERMAN:** We would need to understand their outflows when they buy policies, and we would take that away from their inflows when they sell policies.

That's why the profit margin and the revenues and the balance sheet are relevant, because we can look at that raw information, we can apply the methodology that we describe that Alan Buerger doesn't believe from our 10-K to that information, and we can see that, well, if he was actually putting all the information he has together, he would see that actually you can generate this kind of profit.

And probably Abacus is generating this kind of profit. They're not manufacturing earnings.



That's the key, is that we think all of those pieces of information are on his desk somewhere. So we need to put them together by getting to the actual sales data and the balance sheet, like you said. That's why the compromised position is not quite getting us there.

**THE COURT:** It's not just that you need -- so if I understand your argument correctly, is that in order to test the veracity of those statements, you really do need to have a rather granular look at how they're operating their business to get to the point where you can have an expert opine about whether or not those statements were maybe false.

**ATTORNEY ZUCKERMAN:** We needed --

**THE COURT:** Or anybody.

**ATTORNEY ZUCKERMAN:** It's not every single thing related to every transaction. But when I think about what our auditor looks at on our policies, which is not loads and loads of information, it's a data tape that summarizes the inflows and outflows on the policy. We need to understand that so we can see if Coventry is generating profits like or in excess of the profits that we're generating on the tertiary market.

Because our valuation methodology clearly says that's where our discount rate comes from. They're saying they're generating discount rates some other way. And



they're saying that there's no way that we're doing what we say we're doing under this GAAP-approved valuation methodology. But we need to understand.

If Coventry makes, you know, huge profits on the tertiary market, we don't think they have a basis to say what they're saying about our valuation methodology.

**THE COURT:** Right.

**ATTORNEY ZUCKERMAN:** The only other thing I would say -- and I think Your Honor understands this.

On the competitive concerns, you'll see we filed another motion on Monday. Coventry has sent out a dozen very invasive subpoenas seeking all documents related to Abacus to several of our financial partners. And they don't seem to be shy about seeking potentially sensitive commercial information about potential investors or customers.

But I totally agree that we have a confidentiality order in place. It has two tiers and attorneys' eyes only provisions. So we don't see that as a concern going in either direction.

**THE COURT:** And does that confidentiality agreement also, does it have an umbrella for third-party disclosures as well?

**ATTORNEY ZUCKERMAN:** Yes. Third parties are -- well, we are providing all the parties we've subpoenaed

with that agreement. I cannot speak for everything that's being done over here. But we are informing everybody that they have the right to stamp their documents highly confidential.

**THE COURT:** All right. Thank you very much.

So like I said in the beginning, I do think that you all seem to be in a proper full-on knockdown drag out discovery fight here and that it seems to be very important to both of your clients. I understand that.

I am going to grant the motion, and I am going to compel the production of the documents and overrule the relevancy objections.

I do think it is highly relevant how Coventry operates its business down to the very valuations of the policies that its buying on the secondary and tertiary markets and how they're selling them because those are going to form the basis of the knowledge that was used.

And, quite frankly, it is part of -- as I think I mentioned earlier here today, part of your client's positions and the reason why people listen to them is because of the role they play in this market and their significant experience in it.

And that experience, as far as I can tell based on the allegations in the Complaint and what's been said here today, are based on their operating Coventry as a business.



So the veracity of the statements that were made and the real proof that the Abacus plaintiff here need are going to be tied up somewhat with how your clients are running their business. So I think that's just an unfortunate aspect of this type of defamation claim.

I also don't think very much of this distinguishing, trying to say that it's apples and oranges. Money is money. Your clients get money from a different source than they do.

And, quite frankly, the way I see it is that it is harder for Abacus to convince your clients not to put money into the market, but it is easier for your clients to convince market actors not to invest in Abacus. I think that's the whole basis of this lawsuit.

So I do think all of the requests are relevant, and I'm going to grant that. I'm also going to grant costs for this.

A couple of ground rules going forward. I routinely award costs. So when you all come before me, unless you give me a very good reason not to, the loser will pay costs. Costs include attorneys' fees, attorneys' fees for preparing the motion, for the conferrals, and for arguing and appearing here today. So that's costs.

How I'm going to handle the costs, I'll allow the parties after the hearing to confer, make an agreement, pay



the costs. If there is a disagreement between discovery costs at the end of the discovery period, the party who has been awarded costs but who has not yet been paid costs may file one motion for the Court to determine how much it should be awarded in costs cumulatively for the entire discovery period.

And this is just an example. For instance, if Abacus has successfully brought and been granted four or five motions to compel and been awarded costs for those motions and they have not yet been paid by the end of the discovery period, then they may file a single motion asking for a determination of the award for all four costs.

Same things for Coventry. If Coventry does the same, it files four or five motions for protection and they're granted, the same thing. At the end of the discovery period, you can file a single motion for the Court to determine how much you can recover in costs.

That's how I'm going to handle costs.

Now, how I want to handle exhibits to the discovery motions, I do not want to see 150-page exhibits. It's impossible for the Court's computer system to keep up with the PDF files that are that large. One document in one exhibit.

So Coventry's responses to the interrogatories, that's all I want to see is Coventry's responses. And I



don't want to see all of the responses. Only attach or only include in the attachment those pages that are relevant to the dispute. I don't want to scroll through a 50-page response just to find a single interrogatory that's at issue. So I only want to see attached excerpts from the exhibit that are relevant to the dispute.

And you should have plenty of space on ECF to make attachments. I think you can put 70 or 80 attachments to an ECF docket. So you should have plenty of room there for that.

And you all need to actually use pin cites in your motions. I don't want to see Exhibit A. I want to see Exhibit A at Page 12. If it's not Page 12, again, that really inhibits the Court's ability to actually figure out what's at issue.

If I have to scroll through a 150-page document just to find one page, it's a waste of my staff's time. And, quite frankly, if they printed it out, it's also a waste of a lot of paper.

So that's what I'm going to ask you all to do going forward with these disputes, try to limit those exhibits and only what is at issue and what the Court really needs to address.

You all are having, I think, really good and productive meet and conferrals. Usually that is a concern

parties are in the best position to agree to because you all know the volume of work you need to do and when it can be done.

But I am going to caution you, like shepherd your resources appropriately because you're unlikely to get an extension of the discovery deadline.

**ATTORNEY McGINLEY:** Your Honor, just one thing that -- I just want to slightly correct one statement I made. There is also a pending motion to compel against Lapetus on a third-party subpoena that was transferred from the Western District of North Carolina where the subpoena was served to this district.

I don't know yet that it's been transferred to Your Honor. It was initially assigned to, I believe, Judge Middlebrooks. And I have to confess I don't know which magistrate it was assigned to. But I think the parties, meaning Lapetus and Coventry, will be moving to have it reassigned to Your Honor and Judge Dalton.

**THE COURT:** So it was assigned to the Tampa Division for some reason.

**ATTORNEY McGINLEY:** I'm not sure. I have to confess I have to double-check. It just happened earlier this week.

But there's been discussions between the parties to try to get it in front of Your Honor and Judge Dalton



given that it's related to this case.

**THE COURT:** Okay. So it was filed as a separate --

**ATTORNEY McGINLEY:** It was filed as a miscellaneous action in North Carolina where the subpoena was served. It sat there for a while. The parties agreed to transfer it to the Middle District of Florida.

And I think just by virtue of it being fed into the system, it just hasn't been reassigned. But that is a pending motion to compel by Coventry against Lapetus.

**THE COURT:** Well, thank you very much for bringing that to my attention because I wasn't aware of it.

Again, I don't want to stress this too much, but we're a very busy district. Unfortunately, we have fewer and fewer staff members in the Clerk's Office. And so if the parties aren't very proactive in identifying this and letting the Clerk's Office know that it's related to another case, it can get lost in the shuffle.

So do you know what the case number is for that miscellaneous case number?

**ATTORNEY McGINLEY:** If you allow me to look in my cell phone, I can tell you.

**THE COURT:** Please.

**ATTORNEY McGINLEY:** Okay.

**THE COURT:** You might need Mr. Jernigan's help.



**ATTORNEY McGINLEY:** Yes. Thanks.

(Brief pause.)

**ATTORNEY McGINLEY:** I apologize. I turned it off.

**THE COURT:** As you should have.

As a word of warning, I sanctioned a U.S. Attorney for using his cell phone in my courtroom. So it's probably the best idea to keep it.

**ATTORNEY McGINLEY:** Fair warning. Thank you.

(Brief pause.)

**THE DEPUTY CLERK:** 6:26-mc-4.

**ATTORNEY McGINLEY:** Yes. That's right.

**THE COURT:** Oh, okay. I have the case here, 6:26-mc-4. It's assigned to Judge Gaylord Moe and Judge Hill.

**ATTORNEY McGINLEY:** So I stand corrected on Middlebrooks, Your Honor.

**THE COURT:** That's totally understandable. Thank you very much for bringing that to our attention, counsel.

Is there anything else the Court can do for the parties here today?

For Abacus.

**ATTORNEY ZUCKERMAN:** No, Your Honor. Thank you.

**THE COURT:** Coventry.

**ATTORNEY McGINLEY:** No, Your Honor. Thank you very much.



**THE COURT:** Having nothing further, then, thank you very much. Thank you all. And very well done on the argument today, gentlemen.

**ATTORNEY McGINLEY:** Thank you.

(Proceedings adjourned at 10:46 a.m.)

*****

**C E R T I F I C A T E**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

February 4, 2026

s\ Amie R. First

Amie R. First, RDR, CRR, CRC, CPE
Federal Official Court Reporter
United States District Court
Middle District of Florida